**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

OCT 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ROSE M. DEWS-MILLER,
**Plaintiff**

8507 Wood
Clinton, MD 2
(301)868-9436

**V.**

CONDOLEEZZA RICE,
**Secretary, Department of State, Agency
Defendant**

2261 "C" Street, N.W.
Washington, DC 20520-7310

CASE NUMBER  1:06CV01764

JUDGE: Gladys Kessler

DECK TYPE: Pro se General Civil

DATE STAMP: 10/16/2006

---

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

Plaintiff, Rose M. Dews-Miller, pro se, received "U.S. Equal Employment Opportunity Commission's **DENIAL** letter on July 18, 2006, therefore, plaintiff is filing her **COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION** (P0900), (**see attachment A**) within the ninety (90) calendar days  limit in a timely manner.

Plaintiff, Rose M. Dews-Miller respectfully files the "**COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION** (P0900) and a **REQUEST FOR SUMMARY JUDGMENT**.  Plaintiff will demonstrate that the U.S. Equal Employment Opportunity Commission's **DENIAL** letter dated July 13, 2006 and the appellate decision involved a clearly erroneous interpretation of material fact, if only  EEOC had examined any of the identified TOP 20 reasons listed below from the Report of Investigation, (ROI) #00-19, Volume I.

The **prima facie** case for reprisal or retaliation requires the Plaintiff to prove that: (1) she engaged in a statutorily protected activity; (2) an adverse personnel

action was taken against her; and (3) a causal link exists between the two.

A causal connection may be established by proving that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.

**REASON 01**:    See ROI #00-19, Volume I, Exhibit 01, Pages 1-11 - Formal complaint of discrimination and attachments dated, August 23, 2000 and amended October 30, 2000. (Attachment 1)

**Reason One** outlines one of many formal complaints filed by Plaintiff against her former employer the United States Information Agency, which merged with the U.S. Department of State in October 1999.

**REASON 02**:    See ROI #00-19, Volume I, Exhibit 01, Pages 13-19 - U.S. Equal Employment Opportunity Commission's Decision for Appeal No. 01983674; Agency No. OCR-9615, dated June 23, 1999 and signed by Carlton M. Hadden, Acting Director of Federal Operations. (Attachment 2)

**Reason Two** orders the Agency to process the Allegation 3 in accordance with 29 C.F.R. Section 1614.108. Allegation 3 deals with AWOL charged from September - November 1995. USIA/Department of State has yet to pay me for the AWOL from September - October 3, 1995. U.S. Department of Labor, Office of Workers' Comp paid from October 4, to November 1995. USIA received this Order from EEOC at least 60 days prior to it's merger with the Department of State in October 1999, which gave USIA time for processing .
Compliance with the Commission's corrective action is mandatory. Was USIA exempt from providing corrective action?

2

**REASON 03**:    See ROI #00-19, Volume I, Exhibit 01, Page 20 - U.S. Equal
Employment Opportunity Commission's Compliance letter for
REF: Compliance #06991487; Appeal No. 01983674; Agency
No. OCR-9615, dated June 24, 1999 and signed by William J.
Bartlett, Director, Compliance and Control Division.
(Attachment 3)

**Reason Three** directed US Information Agency to take corrective action
and provide a copy of report to appellant.  To date, USIA/Department of
State has not furnished me with a copy of report or provided corrective
action as ordered.

**REASON 04**:    See ROI #00-19, Volume I, Exhibit 01, Pages 21-22 - U.S.
Department of State letter from Hattie P. Baldwin to
Complainant, dated October 13, 2000.  (Attachment 4)

**Reason Four** correspondence for examination.

**REASON 05**:    See ROI #00-19, Volume I, Exhibit 01, Pages 23-24 -
Complainant's Represent, John Pratt's letter to U.S.
Department of State, Director, Office of Equal Employment
Opportunity and Civil Rights letter, dated August 23, 2000.
(Attachment 5)

**Reason Five** copy of Formal Complaint letter referred to in Reason 04
above.

**REASON 06**:    See ROI #00-19, Volume I, Exhibit 01, Page 25 - Designation of

Representative, dated 08/23/00.  (Attachment 6)

**Reason Six** copy of Designation of Representative form referred to in Reason 04 above.

**REASON 07**:     See ROI #00-19, Volume I, Exhibit 02, Page 7 of 17 - Interview with Blanche Twardowski-Involved Management Official. (Attachment 7)

**Reason Seven** correspondence for examination.

**REASON 08**:     See ROI #00-19, Volume I, Exhibit 05-01, Pages 1 of 21 - Sequence of Events from December 1987 to March 2000. (Attachment 8)

**Reason Eight** correspondence for careful examination of many events Plaintiff encountered while employed at the former U.S. Information Agency and later the U.S. Department of State.

**REASON 09**:     See ROI #00-19, Volume I, Exhibit 05-07, Pages 1 to 2 - News brief, "U.S. Offers $508 Million in Sex-Bias Case." (Attachment 9)

**Reason Nine**, Plaintiff is one of the 1,100 women who are "class members" of this federal sex-discrimination case.

**REASON 10**:     See ROI #00-19, Volume I, Exhibit 05-09, Pages 1 to 9 - Complainant's chart on her Performance Evaluation Ratings July 1984 to December 9, 1996.  (Attachment 10)

**Reason Ten** correspondence for careful examination of "Performance Evaluations" Plaintiff received while employed at the former U.S. Information Agency.

**REASON 11:**   See ROI #00-19, Volume I, Exhibit 05-10, Pages 1 to 4 - Complainant's chart on the processing of her complaint OCR-96-15. (Attachment 11)

**Reason Eleven** correspondence for careful examination of "Complainant's chart on the procession of her complaint".

**REASON 12:**   See ROI #00-19, Volume I, Exhibit 05-12, Page 1 of 1 - Letter from Complainant to her representative forwarding a copy of her statement. (Attachment 12)

**Reason Twelve** correspondence for careful examination.

**REASON 13:**   See ROI #00-19, Volume I, Exhibit 05-13, Page 1 of 13 - Complainant's Amended Interrogatory dated 08/16/2001. (Attachment 13)

**Reason Thirteen** correspondence for careful examination.

**REASON 14:**   See ROI #00-19, Volume I, Exhibit 05-13, Page 3 of 13 - USIA Jeni Mallios 09/21/1995 letter to DOL/OWCP. (Attachment 14)

**Reason Fourteen** correspondence for careful examination.

**REASON 15:**   See ROI #00-19, Volume I, Exhibit 05-13, Page 4 of 13 - DOL/OWCP Melendez 11/09/1995 letter to USIA Mallios

enclosing a copy of Complainant's entire medical records. (Attachment 15)

**Reason Fifteen** correspondence for careful examination.  Privacy Acts laws violations.

**REASON 16**:     See ROI #00-19, Volume I, Exhibit 05-13, Pages 5-6 of 13 - Complainant's list of assignments from 11/27/1995 07/24- 26/1996.  (Attachment 16)

**Reason Sixteen** correspondence for careful examination.

**REASON 17**:     A)  See ROI #00-19, Volume I, Exhibit 05-13, Page 7 of 13 - DOL/OWCP Melendez 01/27/1997 letter to USIA Mallios reference the correct period of continuation of pay, (COP) for Plaintiff.  (Attachment 17)
B)  See ROI #00-19, Volume I, Exhibit 05-13, Page 8-9 of 13 - DOL/OWCP Melendez 04/28/1997 letter to USIA Mallios reference  Plaintiff.  (Attachment 17)
C)  See ROI #00-19, Volume I, Exhibit 05-13, Page 10-11 of 13 - DOL/OWCP Melendez 08/26/1997 letter to USIA Mallios reference  Plaintiff.  (Attachment 17)

**Reason Seventeen** , U.S. Department of Labor requests that Agency correct the continuation of pay, (COP) for Plaintiff.  This deals with AWOL charged from September - November 1995.  USIA/Department of State has yet to pay me for the AWOL from September - October 3, 1995.  U.S. Department of Labor, Office of Workers' Comp paid from October 4, to November 1995. USIA received these Requests from Department of Labor from January to

August 1997, two years prior to it's merger with the Department of State in October 1999, which gave USIA sufficient time for processing .

**REASON 18**:  See ROI #00-19, Volume I, Exhibit 05-13, Page 12 of 13 - USIA Johnson/Mallios memo Subject: Rose Mary Dews Miller, dated 02/09/1998.  (Attachment 18)

<u>Reason Eighteen</u> correspondence for careful examination, but as in Reason 16, above, I have yet to be paid for requested period.

**REASON 19**:  See ROI #00-19, Volume I, Exhibit 05-14, Pages 1-6 - U.S. Equal Employment Opportunity Commission's Decision for Appeal No. 01992980; Agency No. OCR-96-15R, dated July 19, 2001 and signed by Carlton M. Hadden, Director of Federal Operations.  (Attachment 19)

<u>Reason Nineteen</u> orders  the Agency to consolidate for processing the claims of retaliatory harassment pending before the agency, which are like or related to the present complaint.  Department of State received this Order from EEOC mid July 2001 which has been over five years now and more than enough  time for processing.  Compliance with the Commission's corrective action is mandatory.  Is U.S. Department of State exempt from providing corrective action?

**REASON 20**:  See ROI #00-19, Volume I, Exhibit 09-01, Pages 1-3 - Settlement Agreement for Complainant dated January 27, 1995.  (Attachment 20)

<u>Reason Twenty</u> correspondence for careful examination.  This Settlement

Agreement is a prime example of "retaliation" due to Plaintiff's has repeatedly been denied due process as well as having been subjected to continued harassment, first by Agency officials, who conspired to "hide" the AMEX CARD problem Plaintiff, first reported to then Inspector General Marian C. Bennett on September 16, 1994.

In the above listed 20 REASONS for Attachments 1 to 20 the _prima_ _facie_ case for reprisal or retaliation requires Plaintiff to prove:

*(1) she engaged in the listed statutorily protected activities;*

- ♦ **Complainant class member of Hartman v. USIA/Department of State**
- ♦ **Filed formal EEO complaint 06/93, non selection OIG Auditor, GS-511-09**
- ♦ **Filed formal EEO complaint 09/93, Fully-Successful Performance Rating**
- ♦ **Complainant's 09/16/94 Whistle-Blowing "Government Credit Card Misuse" reported to Inspector General of USIA's Office of Inspector General employees**
- ♦ **Procedural Due Process Violation on 01/18-19/1995 EEOC Hearing**
- ♦ **Filed formal EEO complaint 03/96 on Two "Minimally Successful Performance Ratings; Denial of WGI; and AWOL**
- ♦ **Complainant's Testimony early September 1996 at the Office of Special Counsel, (OSC) on "OIG Employee's Government Credit Card Misuse"**

*(2) adverse personnel actions taken against Plaintiff;*

- ♦ **Non-Selection to OIG Auditor, GS-511-09 position April 1993 by J. Richard Berman and Anne Young under the leadership of George Murphy;**
- ♦ **"Fully-Successful" Performance Rating, May 1, 1992 - April 30, 1993**

by Darwin Roberts and Louis Leporatti under the leadership of George Murphy;

- "Fully-Successful" Performance Rating, May 1, 1993 - April 30, 1994 by Darwin Roberts and Louis Leporatti under the leadership of IG-Marian Bennett;

- Non-Selection to Office of the Comptroller, Systems Accountant, GS-510-12 position December 1994 by Charles McAndrews and Stanley Silverman;

- Non-EEOC Hearing January 18-19, 1995 by Judge Tietleman and Carol Epstein

  *29 C.F.R., Section 1614.109(c)(2) states "Any time after the parties have received notice that an administrative judge has been appointed to conduct a hearing, but not later than 30 days prior to the hearing, the agency may make an offer of resolution to the complainant, whether represented by an attorney or not."*

- 1995 Settlement Agreement drafted by OIG-Renee' DeVigne under the leadership of IG-Marian Bennett;

- "Minimally Successful" Performance Rating May 1, 1994 - January 30, 1995 by Darwin Roberts and Louis Leporatti under the leadership of Marian Bennett;

- "Minimally Successful" Performance Rating February 1, 1995 - July 31, 1995 by Carol Keith and Eva Diekmann under the leadership of Stanley Silverman;

- Denial of Within Grade Increase, (WGI) from GS-341-11/04 to GS-341-11/05 on September 25, 1995, WGI effective late October/Early November 1995, however Complainant was not notified until November 13, 1995, well after the effective date of the WGI.. Federal Personnel regulations require proper notice to the employee prior to taking adverse action;

- Placement on Absence Without Leave, (AWOL), from September 1,

1995 to November 26, 1995 after a work injury on July 10, 1995;

♦ Wrongful Discharge effective December 9, 1996. Government employees with *for cause* protection are said to have a reasonable expectation of continued employment, and therefore a *property interest* in their job that can only be taken away with *due process*. That right also entitles them to procedural *fundamental fairness* before they may be terminated. Plaintiff was not given proper notice of this "Wrongful Discharge", no written notice, no termination meeting, no exit interview, NOTHING;

♦ Hattie Baldwin, former USIA Director, Office of Civil Rights defaulted on EEOC's Decision Appeal No. 01983674 and Agency No. OCR-9615, dated June 23, 1999.


**(3) a causal link exists between the two.**

Plaintiff's employer, USIA, had knowledge of her participation in the protected activities listed above and the adverse personnel actions listed above took place shortly after those protected activities..

Because USIA/OCR-Hattie Baldwin, along with other high level officials, including USIA/OCR-Delia Johnson; USIA/MHR-Jenni Mallios; USIA/MHR-Janice Brambrilla; USIA/MHR-Janet Davis; USIA/MHR-Blanche Twardowski; USIA/OIG-Marian Bennett; USIA/OIG-Renee' DeVigne; USIA/OIG-Anne Young; USIA/OIG-Darwin Roberts; USIA/OIG-Louis Leporatti; USIA/OIG-J.Richard Berman; USIA/OIG-John Sinclair; USIA/GC-Les Jin; USIA/GC-R. Wallace Stewart; USIA/GC-Carol Epstein; USIA/GC-Richard Werksman; USIA/GC-Lorie Neumuberg; USIA/MC-Stanley Silverman; USIA/MC-Eva Diekmann; and USIA/MC-Carol Keith denied Complainant's right to relief; therefore, complainant has suffered emotional distress and was discharged from her job effective December 9, 1996 without notice as



required by federal regulations and laws. Additionally complainant was denied promotions, job benefits, and Within Grade Increases. Complainant was threaten, intimidated, harassed, given negative evaluations, wrongfully discharged from federal service and other forms of adverse actions after her participating in the above listed *statutorily protected activities*.

## CONCLUSION

Plaintiff, Rose M. Dews-Miller additional submits a "Statement of Facts" exhibited as <u>Attachment B</u> and an article from <u>The Review</u> *on "Government Credit Card Abuse Grows"* as <u>Attachment C</u>.

When the full extent of the AMEX CARD problem, throughout the Agency, not just in the Office of Inspector General, became known as a cover-it-up, destroy-the-messenger mood settled over upper level management with the avowed purpose of destroying Plaintiff, Dews-Miller for bringing the problem out into the light of public scrutiny.

This group of conspirators consisted of M/HR-Jeni Mallios; GC-Carol Epstein; OCR-Hattie Baldwin; IG-Marian C. Bennett; OIG-Renee DeVigne; Comptroller-Stanley Silverman; M/HR-Janice Brambilla; OIG-Darwin Roberts; OIG-Louis Leporitti and other lessor persons in these and other offices.

Plaintiff's problems were made worse when the attorney she hired to represent her, and her best interests, in several, up until that time, un-related discrimination complaints filed against senior managers in the Office of Inspector General, sided with management and sacrificed Plaintiff in order to "win" cases in which he was "representing" other O.I.G.

employees in their complaints against Inspector General, Marian C. Bennett and other senior members of her staff. For example would a responsible attorney insert or leave in the settlement agreement item 11, and then sue his client to recover his fees and expenses?

While Plaintiff now realizes, she should have filed charges against Bruce Cooper, for his failure to represent her, she had no reason to think her charges would be so totally ignored, first by M.S.P.B. Administrative Law Judge, Raphael Ben-Ami's order, that absolutely no credence was given to Plaintiff's statements and charges, obviously because Plaintiff was not a lawyer.

Plaintiff's presentations and positions have been continually denigrated by Agency representatives. Its obvious that Agency representatives has consistently left out correspondence that might provide a more complete picture of the situation faced by Plaintiff.

The entire procedure has been made even more frustrating by the misdeed and in-actions of first, Agency officials charged with enforcing the laws, then review bodies, like the M.S.P.B., OSC, EEOC and now Agency lawyers, all of whom are out to "kill the messenger."

These individual and collective actions are at least acts of misfeasance, although malfeasance would be a more appropriate charge, and must be fully reviewed by this Court, in the light of the pain and suffering they have caused Plaintiff.

12

# **RELIEF SOUGHT**

**Plaintiff seeks a Summary Judgment Motion for immediate** reinstatement as a full-time, career employee, retroactive to December 10, 1995, and other benefits to be determined later.  Corrective actions from EEOC Orders issued to Agency, Department of Labor requests processed, including promotions and with-in grade increases that would have been earned, credit for all annual and sick leave that would have been earned, all annual performance bonus awards that would have been earned, reimbursement of all legal expenses paid and incurred and compensatory damages to the full extent allowed by law.

Respectfully Submitted,

*Rose M. Dews Miller*

**Rose M. Dews-Miller, Plaintiff**
**POB 0863, Clinton, MD 20735-0863**

*October 16, 2006*

**Date**

13

## CERTIFICATE OF MAILING

For timeliness purposes, the Plaintiff will presume that this "Complainant's Right to File a Civil Action (P0900) was received within five (5) calendar days after it was mailed. I certify that this "Complainant's Right to File a Civil Action" was mailed to the following recipients on the date below:

Barbara S. Pope, Asst. Secretary EEO

U.S. Department of State

2201 "C" Street, N.W. - Room 4216

Washington, DC 20520-7310

via Certified Mail #700501820 0003 6895 7951

*October 16, 2006*

**Date**

*Rose M. Dews Miller*

**Rose M. Dews Miller, Plaintiff**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C.  20036

Rose M. Dews-Miller,
Complainant,

v.

Condoleezza Rice,
Secretary,
Department of State,
Agency.

Request No. 05A60716

Appeal No. 01A44926

Hearing No. 100-A2-7576X; 100-A2-7576X

Agency No. 0019

<u>DENIAL</u>

Complainant timely requested reconsideration of the decision in *Rose M. Dews-Miller v. Department of State*, EEOC Appeal No. 01A44926 (April 11, 2006).  EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that:  (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  *See* 29 C.F.R. § 1614.405(b).

Complainant alleged that she was retaliated against by the agency with regard to numerous claims.  Complainant requested a hearing before an EEOC Administrative Judge (AJ).  After a hearing was held, the AJ issued a decision finding that complainant failed to prove that she was retaliated as alleged.  Complainant appealed the AJ's decision to the Commission.  In the underlying decision, the Commission determined that the EEOC Administrative Judge's ultimate finding of no retaliation was supported by substantial evidence in the record.

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 01A44926 remains the

Attachment _A_
Page _1_ of _4_ Pages

2                                              05A60716

Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

JUL 1 3 2006
Date

Attachment *A*
Page *2* of *4* Pages

3                                                    05A60716

## <u>CERTIFICATE OF MAILING</u>

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**. I certify that this decision was mailed to the following recipients on the date below:

Rose M. Dews-Miller
P.O.B. 863
Clinton, MD 20735-0863

Barbara S. Pope, Asst. Secretary EEO
Department of State
2201 C St., NW Rm. 4216
Washington, DC 20520-7310

JUL 1 3 2006
_____
Date

_____
Equal Opportunity Assistant

Attachment ___A___
Page _3_ of _4_ Pages

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 19848
WASHINGTON, D.C. 20036

**OFFICIAL BUSINESS**
Penalty for private use $300

20735#0863 B009

Reference #: 05A60716
Rose M. Dews-Miller
P.O.B. 863
Clinton, MD 20735-0863



UNITED STATES POSTAGE
PITNEY BOWES
02 1A          $ 00.39⁰
000461824    JUL 13 2006
MAILED FROM ZIP CODE 10004

Rec'd 9/18/06

Attachment    A
Page 4  of  4  Pages

*Paul/Brenda/Hattie/DD*
*SW*

October 30, 2000

United States Department of State
Office of Equal Employment Opportunity
  And Civil Rights
Washington, DC 20520-4216

RECEIVED

2000 NOV -7 P 5: 52

S/EEOCR

**Attention:    Hattie P. Baldwin, Deputy Director**

**Subject:  Baldwin's Letter dated October 13, 2000 and received October 17, 2000**

REFERENCE:      EEOC Appeal No. 01983674
                EEOC Appeal No. 06991487
                EEO No. 00-19      (USIA No. OCR-96-15R)

As stated in *29 C.F.R. 1614.106(d)*, this is an amendment to my formal complaint filed with your office on August 23, 2000 by Mr. John D. Pratt on my behalf.  Rose M. Dews Miller files this formal compliant pro se on 10/30/00.

1.    **Complainant:**    *Rose M. Dews Miller*
      **Address:**        *Post Office Box 863*
                          *Clinton, MD  20735-0863*

2.    **Representative's Name:**           **John D. Pratt**
      **Representative's Address:**        **6713 Harwood Place**
                                           **Springfield, VA  22152-2419**

      **Representative's Telephone Number:**   **(703) 569-1944**

3.    **Name of Agency/Office Complaint Filed Against:**

            **The former U.S. Information Agency's Office of Equal Employment
            Opportunity and Civil Rights, (USIA/OCR), Washington, DC 20547:**
                **Employees of USIA/OCR were**   a.  **Hattie P. Baldwin,**
                                                     **Director**
                                                 b.  **Delia Johnson,**
                                                     **Deputy Director**
            **The former U.S. Information Agency's Office of Human Resources,
            (USIA/MHR), Washington, DC 20547:**
                **Employees of USIA/MHR were**   c.  **Jenni Mallios,**
                                                     **Personnel Mgmt Spec.**
                                                 d.  **Janice Brambrilla,**
                                                     **Director of Personnel**
                                                 e.  **Janet R. Davis,**
                                                     **Supv. Personnel Spec.**
                                                 f.  **Blanche Twardowski,**
                                                     **Supv. Personnel Spec.**

PAGE 1 OF 25

Attachment ___1___
Page _1_ of _11_ Pages

Exhibit ___1___

**Formal Complaint**
**Page Two**
**Dated:  October 30, 2000**

3.      **Name of EEO Office Complaint Filed Against:  (continued)**

The former U.S. Information Agency's Office of Inspector General, (USIA/OIG), Washington, DC 20547:

Employees of USIA/OIG were

    g.   **Marian C. Bennett,**
       **Inspector General**
    h.   **Renee' DeVigne,**
       **OIG Attorney**
    i.   **Ann Young, Supv.**
       **Management Analyst**
    j.   **Darwin Roberts, Supv.**
       **Management Analyst**
    k.   **Louis Leporatti,**
       **Executive Assistant**
    l.   **J. Richard Berman,**
       **AIG for Audit**
    m.  **John Sinclair, AIG for**
       **Investigations**

The former U.S. Information Agency's Office of General Counsel, (USIA/GC), Washington, DC 20547:

Employees of USIA/GC were

    n.   **Les Jin,**
       **General Counsel**
    o.   **R. Wallace Stewart,**
       **Dep. General Counsel**
    p.   **Carol Epstein,**
       **Asst. General Counsel**
    q.   **Richard Werksman,**
       **Asst. General Counsel**
    r.   **Lorie Neumuberg,**
       **Asst. General Counsel**

The former U.S. Information Agency's Office of Comptroller, (USIA/MC), Washington, DC 20547:

Employees of USIA/MC were

    s.   **Stanley Silverman,**
       **Agency Comptroller**
    t.   **Eva Dickman, Supv.**
       **Budget Analyst**
    u.   **Carol Keith,**
       **Budget Analyst**

Formal Complaint
Page Three
Dated: October 30, 2000

4. **Date on Which Most Recent Alleged Discrimination Took Place:**
   <u>November 6, 1997 to Present</u>

5. **Check Below Why You Believe You Were Discriminated Against.**

   ☐ **RACE (State Your Race)**    ☐ **COLOR (State Your Color)**

   ☐ **RELIGION (State Your Religion)**    ☐ **NATIONAL ORIGIN (State Your National Origin)**

   ☐ **SEX (State Your Sex)**    ☒ **AGE (State Your Age, and Date of Birth)** _Age 46  DOB: 3/18/54_

   ☒ **DISABLITY (State The Nature of Your Disability)**
   _On the Job injury effective 7/10/95._
   _OWCP File # A25-0470-961_

   ☒ **RETALIATION/REPRISAL (Explain Connection with the EEO Process, Title VII or ADEA)**

   29 C.F.R.§1614.101(b) states "No person shall be subject to retaliation for opposing any practice made unlawful by Title VII of the Civil Rights Act".

   On November 6, 1997, I filed prior EEO complaints against the former U.S. Information Agency, which included, but not limited to:
   1) USIA/Office of Inspector General's non-hiring of African-Americans in Auditor positions from December 1987 to April 1993 based on RACE, SEX, RETALIATION under the leadership of George Murphy;
   2) USIA/Office of Inspector General's Darwin D. Roberts and Louis J. Leporatti under the leadership of George Murphy and Terance Shea's discriminatory involvement based on RETALIATION due to their issuance of my May 1, 1992 to April 30, 1993 Performance Evaluation from my normal receipt of "Highly Successful" to "Fully Successful":
   3) USIA/Office of Inspector General's Darwin D. Roberts and Louis J. Leporatti under the leadership of Marian C. Bennett's discriminatory involvement based on RETALIATION due to their issuance of my May 1, 1993 to April 30, 1994 Performance Evaluation from my normal receipt of "Highly Successful" to "Fully Successful":

Formal Complaint
Page Four
Dated:  October 30, 2000

**RETALIATION/REPRISAL (Explain Connection with the EEO Process, Title VII or ADEA)    {CONTINUED}**

4) USIA/Office of Inspector General's Darwin D. Roberts and Louis J. Leporatti under the leadership of Marian C. Bennett's discriminatory involvement based on RETALIATION due to their issuance of my May 1, 1994 to January 30, 1995 Performance Evaluation from my normal receipt of "Highly Successful" to "Minimally Successful":

5) USIA/Office of the Comptroller's Carol Keith and Eva Diekmann under the leadership of Stanley M. Silverman's discriminatory involvement based on RETALIATION due to their issuance of my February 1, 1995 to July 31, 1995 Performance Evaluation from my normal receipt of "Highly Successful" to "Minimally Successful or UnSuccessful":

6) USIA/Office of Inspector General's Ann Young under the leadership of Marian C. Bennett's discriminatory involvement based on RETALIATION due to their denial of my Within Grade Increase, (WGI) from GS-341-11/04 to GS-341-11/05 on September 25, 1995, WGI effective late October/Early November 1995, but I was not notified until November 13, 1995, well after the effective date of the WGI.  Federal Personnel regulations require proper notice to the employee prior to taking adverse actions:

7) USIA/Office of Inspector General's Ann Young under the leadership of Marian C. Bennett's discriminatory involvement based on RETALIATION due to their placement of me on Absence Without Leave, (AWOL), from September 1, 1995 to November 26, 1995 after a work injury on July 10, 1995.  Again, I was not notified of this ADVERSE ACTION until after the fact.  Federal Personnel regulations require proper notice to the employee prior to taking adverse actions:

8) 29 C.F.R.§1614.109(c)(2) states "Any time after the parties have received notice that an administrative judge has been appointed to conduct a hearing, but not later than 30 days prior to the hearing, the agency may make an offer of resolution to the complainant, whether represented by an attorney or not."
USIA/GC-Carol Epstein along with EEOC/ALJ Samuel Tietleman violated this citation on January 18-19, 1995, when EEOC/ALJ

Formal Complaint
Page Five
Dated: October 30, 2000

## RETALIATION/REPRISAL (Explain Connection with the EEO Process, Title VII or ADEA)   {CONTINUED}

Tietleman denied Rose M. Dews Miller of her constitutional right to an EEOC hearing. ALJ Tietleman sent my witnesses back to work, informing them that there would be a settlement and no hearing would take place, even Tietleman ordered the Court Reporter to turn off the transcript machine and not to record what he was saying.

9) 29 C.F.R.§1614.109(g)(3) states "If the administrative judge determines upon his or her own initiative that some or all facts are not in genuine dispute, he or she may, after giving notice to the parties and providing them an opportunity to respond in writing within 15 calendar days, issue an order limiting the scope of the hearing or issue findings and conclusions without holding a hearing."
Here again, USIA/GC-Carol Epstein along with EEOC/ALJ Samuel Tietleman violated this citation on January 18-19, 1995, when EEOC/ALJ Tietleman denied Rose M. Dews Miller of her constitutional right to an EEOC hearing. ALJ Tietleman sent my witnesses back to work, informing them that there would be a settlement and no hearing would take place, even Tietleman ordered the Court Reporter to turn off the transcript machine and not to record what he was saying.

10) 29 C.F.R.§1614.109(h) states "Record of hearing. The hearing shall be recorded and the agency shall arrange and pay for verbatim transcripts. All documents submitted to, and accepted by, the administrative judge at the hearing shall be made part of the record of the hearing. If the agency submits a document that is accepted, it shall furnish a copy of the document to the complainant. If the complainant submits a document that is accepted, the administrative judge shall make the document available to the agency representative for reproduction."
Here again, USIA/GC-Carol Epstein along with EEOC/ALJ Samuel Tietleman violated this citation on January 18-19, 1995, when EEOC/ALJ Tietleman denied Rose M. Dews Miller of her constitutional right to an EEOC hearing. ALJ Tietleman sent my witnesses back to work, informing them that there would be a settlement and no hearing would take place, even Tietleman ordered the Court Reporter to turn off the transcript machine and not to record what he was saying.

Formal Complaint
Page Six
Dated: October 30, 2000

6.  EXPLAIN HOW YOU WERE DISCRIMINATED AGAINST (Treated
differently than other employees or applicants) BECAUSE OF YOUR
COLOR, RACE, RELIGION, SEX, NATIONAL ORIGIN, AGE OR
DISABILITY, OR BECAUSE OF RETALIATION/REPRISAL. WHAT
ACTION WAS TAKEN AGAINST YOU THAT YOU BELIEVE TO BE
DISCRIMINATORY?  WHAT HARM, IF ANY, WERE YOUR
SUBJECTED TO IN YOUR WORK SITUATION AS A RESULT OF
THAT ACTION?

## 1. ELEMENTS OF RETALIATION/REPRISAL

a)  PROTECTED ACTIVITY - OPPOSITION TO DISCRIMINATION
OR PARTICIPATION IN COVERED PROCEEDINGS:

29 C.F.R.§1614.101(b) states "No person shall be subject to retaliation
for opposing any practice made unlawful by Title VII of the Civil
Rights Act."  Rose M. Dews Miller participated in the Title VII
process at the former U.S. Information Agency for over 20 years.

b)  ADVERSE ACTION:

Hattie Baldwin, former USIA Director, Office of Civil Rights
defaulted on EEOC's Decision Appeal No. 01983674 and Agency No.
OCR-9615, dated June 23, 1999.

c)  CAUSAL CONNECTION BETWEEN THE PROTECTED
ACTIVITY AND THE ADVERSE ACTION:

Because Hattie Baldwin, along with other high level officials at the
former U.S. Information Agency denied complainant her right to
relief, complainant suffers emotional distress and was discharged
from her job effective December 9, 1996.  Additionally complainant
has been denied promotions, job benefits, and With-In Grade
Increases.  Complainant was threaten, intimidated, harassed, given
negative evaluations, and other forms of adverse actions for
participating in the Title VII process at the U. S. Information Agency.

On April 25, 2000, EEOC counselor, Karen Swillings was provided a
24-page document that was a chronological listing of events former

Formal Complaint
Page Seven
Dated: October 30, 2000

USIA high-level officials took against Rose M. Dews Miller. This chronological listing provides a time line between the adverse actions and the causal connection between the protected activity of Rose M. Dews Miller filing prior EEO complaints, filing charges, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the applicable statute (the "participation" clause).

## 2. ELEMENTS OF RETALIATION/REPRISAL

d) **PROTECTED ACTIVITY - OPPOSITION TO DISCRIMINATION OR PARTICIPATION IN COVERED PROCEEDINGS:**

29 C.F.R.§1614.109(c)(2) states "Any time after the parties have received notice that an administrative judge has been appointed to conduct a hearing, but not later than 30 days prior to the hearing, the agency may make an offer of resolution to the complainant, whether represented by an attorney or not." USIA/GC-Carol Epstein along with EEOC/ALJ Samuel Tietleman violated this citation on January 18-19, 1995, when EEOC/ALJ Tietleman denied Rose M. Dews Miller of her right to an EEOC hearing. ALJ Tietleman sent my witnesses back to work, informing them that there would be a settlement and no hearing would take place, even Tietleman ordered the Court Reporter to turn off the transcript machine and not to record what he was saying.

e) **ADVERSE ACTION:**

ALJ Tietleman and former USIA high-level officials, including but not limited to Hattie Baldwin, Marian Bennett, Renee DeVigne, Carol Epstein, Stanley Silverman, Jenni Mallios and Janice Brambrilla denied plaintiff her right to a hearing.

f) **CAUSAL CONNECTION BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE ACTION:**

Because Hattie Baldwin, along with other high level officials at the former U.S. Information Agency denied complainant her right to an EEOC hearing, complainant suffers emotional distress and was discharged from her job effective December 9, 1996. Additionally complainant was denied promotions, job benefits, and With-In Grade

Formal Complaint
Page Eight
Dated: October 30, 2000

Increases. Complainant was threaten, intimidated, harassed, given negative evaluations, and other forms of adverse actions for participating in the Title VII process at the U. S. Information Agency.

On April 25, 2000, EEOC counselor, Karen Swillings was provided a 24-page document that was a chronological listing of events former USIA high-level officials took against Rose M. Dews Miller. This chronological listing provides a time line between the adverse actions and the causal connection between the protected activity of Rose M. Dews Miller filing prior EEO complaints, filing charges, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the applicable statute (the "participation" clause).

## 3. ELEMENTS OF RETALIATION/REPRISAL

g)    PROTECTED ACTIVITY - OPPOSITION TO DISCRIMINATION OR PARTICIPATION IN COVERED PROCEEDINGS:

29 C.F.R.§1614.109(g)(3) states "If the administrative judge determines upon his or her own initiative that some or all facts are not in genuine dispute, he or she may, after giving notice to the parties and providing them an opportunity to respond in writing within 15 calendar days, issue an order limiting the scope of the hearing or issue findings and conclusions without holding a hearing." ALJ denied plaintiff an EEOC hearing.

h)    ADVERSE ACTION:

USIA/GC-Carol Epstein along with EEOC/ALJ Samuel Tietleman violated this citation on January 18-19, 1995, when EEOC/ALJ Tietleman denied Rose M. Dews Miller of her right to an EEOC hearing. ALJ Tietleman sent my witnesses back to work, informing them that there would be a settlement and no hearing would take place, even Tietleman ordered the Court Reporter to turn off the transcript machine and not to record what he was saying.

Formal Complaint
Page Nine
Dated: October 30, 2000

i) **CAUSAL CONNECTION BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE ACTION:**

Because Hattie Baldwin, along with other high level officials at the former U.S. Information Agency denied complainant her right to an EEOC hearing, complainant suffers emotional distress and was discharged from her job effective December 9, 1996. Additionally complainant was denied promotions, job benefits, and With-In Grade Increases. Complainant was threaten, intimidated, harassed, given negative evaluations, and other forms of adverse actions for participating in the Title VII process at the U. S. Information Agency.

On April 25, 2000, EEOC counselor, Karen Swillings was provided a 24-page document that was a chronological listing of events former USIA high-level officials took against Rose M. Dews Miller. This chronological listing provides a time line between the adverse actions and the causal connection between the protected activity of Rose M. Dews Miller filing prior EEO complaints, filing charges, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the applicable statute (the "participation" clause).

## 4. ELEMENTS OF RETALIATION/REPRISAL

j) **PROTECTED ACTIVITY - OPPOSITION TO DISCRIMINATION OR PARTICIPATION IN COVERED PROCEEDINGS:**

29 C.F.R.§1614.109(h) states "Record of hearing. The hearing shall be recorded and the agency shall arrange and pay for verbatim transcripts. All documents submitted to, and accepted by, the administrative judge at the hearing shall be made part of the record of the hearing. If the agency submits a document that is accepted, it shall furnish a copy of the document to the complainant. If the complainant submits a document that is accepted, the administrative judge shall make the document available to the agency representative for reproduction." ALJ denied plaintiff her right to a hearing.

Formal Complaint
Page Ten
Dated: October 30, 2000

k)    **ADVERSE ACTION:**

Complainant issued settlement agreement drafted by OIG-Renee
DeVigne' on January 18, 1995 in lieu of her right to an EEOC
hearing.

l)    **CAUSAL CONNECTION BETWEEN THE PROTECTED
ACTIVITY AND THE ADVERSE ACTION:**

Because Hattie Baldwin, along with other high level officials at the
former U.S. Information Agency denied complainant her right to an
EEOC hearing, complainant suffers emotional distress and was
discharged from her job effective December 9, 1996. Additionally
complainant was denied promotions, job benefits, and With-In Grade
Increases. Complainant was threaten, intimidated, harassed, given
negative evaluations, and other forms of adverse actions for
participating in the Title VII process at the U. S. Information Agency.

## BACKGROUND

Hattie Baldwin, former Director of USIA's Office of Civil Rights, was
notified of the U.S. Equal Employment Opportunity Commission's DECISION
Letter, dated June 23, 1999, signed by Carlton M. Hadden, Acting Director, Officer
of Federal Operations, on or about June 23, 1999. (Copy attached)

From Hattie Baldwin's date of receipt of the November 6, 1997, written
request from Rose M. Dews Miller's request to provide an EEO counselor for
processing of a complainant and including EEOC DECISION. Appeal No. 01983674
and Agency No. OCR-96-15, dated June 23, 1999. Baldwin has stalled the
processing, action, relief, etc. in which state the

## "ORDER (E1092)

The agency is ORDERED to provide appellant with EEO Counseling for
Allegations A, B, C, E and F. The agency shall allow appellant to file a formal
complaint on the aforementioned allegations after they have been counseled. In
accordance with 29 C.F.R. §1614.107, the agency shall issue a final agency decision
if it determines that any of the allegations warrant dismissal.

Attachment _____1_____
Page _10_ of _11_ Pages

Formal Complaint
Page Eleven
Dated: October 30, 2000

The agency is ORDERED to process the Allegation 3 in accordance with 29 C.F.R. §1614.108. The agency shall acknowledge to the appellant that it has received and remanded allegation within thirty (30) calendar days of the date this decision becomes final. The agency shall issue to appellant a copy of the investigative file and also shall notify appellant of the appropriate rights within one hundred fifty (150) calendar days of the date this decision becomes final, unless the matter is otherwise resolved prior to that time. If the appellant requests a final decision without a hearing, the agency shall issue a final decision within sixty (60) days of receipt of appellant's request.

A copy of the agency's letter of acknowledgment to appellant and a copy of the notice that transmits the investigative file and notice of rights must be sent to the Compliance Officer as referenced below.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0595)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Office, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Failure to file within the time period will result in dismissal of your request for reconsideration as untimely. If extenuating circumstances have prevented the timely filing of a request for reconsideration, a written statement setting forth the circumstances which caused the delay and any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. §1614.604(c)."

The former U.S. Information Agency involved itself in continued and continuous retaliatory acts against Rose Mary Dews Miller in her knowledge of wrong doings in the Office of Inspector General, Office of Civil Rights, Office of Human Resources, Office of the Comptroller and the Office of General Counsel's attempt to cover-up the Agency's wrong doings with OSC, MSPB, EEOC, Federal Courts, FBI and Department of Justice from December 1987 to present.

Respectfully Submitted,

*Rose M. Dews Miller*

Rose M. Dews Miller

Attachment
Page 11 of 11 Pages



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

*rvd 6·26·99*

Rose M. Dews-Miller )
        Appellant, )
         )
       v. )
         )    Appeal No. 01983674
Joseph D. Duffey, )    Agency No. OCR-9615
Director, )
United States Information )
Agency, )
        Agency. )

## DECISION

### INTRODUCTION

Appellant filed an appeal with this Commission from a final agency decision (FAD) concerning her complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. The final agency decision was dated March 6, 1998. The appeal was postmarked on April 8, 1998. The timely[1] appeal, therefore, is accepted in accordance with EEOC Order No. 960.001, as amended.

### ISSUES PRESENTED

The issues are whether the agency properly dismissed an allegation of appellant's complaint for mootness, and also whether the agency properly denied EEO Counseling for other allegations, separate from appellant's complaint, for asserting the same claim as the allegation in appellant's complaint.

### BACKGROUND

In her formal complaint, dated March 28, 1996, appellant alleged discrimination on the basis of reprisal (prior EEO complaints). In one of her allegations, appellant asserted that the agency discriminated against her when she was placed on Absence Without Leave (AWOL)(Allegation 3). In the FAD, the agency partially dismissed appellant's complaint. Specifically, the agency dismissed Allegation 3 for mootness. The agency stated that appellant alleged that:

---

[1] The agency did not supply a copy of a certified mail return receipt or any other material capable of establishing the date appellant received the FAD. Since the agency failed to submit evidence of the date of receipt, the Commission presumes that appellant's appeal was filed within thirty (30) days of receipt of the agency's final decision. See 29 C.F.R. §1614.402(a).

Attachment 2
Page 1 of 7 Pages

*PAGE 13 of 25*

2                      01983674
                       OCR-9615

> From September 5, 1995 through November 24, 1995, [she was]
> placed on [AWOL] for a work injury. [She] reported the work
> injury to [her] immediate supervisors (Rating and Reviewing
> Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1).
> However, the Management Official who placed [her] on AWOL was
> not [her] supervisor at the time of the work injury.

The agency dismissed this allegation as moot because: 1) there was
no reasonable expectation that the alleged violations would recur;
and 2) the agency eradicated the effects of the alleged violation
because it issued appellant a disability check covering her wages
from October 4, 1995 to November 26, 1995 and a payment was
pending, awaiting a form from appellant, for her wages from August
21, 1995 through October 3, 1995.

In the FAD, the agency also denied EEO Counseling for separate
allegations (Allegations A through F) brought by the appellant.
According to the agency, appellant requested EEO counseling, by
letters dated November 6, 1997 and by faxed messages dated December
12, 1997 and February 27, 1998, for the same work injury claim as
discussed in Allegation 3.   The FAD concluded, therefore, that
Allegations A through F stated the same claim as Allegation 3,
which was processed in accordance with EEOC Regulations, and,
therefore, denied appellant's request for counseling on Allegations
A through F.  This appeal followed.

Appellant's November 6, 1997 letter, as contained in the record,
requests EEO counseling on the following matters:

> a) continued and continuous harassment by [A-1, an
> employee in the Office of Human Resources,] and
> others, who participated in creating a "hostile
> environment" in any personnel action, benefit, and
> entitlement for [her]self after filing prior EEO
> complaints (Allegation A); b) invasion of [her]
> personal medical records obtained from the Office
> of Worker's Compensation Programs (OWCP) and then
> communicated to others in USIA who had no right to
> their contents (Allegation B); c) withholding
> essential records from OWCP from November 1995 to
> January 1997, which caused an unwarranted delay in
> the processing of [her] claim (Allegation C); d)
> failure of A-1 to correct [her] earnings and leave
> statements to reflect C.O.P. instead of A.W.O.L.
> (Allegation D); e) [A-1]'s illegal and unethical
> discussion of [her] medical files with other
> unqualified persons in USIA (Allegation E); f)

3

C1983674
OCR-9615

[Her] non-accumulation[2] under the Rehabilitation Act of 1973,...which requires federal agencies to develop and implement plans for the hiring, placement, promotion and retention of persons with disabilities (Allegation F).

## ANALYSIS AND FINDINGS

EEOC Regulation 29 C.F.R. §1614.107(e) allows for the dismissal of a complaint or allegations therein when the issues raised are moot. To determine whether the issues raised in appellant's complaint are, in fact, moot, it must be ascertained: (1) if it can be said with assurance that there is no reasonable expectation that the alleged violation will recur; and (2) if interim relief or events have completely and irrevocably eradicated the effects of the alleged discrimination. When such circumstances exist, no relief is available and no need for a determination of the rights of the parties is presented. See Hill v. United States Postal Service, EEOC Request No. 05960289 (January 16, 1997) (citing County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

We disagree with the agency's conclusion that Allegation 3 is moot. The agency reimbursed appellant for wages lost during the period that she was placed on AWOL. They have not, however, completely and irrevocably eradicated the effects of the discrimination because they have not shown that the AWOL has been expunged from her records. We find, therefore, that appellant's Allegation 3 is not moot.

EEOC Regulation 29 C.F.R. §1614.107(a) provides that the agency shall dismiss a complaint or a portion of a complaint that states the same claim that is pending before or has been decided by the agency or Commission.

We find that the agency improperly denied appellant the counseling that she requested in her November 6, 1997 letter. All employees of an agency have a right to counseling when they feel that they have been discriminated against. The agency, at the pre-counseling stage, may not dismiss a matter on which an employee seeks counseling on the grounds that it states the same claim as a matter pending before the agency. EEOC Regulation 1614.107(a) does not contemplate such a determination by the agency until after a formal complaint has been filed. In the instant case, the agency was

---

[2] Appellant provides no explanation of this term in her letter, nor can an explanation of the phrase be found in the record.

4                01983674
                 OCR-9615

incorrect to deny counseling on the matters raised by appellant's letter.[3]

## CONCLUSION

It is the decision of the Commission to REVERSE the FAD and to REMAND appellant's complaint in accordance with this decision and the applicable regulations. For timeliness purposes, the date that the November 6, 1997 letter was received by the agency should be considered the date that appellant initially sought counseling on Allegations A through F.

## ORDER (E1092)

The agency is ORDERED to provide appellant with EEO Counseling for Allegations A, B, C, E and F. The agency shall allow appellant to file a formal complaint on the aforementioned allegations after they have been counseled. In accordance with 29 C.F.R. §1614.107, the agency shall issue a final agency decision if it determines that any of the allegations warrant dismissal.

The agency is ORDERED to process the Allegation 3 in accordance with 29 C.F.R. §1614.108. The agency shall acknowledge to the appellant that it has received the remanded allegation within thirty (30) calendar days of the date this decision becomes final. The agency shall issue to appellant a copy of the investigative file and also shall notify appellant of the appropriate rights within one hundred fifty (150) calendar days of the date this decision becomes final, unless the matter is otherwise resolved prior to that time. If the appellant requests a final decision without a hearing, the agency shall issue a final decision within sixty (60) days of receipt of appellant's request.

A copy of the agency's letter of acknowledgment to appellant and a copy of the notice that transmits the investigative file and notice of rights must be sent to the Compliance Officer as referenced below.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0595)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O.

---

[3] We do note, however, that Allegation D relates to Allegation 3 and therefore would be covered under the complaint issued herein.

Attachment    2
Page  4  of  7  Pages

5                                    01983674
                                     OCR-9615

Box 19848, Washington, D.C.  20036.  The agency's report must
contain supporting documentation, and the agency must send a copy
of all submissions to the appellant.  If the agency does not comply
with the Commission's order, the appellant may petition the
Commission for enforcement of the order. 29 C.F.R. § 1614.503 (a).
The appellant also has the right to file a civil action to enforce
compliance with the Commission's order prior to or following an
administrative petition for enforcement. See 29 C.F.R. §§ 1614.408,
1614.409, and 1614.503 (g).  Alternatively, the appellant has the
right to file a civil action on the underlying complaint in
accordance with the paragraph below entitled "Right to File A Civil
Action."  29 C.F.R. §§ 1614.408 and 1614.409.  A civil action for
enforcement or a civil action on the underlying complaint is
subject to the deadline stated in 42 U.S.C. §2000e-16(c)(Supp. V
1993).  If the appellant files a civil action, the administrative
processing of the complaint, including any petition for
enforcement, will be terminated. See 29 C.F.R. § 1614.410.

### STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0795)

The Commission may, in its discretion, reconsider the decision in
this case if the appellant or the agency submits a written request
containing arguments or evidence which tend to establish that:

1.    New and material evidence is available that was not
      readily available when the previous decision was
      issued; or

2.    The previous  decision  involved  an  erroneous
      interpretation of law, regulation or material fact,
      or misapplication of established policy; or

3.    The decision is of such exceptional nature as to
      have substantial precedential implications.

Requests to reconsider, with supporting arguments or evidence, MUST
BE FILED WITHIN THIRTY (30) CALENDAR DAYS of the date you receive
this decision, or WITHIN TWENTY (20) CALENDAR DAYS of the date you
receive a timely request to reconsider filed by another party. Any
argument in opposition to the request to reconsider or cross re-
quest to reconsider MUST be submitted to the Commission and to the
requesting party WITHIN TWENTY (20) CALENDAR DAYS of the date you
receive the request to reconsider. See 29 C.F.R. §1614.407. All
requests and arguments must bear proof of postmark and be submitted
to the Director, Office of Federal Operations, Equal Employment
Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In
the absence of a legible postmark, the request to reconsider shall
be deemed filed on the date it is received by the Commission.

Attachment _____2____
Page __5__ of __7__ Pages

6

01983674
OCR-9615

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely. If extenuating circumstances have prevented the timely filing of a request for reconsideration, a written statement setting forth the circumstances which caused the delay and any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. §1614.604(c).

## RIGHT TO FILE A CIVIL ACTION (R0993)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court. It is the position of the Commission that you have the right to file a civil action in an appropriate United States District Court WITHIN NINETY (90) CALENDAR DAYS from the date that you receive this decision. You should be aware, however, that courts in some jurisdictions have interpreted the Civil Rights Act of 1991 in a manner suggesting that a civil action must be filed WITHIN THIRTY (30) CALENDAR DAYS from the date that you receive this decision. To ensure that your civil action is considered timely, you are advised to file it WITHIN THIRTY (30) CALENDAR DAYS from the date that you receive this decision or to consult an attorney concerning the applicable time period in the jurisdiction in which your action would be filed. In the alternative, you may file a civil action AFTER ONE HUNDRED AND EIGHTY (180) CALENDAR DAYS of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, YOU MUST NAME AS THE DEFENDANT IN THE COMPLAINT THE PERSON WHO IS THE OFFICIAL AGENCY HEAD OR DEPARTMENT HEAD, IDENTIFYING THAT PERSON BY HIS OR HER FULL NAME AND OFFICIAL TITLE. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z1092)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a

Attachment ___2___
Page _6_ of _7_ Pages

7                          01983674
                           OCR-9615

request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

JUN 2 3 1999

Date

Carlton M. Hadden, Acting Director
Office of Federal Operations

Attachment ___2___
Page _7_ of _7_ Pages

19  25



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

*revd 6·25.99*

JUN 24 1999

US Information Agcy
Deputy Dir., EEO
301 4th St., S.W.  Rm.365
Washington, DC  20547

REF: Compliance #: 06991487
     Appeal #    : 01983674
     Agency #    : OCR9615
Dews-Miller v. US Information Agcy

Dear Sir/Madam:

The Commission's decision in appeal number 01983674 directed your agency to take corrective action related to the appellant's complaint. This letter is to inform you that your compliance with that decision will be monitored under the tracking number cited above. Please submit your compliance report to Charlotte Kelton ——, Compliance Officer, at the above address, and use this tracking number in all related correspondence.

Your report must be in writing. It should enumerate each of the actions taken as ordered and include appropriate supporting documentation, e.g. copies of personnel action forms, copies of posted notices, copies of documents effecting any payments, etc. If backpay was included in our decision, your report should also include the computations and a summary of calculations as well as deductions. A copy of your report must be sent to the appellant.

Your cooperation in this matter will be greatly appreciated.

Sincerely

William J. Bartlett
Director
Compliance and Control Division

cc:  Rose M Dews-Miller
     C/O J Pratt
     6713 Harwood Pl
     Springfield, VA  22152-2419

Attachment  _3_
Page  _1_  of  _1_  Pages

PAGE 20   25

**United States Department of State**

*Office of Equal Employment Opportunity*
*and Civil Rights*

*Washington, D.C. 20520–4216*

Rec'd 10/12/00
PRPM

October 13, 2000

Ms. Rose Mary Dews-Miller
C/o Mr. Mr. John Pratt
6713 Harwood Place
Springfield, VA  22152-2419

RE:    EEOC Appeal No. 01983674
       EEOC Appeal No. 06991487
       EEO No. 00-19 (USIA No. OCR-96-15R)

Dear Mr. Pratt:

This is in reference to the formal Complaint of Discrimination, dated August 23, 2000, which you filed on behalf of Ms. Dews-Miller.

EEOC regulations codified at 22 C.F.R. 1614.106(c) states: "A complaint must contain a signed statement from the person claiming to be aggrieved or that person's attorney." This is to advise that our records indicate that you are acting as Ms. Dews-Miller's representative. However, your designation does not authorize you to file a complaint on Ms. Dews-Miller's behalf. We, therefore, request that Ms. Dews-Miller resubmit her designation, dated August 23, 2000, naming you as her representative, to include a statement authorizing you to sign her formal complaint.

In addition, the formal complaint, dated August 23, 2000, does not list any specific allegations. EEOC regulations require that the formal complaint must specify the issues that form the basis for the complaint, which were discussed with the EEO Counselor.

Attachment _____4_____
Page __1__ of _72_ Pages

In accordance with 22 C.F.R. 1614.107(a)(7), please provide a revised formal complaint, which lists specific allegations discussed with the EEO Counselor, **within 15 days** of receipt of this letter.  Failure to comply with this request may result in the dismissal of the complaint.

Should you have any questions regarding this request, please contact Mr. Paul Coran, Legal Advisor, at (202) 647-9251.

Sincerely,

*Hattie P. Baldwin*

Hattie P. Baldwin
Deputy Director

cc:  Complainant ✓
     EEOC Compliance Officer

Attachment ___4___
Page ___2___ of ___2___ Pages

JOHN D. PRATT   6713 HARWOOD PLACE   SPRINGFIELD, VA. 22152-2419

AUGUST 23, 2000

Director, Office of Equal                  CERTIFIED MAIL NO.
Employment Opportunity and Civil Rights    7099-3400-0001-9469-2845
U. S. Department of State
Washington, D.C. 20520-4216

Subject:   Filing a Formal Complaint under the provisions of 29
           C.F.R. 1614 for Rose Dews-Miller.

Ref:       E.E.O.C. Letter dated August 11, 2000

     The referenced E.E.O.C. letter answers no questions about
the complaint filed with the now defunct U.S.I.A. All it does is
add more confusion to a long standing series of complaints filed
against numerous U.S.I.A. management officials, who transferred
to State and are still considered to be hostile to Complainant.
     I do not think you require a further notice from Complainant
that I am her Representative, however, I will have her prepare a
"new" statement to that effect.(Attachment 1)

     PLEASE NOTE THAT THIS IS THE FILING OF A FORMAL COMPLAINT
     AGAINST THE ACTIONS OF FORMER U.S.I.A. EMPLOYEES, NOW AT THE
     DEPARTMENT OF STATE. IT IS A CONTINUANCE OF U.S.I.A. OCR-96-
     15R, UPON WHICH STATE HAS TAKEN NO. REPEAT NO ACTION.

     As Complainant's Representative, I have questions about the
E.E.O.C. letter and the absence of documentation we had expected
from the "Counseling":

-    Complainant was not contacted by Karen Swilling during her
     "efforts" to resolve this matter informally.

-    There was no Counselor's Report outlining who was contacted
     and what they had to say about this complaint.

-    The documentation provided indicates this formal complaint
     is to be filed against E.E.O.C., not State, as the successor
     to problems created by U.S.I.A. managers and supervisors.

-    Counselor's letter to Representative is dated August 11, was
     postmarked, probably in the E.E.O.C. mail room on August 11
     and received  by me on August 17, 2000.

-    Counselor's "COPY" to Complainant was dated August 8, 2000,
     postmarked August 9, 2000, and received August 11, 2000.

-    Counselor's "COPY" indicated Representative's copy was sent
     by CERTIFIED MAIL No. Z 302-092-794, yet on Representative's
     copy the certified mail no. was "blocked out", the front of
     the envelope "notice" was removed along with the "return
     receipt card that had been attached to the envelope back.

Attachment  5
Page  1  of  2  Pages

23   25

JOHN D. PRATT   6713 HARWOOD PLACE   SPRINGFIELD, VA. 22152-2419

AUGUST 23, 2000

Ref:    E.E.O.C. Letter dated August 11, 2000

I have included copies of the August 8th. and 11th. letters as Attachment 2 and Attachment 3 for your perusal and to aid in your efforts to explain these differences.

We can only believe that the same "illegal", "cover-up", "behind our backs", "off-the-record" and "under-the-table" actions we have seen and suffered with at the hands of U.S.I.A. now involve State Department and E.E.O.C. officials.

We also need the following questions answered to enable a proper filing of another complaint, THIS TIME AGAINST STATE, IF your answers fail to address our concerns.

We have played this game by the rules outlined in 29 C.F.R. 1614, but we are getting tired of the "run-around" we have gotten from U.S.I.A. for so many years, to which we now add State and, to our amazement staff from the E.E.O.C. itself.

To recap the history of this single complaint, I offer the following:

- One thousand and eleven days (1011) have gone by since we requested U.S.I.A. provide a counselor for this complaint. The request was filed on November 6, 1997, and I got the letter from Counselor Swilling on August 17, 2000.

- Four hundred and nine days have gone by since we received the June 23, 1999, E.E.O.C. letter ORDERING U.S.I.A. to provide a counselor for this particular complaint.

- One hundred and two days have gone by since we had a very brief "session" with Counselor Swilling. At which time we expected to get a fair and unbiased "light" on Complainant's long standing problems with U.S.I.A. management officials. At that meeting, we provided Counselor Swilling a multi-page chronological history of this long running search for justice under the provisions of 29 C.F.R. 1614.

How much longer will we have to wait for the process to work as it should? How many more "officials" at State and E.E.O.C. are going to contribute to this problem, instead of working toward a solution to the problems that have been dumped on Dews-Miller?

Sincerely,

/ S /

John D. Pratt,
Representative

enclosures: Three, as stated

Attachment ___5___
Page _2_ of _2_ Pages

24   2

I, Rose M. Dews-Miller, Complaint

## *HEREBY DESIGNATE*

| | |
|---|---|
| (Name of Representative) | John D. Pratt, |
| (Street Address) | 6713 Harwood Place, |
| (City, State, Zip Code) | Springfield, VA  22152-2419, |
| (Telephone Number) | (703) 569-1944, |
| (Fax Number) | (703) 569-8780, |

TO ACT AS MY REPRESENTATIVE IN ALL MATTERS PERTAINING TO THE FORMAL COMPLAINT FILED AGAINST THE DEPARTMENT OF STATE ON AUGUST 23, 2000, IT IS A CONTINUANCE OF U.S.I.A. OCR-96-15R.

I understand that this authority to and responsibilities for representing me are granted to John D. Pratt by virtue of this designation and may be terminated by me at any time.

_8-23-00_
Date

_Rose M. Dews Miller_
Rose M. Dews Miller, Complainant

Attachment 6
Page 1 of 1 Pages

25 - 25

Page 3 - EEO Counseling No. OCR 96-15R

**Interview with Blanche Twardowski-
Involved Management Official**

The EEO Counselor contacted Ms. Twardowski and informed her of
the allegations raised by Counselee. In her answer, Ms.
Twardowski stated that Counselee's allegations were false.
She felt that, there seemed to be a "disconnect" between
Counselee and the agency. She recalled that, despite the
inflammatory letters she received from Counselee's
representative, Ms. Jenni Mallios, of her staff, responded to
their demands. She explained further that, although Counselee
often failed to cooperate, in the processing of her claim, by
providing requested documents, she continued to insist that
the agency was in violation. Ms. Twardowski also felt that
efforts to resolve Counselee's issues, were often severely
hampered by her representative.

**Final Interview
July 28, 2000**

The EEO Counselor contacted Mr. Pratt, who arranged a
conference call with Counselee to conduct the final interview.
In the final interview, the EEO Counselor informed Counselee
and her representative, of management's response to her
allegations and of the denial of her requested remedy.

At the conclusion of the interview, the EEO Counselor advised
Counselee of her rights and responsibilities in the formal
complaints process.





SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M......ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| December 10, 1987 | Rose Dews Miller<br>Bonnie Bomsey | Dews Miller received letter from Bonnie Bomsey stating she was not qualified for PDM-92-88, Auditor, GS-511-5/7/9, at any level. |
| February 1991 | Rose Dews Miller<br>Paul Johnston<br>Shirley Brown<br>Sharon Robinson<br>Avis Mack (Strothers) | Dews Miller reported to her supervisor, Paul Johnston that several OIG secretaries were performing non-OIG work during their tour of regular duty in the OIG office. Dews Miller informed Paul Johnston that she did not want to be identified and Johnston adhered to her request. Later during the week, Johnston told Dews Miller that everything was under control. |
| January 19, 1993 | Rose Dews Miller<br>Louis Leporatti<br>Virginia Selogy<br>Virgil Lopez<br>John Pratt | At a mandatory EEO meeting for all OIG employees, I revealed that OIG's non-selection of Agency employees for Auditor position in OIG used a questionable Screen-Out factor to eliminate current USIA employees, especially African Americans. I also mentioned that Darwin Roberts had scheduled himself for 23-days of training within any one year period. This was after Roberts had placed severe limitations on training for other OIG employees. |
| June 10, 1993 | Rose Dews Miller<br>George Murphy<br>Darwin Roberts<br>Jim Kohler | Dews Miller discovered an accounting error on salary paid to George Murphy, IG. Overpaid lump sum payment. Reported to Darwin Roberts and Jim Kolher, M/CF chief. Amount reprogrammed to OIG budget was $2,460.80. |
| July 2, 1993 | Rose Dews Miller<br>Steve Rasmussen<br>Darwin Roberts<br>J. Richard Berman | Dews Miller discovered an accounting error on salary paid to Steve Rasmussen, Auditor. Rasmussen was a Part/Time employee paid at a full time rate. Reported to Darwin Roberts and J. Richard Berman both in OIG. Amount reprogrammed to OIG budget was $1,789.92. |
| November 9, 1993 | Rose Dews Miller<br>Jim Morad<br>Darwin Roberts<br>Cynthia Steffens | Dews Miller discovered an accounting error on salary payment to Jim Morad, WAE from M/PZ and was charged to OIG budget. Reported to Darwin Roberts and Cynthia Steffens in M/XP Budget. Amount reprogrammed to OIG was $64,819.70. |
| September 13, 1994 | Rose Dews Miller<br>David Bruce<br>Ray Murphy<br>JoAnn Scandola<br>Debbie Jefferies<br>Sharon Robinson<br>Avis Strothers<br>Dorothy Butler(Deceased)<br>Marian C. Bennett<br>Tyrone Lumpkins | I opened several envelopes addressed to me. These envelopes contained statements from the American Express Government-issued Credit Card, (AMEX). These statements indicated that numerous OIG employees had misused AMEX cards issued to them. Employees were David Bruce, Criminal Investigator; Ray Murphy, Inspector; JoAnn Scandola, Auditor; Sharon Robinson, Secretary; Avis Mack Strother, Secretary; and Debbie Jefferies, Secretary; as shown on itemized statements for August 1994. Based upon this information, I requested meeting with IG-Bennett to inform her of what I considered to be a serious problem. Dorothy Butler told me OIG secretaries had been going through all of my office mail from 9/5/94 looking for AMEX statements. Per Dorothy, OIG secretaries were told that the AMEX bills would be addressed to me by Agency AMEX Coordinator, Tyrone Lumpkins. |
| September 14-15, 1994 | Rose Dews Miller<br>Dorothy Butler(Deceased) | IG-Secretary, Dorothy Butler informed me that Bennett considered the requested meeting was getting out of hand. Butler had obviously informed Bennett of the subject of the meeting and Bennett panicked. |

1

*Exhibit 1*
*Page 1 of 21*

Exhibit 5-1

*SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ER AT THE UNITED STATE INFORMATION AGENCY*
*FROM DECEMBER 10, 1987 TO MARCH 22, 2000*

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| September 16, 1994 | Rose Dews Miller<br>Marian C. Bennett<br>Renee DeVigne<br>Darwin Roberts<br>Louis Leporatti | Attended meeting, with IG-Bennett and those she asked to attend. I made and handed out copies for all attendees. IG-Bennett appeared shocked and disappointed at the size of the problem. She then directed I obtain additional evidence from AMEX. Leporatti stated that "he felt the employees did not mean to do this." Bennett then commented "THIS IS THE OFFICE OF INSPECTOR GENERAL" After the meeting, I ordered more information from AMEX. |
| September 19, 1994 | Rose Dews Miller<br>Marian C. Bennett | IG-Bennett told me to be a "TattleTale". She said, "If OIG employees were questioning me, tell them to ask their supervisors." I was further instructed to tell OIG employees nothing, but to be a "Tattle Tale" to OIG managers. At this point, I was identified as a "whistleblower" even though I had not been asked if I objected to being identified. |
| September 20, 1994 | Rose Dews Miller<br>Marian C. Bennett | IG-Bennett sent memorandum to ALL OIG employees informing them of AMEX card abuse. |
| September 21, 1994 | Rose Dews Miller<br>David C. Bruce<br>Marian C. Bennett<br>Stanley Silverman<br>Tyrone Lumpkins | David Bruce, Criminal Investigator told me, "I had handled everything wrong, You should have come to each employee, told them to straighten up this mess by a certain time, then if they did not, you would report them to the higher ups"<br>As a result of IG-Bennett's 9/20/94 memo, I was identified as the "whistleblower", to OIG staffers. This was my not choice, but came about because I was made the AMEX coordinator for the Office of Inspector General effective 8/94. This appointment was made by Agency Announcement No. 94-196, naming the administrative officers, as the program coordinators to the AMEX program effective August 1994. Agency Comptroller, Stanley Silverman, issued this memorandum.<br>Agency's Comptroller's Office had been responsible, Agency wide, for monitoring before 94-196 was issued. I am reasonably sure the Comptrollers' office monitor, Tyrone Lumpkins was aware of this problem long before it was parceled out to admin officers like myself. Had abuses and mismanagement of the AMEX Program been reported to the OIG prior to Dews Miller's reporting to IG-Bennett on September 16, 1994? Did Tyrone Lumpkins report any Agency wide irregularities in the AMEX program to OIG-and or Management prior to my reporting on September 16, 1994? |
| September 22, 1994 | Rose Dews Miller<br>Tyrone Lumpkins<br>Darwin Roberts<br>Marian C. Bennett<br>Renee DeVigne<br>Rose Dews Miller<br>Tyrone Lumpkins<br>Darwin Roberts<br>Marian C. Bennett<br>Renee DeVigne | Although, I am not sure of an exact date, Tyrone Lumpkins, Agency Coordinator for AMEX came to my desk requesting a meeting with my supervisors. Lumpkins' concern was that OIG employees could lose their jobs, however, he had handled employees who had "personal use" charges on their cards his way. All agreed that I was correct in reporting info to IG; but Bennett was concerned that this information would leak out and appear on the front page of the Washington Post one day.<br>While ordering itemized billings from American Express Credit Card Company on all OIG employees, as requested by IG-Bennett, I was told by AMEX employee that I was the second one calling that day on inquires of David Bruce's usage. I questioned employee, as to who had ordered Bruce's itemized billings. I was told that Tyrone Lumpkins had called. Later, that day, I talked with Lumpkins and asked why he had ordered Bruce's AMEX billings, his response was that Bruce had so many gas charges on his account, which Lumpkins wanted to know why? |

2

Attachment _8_
Page _2_ of _21_ Pages

*E_____ 1*
*P_ 2 of 21*

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ...ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| September 26, 1994 | Rose Dews Miller | Contacted Liz Newman to make sure she would attend the 9/27/94 Pre-Hearing with EEOC. I had had no communications with her since 9/13 and was concerned about the situation. |
| September 27, 1994 | Rose Dews Miller<br>Carol Epstein<br>ALJ Samuel Tietleman<br>Renee DeVigne<br>Marian Bennett | Met Liz Newman at ALJ Samuel Tietleman's office at EEOC. We were informed that Agency had a settlement offer Carol Epstein then presented offer but after careful review, I rejected it. I had an uneasy feeling this was something that Epstein/DeVigne/Bennett/Tietleman and Newman had cooked up. My feelings were reinforced by the fact that the offer was dated 9/15/94, but this was the first time I had seen it? I was furnished a copy. |
| September 28, 1994 | Rose Dews Miller | Had several discussions with Attorney Newman. She said she would no longer represent me because I had rejected the Agency offer of 9/15/94. This seemed curious because she had said at the meeting, "I did not have to accept the offer if I didn't want to". |
| September 29, 1994 | Rose Dews Miller | Systems Accountant, GS-510-11/12/13 vacancy posted. PDM-100-94. I informed Newman, that I would accept this position as part of a settlement agreement. She said, "it was not on the table." I was concerned about her quick rejection of my suggestion without contacting the Agency. |
| September 30, 1994 | Rose Dews Miller | Because of Newman's failure to support my request for consideration for the announced vacancy, and her declaration that she would no longer represent me because I had rejected the 9/15 offer on 9/27, I ended our association on 9/30/94. I had paid her a $2,500 retainer fee and she refunded just over $800 after final billing |
| October 3-4, 1994 | Rose Dews Miller<br>Carol Epstein<br>ALJ Samuel Tietleman | During this time period, Carol Epstein arranged several conference calls between herself, ALJ Tietleman and me. Tietleman and Epstein, threatened, cajoled and tried other what I considered to be questionable tactics to get me to accept the 9/15/94 settlement offer. I resisted and repeatedly told them I wanted an EEOC hearing. I was concerned about these calls at home because I had told no one that Newman was no longer representing me as of 9/30/94. Neither, Epstein or Tietleman made any mention of contacting Newman so why did they call me direct? I was recuperating from a 10/1/94 auto accident and had informed no one of Newman's termination or any other matters relating to my case. Neither ALJ Tietleman nor Epstein wanted to hear anything about an EEOC hearing. They were both intimidating and strident in their |
| October 3-4, 1994<br>(continued) | Rose M. Dews Miller<br>Carol Epstein<br>ALJ Samuel Tietleman<br>(continued) | conversations. Did Newman call Epstein or Tietleman to tell them "she was out"? I was concerned that these calls were the result of some illegal, under the table conversations between Newman, Epstein and Tietleman. |
| October 6, 1994 | Rose Dews Miller<br>ALJ Samuel Tietleman<br>Carol Epstein | Epstein contacted me again to set up a conference call with Tietleman, to continue discussing the settlement offer of 9/15/94. I again rejected their threats and cajoling statements. I then sent a letter to GC-Epstein requesting a copy of the 9/15/94 settlement offer along with a copy of all background information relating to the offer and who initiated the telephone calls. To date, I have had no written response from Epstein. Received copy of 9/15/94 settlement offer at Pre-Hearing in Tietleman's office on September 27, 1994. |

3

Exhibit 1
Pg 3 of 21

*SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ER AT THE UNITED STATE INFORMATION AGENCY FROM DECEMBER 10, 1987 TO MARCH 22, 2000*

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| Mid October 1994 | Rose Dews Miller<br>Stanley Silverman<br>Clinton Short<br>Carol Epstein | I called Stan Silverman's office and spoke with his secretary, Clinton Short to arrange a meeting with Silverman. Short called to confirm an afternoon appointment where I expressed an interest a Systems Accountant, GS-510-11/12/13 position as advertised in PDM-100-94. Mr. Silverman stated that he was "looking for someone with more experience." I informed Silverman of my current EEOC case and that I would like to include this position as part of any settlement agreement. Silverman asked, who in GC was handling my EEOC case and I told him, Carol Epstein. Did Silverman call Epstein? If yes, what was discussed? |
| October 24, 1994 | Rose Dews Miller<br>Elaine John<br>Darwin Roberts | Sent memorandum to Darwin Roberts referring to problems with the monitor on my computer. He replied "there was nothing wrong with my monitor" and then accused me of placing notes on his and Elaine's desk after they had left from work. |
| October 24, 1994 | Rose Dews Miller<br>Darwin Roberts | Sent memorandum to Darwin Roberts, Subject: Receipt of American Express Reports. "Please provide me with written guidelines, policies and procedures at to 'how the Office of Inspector General' wishes me to handle the monthly review of American Express reports for OIG employees." |
| October 24, 1994 | Rose Dews Miller<br>Tyrone Lumpkins | Sent memorandum to Tyrone Lumpkins, Subject: Receipt of American Express Reports. "Please provide me with written guidelines and procedures as to 'how your office' wishes me to handle the monthly review of American Express reports on Office of Inspector General employees." I never received a response from Tyrone Lumpkins. |
| October 25, 1994 | Darwin Roberts<br>Rose Dews Miller | Darwin Roberts wrote back on memo, I sent, "The senior staff will discuss the matter at our Tuesday morning meeting. I will inform you soon as a decision has been made. Signed Darwin" Darwin Roberts said, "I was to provide each AIG with copies of their staff's itemized billings." |
| October 25, 1994 | Darwin Roberts<br>Rose Dews Miller<br>Tyrone Lumpkins | Darwin Roberts responded with "Why did you send this? The OIG has already discussed this matter with Mr. Lumpkins, you were present, and be told us there are no Agency guidelines. Please let me review any correspondence you send to the Agency before it is actually sent. Signed Darwin" If Agency guidelines existed, why didn't someone answer my questions? |
| October 26, 1994 | Rose Dews Miller<br>Carol Epstein<br>ALJ Samuel Tietleman | Had first consultation with Attorney Bruce Cooper about my EEOC cases. He agreed to represent me at EEOC hearing. Cooper stated that he had worked with USIA before on another case, and had taken Carol Epstein to the OIG for her conduct in the case before the Agency, he wished that |
| October 26, 1994<br>(continued) | Rose M. Dews Miller<br>(continued) | Delia Johnson and Hattie Baldwin in OCR could handle my cases. He would set up meeting with ALJ Tietleman, Epstein, himself and me to see if we could come to a settlement before January 18-19, 1995 EEOC hearing. This never Happened! |
| October 28, 1994 | Rose Dews Miller<br>Bruce Cooper | I provided Cooper with a witness list for 1/18-19/95 hearing to EEOC and USIA. ALJ Tietleman allowed Cooper limited items for discovery through Epstein, which I assumed she provided. I had no input to Cooper's request and never knew what he asked for or what he got. Cooper did not talk to my witnesses until a few days before the EEOC hearing. |

Attachment  8
Page  4  of  21  Pages

Exhibit !
Pg 4 of 2!

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-MILLER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| November 8, 1994 | Rose Dews Miller<br>Darwin Roberts<br>Delia Johnson<br>Lola Secora | I sent a memo to Darwin Roberts, Subject: Your Concerns of Sick Leave Usage.  On 11/4/94, I had requested sick leave for 11/10 and 11/16/94 via SF-71.  Roberts left 11/4/94 note on my desk, stating "Before I approve the sick leave requests, please provide me with some idea on how long this pattern of sick leave may go on.  I thought that after you took the sick leave in October that everything was okay.  Is this a long-term situation?  Signed Darwin"<br><br>I considered this an invasion of privacy on my medical records and condition.  My memo included, "The amount of leave requested was eight hours per day to undergo medical, dental, or optical examinations or treatment on both days.  My sick leave balance was 740 hours as of pay period ending 10/29/94 which does not demonstrate an abusive pattern of sick leave usage." "After reading his note (11/4/94), I felt the questions he asked were inappropriate.  According to USIA's Personal and Private pamphlet, whenever personal information is requested by a Federal official the employee is entitled to know the following:--the legal authority for requesting the information; --the purpose for collecting it; --what related uses might be made of the information; --whether my response is mandatory or voluntary; and --what effect my refusal to provide the information would have?"  And finally, "Please provide a written response as to why this information is needed and how the information is to be used.  Also, I considered this continued & and continuing harassment and retaliation because of prior EEO complaints.  Copies to OCR-Delia Johnson and GC/FP-Lola Secora. |
| November 9, 1994 | Rose Dews Miller<br>Marvin Leerar<br>Darwin Roberts<br>Phyliss Mead | I discovered an accounting error on salary paid to Marvin Leerar, WAE in EA and charged to OIG.  Reported to Darwin Roberts and Phyllis Mead in Main Budget.  Saved OIG $4,324. |
| November 17, 1994 | Rose Dews Miller<br>Darwin Roberts | Received memorandum from Darwin Roberts, Subject: Sick Leave and References: A) 11/8/94 memorandum; B) Roberts note of 11/4/94 and C) 10/29/94 memorandum.  Basic request was to provide him an "oral not written" response to his inquiry by COB today.<br>I sent written note to Darwin Roberts, "Reference: Your memorandum date 11/17/94 on the Subject of Sick Leave.  I will provide you a written response to your questions after consultation w/my attorney." |
| November 22, 1994<br><br>November 22, 1994<br>(continued) | Rose Dews Miller<br>Marian Bennett<br>Renee DeVigne<br>Carol Epstein<br>Jenni Mallios<br>Hattie Baldwin | Provided Cooper what I considered to be evidence of collaboration between Agency high-level officials in the Office of Inspector General, General Counsel, Personnel, and Office of Civil Rights in the EEOC cases.  Cooper never responded to me. |
| December 16, 1994 | Rose Dews Miller<br>Charles McAndrews | Interviewed by Charles McAndrews, Re: M/C-Systems Accountant vacancy, GS-12 level, PDM-100-94.  Said he would make decision by 12/30/94 |

Attachment 8
Page 5 of 21 Pages

Exhibit 1
Pg 5 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M......ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| December 22, 1994 | Rose Dews Miller<br>Carol Epstein<br>ALJ Tietleman | I informed Cooper of 12/16 interview and my willingness to include the Systems Accountant position as part of a settlement agreement. Cooper was supposed to draft an agreement and fax to Epstein and ALJ Tietleman. Instead he had a conference call with both (Epstein and ALJ Tietleman). Cooper reported that Epstein had said "no, because this was FULL RELIEF, and I did not deserve FULL RELIEF."<br><br>Cooper never provided me with copy of this settlement agreement, even though I requested it from him several times. |
| January 3, 1995 | Rose Dews Miller<br>Marian C. Bennett | My husband and I saw IG-Marian Bennett alone in her car before 9:00 a.m. in front of our house in Clinton, MD.<br><br>Comment:  Why would IG-Bennett be looking at our house just two weeks before EEOC Hearing scheduled for January 18, 1995? |
| January 4, 1995 | Rose Dews Miller<br>Carol Epstein<br>Jenni Mallios<br>Janet Davis | Cooper reported that Epstein had said, "Dews Miller is not longer qualified for GS-510-12, Systems Accountant position, therefore will not make this part of a settlement offer."<br><br>Why was Epstein now making classification decisions? |
| January 9, 1995<br>(Week of) | Rose Dews Miller<br>Marian C. Bennett<br>Renee DeVigne | My husband said he saw two black ladies stopped in front of our house. I took them to be IG-Bennett and Renee DeVigne. |
| January 12, 1995 | Rose Dews Miller<br>Jim Kohler<br>Kathleen Brodsky | Interviewed by Jim Kohler and Kathleen Brodsky for vacancy #PDM-6-95, GS-510-12, Supervisory Operating Accountant. I was never informed about the status/outcome of my application/interview. |
| January 13, 1995 | Rose Dews Miller | Met with Bruce Cooper to discuss hearing schedule.  I wanted to invite as many of our witnesses' possible, because Cooper had not talked with any of them as of this date.  Cooper did not discuss any proposed settlement offers or discussions he had had with anyone. |
| January 13, 1995 | Rose M. Dews Miller | Applied for USIA's Merit Promotion Vacancy Announcement #PDM-40-95, Budget Analyst, GS-560-11/12/13.  Budget Analyst position in the Office of the Comptroller. |
| January 18, 1995 | Rose Dews Miller<br>Shirley Hendley<br>Marjorie Lynch<br>John Pratt<br>Carrie Washington<br>Dolores Bulles<br>Rose Dews Miller<br>Shirley Hendley<br>Marjorie Lynch<br>John Pratt | Hearing was to start at 8:30am.  ALJ Tietleman sent ALL of our witnesses' back to work by approximately 9:30a.m.  Witnesses present were Shirley Hendley, Marjorie Lynch, John Pratt, Carrie Washington and Dolores Bulles.  ALJ Tietleman insisted upon a settlement.  He told court reporter not to record hearing, because this was off-the-record.  ALJ Tietleman was in non-compliance with 29CFR1614.109(e)(3) that states "If the administrative judge determines upon his or her own initiative that some or all facts are not in genuine dispute, he or she may after giving notice to all parties and providing them an opportunity to respond in writing within 15 calendar days, issue an order limiting the scope of the hearing or issue findings and conclusions without holding a hearing." If ALJ Tietleman wanted a settlement, in lieu of a hearing, then the day of hearing was not the time or place to announce to all he was going to force a settlement.  The ALJ |

Attachment 8
Page 6 of 21 Pages

Exhibit 1
Pg 6 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M...ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| January 18, 1995 (continued) | Carrie Washington<br>Dolores Bulles<br>Dorothy Butler (Deceased)<br>Carol Epstein<br>Court Report<br>Jenni Mallios<br>ALJ Samuel Tietleman<br>Janet Davis<br>Charles McAndrews<br>Mary Katherine Butler<br>(In lieu of Bonnie Bomsey)<br>Stanley Silverman | should have conducted the hearing as scheduled.<br><br>Both ALJ Tietleman and Bruce Cooper were late, because Carol Epstein had not informed them of the location or arranged for their clearance through Security.<br><br>Epstein then told ALJ Tietleman, "Kathy Butler would testify for Bonnie Bomsey. I was not qualified for the Auditor vacancy in 1987 at the GS-5/7/9 level that I had falsified my application for Systems Accountant position at the GS-12 level." She then said, "she was going to prove all of this at this hearing and that she had removed my name from any merit promotion certificates for any further considerations, but was not going to say anymore." The Merit Promotion Certificate number was PDM-100-94.<br><br>I had applied for the Budget Analyst, GS-560-11/12/13 on 1/13/95 and requested the Agency to make this as part of any settlement offer. Instead, although I was still assigned to OIG, as a GS-11, Administrative Officer, I was *detailed* to this vacant position effective February 1, 1995, without appropriate personnel action. This *detail* ended August 31, 1995, a period of seven months.<br><br>Cooper requested a word with his client, ALJ Tietleman said, "yeah get out of here and talk to your client." Cooper insisted that I take Agency offer of, a detail to the Budget Analyst position in M/CBA because Agency had folks to sit around all day examining your application just to prove I was not qualified for any positions. Cooper, now siding with the Agency, did not ask me, if I had falsified my application, etc. He just took Carol Epstein's word and insisted that I take what the Agency was offering.<br><br>Jenni Mallios contacted Stanley Silverman to see if he would accept me on a detail in his office. When Silverman came to hearing room, his main concern was "Who's FTE would I be paid under?"<br><br>Later in the morning, Epstein, ALJ Tietleman, Silverman and Mallios met in the next room. Cooper, the Court Reporter and I were left in the hearing room.<br><br>Therefore, No EEOC hearing took place and the Court Reporter was never instructed to record anything after ALJ Tietleman told him earlier that this "was off-the-record."<br><br>ALJ Tietleman wanted to make sure that I did not discuss anything with anyone about what went on in the hearing room, especially, Mr. Pratt, who was one of my witnesses. How did ALJ Tietleman know about Pratt? Why was he afraid of Pratt? |
| January 18, 1995 (continued) | | Mallios agreed with Epstein, when Epstein, Mallios and Davis were determined to prevent me from even being considered by anyone for any position in U.S.I.A. |

8

Attachment 7 of 21 Pages

*Exhibit 1*
*Pg. 7 of 21*

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ...ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| January 19, 1995 | Rose Dews Miller | Met Cooper prior to "so called hearing", told him I was being discriminated against again and that I wanted to take cases to Court and not to settle, he said "I did not have enough smoking guns to take them to court. Let's see what happens in here this morning." |
| January 19, 1995 | Rose Dews Miller<br>Carol Epstein<br>Renee DeVigne<br>Jenni Mallios<br>Marian C. Bennett<br>Janice Brambilla<br>ALJ Samuel Tietleman<br>Dolores Bulles<br>Delia Johnson<br>Darwin Roberts | About 10:30am, Epstein received a fax from OIG's Attorney, Renee DeVigne with proposed settlement agreement. Cooper, Epstein and Mallios looked over agreement, made some changes, especially Mallios said some items were illegal from the Personnel side. I was not asked to comment on this.<br><br>I went to lunch and upon my return Cooper informed me he inserted language that "I would resign" if I did not get a "Fully Successful" performance rating. He also stated he wanted his attorney fees, but the agreement says "no". Was this attorney representing me? I don't think so!<br><br>ALJ Tietleman insisted that I say nothing to anyone. Cooper wanted to know if I could tell people that I had another job. ALJ Tietleman says "no"; please keep "mum". Why the secrecy?<br><br>Cooper had told me in early January 1995, he and Renee DeVigne went to law school together and that she had called him in reference to his style of interviewing witnesses. Cooper said, "he told DeVigne that she was not the Attorney on this case." |
| January 26, 1995 | Rose Dews Miller<br>Carol Epstein<br>Wallace Stuart | Called Bruce Cooper, to see if I was still leaving OIG per settlement agreement. When Cooper returned my call he said, "strange things were happening with case and per Wally Stuart, GC, Carol Epstein had been removed from the case." |
| January 27, 1995 | Rose Dews Miller<br>Wallace Stuart<br>Carol Epstein<br>Richard Werksman | Cooper called this morning, stating that Wally Stuart had replaced Carol Epstein with Richard Werksman and that settlement agreement would be ready by mid afternoon, he would meet me in the lobby of USIA Building along with Richard Werksman. The three of us signed the settlement agreement in the lobby of the USIA Building. I had not seen this "final" offer and as I now realize, had foolishly trusted Cooper to be on my side, which it now became painfully obvious, he was not. |
| January 27, 1995 | Rose Dews Miller<br>Richard Werksman<br>Marian C. Bennett<br>Renee DeVigne<br>Carol Keith<br>Darwin Roberts | After the signing, Cooper continued to call saying Werksman had called and wanted me to remain in OIG for another week to show others how to do my job. I said, "no way, Darwin Roberts was the supervisor and it was his responsibility to show my replacement how to do my job." Per Cooper, this request was from the IG-Marian Bennett and Renee DeVigne. I told Cooper, "if he would work out a deal that I got promoted to GS-12, then I would consider staying for the next week." Cooper called back and begged me to remain in OIG, without promotion to GS-12 for two additional days. Cooper again showed his true colors, but I still trusted him. Stupid me, I now see! |

Exhibit 1<br>Pg. 8 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M...ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| February 2, 1995 | Rose Dews Miller<br>Eva Dickmann<br>Carol Keith<br>Stanley Silverman | First day on duty as Budget Analyst in the Comptroller's Office. I met with Eva Dieckmann upon arrival, she called Carol Keith into meeting and later I went down the hall to share office with Ms. Keith. Personnel never provided an SF-50, Personnel Action, for this detail, which lasted seven months.<br><br>Stan Silverman came to office later, to welcome me back to the Comptroller's Office. Ms. Keith stated that "we work in this office" but she was not my supervisor, she was a team leader, GS-14 and that she had earned this GS-14. I was immediately given work by Ms. Keith to prepare schedules for the congressional budget and she said that she was told that I was an experienced budget analyst. |
| February 23, 1995 | Rose Dews Miller<br>Darwin Roberts | Received memorandum from Darwin Roberts, Subject: (Inadequate Administrative Files). He said I had erased files from system, and at the same time asked that I remove the passwords from the computer files. Before I left OIG, I copied the files on diskettes, took them to my new office so I could remove passwords when I had time. On 2/27/95, I returned all OIG diskettes to Mr. Roberts. I phoned to let him know he could pick them up at the at guard control desk. I had no further contact with Mr. Roberts on this subject. |
| February 27, 1995 | Rose Dews Miller<br>Eva Dickmann<br>Carol Keith | Met with Eva Dieckmann and Carol Keith. Signed performance standards for Budget Analyst position. |
| March 6, 1995 | Rose Dews Miller<br>M. Collier<br>Eva Dieckmann<br>Jenni Mallios<br>Stanley Silverman<br>Marian C. Bennett<br>Carol Epstein<br>Renee DeVigne | Received turndown letter from Eva Dieckmann for GS-11/12/13, Budget Analyst position, I had applied for on 01/13/95. I was rejected even though appeared on merit promotion certificate for promotion to GS-12, Budget Analyst, and had been detailed to position.<br><br>Ms. Dieckmann selected M. Collier, to fill PDM-40-95, Budget Analyst, position, who was currently under the Comptroller's Office slot, and FTE. |
| March 1995 | Rose Dews Miller<br>Carol Keith | Carol Keith told me to complete my leave slips until end of the leave year, because I would be remaining in Budget Office as a Budget Analyst. |
| March to June 1995 | Rose Dews Miller<br>Marian C. Bennett<br>Brian Dowling | Newspaper articles appeared in the Washington Times about USIA Inspector General's cover-up of OIG Staff Misuse of AMEX card. Deputy IG, Brian Dowling was threatened by Bennett and feared for his career. My concern was that I had informed IG-Bennett of this on September 16, 1994, and she did nothing about OIG staff misuse of the AMEX government-issued credit card, yet Dowling gets in the paper. |
| March 23, 1995 | Rose Dews Miller<br>Delia Johnson | I called Bruce Cooper after seeing several articles on IG-Bennett. He suggested that I fax him copies of articles and asked, "what did this have to do with me?" I told him, prior to the January '95 EEOC hearing, that I had reported AMEX misuse to IG, and it was the main reason for the unjust settlement. He checked with OCR, Delia Johnson, and both agreed there was nothing that could be done, since I had settled on January 27, 1995. |

Exhibit 1
Pg. 9 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-MI__ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| May 2, 1995 | Rose Dews Miller<br>Eva Diekmann | Interviewed for first time by Eva Dieckmann for Budget Analyst, GS-560-11/12/13, and PDM #40-95 applied for on 1/13/95.<br><br>(I thought merit promotion certificates were only good for 60 days from issuance.) However, Dieckmann's second selection from the "old" list of an employee already assigned to M/C, was more harassment. |
| May 5, 1995 | Rose Dews Miller<br>Eva Dieckmann | Eva Dickman said she selected Rodney Reynolds for Budget Analyst, GS-560-11/12/13, PDM-40-95. |
| May 26, 1995 | Rose Dews Miller<br>Linda McKetney | Met with Linda McKetney, FBI Special Agent, investigating AMEX Credit Card Misuse in OIG. My name had come up so many times in her investigation. She told me that I was either a crazy person or that I was a totally honest individual. She later admitted, she realized I was an honest person. I told her all I knew about OIG's Staff abuse of AMEX credit cards. I was never furnished any feed back from this interview. |
| June 8, 1995 | Rose Dews Miller<br>Ann Young | Ann Young called from OIG requesting that I meet with her on AMEX problems. I had my reservations on this, since the FBI currently had an ongoing investigation of USIA's OIG Staff abuse of AMEX cards. |
| June 10, 1995 | Rose Dews Miller<br>Carol Keith | Worked overtime with Carol Keith on '96 Going Rate and Carol made statement to me that I was doing a good job in her office.<br><br>While, Carol Keith and I were talking she told me to "never take anything like this again." Now that I think about it, what did Ms. Keith know about my career and me when I did not tell her? Where did she get her information? What "this" was she talking about? |
| June 12, 1995 | Rose Dews Miller<br>Ann Young<br>Linda McKetney | I called Ann Young to cancel meeting she had requested on 6/8/95. Left message on her voice mail. She called back all bent out of shape, because I would not meet with her. I hung up the phone but did not mention the FBI investigation. Also, I had a second meeting with FBI investigator on this day, and told Ms. McKetney about Ann Young's request. |
| June 20, 1995 | Rose Dews Miller<br>Ann Young<br>Eva Dieckmann<br>Carol Keith | Ann Young told Eva Dieckmann I was not entitled to Overtime Pay. OIG had no prior approval for me to work overtime, so I must pay monies back and take compensatory time. My timecard for this period was amended to reflect Ann Young's request and the monies were paid back and credited in the January 31, 1995 settlement agreement. This subject was not addressed in the January 31, 1995 settlement agreement, so I did not argue, even though I still considered it to be continued harassment. |
| June 23, 1995 | Rose Dews Miller<br>Eva Dieckmann<br>Jenni Mallios | Eva Dieckmann, suggested I talk with Jenni Mallios about OIG investigation. I told her under NO circumstances. She later suggested I go to the Union and to let Carol Keith or her know when I was going. |
| June 23, 1995 | Rose Dews Miller<br>Eva Dieckmann<br>John Sinclair<br>Ann Young<br>Linda McKetney | John Sinclair, A.I.G., called and asked Eva Dieckmann have me to call him, to arrange a meeting to discuss "OIG management issues." I was reluctant to talk with Sinclair, as I had been to meet with Ann Young of OIG, because of the ongoing FBI investigation of OIG's staff abuse of AMEX cards. |

10

Exhibit 1
Page 10 of 10

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... .ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| June 27, 1995 | Rose Dews Miller<br>John Andregg<br>John Sinclair<br>James Roberts<br>Marta Percyma<br>Steve Ledford<br>Chief, Labor Relations | Accompanied by John Andregg, AFGE Vice President, I met with OIG John Sinclair and James Roberts about allegations I said it was o.k. for OIG employees to use AMEX card for personal use. Sinclair was embarrassed and stated this interview should have happened earlier. I never received a copy of my written deposition from Sinclair, although it was requested several times. John Andregg had meeting with Marta, Steve Ledford, Chief of Labor Relations, and myself prior to our seeing Sinclair. All agreed that I should not meet with Sinclair unless I was accompanied with John Andregg. |
| July 10, 1995 | Rose Dews Miller<br>Carol Keith<br>Eva Dickmann | I fell in conference room #664. Informed Carol Keith, went to nurse. Completed CA-1 form given to me by nurse, handed to Eva Dickmann on 7/12/95. Carol Keith wanted to know, since I was hurt, what did I plan to do. I told her that I would be working as long as I could. This was on 7/12/95. Carol Keith said "she was not signing any papers, I had to go to Eva Dickman for that." Pains began in my lower back, both arms, hands, shoulders, stiff neck, stress and headaches. |
| July 14, 1995 | Rose Dews Miller | Went to hospital after completing paperwork referencing July 10, 1995 workers' comp injury. I saw no reason to use my health insurance for a work-related injury. |
| July 15, 1995 | Rose Dews Miller | I wrote to Senators Mikulski & Sarbanes, and Congressman Hoyer requesting their assistance in obtaining 1) a transcript of 1/18-19/95, EEOC hearing; 2) copy of deposition taken by John Sinclair on 6/27/95, and 3) copies of all correspondence pertaining to me from the U.S. Information Agency. I have yet to receive a copy of EEOC hearing transcript or the deposition taken by John Sinclair. |
| July 19, 1995 | Rose Dews Miller<br>Carol Keith | Called Ms. Keith, to let her know that I was not feeling well from 7/10 injury. She was not there, so I left messages with secretary. Carol called me at home, 7/19/95 to inform me that I could not leave messages, that I had to talk with her or Dickmann. Next day's arrival at work, big note on my desk from Ms. Keith, do not leave messages. I still have note. |
| July 20, 1995 | Rose Dews Miller<br>Dolores Bulles | Dolores Bulles delivered the performance evaluation from Darwin Roberts for period May 1, 1994 to January 24, 1995. Evaluation was "Minimally Successful". The reason for this low rating was my September 16, 1994 whistleblowing to IG-Bennett on OIG's staff misuse of AMEX card.<br><br>I consider this action to be a violation of 5 USC APPENDIX, Section 7(c) of the Inspector General Act of 1978. |
| July 25, 1995 | Rose Dews Miller<br>Mary Williamson<br>Eva Dickmann<br>Carol Keith | Inquired about leave slip, I left for Dickmann for 7/28-8/4/95. Timekeeper did not have SF-71, Dickmann claims she never saw it, however, Carol Keith remembered initialing off on SF-71 in early July. I submitted a duplicate SF-71 and Ms. Keith made sure it got approved and was not "lost." |
| July 28 to August 4th, 1995 | Rose Dews Miller | Went on vacation, however, I was unable to enjoy the time due to pain and suffering caused by 7/10/95 on-the-job-injury. However, most of my vacation time was spent taking pain medications and resting in bed. |

11

Exhibit 1
Pg. 11 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ...ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| August 7, 1995 | Rose Dews Miller<br>Mary Williamson<br>Carol Keith | Returned to work, but still dealing with pain and suffering from the 7/10/95 on-the-job-injury. Informed by Mary Williamson, that Dickmann, on 8/3/95, had announced in a staff meeting, she was getting rid of the position to which I was detailed under the guise of a budget cut. Carol Keith gave me an update on what happened while I was on vacation, but never mentioned the position cut. |
| August 11, 1995 | Rose Dews Miller<br>Carol Keith | Told Ms. Keith, I was going to the Union to discuss some matters. Met with Stacey Rose-Blass, President of AFGE Local 1812 to inform her how OIG treated me after informing IG-Bennett about AMEX card misuse in her office on September 16, 1994. Upon my return, Ms. Keith wanted to know if I was talking about her in my meeting and the Union. I said "no". I thought how paranoid Ms. Keith had become and why was she acting this way? |
| August 14, 1995 | Rose Dews Miller<br>Carol Keith | Carol Keith started the day by telling me I did not do my work right and stayed on me all day about work. It seems she was now trying to justify giving me a "Minimally Successful" performance evaluation report. |
| August 17, 1995 | Rose Dews Miller<br>Carol Keith<br>Eva Dickmann | Carol Keith handed me performance evaluation report for the period of February 1 to July 31, 1995, at approximately 10:00a.m. Ms. Keith then wanted me to comment immediately, but I would not. Prior to 12:30p.m. Ms. Keith stated, "Rose Mary, you are not happy with your rating, but I will not change it. You can file a grievance or whatever, but again I am not changing anything." This was my last day at work in the Office of the Comptroller, since I had an approved leave slip from Dickmann for annual leave on August 18, 1995. I called in the following week with continued complications from 7/10/95 on-the-job injury. |
| August 28, 1995 | Rose Dews Miller<br>Eva Dickmann | Sent note to Eva Dickmann referencing request for Continuation of Pay for 7/10/95 on-the-job injury. Dickmann called and said she would place me on sick leave until I returned to work. Dickmann gave no indication that I would be returning to the Office of Inspector General effective 9/1/95. |
| August 31, 1995 | Rose Dews Miller<br>Jenni Mallios | Jenni Mallios called me at home, requesting an updated SF-171, (Application for Federal Employment), because my undocumented detail had ended in the Office of Comptroller due to receipt of "Minimally Successful" performance evaluation reports from the Office of Inspector General and the Office of the Comptroller. Out of the blue, Mallios said, I have a copy of the note you sent Dickmann, "What is wrong with you?" I did not bother to answer Mallios. However, I told her, if she wanted me to respond to any of her requests, to put them in writing. I gave her my P.O. address. |
| September 2, 1995 | Rose Dews Miller<br>Jenni Mallios<br>Ann Young | Received letter from Jenni Mallios, dated 8/31/95, stating I was to report back to the Office of Inspector General effective September 1, 1995 to Ann Young. |
| September 6, 1995 | Rose Dews Miller<br>Ann Young<br>Jenni Mallios | Ann Young called me at home.  She asked, when would I report to the Office of Inspector General, since my detail had ended in the Office of the Comptroller?  I said, I was on my way to the doctor's office. After the doctor gave me a release date. I would notify her of my return to work. Ms. Young, then informed me, she was going to place me on AWOL, if she did not get something from my doctor. I requested that she put her request and demands in writing. |

12

Exhibit 1
Fig. 12 of 2

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-MI... ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| September 6, 1995 (continued) | Rose Dews Miller Ann Young Jenni Mallios (continued) | NOTE: Ann Young was provided copies of my doctor's certificates on 9/12/95 by Jenni Mallios, 10/13/95 by Stacey Rose Blass and November 28, 1995 by Rose M. Dews Miller. |
| September 8, 1995 | Rose Dews Miller Jenni Mallios Ann Young | I sent Jenni Mallios a copy of my 9/6/95 doctor's certificate. |
| September 14, 1995 | Rose Dews Miller Ann Young Jenni Mallios | Ann Young called me at home for a second time, telling me that she was not satisfied with the doctor's note. Ann Young was referring to copy that Jenni Mallios provided her on/about 9/8/95. Ann wanted me to provide her an original certificate from doctor. |
| September 21, 1995 | Rose Dews Miller Jenni Mallios Ann Young | Jenni Mallios sent letter to the Office of Workers' Compensation, (OWCP), claims examiner stating that my on-the-job injury was not thought to be disabling and she and my supervisor, Ann Young had not granted Continuation of Pay, (COP), for this statement was made even though USIA does not have any qualified employees to evaluate medical conditions. |
| September 28, 1995 | Rose Dews Miller Stacy Rose Blass Ann Young | I realized Ann Young, had indeed placed me in AWOL status, effective with pay period beginning September 3, 1995, because the paycheck I received only had 8 hours of pay.  I called Stacy Rose-Blass in AFGE Union Office for advice.  Stacy called Ann Young, but Ms. Young refused to change AWOL. From September 3 to November 24, 1995, (472 hours AWOL), even though my accrued sick leave could have covered this.  I had approximately 666 hours of accrued sick leave when Ann Young charged me with 472 hours of AWOL. |
| September 29, 1995 | Rose Dews Miller Julio C. Melendez Meredith A. Sevi | Received acceptance letter from the Office of Workers' Compensation for 7/10/95 on-the-job injury.  Claims Examiner, Julio C. Melendez sent a copy of this letter to Meredith A. Sevi in USIA's Office of Personnel. |
| October 10, 1995 | Rose Dews Miller Hattie Baldwin | Sent memorandum to OCR, Director-Hattie Baldwin, charging Agency with "breach of 1/30/95 settlement agreement." |
| October 13, 1995 | Rose M. Dews Miller Stacey Rose Blass Ann Young | Stacey Rose Blass faxed a copy of Dews Miller's 10/4/95 doctor's certificate to Ann Young. Transmittal sheet for fax, "To Anne Young: This has gone to personnel though you may not have received a copy.  It is relevant to my earlier phone message left on your voice mail.  Regards, Stacey Blass, USIA Employee, 619-5762 – page 1 of 5  10/13/95" |
| October 29, 1995 | Rose Dews Miller Ann Young Marian C. Bennett | Personnel Action effective 10/29/95 for denial of my With-in Grade Increase, (WGI) to GS-11, Step 5 because of AWOL and issuance of two "Minimally Successful" ratings. I received no written notification of this action prior to this date even though Ann Young and Marian Bennett signed off on "denial of WGI", to personnel on/about September 25, 1995. |
| November 9, 1995 | Rose Dews Miller Julio C. Melendez Jenni Mallios | OWCP Claims Examiner, Melendez sent letter to Mallios, stating, "enclosed is form CA-7 submitted by me was invalid. Additionally, Melendez sent letter to Mallios, stating, "enclosed is form CA-7 submitted and a copy of the entire medical record for your records."  I believe this was another violation of medical privacy laws, made worse because Mallios also disclosed my private and personal medical records to Ann Young and others at USIA. |

Exhibit 1
Pg 13 of 2

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| November 13, 1995 | Rose Dews Miller<br>Ann Young | Received November 9, 1995 letter from Ann Young referencing Denial of WGI to GS-11, Step 5. Effective date was October 29, 1995. This letter was received after the fact; I was not given any written notice prior to Ann Young's letter of November 9, 1995 or a personnel action from the Office of Personnel. |
| November 25, 1995 | Rose Dews Miller<br>Ann Young | Sent Ann Young a letter via 1st class mail to her office, stating my return to work would be November 27, 1995, after a scheduled morning Physical Therapy appointment. Ann Young on September 6, had verbally requested for me to notify her of my return to work. |
| November 27, 1995 | Rose Dews Miller<br>Ann Young | Returned to work from on-the-job injury, after obtaining release from doctors on 11/20 and 11/24/95. |
| | | Reported to Ann Young for duty in the Office of Inspector General. In my conversation with Ann Young, she mentioned that since I was assigned back to OIG for 90 days from September 1, 1995, thru November 30, 1995, would possibly be the completion of my tour in OIG. At this point, I noticed that Ms. Young, had a copy of my January 31, 1995 settlement agreement on her desk. Ms. Young was not a signatory to the settlement agreement, which had included "confidentially", statement-baring disclosure. Why did she have a copy? Ms. Young insisted on scheduling a discussion of my performance standards on Wednesday, November 29, 1995. |
| November 28, 1995 | Rose Dews Miller | Wrote to Senators Mikulski & Sarbanes, and Congressman Hoyer requesting their assistance in filing a complaint for reprisal with the U.S. Office of Special Counsel, (OSC). USIA's high-level management officials had engaged in prohibited personnel practices against me after I reported the AMEX problem to IG-Bennett on September 16, 1994. |
| November 28, 1995 | Rose M. Dews Miller<br>Ann Young | I presented Ann Young with requests for leave for period of September 1, 1995 through November 24, 1995. I also provided her copies of doctor's certificates describing work limitations, schedule of physical therapy, etc. Ms. Young's response was "I would be off from work more than I would be at work." Reference, therapy was 3 days a week. I thought "so what", it was not my idea to fall and injure myself. |
| November 28, 1995 | Rose M. Dews Miller<br>Janice Brambilla | Hand-carried reconsideration letter to Jan Brambilla, Director of Personnel on "Denial of Within Grade Increase", and effective 10/29/95. No response until April 2, 1996, which was more than 120 days after she had received my request. NOTE: On March 28, 1996, I filed a formal EEO complaint with the OCR and within 5 days Brambilla responded to my 11/28/95 letter. |
| November 28, 1995 | Rose M. Dews Miller | Went to OCR to discuss complaints about AWOL, Denial of WGI, Ratings from M/CBA and OIG. Spoke with Brenda Ross, she found Debbie Darby as EEO Counselor-Debbie Darby. |
| November 29, 1995 | Rose Dews Miller<br>Ann Young | I informed Ann Young, I wanted a representative present during the performance standards meeting, that afternoon and if I could not get one by then, we would have to reschedule the meeting. Ms. Young insisted that we meet that day, and that I did not need a representative, so we met and discussed the performance standards. I questioned, Ms. Young on how long would I have to remain in OIG, and she said November 30, 1995 was to be my last day in OIG. I found it hard to resist her threatening manner. |

14

Exhibit 1
Page 14 of 21

*SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M— ER AT THE UNITED STATE INFORMATION AGENCY FROM DECEMBER 10, 1987 TO MARCH 22, 2000*

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| November 30, 1995 | Rose Dews Miller<br>Ann Young | This was my last day in the Office of Inspector General. Ms. Young, told me to report to Jenni Mallios in the Office of Personnel on December 1, 1995, rather than the Office of Inspector General.<br>Ann Young returned the leave slips I gave her on 11/28/95 unapproved, with a memorandum attached stating that she could not approve my leave as requested. I do not know Ann Young's reason for non-approval of leave. |
| December 1, 1995 | Rose Dews Miller<br>Jenni Mallios<br>Blanche Twardowski<br>Stacey Rose-Blass | Reported to Personnel after scheduled medical appointment. Met with Twardowski and Mallios. Immediately, both wanted to know if I would report back to OIG to finish my 90 days there, or if I wanted a non-OIG position. I made no answer at this point but went to Stacey Rose-Blass to let her know what had happened. Stacey was mad and called Twardowski and Mallios to complain. Mallios told me, since personnel had nothing for me to do, I was sent to the Career Center from 12/1/95 to 2/27/95 without an assignment to an office, telephone, desk, or Personnel Action. Twardowski told me that I could not use my sick leave, if I was off from work for the on-the-job injury, I had to use my annual leave. I do not understand Twardowski's reason for her statement about the on-the-job injury leave usage. |
| December 5, 1995 | Rose Dews Miller<br>Carol Epstein<br>Jenni Mallios<br>Blanche Twardowski<br>Delia Johnson<br>Stacey Rose-Blass | Stacey called and asked me to attend a meeting with Personnel. It took place in Twardowski's office, included Twardowski; Jenni Mallios; Delia Johnson; Stacey Rose-Blass; Carol Epstein; and myself. Epstein started yelling at me, "Rose Mary will you go back to OIG and complete the 90 days", I answered "whatever the Agency decides." Epstein would not accept my answer, and got even louder in her yelling. Almost in fear of my safety, I told her no, I preferred a non-OIG position. |
| December 18, 1995 | Rose Dews Miller<br>Blanche Twardowski | I sent memo to Twardowski formalize my 12/5/95 statement that wherever Agency Management decided to assign me, I would go. I did not get an assignment until June 13, 1996, over 180 days without an assignment and still without a Personnel Action. |
| January 30, 1996 | Rose Dews Miller<br>Stacey Rose-Blass<br>Blanche Twardowski | Stacey Rose-Blass went to Twardowski to check status of an assignment for me. Still no assignment as of this date. Over 60 days, since I left the Office of Inspector General on November 30, 1995, no assignment and no Personnel Action. |
| February 1, 1996 | Rose Dews Miller | Received Official Personnel Action dated December 10, 1995 converting my 20 year plus career appointment to a temporary position in OIG, not to exceed December 9, 1996.<br>No explanation for this action was provided, as required by various federal laws and statues. |
| February 29, 1996 | Rose Dews Miller<br>Stacey Rose-Blass | Went to Career Center as usual, but it was closed for renovations from February 29 to March 7, 1996. I went to Personnel to find out what I should do, or where was I to go, but no one was there to answer my question. I went to see Stacey Rose-Blass in the Union office, and she called Personnel to let them know I had come to the Center for help. |
| March 1, 1996 | Rose Dews Miller<br>Blanche Twardowski<br>Jenni Mallios<br>Stacey Rose-Blass | Still, no where to go upon arrival to work. No assignment, job, office, or position to report to. I went back to the Union office. Stacey received an assignment from Twardowski, late Friday afternoon, March 1, 1996. I was to report to Jean Monroe in Research, effective March 4, 1996. |

15

*Exhibit 1<br>Pg. 15 of 21*

*SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-MILLER AT THE UNITED STATE INFORMATION AGENCY FROM DECEMBER 10, 1987 TO MARCH 22, 2000*

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| March 4, 1996 | Rose Dews Miller<br>Jean Monroe | Reported to Research office, as instructed by Twardowski, to assist Jean Monroe with administrative work. This was fine at first, since I was doing regular administrative officer's administrative work. When I was told that I had to do a backlog of a secretary's filing, I explained this was not work. I was told that my on-the-job-injury had placed limitations on my ability to do the lifting, and bending, needed to perform this task. |
| March 12-14, 1996 | Rose Dews Miller<br>Blanche Twardowski<br>Stacey Rose-Blass<br>Mary Jones | On March 1, 1996, Twardowski informed Stacey Rose-Blass that I was to attend an "Outplacement Seminar" held for workers who were being displaced from their jobs. Seminar was held at the Career Learning Center located at 330 "C" Street, SW and hosted by Vantage Corporation.<br>Twardowski instructed me to make arrangements with Mary Jones, Training Officer for USIA. |
| March 28, 1996 | Rose Dews Miller<br>Hattie Baldwin<br>Brenda Ross | Submitted formal EEO complaint to OCR-Hattie Baldwin. Complaint based on Reprisal. Hand-carried complaint to OCR approximately 5:00pm and had Brenda Ross sign for their copy of complaint. Complaint number is OCR-96-15. |
| April 27, 1996 | Rose Dews Miller<br>Jenni Mallios<br>Janice Brambilla | Appointment terminated from USIA's Office of Inspector General to (NoWhere Zone). SF-50, Personnel action cut and of course I was not notified of position transfer, etc. until after the fact. Health insurance was cancelled as a result of this unethical act. |
| May 1, 1996 | Rose Dews Miller | Upon my arrival at the Research office, Ms. Monroe, told me to report to personnel, since I could not do the work that was required in her office. I went to see Jenni Mallios, who told me I had messed things up, and that as we spoke, the Department of State was working on a Detail for me to remain at USIA, until termination of my temporary appointment in December 1996. However, she did not mention the 4/27/96, SF-50. Per Mallios, the position in Research was a favor to keep me until expiration of my temporary appointment.<br>Personnel sent me back to the Career Center for the rest of the day.<br>Mallios sent me back to the Career Center for the rest of the day. |
| May 17, 1996 | Rose Dews Miller<br>J. Sandra Thomas | I called Ms. Thomas at the Office of Special Counsel to inform her that I would not get paid from April 28, 1996 until the present time due to USIA's transfer out to (NoWhere Zone) with the 4/27/96 personnel action without notification. |
| May 20, 1996 | Rose Dews Miller<br>Delia Johnson | The OCR offers a draft settlement offer to my formal 3/28/96, #OCR-96-15, complaint filed through my representative. |
| May 31, 1996 | Rose Dews Miller<br>Jenni Mallios<br>Delia Johnson | I went to Safeway pharmacy to get seven (7) prescriptions filled. Pharmacist said, I no longer had a representative. Since it was terminated April 26th, 1996, by the U.S. Information Agency. I health insurance, since it was terminated April 26th, 1996, by the U.S. Information Agency. I returned home and called my representative to explain what had happened at the Safeway. |
| June 11, 1996 | Rose Dews Miller<br>Janice Brambilla | Brambilla had her secretary to call me at the Career Center, so that she could talk with me in her office. I told Brambilla, I was not reporting to her office for any meeting without my representative. She continued to insist that I report there, because she was the Director of representative. And I was not to tell her "no." Brambilla told me she was going to "tell Mr. Pratt what Personnel and I was not to tell her "no," "what if your representative is out of town, and I want to see you, I did, etc." Brambilla also said, "what if your representative is out of town, and I want to see you, what do you do?" I told her, I was still not coming to her office without my representative and finally excused myself. She called back a second and third time that afternoon. Who told her Pratt was my representative? |

16

*Exhibit 1*
*Pg. 16 of 21*

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M.... ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| June 12, 1996 | Rose Dews Miller<br>Delia Johnson | Received call from Ms. Johnson, stating that I was to report to the Office of General Counsel on June 13, 1996, Les Jin had called her to inquire about my arrival in his office and Delia said she had talked to my representative about this.  Still, especially an SF-50.  Nothing in writing. |
| June 13, 1996 | Rose Dews Miller<br>Delia Johnson<br>John Pratt | My representative faxed our counter-offer to Delia Johnson for action.  Was in reference to formal complaint file with OCR on March 28, 1996, file #OCR-96-15.  Settlement offer made by OCR-Delia Johnson on May 20, 1996. |
| June 14, 1996 | Rose Dews Miller<br>Delia Johnson | Reported to Ms. Johnson's office.  Gave her a copy of my work limitations from my doctor dated April, 1996.  She was to escort me to the GC office, but Constance Harley was not in, so Ms. Johnson sent me back to the Career Center. |
| June 17, 1996 | Rose Dews Miller<br>Delia Johnson<br>Constance Harley | Again, reported to Ms. Johnson's office, to await her escorting me to the Office of General Counsel, (GC).  Instead, she called GC, and told me to go there alone and see Constance Harley.  I discovered GC was still not prepared for my arrival, one reason was there was no workspace available for me. |
| June 18-24, 1996 | Rose Dews Miller<br>Constance Harley | Reported for duty, still no place to work, so I sat in another office because that person was absent for the day.  My first project was to oversee/arrange moving GC's Waiver Review office from FEMA office space to currently renovated area next door to main GC office. |
| June 25, 1996 | Rose Dews Miller<br>Constance Harley | Finally assigned workspace in GC's computer storage closet along with office Christmas tree, excess supplies.  Entrance was through someone else's office, etc.  Temperature in this workspace rose to 95 degrees daily.  Everyone, who saw this workspace, commented that it did not make sense. |
| | | Was it legal to have an employee working under these conditions? |
| July 13, 1996 | Rose Dews Miller | Move actually took place for Waiver Review staff.  Comments were that I did a good job. |
| July 17, 1996 | Rose Dews Miller<br>Delia Johnson<br>John Pratt | Pratt faxed Delia Johnson.  Subject: Dews-Miller March 28, 1996 Complaint.  Informed Johnson, Dews Miller is not interested in resigning as a condition for settlement of complaint.  Our thoughts are why should she leave because several management officials have so blatantly violated Federal Laws & Regulations and, so far, have not been penalized for their misdeeds. |
| July 22-26, 1996 | Rose Dews Miller<br>Constance Harley<br>Lorie Nicuburg | Not sure of exact date, but upon completion of Waiver's move, I was to work as an Administrative Officer on the Hartman Task Force.  I reported to work the next day.  On Friday was told that I could not work there, since I was a valid plaintiff in the Hartman Cases against USIA.  As far as Nicuburg was concerned, I was on administrative leave and could leave the office as soon as I got my stuff together.  I was to report to Main GC office, upon my return to work. |
| July 26, 1996 | Rose Dews Miller<br>Delia Johnson<br>John Pratt | Pratt faxed Delia Johnson.  "I have not heard from you for quite awhile.  Is someone working on an equitable solution or are they still the problem?  Thought you might get a laugh out of the 7/20/96 article on the Hashen Award.  USIA lost again because of managers, supervisors and personnel specialists.  As I have said before, Your job would be easier if M/P, IG & GC were not around." |
| Early August 1996 | Rose Dews Miller<br>Karen Hawkins<br>Constance Harley | Upon my return to GC, Karen informed me that I could not use my assigned workspace, because the computer people were working there.  She discussed with Ms. Harley how to find me a temporary workspace.  I inquired "who is out of the office today, I could park myself there." |

17

Exhibit 1
Pg. 12 of 21

*SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-MILLER AT THE UNITED STATE INFORMATION AGENCY FROM DECEMBER 10, 1987 TO MARCH 22, 2000*

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| Late August 1996 | Rose Dews Miller<br>Karen Hawkins<br>Craig Stewart | Again, on my arrival to work, Karen informed me that I could not use my assigned workspace, because Craig Stewart was straightening up the space. Again, I had to find a place to park myself. Craig stated, he thought he had high blood pressure while in my space, since his face had turned red from extreme heat. |
| September 12, 1996 | Rose Dews Miller<br>Constance Harley | After listening to my voice mail, I learned that I had had several calls from a Mr. Peterson at the Office of Special Counsel, (OSC). Mr. Peterson requested I call him immediately upon my return to work. When I called, he told me he had cleared everything with my supervisor, Constance Harley, and I should immediately report to his office at 1730 "M" Street, NW, that very morning. I told him that I had several complaints at OSC and I would like to bring my representative along, he said there was no need and that me, he could assure me of that. I went to his office as directed and found out I was involved in yet another investigation of USIA's OIG AMEX credit card misuse. This now made three! I asked for copy of my testimony, but never received it. |
| September 13, 1996 | Rose Dews Miller<br>Contance Harley<br>Delia Johnson<br>Wallace Stuart<br>John Pratt | I started to work with on Waivers Review's Skill List update as requested by Constance Harley. My representative, John D. Pratt notified OCR-Delia Johnson and GC-Wally Stuart of my present unsatisfactory, unhealthy, etc. working conditions in GC. |
| September 25-26, 1996 | Rose Dews Miller | I faxed additional information to Mr. Peterson at OSC on items I remembered after our September 12, 1996 meeting. |
| October 7, 1996 | Rose Dews Miller<br>Delia Johnson | Ms. Johnson finally initiated an EEO investigation of my formal complaint, #OCR-96-15, filed on March 28, 1996. EEO law requires completion of an investigation within 180 days after formal complaint is filed. Unless there is written request for extension by all parties. USIA did not request an extension from us, so is USIA exempt from following the letter of EEO law? |
| October to Late November 1996 | Rose Dews Miller<br>Wallace Stuart<br>Les Jin | Worked on project of updating skills list with Waiver Review Office of GC. Received compliments from Wallace Stuart and Les Jin that I was doing a good job. |
| December 5, 1996 | Rose Dews Miller<br>Hattie Baldwin<br>Delia Johnson | Received another settlement offer from Hattie Baldwin's office to settle all EEO cases, including one that was currently at EEOC on appeal, #OCR-0863-49 and #OCR-0863-49-1 for "USIA's breaching of January 30, 1995 Settlement Agreement". We had until COB December 6, 1996 to respond. |
| December 6, 1996 | Rose Dews Miller<br>Hattie Baldwin<br>Delia Johnson | Sent fax by COB that Baldwin's settlement offer was unacceptable. For one thing, it placed me in LWOP status to 6/30/97 and forced my retirement on June 30, 1997. |

18

Attachment 6
Page 18 of 21 Pages

Exhibit 1
Pg 18 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M... ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| December 9, 1996 | Rose Dews Miller<br>Jenni Mallios<br>Delia Johnson | E-mail, phone calls, etc. came from Jenni Mallios ordering me, to report to her office to sign out since my temporary appointment expired this day, and there was no extension forthcoming. I gathered my personal belongings from office; left computer disk and notes on "skills list" at my assigned workspace. Upon my departure, I left my ID card with security guard in lobby. Delia Johnson told my representative, John Pratt, that all I had to do was sign papers in personnel, it would only take a few minutes and Personnel would do the rest. I had left the office prior to Mr. Pratt getting this message to me.<br>Although, I worked this day, I have not yet been paid by USIA. |
| December 11, 1996 | Rose Dews Miller<br>Delia Johnson | Met with EEO investigator, to go over some depositions by others. He took my rebuttals to depositions. John Pratt signed me in and escorted me to the meeting with EEO investigator. Delia Johnson gave John Pratt sign out/clearance sheet for my signature, but after our review, we left the package unsigned along with a note for Delia Johnson stating that required official notifications and forms were missing from package. I declined to sign a routing slip. |
| December 13, 1996 | Rose Dews Miller<br>Jenni Mallios | OWCP sent letter to USIA-Jenni Mallios, giving her 30 days to submit a completed CA-7 form, which was requested by Julio Melendez on November 9, 1995. This was already 13 months of non-compliance by Mallios. |
| December 21, 1996 | Rose Dews Miller<br>Jenni Mallios<br>Janice Brambilla | Received package left with Delia Johnson on December 11, 1996 in my regular mail, requesting that I sign termination papers. These papers were not signed because they do not conform to federal laws and regulations. |
| December 22, 1996 | Rose Dews Miller | My health benefits were cancelled effective December 21, 1996. Enrolled on spouse's health benefits plan effective this date. |
| December 31, 1996 | Rose Dews Miller | Hand carried reimbursement forms to OWCP-Julio Melendez at OWCP referencing 7/10/95 on-the-job injury. |
| Early January 1997 | Rose Dews Miller<br>Jenni Mallios<br>Julio Melendez | I received copy of completed CA-7 form, that Jenni Mallios finally filled out, signed and returned to the OWCP in reference to my 7/10/95 on-the-job injury. Jenni Mallios held CA-7 form from November 1995 to January 1997. |
| January 24, 1997 | Rose Dews Miller<br>Julio Melendez<br>Jenni Mallios | Received letter from OWCP-Julio Melendez, stating his office approved surgery on my right shoulder as a result of the July 10, 1995 on-the-job injury. He also sent copy to Jenni Mallios. |
| January 27, 1997 | Rose Dews Miller<br>Julio Melendez<br>Jenni Mallios | OWCP-Melendez sent Jenni Mallios letter, requesting that USIA pay COP, (Continuation of Pay) to me from August 21, 1995 to October 3, 1995 and to adjust my leave, including removal of AWOL.<br>To date, no payment received or records corrected by USIA. |
| February 14, 1997 | Rose Dews Miller<br>Julio Melendez | Received first compensation check from OWCP for period October 4, 1995 to November 25, 1995, related to July 10, 1995 on-the-job injury. |
| March 3, 1997 | Rose Dews Miller<br>Julio Melendez | Hospitalized for OWCP approved surgery on right shoulder as a result of July 10, 1995 on the job injury. |
| March 8 - 15, 1997 | Rose Dews Miller | Returned to hospital due to complications from March 3, 1997 surgery. |

19

Exhibit 1
Pg. 19 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-MA__ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| March 24, 1997 | Rose Dews Miller<br>Julio Melendez | Started weekly outpatient visits to hospital due to complications from March 3, 1997 surgery on right shoulder. |
| April 28, 1997 | Rose Dews Miller<br>Julio Melendez<br>Jenni Mallios | OWCP-Melendez sent Jenni Mallios second letter, requesting that USIA pay COP to me from August 21, 1995 to October 3, 1995 and to adjust my leave, etc.<br><br>To date, no payment received or records corrected by USIA. |
| Early May 1997 | Rose Dews Miller<br>Julio Melendez<br>Jenni Mallios<br>Jim Kohler | In response to OWCP-Melendez, Mallios sent me a copy of memorandum she sent to Jim Kohler to pay me the COP ordered by OWCP. She wanted to know if my bank and all were the same and Kohler wanted to know why I had not signed my final clearance form from the Agency? This request was hand-written by Mallios on a Routing Transmittal Slip. Clearance form was only a small part of overall "sign out" package/procedures which were in error. |
| June 5, 1997 | Rose Dews Miller<br>Julio Melendez John Pratt | My representative and I met with Melendez at the OWCP office to discuss some issues we did not understand. We completed a CA-8 form for compensation for period of March 3, 1997 to June 7, 1997. |
| July 1, 1997 | Rose Dews Miller<br>Julio Melendez<br>Jenni Mallios | Received second compensation check from OWCP for period March 3, 1997 to June 7, 1997. |
| August 26, 1997 | Rose Dews Miller<br>Julio Melendez<br>Jenni Mallios | OWCP-Melendez sent Jenni Mallios third letter, requesting that USIA pay COP to me from August 21, 1995 to October 3, 1995 and to adjust my leave, etc.<br><br>To date, no payment received or records corrected by USIA. Additionally, I received approval from OWCP to attend John Hopkins Pain Management Center in Baltimore, MD. |
| September 29, 1997 | Rose Dews Miller | Admitted to John Hopkins Pain Management Center in Baltimore, MD for treatment of chronic pain from July 10, 1995 on the job injury.<br><br>Sent CA-8 form to Melendez for period of June 8, 1997 to September 29, 1997 and additionally included period December 10, 1996 to March 2, 1997. |
| October 8, 1997 | Rose Dews Miller | Discharged from John Hopkins Pain Management Center. |
| October 14, 1997 | Rose Dews Miller<br>Julio Melendez | Received letter dated October 10, 1997 from OWCP-Melendez, stating he was not paying compensation for period of December 10, 1996 to March 2, 1997. At this point, I realized that he had talked with Jenni Mallios at USIA and received additional incorrect information from her. |
| November 6, 1997 | Rose Dews Miller | Sent certified, return receipt letter to OCR-Hattie Baldwin requesting that she assign me an EEO Counselor for yet another round of violations by Agency personnel.<br><br>To date, Baldwin has not provided me an EEO Counselor. |
| November 21, 1997 | Rose Dews Miller | Filed IRA at MSPB relating to violations of Whistleblower Protection Act. |
| May 6, 1998 | Rose M. Dews Miller | Filed #OCR-96-15 and November 6, 1997 Request for EEO counselor with the EEOC. |
| October 2, 1998 | Rose M. Dews Miller | Filed Petition for Review of MSPB, DC1221980147-W-1, Docket #99-3005 – DEWS-MILLER V. U.S. INFO AGENCY. |
| October 9, 1998 | Rose M. Dews Miller | Filed Civil Action No. 98-2417 (GK) with the United States District Court for the District of Columbia, against USIA (EEOC No. 01962642; EEOC Docket No. 05980081; OCR-0863-49; and OCR-0863-49-L.) |

20

Exhibit 1
Pg. 20 of 21

SEQUENCE OF EVENTS INVOLVING ROSE MARY DEWS-M.  ER AT THE UNITED STATE INFORMATION AGENCY
FROM DECEMBER 10, 1987 TO MARCH 22, 2000

| MONTH/YEAR | EMPLOYEES INVOLVED | EVENT |
|---|---|---|
| October 28, 1998 | Rose Dews Miller | Hand-carried CA-8 form to OWCP-Melendez for period of February 24, 1998 to Present and additionally included period December 10, 1996 to March 2, 1997. |
| March 22, 2000 | Rose Dews Miller | Hearing at U.S. Department of Labor referencing non-receipt of payments from OWCP for over two years. |

21

Attachment 8
Page 21 of 21 Pages

Attachment
Page

Exhibit 1
Pg. 21 of 21

# U.S. Offers $508 Million in Sex-Bias Case

**By IRVIN MOLOTSKY, NYTimes on the Web, March 23, 2000**

WASHINGTON, March 22 -- The federal government agreed today to pay $508 million to settle a sex discrimination suit brought by 1,100 women who charged that they were denied jobs and promotions with the agency that disseminates news and information about the United States abroad.

If it is accepted by the federal judge who has overseen the lawsuit, it will be the largest settlement ever recorded in a federal sex-discrimination case. Each of the women would receive at least $450,000.

The suit was filed 23 years ago by reporters, editors, announcers, producers and others against the Voice of America, the government-run radio service that offers news and entertainment programs to listeners outside the United States, and its former parent agency, the United States Information Agency.

"We have won a just war in the land of freedom," said Jahanare Hasan, a former broadcaster in Pakistan who was turned down when she applied for a job with the Voice of America's radio service for Bangladesh, formerly East Pakistan.

"In the Bangla service, only men were allowed to announce the news," said Susan Brackshaw, a lawyer for the women.

While the suit was filed in 1977, it covers the period of 1974 to 1984, which meant that the allegations of discrimination continued long after the litigation began.

In its own newscasts this afternoon, the Voice of America, which describes life in the United States and promotes the virtues of democracy and equality in dozens of languages to a worldwide audience, broadcast the story of its own shortcomings.

In a straightforward script for the English-language newscast at 3:45 p.m., Eastern time, the news service acknowledged that the case "disclosed that U.S.I.A. and V.O.A. regularly manipulated the hiring process to exclude women."

"The plaintiffs alleged that the agencies resorted in some cases to test fraud, altering test scores and destroying personnel and test files," it went on.

Despite the allegations of fraud and document destruction, a spokesman for Voice of America, Joseph D. O'Connell Jr., said the charges had not been proved and that, as a result, no managers had been disciplined.

The basic award of $508 million is the largest settlement of any employment discrimination lawsuit, public or private. It dwarfs the next largest settlement, $176 million awarded in 1996 to 1,400 Texaco employees in a race discrimination suit.

In addition to the settlement, the government has already been assessed $22.7 million for 46 women in the group who had won when their cases went to administrative hearings. Two other women lost their cases.

Lawyers for the women said it was that record of 46 victories and only 2 losses that encouraged the government to drop its insistence on a separate hearing for each of the 1,100 complaints and prevented Hartman v. Albright, as this case is known, from becoming a modern-day equivalent of Jarndyce v. Jarndyce in Dickens's "Bleak House."

"They did the math," said Bruce Fredrickson, one of the women's lawyers, who took on the class action in 1977, his first lawsuit after graduating from law school.

Under the 1964 Civil Rights Act, the government will also pay the women's legal fees, which have amounted to $12 million so far, with several million more yet to be paid. When all the awards, legal fees and costs are paid, Mr. Fredrickson said, the amount paid by the government will be about $550 million, not counting the government's own legal costs.

The claimants decided to divide the settlement equally and to offer payments even to the two women who lost their cases in administrative hearings.

That will mean an award to make up for lost salaries, pensions and benefits of at least $450,000 for each woman, Mr. Fredrickson said. Those who got less than that at their hearings will have the difference made up, while those who won more will keep the extra money.

"The cost of discrimination can be enormous," Mr. Fredrickson said at the news conference,



Exhibit 5-7

Attachmt 5
Pg 1 of 2

· Bias Case

which was held at the National Press Club.

Since the litigation began, the United States Information Agency has gone out of existence, and the Voice of America is now overseen by a different agency, the Broadcasting Board of Governors.

Discrimination against women was so pervasive, Mr. Fredrickson said, that women applying for jobs at the Voice of America were told outright that managers were seeking to fill positions with men.

"There were open and hostile comments from men," Mr. Fredrickson said. "There was manipulation of the system. Tests were rigged, scores were changed, less qualified men were hired and men were preselected before the jobs were posted."

At other times, he said, "Women were told, 'We have enough women,' 'It is not good to have too many women,' and 'We need male voices.' "

Ms. Brackshaw cited one of the 46 cases won at the hearing level, that of Dona De Sanctis, a broadcaster and writer with a Ph.D. She took a test and was told that a man got the job because he had "a terrific score."

"The only problem was he never took the test," Ms. Brackshaw said, "and another job went to the son of a V.O.A. official when the test was rigged."

Mr. O'Connell, the Voice of America spokesman, said in an interview that the agency and broadcasting board were committed to "an equitable workplace" and that "managers and supervisors take eight hours per year of training on equal opportunity, sensitivity and appropriate hiring that is not discriminatory."

One of the claimants, Judith Ambrose, who sued because she was turned down for a job as a broadcast technician although she had worked as one previously, said that discrimination still existed at the broadcast agency but might end because of the settlement.

"This kind of thing is going to bring a wake-up call," said Ms. Ambrose, who works at the new parent broadcasting agency.

Carolee Brady, who was listed as the lead plaintiff under her former married name of Hartman, has a Ph.D. and applied in 1977 for a job as a writer at the United States Information Agency.

According to her suit, she was told by an editor, "Well, they were thinking about hiring a man for the position."

She said today: "A man told me he was not going to hire me because I am a woman. It's a delicious victory."

Rose Kobylinski, a Polish-language broadcaster, recalled today that she was denied a job after being told by the Voice of America that "your voice is too old.' "

That was 20 years ago and Ms. Kobylinski, now 79, got the settlement and the last laugh.

"I now have a radio program in Chicago," she said, "and my voice is not too old."

BiasCase77.doc



**Copyright National Organization for Women, New Jersey**
**110 West State Street Trenton, NJ 08608**
**tele 609 393-0156, fax 609-393-8123**
**Email NOW-NJ at info@nownj.org**
**For problems or questions regarding this web contact webmaster**
**Last updated: July 20, 2000.**

Attachmt 5
Pg 2 of 2

1990 CONDUCT EVALUATION RATINGS AT USIA FROM JULY '84 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| July 8, 1984 to April 30, 1985 | 12 Years 10 Months 11 Days | Secretary (Typing) GS-318-07 | Office of the Comptroller, Budget Operations Division (M/CB) | **Rating: Satisfactory (Three Tier Rating)**<br><br>**Rater: Steven B. Steiner, GM-15**<br>Ms. Dews has within a very short period of time become a "key person" in this organization. Her ability to deal even-handedly with a variety of personality-types is impressive. With an additional concentrated effort on organization of paper flow, I believe she will be an excellent secretary. Ms. Dews has the potential to serve as an executive secretary either domestically or in the foreign service.<br><br>**Reviewer: Gerald J. Parry, GM-15**<br>I have considerable contact with Ms. Dews on a daily basis and I am very familiar with the duties and responsibilities of her position. The performance requirements are accurately stated.<br><br>Ms. Dews assumed her present position in July, 1984. Being experienced and highly motivated, she quickly learned the duties of her position and now performs them in a highly successful manner. Special projects are always completed promptly and accurately.<br><br>Ms. Dews is one of the most pleasant, even-tempered individuals I have ever known. Acknowledgment of her helpfulness and pleasantness is often made both by Agency employees and others having business with this office. It is truly a pleasure to work in the same office with her<br><br>I concur in this very favorable rating as well as in Mr. Steiner's assessment of Rose Mary's future potential. A proper level of guidance has been provided during the rating period. |
| May 1, 1985 to November 21, 1985 | 13 Years 5 Months 2 Days | Secretary (Typing) GS-0318-07 | Office of the Comptroller, Budget Operations Division (M/CB) | **Rating: No Rating Provided, Automatically Satisfactory in Absence of a Rating.**<br>**(Three Tier Rating)**<br><br>Selected by Chief, Office of Academic Exchanges on November 22, 1985 |
| November 22, 1985 to June 21, 1986 | 14 Years 0 Months 2 Days | Secretary (Typing) GS-0318-7 | Office of Academic Exchanges | **Rating: No Rating Provided, Automatically Satisfactory in Absence of a Rating.**<br>**(Three Tier Rating)**<br><br>**Rater and Reviewer: (Should have been)**<br>Ronald Ungaro, Chief Office of Academic Exchanges |

1

Attachmt 7
Pg 1 of 9

Exhibit 5-9

_PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER_

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| Selected and Promoted to New Position Effective June 22, 1986 | 14 Years 0 Months 3 Days | Unit Manager GS-303-08 | Television and Film Services (TV/WN) | **Rating:** No Rating Provided, Automatically Satisfactory in Absence of a Rating. (Three Tier Rating) <br><br> **Selected and Promoted to New Position Effective June 22, 1986** |
| June 22, 1986 to April 30, 1987 | 14 Years 10 Months 11 Days | Unit Manager GS-303-08 | Television and Film Services (TV/WN) | **Rating: Satisfactory (Three Tier Rating)** <br><br> **Rater: Lisa Keathley, GM-15** <br> She responded to assignments with a smile and a pleasant attitude, which is one of her most positive characteristics! I think that Rose Mary is fully capable of handling her increased work load. She is always bright and cheerful. She is also very helpful when asked. She seems to have a good grasp of administrative rules and procedures – which is not easy to accomplish! <br><br> **Reviewer: Gerald Andersen, GM-15** <br> The Rating Officer, has a professional relationship with Ms. Dews, and has been fair in her observations and evaluation. |
| May 1, 1987 to April 30, 1988 | 15 Years 10 Months 11 Days | Unit Manager GS-303-08 | Television and Film Service (TV/WN) | **Rating: Highly Successful (Five Tier Rating)** <br><br> **Rater: Lisa A. Keathley, GM-15** <br> Rose Mary has made tremendous strides during this rating period. She has had to become more interactive rather than just reactive to events, and she has done so extremely well. Whenever Division Management or staffers have administrative, travel, budgetary, or other procedural questions, they go to Rose Mary – and she usually has the answers. If she doesn't know, she knows who to call to find out! <br><br> Rose Mary is bright, dedicated, and dependable. She has really pitched in and turned the processing of paperwork in this Division right around. She has come in on overtime when asked, and has been cheerful and positive through some trying times. She is a real asset to the Division, who is growing day by day in her leadership role. We have come to depend on her, and because of her diligence and hard work, she has earned a great deal of respect and trust. |

2

Attachment 10
Page 2 of 9 Pages

Attachmnt
Pg 2 of 9

*ERFORMANCE EVALUATION RATINGS AT USIA FROM JUL\     (TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER*

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|--------|------------------|--------------|-----------------|----------|
| May 1, 1987 to April 30, 1988 (continued) | 16 Years 1 Month 26 Days (continued) | Unit Manager GS-303-08 (continued) | Television and Film Service (TV/WN) (continued) | **Reviewer: Gerald Andersen, GM-15**<br>I totally agree with Ms. Keathley's assessment of Rose Mary. There has been dramatic improvement in this rating year, compared to the last. Rose Mary has taken an active and leadership role in the smooth running of the News Division administrative office. The demands on our office are never ending, but she is tireless when it comes to getting the job done. She is often willing to put in the extra time necessary to meet a deadline or to do the job correctly. Her wide-ranging experience in other parts of the Agency are put to the test every day, whether relating to time and attendance or financial payment matters. Rose Mary now has a very clear grasp of all the elements of the position, the complexities, and the urgency with which the work has to be handled. She is a good resource and someone upon whom I can rely fully every day. Rose has a knack for getting things done and doing her tasks economically. She had very short notice to make travel arrangements for my trip to RTNDA this year. She completed it quickly (getting notice the day before departure) and convinced a hotel representative to follow the government rate on the accommodations, when initially informed the government rate didn't apply. |
| Selected to New Position Effective August 15, 1988 | 16 Years 1 Months 26 Days | Administrative Assistant GS-341-07 | Office of African Affairs (AF) | **Rating: No Rating Provided, Automatically Fully Successful in Absence of a Rating. (Five Tier Rating)**<br><br>**Selected to New Position Effective August 15, 1988** |
| August 15, 1988 to April 30, 1989 | 16 Years 10 Months 11 Days | Administrative Assistant GS-341-07<br><br>Administrative Officer GS-341-09 | Office of African Affairs (AF) | **Rating: Highly Successful (Five Tier Rating)**<br><br>**Rater: Linda Western, Deputy Executive Officer**<br><br>Rose Mary is the epitome of graciousness when helping JOTs, secretaries, or senior FSOs. People feel at ease when asking her help. This is exactly the atmosphere I had hoped for in AF. She is extremely courteous, helpful, and does all the little extras that make everyone feel comfortable about broaching an administrative problem with our staff. She has the perfect attitude toward administrative issues and answers. While this is her strong point, I think this may have had a detrimental influence on her introduction to the position. In her eagerness to help, people have wasted her time on minor problems and taken advantage of her courteous nature by asking her to do things they should have done for themselves. Subsequently, we have set exact schedules for documentation on a variety of subjects and deadlines are now being met. Rose Mary and I have had discussions about assertiveness on her part, and she is striving for the right mix. Minor, time-wasting duties have been divorced from the position, and her present responsibilities are clearly the GS-9 position envisioned by AF. |

Attachment  10
Page  5  of  6  Pages

Attachm̄t
Pg 3 of 6

"PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|--------|------------------|--------------|-----------------|----------|
| August 15, 1988 to April 30, 1989 (continued) | 16 Years 10 Months 11 Days (continued) | Administrative Assistant GS-341-U7<br><br>*Promoted to GS-341-09 Effective April 23, 1989*<br><br>Administrative Officer GS-341-09 (continued) | Office of African Affairs (AF) (continued) | **Rater: Linda Western, Deputy Executive Officer (continued)**<br><br>Rose Mary has made tremendous strides toward getting information in our files, which is necessary for the smooth operation of an area office. The Travel Handbook, AF Personnel Roster, Wang Inventory, OER Log are prime examples. This is not an easy office in which to excel, but Rose Mary has done just that after an arduous start.<br><br>**Reviewer: Stedman D. Howard, Executive Officer**<br>While the AF Deputy Executive Officer serves as Ms. Dews' Rating Officer, in point of fact, Rose Mary works directly for me as much as she works for Ms. Western. Thus I have direct daily contact with Rose Mary and direct knowledge of much of her work and am well acquainted with all of it. The working relationships are good and productive and have had a positive impact on performance. Rose Mary has received adequate guidance and her work requirements are as fair and reasonable as administrative requirements can be.<br><br>In some 9 months on the job, Rose Mary Dews has shown herself to be an able, versatile, and dependable employee whose hallmark is painstaking thoroughness and an inclination to take the time to do the job completely, correctly, once. To be honest about it, our first impression was that things were happening too slowly or getting lost. Little by little, however, we discovered that, when Rose Mary finished working through a problem - be it travel, computer control, financial cuff records, OER tracking, or a hundred other administrative details - things which had lurched from urgent crisis to urgent crisis had become a matter of routine. We had become so accustomed to crisis action that we then worried about the fact that we didn't have to worry. Now I don't worry about whether or not the cuff records are accurate and useable - they are. I don't audit every travel order or voucher - I know they are done right by staff members Rose Mary has trained and for whom she has provided a complete set of guidelines. With Rose Mary's guidance everyone participates in preventive maintenance of our computers - no more crisis "crashes" or emergency calls to WANG. And we quickly know the status of over 100 OERs for which AF is responsible.<br><br>She is doing what good administrative officers are supposed to do - making desired support a matter of almost (but not quite) unnoticed routine. And she does all of this - copes with the daily hassles and the multiple demands on her time and effort - with an unfailing good humor and tact. Some of this absolutely has to annoy her from time to time but you sure couldn't prove it by me. |

4

Attachment 7
Pa. 4 of 9

Attachment 7
Page 4 of 9 Pages

16

PERFORMANCE EVALUATION RATINGS AT USIA FROM JUL    4 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| May 1, 1989 to March 24, 1990 | 17 Years 9 Months 15 Days | Administrative Officer GS-0341-09 | Office of African Affairs (AF) | **Rating: Highly Successful (Five Tier Rating)**<br><br>**Rater: Linda Western, Deputy Executive Officer**<br>Rose Mary is one of the most dependable, agreeable, and thorough USG employees I have ever worked with. She is always willing to give the extra that is needed to get the job done. If she needed to research a question, you could count on accuracy and thoroughness. She worked overtime when it was inconvenient and changed the atmosphere in an office where we encountered problems of drug abuse, thefts, and inefficiency. In AF this year the working conditions had a high stress level and, at times, were generally unpleasant; but she was always gracious and pleasant.<br><br>Rose Mary leaves AF in much better condition than she found it. Every aspect of our administrative responsibilities are documented through logs and reports--which was not the case when she arrived. We had a busy year - ordering furniture and partitions, monitoring spending, filling vacancies, establishing new procedures, installing two new PCs with printers, and keeping up with our real responsibility, the posts.<br><br>This position represented a new field of pursuit for Rose Mary, and she has done well. She is moving on to even higher levels of responsibility, and I expect even bigger and better things from her in the future. Rose Mary will be missed in AF, and I wish her well in her new endeavor.<br><br>**Reviewer: Renate Z. Coleshill, Executive Officer**<br>As Executive Officer for the African Area, I am fully aware of the responsibilities and performance of the rated officer. Her work requirements are fair and consistent with comparable positions in the Agency. I was in daily contact with both rated and rating officers. I whole-heartedly concur with this rating.<br><br>Ms. Dews is an exceptional employee--dedicated and painstakingly thorough. She is without a doubt one of the easiest persons with whom to work. Her congenial, low-key and helpful manner made her an asset to the office. |
| Selected to New Position Effective March 25, 1990 | 17 Years 9 Months 6 Days | Administrative Officer GS-341-09 | Office of Inspector General, (OIG) | Selected to New Position Effective March 25, 1990 |

5

Attachment ___10___
Page __5__ of __9__ Pages

Attachment 7
Pg. 5 of 9

*PERFORMANCE EVALUATION RATINGS AT USIA FROM JUL1     (TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER*

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| Promoted Effective Nov. 4, 1990 | 18 Years 4 Months 25 Days | Administrative Officer GS-341-11 | Office of Inspector General, (OIG) | **Rating: Highly Successful (Five tier rating)**<br><br>**See Rating from May 1, 1990 to April 30, 1991** |
| May 1, 1990 to April 30, 1991 | 18 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General, (OIG) | **Rating: Highly Successful (Five tier rating)**<br><br>**Rater: Paul S. Johnston, Director, Office of Administrative and Management** Ms. Dews is a valuable asset to OIG. She is dependable, conscientious and a pleasure to work with. During this rating period she was promoted to the GS-11 position.<br><br>She has designed modifications to the manual and automated accounting systems in OIG to enable timely and accurate reconciliations with the USIA accounting system. She is considered an expert in travel regulations and very effective in handling accounting discrepancies, personnel actions, T&A questions, and procurement procedures. On two occasions that I am aware of, she has canceled her leave voluntarily, to get time sensitive assignments completed.<br><br>**Reviewer: Louis J. Leporatti, Executive Assistant** I am fully aware of the specific responsibilities and assignments Ms. Dews is expected to perform. Her performance requirements and standards are considered to be fair and reasonable, and she has carried them out at the highly successful level. Ms. Dews has excellent interpersonal skills and her working relationships with others in the office and her supervisor are outstanding. She is a dedicated and competent employee who is able to work with little guidance and is instrumental in providing the support OIG needs for maintaining and managing its financial and personnel resources. |
| May 1, 1991 to April 30, 1992 | 19 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) (continued) | **Rating: Highly Successful (Five tier rating)**<br><br>**Rater: Darwin D. Roberts, Director, Office of Administration and Management** Ms. Dews is a valuable asset to the OIG. She maintains a professional attitude and demeanor no matter what task she is assigned. As the administrative officer for the OIG, she must constantly interface with all staff members and Agency elements to ensure daily problems are quickly addressed and do not become major issues. In performing these tasks, she has demonstrated herself to be a loyal, productive and experienced employee. |

6

Attachment 10
Page 6 of 9 Pages

Attachm\~T 7
Pg. 6 of 9

PERFORMANCE EVALUATION RATINGS AT USIA FROM JUL 1    1 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| May 1, 1991 to April 30, 1992 | 19 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) (continued) | **Reviewer: Louis J. Leporatti, Executive Assistant**<br>As her supervisor for a good portion of the rating period. I have full knowledge of the responsibilities and assignments Ms. Dews-Miller was expected to perform. This she clearly accomplished at the highly successfully level against performance requirements and standards, which, in my opinion, are fair and reasonable. Also impacting favorably on her performance was the working relationship she developed with both myself and her current supervisor and the guidance she received. |
| May 1, 1992 to April 30, 1993 | 20 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating: Fully Successful (Five tier rating)**<br>**(Because of Lowered Rating, Second Complaint Filed with OCR on September 21, 1993)**<br>**Rater: Darwin D. Roberts, Director, Office of Administration and Management**<br>Ms. Dews-Miller is a key asset in the OIG. She is responsible for numerous and varied tasks which impact every member of the OIG and therefore contribute directly to the morale and productivity of the OIG. Generally, she has performed her assigned task in an efficient and effective manner. She has also completed professional development courses, which have added to her knowledge, skills and abilities.<br><br>**Reviewer: Louis J. Leporatti, Executive Assistant**<br>I have been fairly well informed as to the specific assignments and responsibilities of Ms. Dews-Miller throughout the rating period. To the best of my knowledge the requirements and standards under which she was expected to perform against are considered to be fair and reasonable.<br><br>I agree the Ms. Dews-Miller's performance overall is at the fully successful level. But, I also believe that with little effort she can easily achieve a rating at the next higher level. She is a capable employee who wants to succeed but is locked into a position with no growth potential. The guidance she has received from her supervisor has been adequate. |

7

Attachment 10 Page 7 of 9 Pages

Attachmt 7,
Pg. 7 of 9

## PERFORMANCE EVALUATION RATINGS AT USIA FROM JUL' (TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER)

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| May 1, 1993 to April 30, 1994 | 21 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating:  Fully Successful  (Five tier rating)** (Because of Lowered Rating, Third Complaint Filed with OCR on October 21, 1994) <br><br> **Rater:  Darwin D. Roberts, Director, Office of Administration and Management** (Optional comments:  NONE) <br><br> **Reviewer: Louis J. Leporatti, Executive Assistant** I have been aware of the rated employees' responsibilities and assignments throughout the rating period.  Her performance requirements and standards are considered to be reasonable and consistent with other positions in the office.  Her responsibilities have been carried out to the level assigned by her rating officer.  The relationship with her supervisor has not been a positive one.  While she has received adequate guidance the nature of her relationship with her supervisor may have adversely affected her performance. |
| May 1, 1994 to January 24, 1995 | 22 Years 7 Months 5 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating:  Minimally Successful  (Five tier rating)** (Formal EEO Complaint Still Unresolved at EEOC) <br><br> **Rater:  Darwin D. Roberts, Director, Office of Administration and Management** <br><br> **Reviewer: Louis J. Leporatti, Executive Assistant** |
| February 1, 1995 to July 31, 1995 | 23 Years 1 Month 12 Days | Budget Analyst GS-0560-11 | Office of the Comptroller (M/CBNEA) | **Rating:  Minimally Successful  (Five tier rating)** (Formal EEO Complaint Still Unresolved at EEOC) <br><br> **Rater:  Carol L. Keith, Budget Officer** <br><br> **Reviewer: Eva Diekmann, Budget Officer** <br><br> NOTE:  No Personnel Action, (SF-50) provided for detail in excess of 30 calendar days to the position of Budget Analyst, GS-560-11. |

8

Attachment 7
Page 8 of 9 Pages

Attachment 7
Pg 8 of 9

PERFORMANCE EVALUATION RATINGS AT USIA FROM JUL 1    |TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| August 1, 1995 to April 30, 1996 | 23 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | Rating: Automatically Fully Successful in Absence of a Rating. (Five tier rating)<br><br>Rater: Ann Young, AIG for Administration and Management<br><br>Reviewer: Marian C. Bennett Inspector General |
| May 1, 1996 to December 9, 1996 | 24 Years 5 Months 20 Days | Administrative Officer GS-0341-11 | Office of General Counsel | Rating: Automatically Fully Successful in Absence of a Rating. (Five tier rating)<br><br>Rater: UNKNOWN<br><br>Reviewer: UNKNOWN |

9



Attachment 10
Page 9 of 9 Pages

Attachmnt 7
Pg 9 of 9

USIA'S PROCESSING OF OCR-96-15 FORMAL CⁿLAINT FILED BY ROSE M. DEWS MILLER

| DATE | REGULATION | COMPLIANCE/ NON-COMPLIANCE | DESCRIPTION |
|---|---|---|---|
| November 28, 1995 | 29 C.F.R. 1614.105(a) | Dews Miller Complied. | Dews Miller discussion of informal complainant with USIA-OCR Brenda Ruffin. |
| December 7, 1995 | 29 C.F.R. 1614.105(a) Must initiate contact with an EEO Counselor within 45 days | Dews Miller Complied. | First meeting date with EEO Counselor Darby. |
| March 7, 1996 | 29 C.F.R. 1614.105(d) Final interview within 30 days of dated aggrieved person brought the matter to Counselor's attention. | USIA Non Compliance 98 calendar days to complete last interview, rather than required 30 calendar days. | Date of Last Interview with EEO Counselor Darby |
| March 13, 1996 | 29 C.F.R. 1614.106(b) | USIA Non-Compliance | Letter sent from USIA-OCR referencing right to file formal complaint. |
| March 28, 1996 | 29 C.F.R. 1614.106(b) Complaint must be filed within 15 days of receipt of the notice. | Dews Miller Complied. | Dews Miller filed formal complaint with USIA-OCR. |
| April 1, 1996 | 29 C.F.R. 1614.106(d)(2) The agency is required to conduct a complete and fair investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the period. | USIA Non-Compliance. 182 calendar days past prior to USIA authorizing a Report of Investigation on September 30, 1996. | USIA-OCR accepted formal complainant but did not authorize a Report of Investigation until September 30, 1999. |
| May 1, 1996 | | | USIA-OCR Delia Johnson met with my representative, John D. Pratt to discuss possible settlement of formal complaint. |
| May 20, 1996 | | | USIA-OCR Delia Johnson offered written draft settlement to my representative, John D. Pratt settle OCR-96-15. |
| June 13, 1996 | | | My representative, John D. Pratt made a written counter offer of Delia Johnson's May 20, 1996 draft settlement. No response from USIA-OCR on this counter offer. |

1

Attachment 8
Pg 1 of 4

Exhibit 5-10

USIA'S PROCESSING OF OCR-96-15 FORMAL COMPLAINT FILED BY ROSE M. DEWS MILLER

| DATE | REGULATION | COMPLIANCE/ NON-COMPLIANCE | DESCRIPTION |
|---|---|---|---|
| September 30, 1996 | 29 C.F.R. 1614.106(d)(2) The agency is required to conduct a complete and fair investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the period. | USIA Non-Compliance. 182 calendar days past prior to USIA authorizing a Report of Investigation on September 30, 1996. | USIA-OCR issued letter to Lee M. Kramer authorizing him to do a report of investigation, (ROI). |
| December 5, 1996 | | | USIA-OCR Hattie Baldwin offered a settlement of OCR-96-15, with a deadline of COB, December 6, 1996. |
| December 6, 1996 | | | Deadline of USIA-OCR Hattie Baldwin offer for settlement of OCR-96-15. |
| December 9, 1996 | | | Dews Miller was Wrongfully Discharged from USIA. |
| December 11, 1996 | | | Dews Miller and John Pratt met with Lee Kramer at USIA-OCR's office. Handed to John Pratt by Delia Johnson was Personnel papers for Dews Miller to complete. Notice was sent to Delia Johnson that the proper paperwork did not exit and there was no completion of those Personnel papers by Dews Miller. |
| February 10, 1997 | 29 C.F.R. 1614.106(d)(2) The agency is required to conduct a complete and fair investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the period. | USIA Non-Compliance. 315 calendar days past from USIA's acceptance of formal complaint on April 1, 1996 prior to receipt of Report of Investigation from Lee M. Kramer. | ROI signed and submitted by Lee M. Kramer to USIA-OCR. |
| March 10, 1997 | | USIA Non-Compliance. Did it take USIA 28 calendar days to receive ROI for Lee Kramer? | ROI stamped "Received 3/10/97" with #5483 and initiated by (vlr). |
| March 12, 1997 | | USIA Non-Compliance | USIA-OCR sent letter attached to ROI. |

2



Attachment
Page ___ of _1_ Pages

Attachmnt 9
Pg 2 of 7

USIA'S PROCESSING OF OCR-96-15 FORMAL COMPLAINT FILED BY ROSE M. DEWS MILLER

| DATE | REGULATION | COMPLIANCE/ NON-COMPLIANCE | DESCRIPTION |
|---|---|---|---|
| March 15, 1997 | | USIA Non-Compliance | Dews Miller's receipt of Report of Investigation, (ROI) for USIA-OCR. Letter had statement, "If you fail to request either, a Final Decision will be issued within 60 calendar days of the end of the 30-day period referenced above and you will be advised of your further appeal rights." Signed by Delia L. Johnson for Hattie P. Baldwin, Esq., and Director. |
| April 14, 1997 | | USIA Non-Compliance | 30-calendar days from Dews Miller's receipt of USIA-OCR's letter dated 3/12/96. |
| June 13, 1997 | 29 C.F.R. 1614.110 | USIA Non-Compliance Non issuance of "Final Decision" by USIA. | Expiration of 60-calendar days for USIA-OCR to issued a Final Decision on OCR-96-15. |
| June 13, 1997 | | | Dews Miller has awaited for the Final Decision from USIA-OCR. One Year passed and USIA-OCR made NO DECISION on Dews Miller's counteroffer submitted on June 13, 1996. |
| November 6, 1997 | 29 C.F.R. 1614.105 | USIA Non-Compliance | Dews Miller sent letter to USIA's OCR Director, Hattie Baldwin requesting an EEO Counselor to discuss an informal complaint. Baldwin has yet to issue an EEO Counselor to DewsMiller. |
| January 26, 1999 | 29 C.F.R. 1614.110 | USIA Non-Compliance 1,025 Calendar days later USIA issues "Final Decision". | Dews Miller received "Final Decision" letter from USIA-OCR. |
| February 25, 1999 | 29 C.F.R. 1614.403 | Dews Miller Complied. | Dews Miller submitted appeal to EEOC based on receipt of USIA-OCR letter on January 26, 1999. |
| March 18, 1999 | | | John D. Pratt sent letter to EEOC and USIA in reference to letter date and receipt of EEOC's acceptance of appeal for OCR-96-15. |
| March 25, 1999 | | | John D. Pratt called EEOC and was told that a letter was sent out dated March 22, 1999 extending time for comments on OCR-96-15 until April 30, 1999. |
| April 23, 1999 | | | Dews Miller sent letter to EEOC and USIA requested copy of letter sent to John D. Pratt on March 22, 1999. |
| April 29, 1999 | | | Dews Miller called EEOC to inquire on her April 23, 1999 letter. She was told that an extension until June 1, 1999 was granted and the letter was sent to John D. Pratt on April 27, 1999. |
| June 1, 1999 | 29 C.F.R. 1614.403 | Dews Miller Complied. | John D. Pratt submitted comments to EEOC referencing OCR-96-15. |
| June 23, 1999 | Appeal No. 01983674 Agency No. OCR-9615 | USIA Non-Compliance | EEOC issued decision to REVERSE the FAD and to REMAND appellant's complaint in accordance with this decision. |

3

USIA'S PROCESSING OF OCR-96-15 FORMAL C...LAINT FILED BY ROSE M. DEWS MILLER

| DATE | REGULATION | COMPLIANCE/ NON-COMPLIANCE | DESCRIPTION |
|------|------------|----------------------------|-------------|
| July 16, 1999 | Agency sent letter via Certified Mail. | USIA Complied with notification to Dews Miller within 30 days. | Acknowledgement of receipt of EEOC decision, dated June 23, 1999. |
| September 30, 1999 | USIA merged with Department of State. | USIA Non-Compliance of EEOC Decision within 60 days of receipt | Baldwin made decision that Department of State would handle EEO counseling without consulting and /or approval of Dews Miller. |
| November 19, 1999 | Dews Miller sent Certified Letter to Department of State Assistant Secretary for EEO. | Department of State non-compliance with EEOC 6/23/99 Decision. | Dews Miller requested status of June 23, 1999 EEOC decision. |
| Mid January 2000 | Dews Miller sent another Certified Letter to Department of State Assistant Secretary for EEO. | Still Department of State non-compliance with EEOC 6/23/99 Decision. | Second Letter from Dews Miller requesting status of June 23, 1999 EEOC decision. |
| March 22, 2000 | Dews Miller's Hearing of Department of Labor's OWCP. | USIA/Department of State--No Show. | Hearing went on as scheduled. |
| March 22, 2000 | Dews Miller hears from Media that Hartman vs Albright Decision Made. | Department of State Agreed to a $508 million settlement. | Dews Miller was a class member in this case. After 23 years of this long standing case, Department of State agreed to a $508 million settled of this case. |
| March 22, 2000 | Department of State contacted EEOC for EEO counseling for Dews Miller. | Over 240 days of Non-Compliance by USIA/Department of State. | |
| March 24, 2000 | Department of State notifies Dews Miller that EEOC will provide EEO counseling. | Over 240 days of Non-Compliance by USIA/Department of State. | |
| April 12, 2000 | EEOC contacts Dews Miller via letter referencing conducting an initial interview. | Karen Swilling, EEO Counselor, Office of Equal Opportunity. | CC was noted on 4/12/00 letter that Dews Miller received copy of this letter, but a letter was not received by Dews Miller from EEOC. |
| April 25, 2000 | Initial interview with EEOC. | | |

4

Attachmnt 8
Pg 4 of 4

### Rose M. Dews Miller
### Post Office Box 863
### Clinton, MD   20735-0863

August 8, 2001

Mr. John D. Pratt,
Representative
6713 Harwood Place
Springfield, VA  22152-2419

Dear Mr. Pratt:

I am forwarding you the attached 76-page interrogatory, which I finally completed today.  Ms. Pierce, EEO Investigator from Southwind could not have been provided the full deck of cards from the questions asked in her attached interrogatory.

Hattie Baldwin, U.S. Department of State's OCR Deputy Director is a charged party in this complaint and she presents a conflict of interest in this case.  We have asked Ms. Baldwin several times to recuse her from this case, but she refuses.  Ms. Baldwin is one of the many "chain conspirators" from the former U.S. Information Agency that is participating in a "cover up" of the wrong doings at USIA from my September 16, 1994 "whistleblowing" to IG-Marian Bennett involving the Office of Inspector General, Office of Personnel, Office of Civil Rights, Office of the Comptroller and the Office of the General Counsel.

When we attended the Town Meeting at EEOC on May 18, 2000, Mr. Carlton Hadden mentioned that they sometimes have to work with the Office of Special Counsel on cases at EEOC.  From my dealings with USIA, and now State the attached case and interrogatory is one that should be handled away from State Department due to Baldwin's involvement and referred to EEOC and OSC from processing.

I have to get to the post office before it closes, so I will have to talk with you later.

Sincerely,

*Rose M. Dews Miller*

Rose M. Dews Miller
Complainant

Enclosure:  As stated

Attachment ___12___
Page __1__ of __1__ Pages

P... 1 OF 1

Exhibit _5-12_

## AMENDED INTERROGATORY

Location: Clinton, MD

I, Rose Mary Dews Miller, hereby amend my 76-page interrogatory signed on August 8, 2001.

**Item 03:**
Please state the name of the organizational unit to which you were assigned and the address of your duty station.

**Additional Answer 03:**
Attached is a 2-page July 27, 1996 memo to Mr. Pratt, Representative on list of assignments from November 27, 1995 to July 27, 1996 that provides more detail of my assignments at the USIA in Washington, DC.

###########################################

**Item 07:**
Please state your disabling condition?

**Additional Answer 07:**
Fibromyalgia (also called the "invisible disability"); chronic pain suffer; stress; depression; dual carpal tunnel along with cervical radiculopathy and myelopathy; in addition to the accepted neck and shoulder injury by OWCP on 9/29/95.

###########################################

**Item 30:**
Were you ever reimbursed for the period of AWOL?

**Additional Answer 30:**
Yes, to an extent.  OWCP reimbursed me from October 4, 1995 to November 26, 1995 by check on February 7, 1997.  But from August 21, 1995 to October 3, 1995, OWCP requested that USIA reimbursed me for COP, the leave charged and AWOL three times in 1997.  To date USIA and now the Department of State have never reimbursed me for the COP as requested by OWCP, EEOC's order on June 23, 1999 and July 19, 2001, nor removed the AWOL from my records, given me my leave accruals, or removed the SF-50 for the Temporary Appointment NTE 12/09/96 effective 12/10/95 which was the "disciplinary action" imposed from the December 5, 1995 meeting with Carol Epstein, Jenni Mallios, Blanche Twardowski, Delia Johnson, Stacey Rose Blass and myself.  (Copies of OWCP requests are attached)

PAGE 1 OF 0

Sincerely,
*Rose M. Dews Miller*
Rose M. Dews Miller
Complainant

DATE: 8-16-01

Attachment _13_
Page _1_ of _1_ Pages

Exhibit _5-13_

08/21/2001  20:36    301--868--5          ROSE DEWS MILLER

**United States
Information
Agency**

WASHINGTON DC 20547-0001



USIA

September 21, 1995

U.S. Department of Labor
Office of Workers' Compensation Program
800 North Capitol Street, N.W., Room 800
Washington, D.C. 20211

                    EMPLOYEE:  DEWS MILLER, Rose M.
                    FILE NUMBER: A25-0470961
                    DOInjury:  July 10, 1995

Dear Claims Examiner:

The enclosed bill ($44.53) from Southern Maryland Hospital
represents medical services provided to our employee, Rose Mary
Dews Miller.

Initially, Ms. Dews Miller's injury was not thought to be
disabling.  She had returned to full duty for approximately a
month after seeking medical attention in July.  Suddenly, she
claimed a relapse, and has been absent since August 21.  She
requested indefinite continuation of pay to cover her absences
beginning August 21.  Despite my (and her supervisor's) request
for supporting medical documentation, none has been provided.
Therefore, continuation of pay has not been granted.

If you have any questions or require further information, please
don't hesitate to call me on (202) 619-5862.  Thank you for your
assistance in this matter.

                    Sincerely,

                    Jeni Mallios
                    Personnel Management Specialist
                    Office of Human Resources

Enclosures

                                        3  of  13

                        Attachment  14
                        Page  1  of  1  Pages

08/21/2001  20:36    301--868--92█

ROSE DEWS MILLER

U.S. Department of Labor

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Room 800
800 North Capitol Street, N.W.
Washington, D.C. 20211

File Number:

November 9, 1995

A25-470961
Claimant: Rose M. Dews-Miller
Injury Date: 07/10/1995

United States Information Agency
M PDM  Room 518
Attn: Ms. Jeni Mallios
301  4th  Street  SW
Washington, D.C.  20547

Dear Ms. Mallios:

I am writing in regards to the compensation case of Ms. Dews-Miller and our telephone conversation on November 8, 1995 concerning form CA-7 submitted by her.

Per our conversation, enclosed is the form CA-7 submitted. Ms. Dews-Miller completed both the front and the back of the form. As you can see, Ms. Dews-Miller states that the reason why she completed the back of the form is that she was placed on AWOL because of her injury and she was refused COP. There was no indication given that your office had refused to complete the form. **Ms. Dews-Miller is being advised by copy of this letter that all compensation claims as well as copies of all medical documentation should be submitted through her agency. She should keep copies of all information submitted but unless the agency completes a claim form, it is considered an invalid claim.

Enclosed is form CA-7 submitted and a copy of the entire medical record for your records. Please have Ms. Dews-Miller complete a new form. Also provide this office with a breakdown of the time being claimed as well as a breakdown of COP paid to the employee.

If you have any questions, feel free to call me and I will assist you in any way I can. Thank you for your assistance in this matter.

Sincerely,

Julio C. Resendes
Claims Examiner

Rose M. Dews-Miller
8507 Woodyard Road
Clinton, Md. 20735

Working for America's Workforce

F___ 4 c: 13

Attachment ___15___
Page __|__ of __|__ Pages

July 27, 1996

Mr. Pratt:

Here is a list of assignments since my return to work on November 27, 1995.

- 11/27 - 30/95, Office of Inspector General, Room 1100, Donohoe Building, Supervisor - Ann T. Young. told me on 11/30/95, that I was to report to Jeni Mallios in Personnel on 12/1. As I was in the lobby of the Donohoe building, I saw J.Mallios and Carol Epstein leaving OIG after Ann had instructed me where to report. OIG was taking the point that I had completed 90 days in OIG from 9/1 to 11/30/95.
- 12/1/95 - 2/28/96, Office of Personnel, Room 518, but was sent to Career Learning Center instead of locating a position, I signed in/out in Personnel, but spent whole day at the Center in Room 1525, Switzer Building, Supervisor- Blanche Twardowski. On 12/5/95, there was a "BIG MEETING" with Blanche T, Jeni M., Stacey Rose, Delia J., Carol Epstein and my, as to would I return to OIG to complete the 90 days that were in the 1/30/95 Settlement Agreement. My reponse was to Carol Epstein, whatever the Agency decided and she would not accept that answer, so I told her after her continuous yelling to me, that I would take the temporary position, but on 12/18/95 sent memo to Blanche T, stating whatever the Agency decided then that would be the job I would take. The Agency found me no job and continued to send me to the Career Center for periods stated.
- 2/29 to 3/1/96, Union Office, Room 348. Stacey Rose-Blass called Blanche and Jeni Mallios to find out why I was not assigned to a position and the Career Center was closed for Renovations from 2/29 to 3/7/96. Per, Stacey on afternoon of 3/1/96, Blanche Twardowski and her talked and I was to report to Jean Monroe in Room 352 on morning of March 4, 1996.
- 3/4 - 5/1/96, Office of Research, with Jean Monroe to assist her with Admin work, I completed each assignment as instructed by Jean and was spending approximately 50% of my work day at the Career Center. Supervisor, still Blanche Twardowski. On 4/25/96, I was told by Jean M. to see Steve?, because he had a project for me to complete. When I went to see what it was, he wanted me to reorganize his secretary's filing system and move files from several cabinets to another. I looked and stated that with my work injury, I was unable to perform the duties that he had requested.
- 5/1 - 6/14/96, back at the Career Center, signing in/out Room 518, USIA Building. Supervisor, Blanche Twardowski. On 6/11/96, Jan Brambrilla, called the Career Center several times to harass me about coming to her office immediately and I told her, I was not coming there without my representative.
- 6/17 - 7/24/96, Reported to Office of General Counsel, Room 700, USIA Building. Supervisor, Constance Harley. Assigned GC/V move from FEMA Bldg to Room 734, USIA Bldg. Move took place on 7/13/96.

FROM 5 OF 13

Attachment 16
Page 1 of 2 Pages

- Page 2
- Assignment Document, dated 7/27/96
- 
- 
- 7/24 - 26/96, Per Constance Harley and Lorie Nieumberg, I was to oversee clerical support person on Hartman Task Force. but there was no support staff there besides me, I was to sat in office of Brenda McCormick and be the Admin Officer in Room 202, FEMA Building. Approximately, 4:50pm on 7/26/96, Lorie N. and Dick Parker come in my office, close the door and Lorie N. tells me that they have some rather embarrassing news for me. She said that in a meeting that afternoon, someone on the Task Force had remembered my name as a Plaintiff in the Hartman case, and that it was unethical for me to be working there. They had check the list of over 1100 people and my name appeared. She was aware that I would be on leave until Thursday, 8/1/96 and I would report back to Room 700, GC. Also she said that Brenda had given me some keys and I said, yes here they are and she took them from off top of the desk. Also she wanted to know if I was aware that I was a plaintiff and I said, if so, it was so long ago when I applied, that I did not recall and Lorie N. says it was in 1989. As far as they were concerned I was on Administrative leave and all I had to do was to leave the office to go home, I signed out approximately 5pm and was due off at 5:25pm.

Attachment 16
Page 2 of 2 Pages

08/21/2001 20:36    301--868--

ROSE DEWS MILLER

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
800 N CAPITOL ST NW RM 800
WASHINGTON DC 20211

January 27, 1997

File Number:    250470961
Date of Injury: 07/10/1995
Employee:       ROSE DEWS-MILLER

UNITED STATES INFORMATION AGCY
M PDM  ROOM 518
ATTN MS Jeni Mallios
301 4TH STREET SW RM 518
WASHINGTON, DC 20547

Dear Ms. Mallios:

Reference is made to Ms. Rose M. Dews-Miller's compensation case and our January 24, 1997 telephone conversation concerning the employer's completed version of form CA-7.

The case file was reviewed to determine whether the time claimed on form CA-7 was supported by medical documentation. After reviewing the case, we find that Ms. Dews-Miller is entitled to the period claimed. Your records do need to be change, however, to reflect the correct period of continuation of pay, (COP), to which Ms. Dews-Miller is entitled. We understand that the reason why it was not paid was that your office had not received any medical documentation establishing a work related disability. This office will process the period claimed from 10/04/95 to 11/25/95. The agency's records should be changed to reflect the period of COP as - 7/19/95 only, and from 08/21/95 to 10/03/95 (44 calendar days).

If your office has any questions, feel free to contact this office.

Sincerely,

Julio C. Melendez
Claims Examiner

cc:

ROSE M. DEWS-MILLER
8507 WOODYARD RD
CLINTON, MD 20735

Attachment  17
Page  1  of  5  Pages

08/21/2001  20:36   301--868-   7         ROSE DEWS MILLER                              PAGE 18

U.S. Department of Labor

Employment Standards Administration
Office of W... Compensation Programs
Division of ... eral Employees' Compensation
Room 800
800 North Capitol Street, N.W.
Washington, D.C. 20211

April 28, 1997

File Number: A25-0470961
Claimant: Rose M. Dews-Miller
Injury Date: 07/10/95

Rose M. Dews-Miller
8507 Woodyard Road
Clinton, Md.  20735

Dear Ms. Dews-Miller:

I am writing in response to your April 15, 1997 letter to
Mr. Nick Nolan.

I will answer your questions in the order they appeared in
your letter.

1) Review of your case file shows that Physical Therapy was
approved prior to the surgery at your doctor's request.
He felt that you would be in better shape to endure the
surgery.  It is understood that when a person has surgery
to a joint, as you did with your shoulder, that physical
therapy is given in order increase range of motion.  If
therapy is needed in addition to the normal prescribed
period after a surgery, authorization is then sought.
Since you have not undergone the needed therapy, this
letter will serve as authorization for the therapy.  The
period authorized will be from May 1, 1997 through May
30, 1997.  If additional therapy is needed, the request
can be faxed to this office at (202) 565-9840.

2) As for the $1277.75 bill for medical expenses, we have no
way of identifying this bill.  Was this bill for payments
you made directly to your doctor for treatment?  If so,
we need a copy of the itemized HCFA-1500 along with your
receipts or cancel checks for payments made.  If the
reimbursement is for prescription medication, copies of
the prescriptions, with the name of the drug, and
receipts should be provided.  If Travel was involved, a
complete SF-1012 should be provided.  We cannot accept
"estimates" as stated in your letter.

UNITED STATES INFORMATION AGENCY
M PDM ROOM 518
ATTN: MS. JENI MALLOS
301  4TH STREET  SW  RM 518
WASHINGTON, DC  20547

Working for America's Workforce

Attachment   17
Page  2  of  5  Pages

08/21/2001  20:36   301--868-

ROSE DEWS MILLER

3) Your agency was advised that you were entitled to Continuation Of Pay not to exceed 45 calendar days. The period was given in our 1/27/97 letter. Your agency is being advised by copy of this letter to make such payment or change the record to reflect COP if the period was previously charged to leave. If leave was previously charged, the leave period should be re-credited and COP put in its place. If they should have any questions concerning this matter, then should telephone this office.

4) You are aware or reasonably should have been aware that since this office approved the shoulder surgery, any disability resulting from such surgery would be covered by this office. For CA-7 should be submitted for disability resulting from the 3/4/97 surgery through your employing agency. You are to complete the front of the form and the back is to be completed by your agency.

Once we receive the above information, we will be able to take further action on the pending actions in your case. I hope that this information answers your letter.

Sincerely,

Julio C. Melendez
Claims Examiner

P. 88 9 OF 13

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
800 N CAPITOL ST NW RM 800
WASHINGTON DC 20211

August 26, 1997                    FILE NUMBER: 250470961
                                   DATE OF INJURY: 07/10/1995
                                   EMPLOYEE: ROSE DEWS-MILLER

UNITED STATES INFORMATION AGCY
M PDM  ROOM 518
ATTN MS Jeni Mallios
301 4TH STREET SW RM 518
WASHINGTON, DC 20547

Dear Ms. Mallios:

Reference is made to Ms. Rose M. Dews-Miller compensation
case.

Ms. Dews-Miller has sent inquiries concerning non receipt of
continuation of pay for the period from August 21 to October
3, 1995. A review of form CA-1 shows that Ms. Dews-Miller
did sustain a traumatic injury. It also shows that timely
written notice of traumatic injury was given within 30
calendar days. The Federal Employees Compensation Act
(Title 5 USC) provides:

1) Subsection 8118(a) The United States/shall authorize the
   continuation of pay of an employee, as defined in section
   8101(1) of this title who has filed a claim for a period
   of wage loss due to a traumatic injury with his immediate
   superior on a form approved by the secretary of labor
   within the time specified in section 8122(a)(2) of this
   title

2) Subsection 8122(a)(2) written notice on injury or death
   as specified in section 8119 of this title was given
   within 30 days.
Subsection 8119 refers to notice of injury or death.

Ms. Dews-Miller's injury was in 1995, over two years ago.
The matter of COP should have been resolved by now. Please
have the appropriate personnel conclude this matter by
paying Ms. Dews-Miller continuation of pay due. If she was
charged leave during that period of time, the records should
reflect the leave being restored to Ms. Dews-Miller. The
record should then reflect COP for that period of time. Ms.
Dews-Miller should be advised in writing of the actions
taken.

PAGE 10 OF 13

We appreciate your assistance in bring this matter to a conclusion.

Sincerely,

Julio C. Melendez
Claims Examiner

ROSE M. DEWS-MILLER
P O BOX 863
CLINTON, MD 20735

08/21/2001  20:36   301--868--       ROSE DEWS MILLER

RCVD FEB 12 '98 PM 3:59

To: "Johnson, Della L." @ PC_LAN_Users.USIA
From: Mellios, Jenny M
Subject: Rose Mary Dews Miller
Date: 2/9/98    Time: 9:52AM

Rose Mary's nonpay status was changed by virtue of being compensated by the Department of Labor for the
following periods:   RCVD FEB 12 '98 PM 3:58

1) A payment covering continuation of pay is pending at the Agency. That payment, should she sign and
return her IA-134 (Clearance for Final Salary Payment) and notify them of where the check should be sent,
covers the period 8/21/95-10/3/95.

2) Labor paid disability compensation (check issued 2/7/97) for the period 10/4/95-11/26/95.

(FYI Rose Mary returned to work midday 11/27/95, then her appointment terminated on 12/9/96)

3) Labor paid disability compensation (check issued 6/27/97) to cover the period 3/3/97-6/7/97.

4) In a letter dated 10/10/97, Labor denied her claim for compensation covering 12/10/96-3/2/97.

5) Labor paid disability compensation (check issued 10/31/97) for the period 6/9/97-9/29/97.

Let me know if you need any further information   jm



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

By FAX To Ruth A. Pietro
@ 1-410-730-1160

In my Rush to get the
interrogatory in the mail
I left this order out.
Therefore, here it is by
FAX
8/10-01

|  |
|---|
| Rose M. Dews-Miller, |
| Complainant, |
| |
| v. |
| |
| Colin L. Powell, |
| Secretary, |
| Department of State, |
| Agency. |
| |
| Appeal No. 01992980 |
| |
| Agency No. OCR-96-152 |

### DECISION

Complainant timely initiated an appeal from an agency decision concerning her complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*

Complainant filed a formal complaint dated March 28, 1996, alleging that she was discriminated against in reprisal for prior EEO activity when:

(1)     For the May 1, 1994, to January 24, 1995 Performance Appraisal Report, complainant received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain complainant's deficiencies to her before issuing this rating, pursuant to the Manual of Operations & Administration ("MOA"), Part V-A, Section 453.2(c)(1), (2), and (3);

(2)     For the February 1, 1995, to July 31, 1995 Performance Appraisal Report, complainant received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain complainant's deficiencies to her before issuing this rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2), and (3);

PAGE 1 OF 6

Exhibit 5-14

2

01992980
OCR-96-15R

(3)    From September 5, 1995, through November 24, 1995, complainant was placed on Absence Without Leave (AWOL) for a work injury. Complainant reported the work injury to her immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed complainant on AWOL was not her supervisor at the time of her work injury; and

(4)    On November 9, 1995, complainant was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss complainant's deficiencies in performance with her that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2), and (3).

The agency issued a decision dated March 6, 1998, dismissing issue (3) pursuant to 29 C.F.R. § 1614.107(a)(5), on the grounds that it was moot. The agency also denied EEO Counseling for separate issues (Issues A through F) brought by the complainant. The record reveals that by a letter dated November 6, 1997, complainant claimed that she was subjected to discrimination in reprisal for prior EEO activity and requested counseling on the following matters:

(A)    Continued and continuous harassment by [A-1, an employee in the Office of Human Resources,] and others, who participated in creating a "hostile environment" in any personnel action, benefit, and entitlement for [her]self after filing prior EEO complaints;

(B)    Invasion of [her] personal medical records obtained from the Office of Workers' Compensation Programs (OWCP) and then communicated to others in USIA who had no right to their contents;

(C)    Withholding essential records from OWCP from November 1995 to January 1997, which caused an unwarranted delay in the processing of [her] claim;

(D)    Failure of A-1 to correct [her] earnings and leave statements to reflect COP instead of AWOL;

(E)    [A-1's] illegal and unethical discussion of [her] medical files with other unqualified persons in USIA; and

(F)    [Her] non-accumulation under the Rehabilitation act of 1973, ... which requires federal agencies to develop and implement plans for the hiring, placement, promotion and retention of persons with disabilities.

The Commission issued a decision dated June 23, 1999, reversing the agency's March 6, 1998 decision, and remanding complainant's complaint back to the agency for further processing.

Specifically, the Commission ordered the agency to provide counseling for issues (A), (B), (C), (E), and (F) and to allow complainant to file a formal complaint on these issues after completion of counseling. In addition, the agency was ordered to process issue (3) of her March 28, 1996 complaint.

The record reveals that complainant was provided counseling on the remanded issues and subsequently filed a formal complaint on these issues on August 23, 2000. By letter dated January 26, 2001, the agency notified complainant that it accepted the following issues for investigation:

(i)     Continued and continuous harassment by an employee in the Office of Human Resources, and others, who participated in creating a "hostile environment" in any personnel action, benefit, and entitlement for complainant after filing prior complaints (Issue A);

(ii)    Invasion of complainant's personal medical records obtained from OWCP and then communicated to others in USIA who had no right to their contents (Issue B);

(iii)   Withholding of essential records from OWCP from November 1995 to January 1997, which caused an unwarranted delay in processing complainant's claim (Issue C);

(iv)    An employer's illegal and unethical discussion of complainant's medical files with other unqualified persons in USIA (Issue E);

(v)     Complainant's non-accommodation under the Rehabilitation Act of 1973 (P.L. 93-112, as amended), which requires federal agencies to develop and implement plans for the hiring, placement, promotion, and retention of persons with disabilities (Issue F); and

(vi)    From September 5, 1995, through November 24, 1995, complainant was placed on AWOL for a work injury. Complainant reported the work injury to her immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed complainant on AWOL was not her supervisor at the time of the work injury. (Issue 3)

The fragmentation, or breaking up, of a complainant's legal claim during EEO complaint processing has been a significant problem in the federal sector. For complainants, fragmented processing can compromise their ability to present an integrated and coherent claim of an unlawful employment practice for which there is a remedy under the federal equal employment statutes. For agencies and the Commission, fragmented processing substantially increases case inventories and workloads when it results in the processing of related matters as separate complaints. *See* EEOC Management Directive (MD) 110, as revised, November 9, 1999.

4

01992980
OCR-96-15R

In the present case, the record indicates that complainant is essentially alleging that she was the victim of ongoing harassment and discriminatory treatment by agency officials. The Commission finds that complainant's two claims of reprisal harassment should be adjudicated as one claim of harassment and thus, we will not address the agency's finding of no discrimination with regard to issues (1), (2), and (4).

The Commission hereby VACATES the agency's decision with respect to issues (1), (2), and (4) and REMANDS these issues for inclusion in the processing of the previously remanded issues from the subject complaint.

## ORDER

The agency is ordered to consolidate for processing the claims of retaliatory harassment pending before the agency, which are like or related to the present complaint. The agency shall make every effort to locate and determine the status of complainant's complaints in the federal EEO process, if any, and consolidate the complaints for hearing, if complainant requests, or for an agency final decision.

The agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." This report shall include supporting documentation.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations. Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

5

01992980
OCR-96-15R

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days from the date** that you receive this decision. In the alternative, you may file a civil action **after one hundred and eighty (180)** calendar days of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court.

Attachment _____19_____
Page __5__ of __6__ Pages

5 ... 6

6

01992980
OCR-96-15R

"Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").**

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

JUL 1 9 2001
Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

JUL 1 9 2001
Date

Equal Opportunity Assistant

Attachment 19
Page 6 of 6 Pages

## SETTLEMENT AGREEMENT

This Agreement, between the employee, Rose Mary Dews Miller, and the U.S. Information Agency (USIA), is in settlement of Complaints of Discrimination filed by the employee on June 4, 1993, and September 7, 1993, as well as all other EEO complaints against the Agency pending at an informal stage.

**This Agreement is based on the following facts:**

Ms. Miller filed formal Complaints of Discrimination against the Agency on June 4, 1993, and September 7, 1993, which were fully investigated and scheduled to be heard by an EEOC Administrative Judge on January 18 and 19, 1995. Ms. Miller subsequently filed at least one more complaint, dated October 21, 1994, with USIA's Office of Civil Rights, still at an informal stage. Prior to commencing the hearing, the parties entered into settlement negotiations with the assistance of the Administrative Judge.

**THEREFORE IT IS AGREED AS FOLLOWS:**

1. The Agency will detail Ms. Miller out of the Office of Inspector General (OIG) to the Office of the Comptroller (M/C) as a Budget Analyst, GS-560-11/4, for a period of six months starting February 1, 1995. She will have the duties described in PDM-40-95, and her salary will be paid by OIG.

2. OIG will pay for any training course/seminar(s) that M/C recommends to enhance Ms. Miller's ability to succeed in the temporary position. Ms. Miller agrees that any extended formal training, exceeding five days, will take place during nonduty hours.

3. If at the end of six months Ms. Miller achieves a rating of at least fully successful, she will be retained at M/C in the PDM-40-95 or comparable position. If at the end of six months Ms. Miller's performance is not rated at least fully successful, the Agency agrees that a) the Office of Personnel will attempt to place Ms. Miller in an appropriate position in a non-OIG unit with three months probation; or b) if no such non-OIG placement is available, OIG will retain Ms. Miller for a three-month probationary period as specified in paragraph 5 below.

4. OIG reserves the right to redefine the requirements and standards of Ms. Miller's existing GS-11 position, so long as the duties remain within the scope of her current position description.

PAGE 1 OF 3

Attachment __20__
Page __1__ of __3__ Pages

Exhibit __9-1__

5.  If Ms. Miller returns to OIG after the detail, she will be on probation for three months. Within the three months, OIG will evaluate Ms. Miller's performance after the first six weeks, and again at the end of the three-month period.

6.  If Ms. Miller earns the rating of at least "fully successful" after three months at OIG, she will be retained at OIG. If Ms. Miller does not earn a rating of at least fully successful at the end of the three-month period, she will be transferred out of OIG to a temporary position, not to exceed one year. Ms. Miller agrees to resign from USIA not later than the end of that temporary position, during which she will receive USIA's outplacement assistance.

7.  Ms. Miller will make a good faith effort to succeed in the position at M/C or in any other USIA position, including active participation in training.

8.  M/C will evaluate Ms. Miller's performance informally every six weeks until a formal evaluation is performed at the end of six months. The evaluations will be based on clearly defined criteria.

9.  Ms. Miller voluntarily withdraws all Complaints of Discrimination, formal and informal, with prejudice and waives all rights to pursue further, either administratively or judicially, any claims contained in any files of complaints pending as of the date of this Agreement. By signing this Agreement, Ms. Miller serves notice that she is withdrawing these complaints and hereby does discharge and release the Agency and OIG, their officers and employees, of any and all liabilities, obligations, claims, and demands whatsoever connected with or arising from the facts, circumstances, and actions of said Complaints.

10. This Agreement is entered into voluntarily by the Agency and Ms. Miller to avoid potential litigation which could be costly and time-consuming for both sides. Accordingly, this settlement cannot be construed to be an admission by the Agency that the alleged discrimination occurred or that Ms. Miller substantially prevailed in her Complaints. It is also understood that this Agreement does not constitute an acknowledgment by the Complainant that the alleged discrimination did not occur.

11. Ms. Miller agrees not to seek, nor to have sought on her behalf, any payment for her attorney fees in these matters.

12. The parties agree that the terms of this Agreement will be kept confidential from current and former USIA employees, except for authorized purposes of the federal government. Any breach of confidentiality shall be a matter subject to appropriate disciplinary action.

13.  If for any reason not attributable to Ms. Miller's conduct the terms of this Agreement are not carried out, provisions found at 29 C.F.R 1614 shall apply, and Ms. Miller shall retain other rights she may have, either statutory or at common law, for breach of Agreement.

Notwithstanding any other provision of the Agreement, the parties agree that this Agreement may be used as evidence in any subsequent proceeding in which either party alleges a breach of Agreement.


_Rose M. Dews Miller_

**Rose Mary Dews-Miller**
**Complainant**

Date  1/27/95


_Bruce M Cooper_

**Bruce M. Cooper, Esq.**
**Attorney for Complainant**

Date  1/27/95


_Stanley M. Silverman_

**Stanley M. Silverman**
**Comptroller, USIA**

Date  1/27/95


_Marian C. Bennett_

**Marian C. Bennett**
**Inspector General, USIA**

Date  1/30/95


_Richard Silverman for_

**Carol B. Epstein, Esq.**
**Assistant General Counsel, USIA**

Date  1/27/95


_Hattie P. Baldwin_

**Hattie P. Baldwin, Director**
**Office of Civil Rights, USIA**

Date  1/31/95


Attachment ___20___
Page __3__ of __3__ Pages

PAGE 3 — 3

## Statement of Facts

On or about June 19, 1972, Rose Mary Dews began her employment with the United States Information Agency (USIA). Ms. Dews held a number of positions throughout the Agency including Payroll Clerk, Cashier, Accounting Technician, Personnel Assistant, Secretary, Administrative Assistant, Unit Manager and Administrative Officer working her way up from a GS-2 to a GS-11. After a number of years of experience, Ms. Dews began her employment with the Office of Inspector General (OIG) in the Agency on March 25, 1990 as a GS-9, Administrative Officer. Ms. Dews assumed this position after she served several years (August 1988 to March 1990) in the Office of African Affairs (OAA). While in OAA, Ms. Dews was promoted from an Administrative Assistant to an Administrative Officer. Throughout her career at the Agency, Ms. Dews had accepted a number of downgrades in order to position herself in the areas where she felt she would be able to fully utilize her financial management and accounting skills and ultimately obtain her goal of being an auditor. For several years, Ms. Dews took accounting classes after working her full-time job at the Agency. Believing that the position in the OIG would present a viable opportunity to demonstrate her financial management competency, Ms. Dews accepted the Administrative Officer position.

After Ms. Dews' first performance appraisal in 1990 in the OIG, Ms. Dews received a highly successful rating. In her second appraisal with the OIG in 1991, Ms. Dews was characterized by her rater as a dependable, pleasant and conscientious employee who was a valuable asset to the OIG. Her reviewer commented that Ms. Dews performed at the highly successful level and required little guidance in managing the financial and personnel resources of the OIG. In her third appraisal with the OIG in 1992, the rater, Mr. Darwin Roberts commented that Ms. Dews was a valuable asset who was a loyal, productive and experienced employee who maintained a professional demeanor. Her reviewer, Louis Leporatti favorably noted her performance in developing a working relationship with himself and her immediate supervisor.

Attachment _B_
Page _1_ of _6_ Pages

1

In 1987, Ms. Dews applied for an auditor position (GS 5/7/9) in the OIG.  After submitting her application in conjunction with her accounting training, Ms. Dews was advised by Bonnie Bomsey in Personnel that she was not qualified for the auditor's position.  Because the OIG was the only Office in the Agency that employed auditors, Ms. Dews accepted the Administrative Officer (AO) position in the OIG believing that she would be in a better position for the auditor position.  Based on the advice of an experienced auditor in OIG, Ms. Dews had her auditing/accounting skills assessed by the Office of Personnel Management (OPM).  The OPM results indicated that Ms. Dews' auditing/accounting skills rated in the 93 percentile.  Armed with several years of experience in the OIG, a superior OPM rating and the pertinent security clearance, Ms. Dews applied for another auditor position (GS 5/7/9) in the OIG , on March 18, 1993. Her qualifications placed her on a certification that included two other employees. Nevertheless, Mr. Hunter was selected for the position instead of Ms. Dews.  This was especially surprising considering Mr. Hunter's OPM GS-9 auditor rating was below the 80% requirement imposed by OPM and he unlike Ms. Dews did not have a security clearance.  However, after investigation, it was revealed that Mr. Hunter had falsified his application and was separated from Agency in November 1993.  Despite this information, Ms. Dews was still not selected for the position.  This sequence of events prompted Ms. Dews to file a formal complaint against the Agency with the Office of Civil Rights in June 1993.

After filing the complaint, Ms. Dews' performance was again assessed by Mr. Darwin Roberts in June 1993 and characterized as fully successful.  This lower appraisal influenced Ms. Dews' decision to file a second Complaint against the Agency believing that she had been retaliated against for filing the first Complaint.  Prior to receiving the 1993 rating, Ms. Dews had only on one other occasion received lower than a Highly Successful rating in over 20 years of service.  After June 1993, the ratings continued to decreased.

As the AO for the OIG, Ms. Dews was responsible for reviewing the credit card statements for the government issued American Express credit cards per Agency

announcement August 1993. On September 13, 1994, Ms. Dews opened several American Express credit card statements that were addressed to her. After reviewing the statements, Ms. Dews realized that numerous OIG employees had misused their government issued credit cards. Based on this information, Ms. Dews Miller requested a meeting with then, Inspector General, Marian C. Bennett. On September 16, 19994, at Dews Miller's meeting with IG-Bennett and other attendees Ms. Dews informed Inspector General Bennett of the OIG employees' credit card misuse. After the meeting, Inspector General Bennett instructed Ms. Dews Miller to be a "tattle-tale" and Ms. Dews was subsequently labeled as a "Whistle Blower" and was immediately harassed and retaliated by numerous Agency employees including IG-Bennett and other OIG employees.

For Dews Miller immediate harassment and retaliation after 9/16/94 "Whistle Blowing" included removal from promotion certificate, GS-510-12, Systems Accountant; denial of hearing with EEOC Judge in January 1995; bias settlement offer for January 1995 in comparison to settlement offer of September 13, 1994; downgraded performance ratings; desperate treatment to Dews Miller's after her testimonies with the FBI, OIG and OSC investigators on the OIG government issued credit card misuse, which was later found an Agency wide problem.

In 1995, in an attempt to bring an end to the first Complaint, Ms. Dews Miller on the advice of counsel, entered a Settlement Agreement with the Agency. The Agreement provided that Ms. Dews Miller be appointed to the Office of Comptroller on a 6 month detail. According to the Agreement, if Ms. Dews Miller obtained a satisfactory rating after her detail, she would be retained in the Office of Comptroller and if she received a minimally successful rating or less, Personnel would attempt to place her in another position in the Agency. After completing her detail, Ms. Dews received a Minimally Successful rating and the rating and reviewing officers failed to discuss the rating or discuss with Ms. Dews Miller her "deficiencies" before issuing the rating pursuant to the Manual of Operations & Administration (MOA).

Attachment ___B___
Page __3__ of _6_ Pages

While in the Office of the Comptroller, Ms. Dews Miller sustained an on the job injury on July 10, 1995. After the injury, Ms. Dews Miller reported the injury to her immediate supervisor and went to see the nurse who instructed Ms. Dews Miller to complete a CA-1 Form (accident report). Ms. Dews Miller completed the form that was subsequently filed with the Office of Workers' Compensation Program, (OWCP). After the injury, Ms. Dews Miller attempted to assume her responsibilities at work but finally acquiesced to the pain and requested to be placed on sick leave on August 21, 1995. On August 31, 1995, Jenni Malios of Personnel contacted Ms. Dews Miller to inquire about her medical condition. Ms. Dews Miller responded that she was being treated by her physicians. Ms. Malios persisted in a hostile fashion and wanted to know exactly what was wrong with Ms. Dews Miller. Ms. Malios continued and indicated that based on the minimally successful appraisal, Ms. Dews Miller was to report to Ms. Anne Young on September 1, 1995. Because her injury persisted, Ms. Dews Miller continued to stay at home and treat her injury and was arbitrarily placed on Absent Without Leave (AWOL) on September 5, 1995 by a management official who was not her supervisor at the time of the injury despite the fact that Ms. Dews Miller had ample sick leave and Ms. Dews Miller was placed on AWOL from September 5 to November 24, 1995. On September 21, 1995, Ms. Mallios noticed the OWCP that she and Ms. Dews Miller's supervisor, Ms. Anne Young did not feel that she was injured enough to be away from work for a sedentary position. On September 29, 1995, the OWCP approved Ms. Dews Miller's neck and shoulder strain injury as a work-related injury and began making payments to Ms. Dews Miller, her physicians and pharmacy for prescriptions. Despite OWCP's three notices in January, April and August 1997 to the Agency to pay Ms. Dews Miller for the AWOL, the Agency has yet to comply.

On November 5, 1995, Ms. Dews Miller was denied a Within Grade Increase and the rating and reviewing officers again failed to discuss with her any "deficiencies" in her performance as mandated by MOA. After being released from her physician's care, Ms. Dews Miller returned to work in the OIG on November 27, 1995 where she remained until November 30, 1995 when she was directed to report to the Personnel office for her assignment. Thus on December 1, 1995, Ms. Dews Miller reported to Personnel who did

not have an assignment for her. Therefore, she was to report to the career center everyday. On December 5, 1995, without any notice, Ms. Dews Miller was advised after lunch that she had a 2:00 p.m. meeting that day with Personnel, Agency Attorney, Office of Civil Rights and a Union representative. At the meeting Ms. Dews Miller was advised that she had not completed her 90 days in the OIG and asked what she intended to do. Ms. Dews Miller responded that she would comply with any decision of the Agency. Ms. Epstein advised that there would be repercussions for Ms. Dews Miller's AWOL. On December 10, 1995, Personnel issued a Personnel Action converting Ms. Dews Miller from a career appointment to a temporary appointment without notifying her. Ms. Dews Miller had been a career employee since June 1975. In February 1996, Ms. Dews Miller became aware of the conversion to a temporary appointment and continued to report to the career center until it was closed for renovation in February 1996. At that time, Ms. Dews Miller was sent to the Office of Research where she remained until May 1996. In May 1996, she returned to the Career Center. In June 1996, the Office of Civil Rights advised Ms. Dews Miller to report to the Office of General Counsel where she remained until she was terminated in December 9, 1996.

On December 10, 1996, Ms. Dews Miller filed a complaint with her U.S. Senate Representative, Barbara Mikulski requesting that a formal complaint be filed with the Office of Special Counsel (OSC). OSC transferred the complaint to the Merit Systems Protection Board (MSPB). After reviewing the complaint, in early 1997, MSPB instructed USIA to settle with Ms. Dews Miller within 30 days. The Agency did not comply with the MSPB directive and MSPB subsequently indicated that the complaint was not within their jurisdiction. Ms. Dews Miller appealed the MSPB's decision and filed a complaint with the U.S. District Court alleging that the Agency breached the 1995 Settlement Agreement. In March 1998, the Agency advised Ms. Dews Miller that they were dismissing her complaint because the issue of AWOL was moot. This decision was appealed to the EEOC and the Commission found that the issue was not moot and ordered the Agency on June 23, 1999 to provide Ms. Dews Miller with EEO counseling and pay her for the AWOL. To date, the Agency has failed to comply with the Order to pay Ms. Dews Miller.

Effective October 1, 1999, the USIA was absorbed by the U.S. Department of State. In April 2000, Ms. Dews Miller received EEO Counseling. After completing the counseling, EEO Counselor Karen Swillings advised Ms. Dews Miller of her right to file a formal complaint. On August 23, 2000, the formal complaint was filed and amended on October 31, 2000. On November 26, 2001, the Agency advised Ms. Dews that her EEOC investigation had been completed. The decision of the Commission vacated the agency's decision regarding the minimally successful ratings and the within grade increase. On July 19, 2001, the Commission ordered that the complaints of retaliatory harassment be consolidated and the Agency was directed to submit a report of compliance. On November 26, 2001, Ms. Dews Miller was advised that she has 30 days to appeal the decision.

Attachment _B_
Page _6_ of _6_ Pages

Wednesday,                    **The Review**
August 15                    Alliance, Ohio

## Government Credit Card Abuse Grows

By DAVID PACE
Associated Press

WASHINGTON — Government employees with 3.1 million official credit cards will charge an estimated $19 billion this year, aggressively using a program created to streamline purchasing but often slow to detect abuse.
In the U.S. attorney's office in Los Angeles, an employee charged on her government card almost a half-million dollars in personal expenses over three years before she was caught, court records show.

Education Department workers used their cards several times to buy pornographic materials from an Internet site. Their purchases raised no alarms until congressional auditors found them.

Just in this fiscal year, which began Oct. 1, the five banks that provide credit cards to federal agencies already have written off close to $20 million in bad debts run up by employees using government travel cards, records show. The government has enough active charge cards to equip three of every four of its 4.1 million civilian and military workers. At least 15 agencies have more credit cards than employees, according to an Associated Press review of records obtained under the Freedom of Information Act.

Those charged with monitoring the explosive growth say the sheer number of cards distributed by agencies makes it difficult to monitor spending and detect abuse.
"It's almost impossible to do real tight controls unless you've got a whole army of reviewers," said Gregory Kutz, a congressional auditor for the General Accounting Office who recently highlighted credit card abuses at Navy operations in California.
AP reported last month that Pentagon employees with 1.8 million credit cards charged $9 billion in 2000. One bank wrote off $58 million in unpaid balances on military travel cards under the system where the company, not the government, bears the bad-debt risk on government credit cards.

Attachment __C__
Page __1__ of __2__ Pages

The Federal Emergency Management Agency, which provides disaster relief, and the Securities and Exchange Commission, which regulates stocks and bonds, each has more than twice as many credit cards as employees, according to records maintained by the General Services Administration. "That's certainly one area we're looking at, whether we need to reduce the number of cardholders," said Debra Sonderman, who manages the Interior Department's credit card program. Her agency has 82,835 credit cards for just 68,000 workers.

Federal agencies turned to credit cards in the 1990s to cut red tape and speed purchasing. Cards were issued for office supplies, travel and automobile maintenance and fuel.

Attachment ___C___
Page _2_ of _2_ Pages

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Rose M. Dews-Miller    P.G./MD

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

N/A

**DEFENDANTS** Condoleezza Rice, Secretary, Department of State, Agency

CASE NUMBER: 1:06CV01764

JUDGE: Gladys Kessler

DECK TYPE: Pro se General Civil

DATE STAMP: 10/16/2006

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. Habeas Corpus/ 2255 | ☒ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Reprisal/Retaliation - continued and continues forms of harassment; Wrongful Discharge

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint **JURY DEMAND:** ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES  ☒ NO    If yes, please complete related case form.

**DATE** 10/17/2006    **SIGNATURE OF ATTORNEY OF RECORD** pro se  Rose M. Dews ~~Keith P.~~ Miller    ✓

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.