# EXHIBIT 9

**United States**
**Information**
**Agency**

Office of Civil Rights


USIA

*WASHINGTON DC  20547-0001*

IN REPLY REFER
TO: OCR-96-15

January 19, 1999

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Ms. Rose Mary Dews-Miller
c/o Mr. John Pratt
6713 Harwood Place
Springfield, VA 22152-2419

Dear Ms. Dews-Miller:

This is in reference to your Complaint of Discrimination ("Complaint"), filed against the United States Information Agency ("Agency") on **March 28, 1996.** Receipt of your Complaint was acknowledged on **April 1, 1996**, and assigned Agency Complaint Number **OCR-96-15.** The Report of Investigation (ROI) was forwarded to you for your review and comments. In accordance with the Equal Employment Opportunity Commission's ("EEOC") Regulation 29 C.F.R. § 1614.108(f), the Agency forwarded two letters to you, dated March 12, 1997, and January 29, 1998, advising you or your right to either request a hearing before an EEOC Administrative Judge or receive a Final Agency Decision pursuant to 29 C.F.R. § 1614.110. Since you failed to respond and request your preference, the Agency is obligated to issue a Final Agency Decision pursuant to 29 C.F.R. § 1614.110.

The Agency has reviewed and analyzed your entire Complaint file, including the ROI. For your convenience, the Agency has incorporated the following analysis that consists of our findings on the merits of the allegations in your Complaint. Exhibits "1" through "57" cited in the background and analysis of the Agency's Decision, are in the ROI.

### PROCEDURAL BACKGROUND

PAGE __L__ OF __15__

On March 28, 1996, Ms. Rose Mary Dews-Miller ("the Complainant"), formerly an Administrative Officer, GS-341-11, assigned to the Office of General Counsel, filed a formal Complaint, alleging discrimination based upon reprisal (prior EEO activity). (See ROI Exhibit 1.) A Notice of Right to File a Discrimination Complaint was issued by the Agency on March 6, 1996. (See ROI Exhibit 3.) A Notice of Receipt of Complaint was issued by the Agency on April 1, 1996. The Agency issued a Notice of Acceptance of the Complaint on July 31, 1996. (See ROI Exhibit 4.) The Agency dismissed allegation #3 on March 6, 1998. An EEO Investigator was appointed on September 30, 1996. A Report of Investigation (ROI) was filed by Mr. Lee Kramer to establish a record of evidence in this matter. (See ROI Exhibit 5.)

Exhibit __//__

2

## ISSUES PRESENTED

The following issues were presented in the Complaint and accepted for processing:

Whether the Complainant was continuously discriminated against on the basis of reprisal (previous EEO activities), when as she alleges:

(1)    For the May 1, 1994 to January 24, 1995 Performance Appraisal Report, you received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain your deficiencies to you before issuing this rating, pursuant to the Manual of Operations & Administration ("MOA"), Part V-A, Section 453.2(c)(1), (2), and (3);

(2)    For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, you received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain your deficiencies to you before issuing this rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2), and (3); and

(3)    From September 5, 1995 through November 24, 1995, you were placed on Absence Without Leave (AWOL) for a work injury. You reported the work injury to your immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed you on AWOL was not your supervisor at the time of your work injury; and

(4)    On November 9, 1995, you were denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss your deficiencies in performance with you that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2), and (3).

(See ROI Exhibit 4.)

## REMEDIES

The Complainant requests the following remedies (see ROI Exhibit 2):

(1)    the Agency to amend her Performance Appraisal Report for the period February 1, 1995 to July 31, 1995, to reflect an overall rating of "Highly Successful." Any negative statements or references to the "Minimally Successful" rating to be deleted from her Performance Appraisal Report and Official Personnel File (OPF);

PAGE 2 OF 15

3

(2)     the Agency to provide her with a performance award of $500 and the
        supporting SF-50, Personnel Action effective August 1, 1995, for
        Performance Appraisal Report for the period of February 1, 1995 to
        July 31, 1995;

(3)     the Agency to provide her with a retroactive promotion to a GS-560-12,
        Budget Analyst position, effective February 1, 1995, and the supporting
        SF-50, Personnel Action. The Complainant seeks that her Personnel
        and Pay Records be amended to reflect this personnel action. The
        Complainant seeks lost wages in the amount of $(to be computed plus
        interest) to be paid to her;

(4)     the Agency to provide her with a retroactive reassignment to a career
        GS-510-12, Systems Accountant position or GS-334-12, Computer
        Specialist position effective August 4, 1995, and the supporting SF-50,
        Personnel Action. The Complainant requests that the Agency to provide
        any necessary training at the United States Department of Agriculture
        (USDA) Graduate School during working hours;

(5)     the Complainant seeks an assigned position to provide "Career Ladder
        Advancement" potential to a GS-13.  Effective August 4, 1996, the
        Complainant seeks a promotion to a GS-13 level. The Complainant
        requests that her Personnel and Pay Records be amended to reflect this
        personnel action. The Complainant seeks lost wages in the amount of
        $(to be computed plus interests) to be paid to her;

(6)     the Agency to provide her with an overall rating of "Outstanding" on the
        Performance Appraisal Report for the period August 1, 1995, to April 30,
        1996. The Complainant requests that her Personnel Records be amended
        accordingly;

(7)     the Agency to amend her Performance Appraisal Report for the period
        May 1, 1994 to January 24, 1995, to reflect an overall rating of "Highly
        Successful."  The Complainant requests that any negative statements or
        references to the "Minimally Successful" rating be deleted from her
        Official Personnel Folder (OPF);

(8)     the Agency to provide her with a performance award of $500 and the
        supporting SF-50, Personnel Action effective January 31, 1995, for the
        period May 1, 1994 to January 24, 1995;

(9)     the Agency to prepare amended time sheets for the period September 5,
        1995 to November 24, 1995, when she was incorrectly charged with

4

Absent Without Leave (AWOL). The Complainant requests that her Personnel and Pay Records be corrected to reflect this action. The Complainant seeks lost wages in the amount of $(to be computed plus interest) to be paid for the period between September 5, 1995 and November 24, 1995, (exactly 59 working days, including holidays). The Complainant seeks 48 hours of annual leave and 24 hours of sick leave to be added to her leave account. The Complainant states that these amounts are what would have been earned during the time she was listed as AWOL;

(10)    the Agency to rescind the letter, dated November 9, 1995, denying her a Within Grade Increase (WGI), and the accompanying SF-50, Personnel Action. The Complainant requests that all copies of the personnel action be expunged from her OPF. The Complainant requests that she be provided with a retroactive WGI to GS-12/02, effective February 4, 1996. The Complainant requests that her Personnel and Pay Records be corrected to reflect this personnel action. The Complainant seeks lost wages in the amount of $(to be computed plus interest) to be paid to her;

(11)    the Agency to agree to pay compensatory damages in the amount of $300,000 pursuant to the Civil Rights Act of 1991, Public Law No. 102-166;

(12)    the Agency to agree to reimburse her for all Attorney's and/or Expert's fees and expenses covered in an applicable Memorandum of Agreement between the Complainant and her Representative;

(13)    the Agency to guarantee that the Complainant and her Representative will have access to her Personnel, Payroll and Security Records to ensure that all corrective actions have taken place;

(14)    the Agency to further agree to assign her to a valid and meaningful career position in the GS-510 or GS-334 fields at the GS-13 level, with promotion potential. The Complainant requests that this position be in a bargaining unit covered by the current AFGE Local 1812 contract;

(15)    the Agency to agree to return her to a career status full-time employee slot. the Complainant requests that the Agency cancel the Not-to-Exceed appointment that expired on December 9, 1996. The Complainant also requests that her 30 hours of annual leave be added to her leave account. The Complainant states that this amount represents forfeited annual leave which could not be scheduled do to circumstances beyond her control at the end of the 1995 leave year; and



5

(16)    the Agency to provide her with any necessary career transitional support
        for up to 36 months. The Complainant states that this support shall include
        but not be limited to career counseling and educational courses available
        through the USDA Graduate School and similar teaching institutes.

## ANALYSIS AND FINDINGS

The case of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), provides a framework for
analyzing employment discrimination cases under Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e <u>et seq.</u> (1998). The Complainant must first establish a <u>prima facie</u>
case of discrimination. Once the Complainant meets that burden, Management is then afforded
an opportunity to present a legitimate, nondiscriminatory reason for its action which may counter
the inference of discrimination raised by the <u>prima facie</u> case. The Complainant must, then, prove
by a preponderance of the evidence that Management's reasons are, in actuality, a pretext for
discrimination. <u>See</u>, <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981);
<u>United States Postal Service v. Aiken</u>, 460 U.S. 711 (1983).

The evidence required to meet Complainant's burden of showing a <u>prima facie</u> case will
necessarily depend on the factual situation and type of discrimination alleged. In this instance,
the Complainant has raised reprisal as a basis for the alleged discrimination. The <u>prima facie</u> case
for reprisal or retaliation requires the Complainant to prove that:

(1)    she was engaged in a statutorily protected activity;
(2)    an adverse personnel action was taken against her; and
(3)    a causal link exists between the two.

<u>See</u>, <u>Jones v. Rivers</u>, 722 F.Supp. 771 (D.D.C. 1989) citing <u>McKenna v. Weinberger</u>, 729 F.2d
783, 790 (D.C. Cir. 1984).

A causal connection may be established by proving that the employer had knowledge of the
employee's protected activity, and that the adverse personnel action took place shortly after that
activity." <u>See</u>, <u>Mitchell v. Baldridge</u>, 759 F.2d 80, 86 (D.C. Cir. 1985). In <u>Jones</u>, the Court found
that the adverse employment actions which occurred after plaintiff filed her Equal Employment

Opportunity Commission ("EEOC") grievance (the protected activity) showed a causal
relationship to her protected activity of filing an EEOC complaint.

A <u>prima facie</u> case is not a finding of discrimination. It is merely proof that management took
certain actions from which discrimination may be inferred and, if such actions remain
unexplained, it is more likely than not that these actions were based on a discriminatory criteria.
If the Complainant meets his or her burden of establishing a <u>prima facie</u> case, the Agency must
articulate a legitimate, nondiscriminatory reason for the adverse treatment. The Complainant then



6

bears the final burden of proving by a preponderance of the evidence that the reason given is a pretext for discrimination.

## Allegation # 1

The Complainant contends that Mr. Darwin Roberts, formerly the Director of Administration Services in the Office of Inspector General, was her first line supervisor and that the Reviewing Officer and her second line supervisor was Mr. Louis J. Leporatti, formerly the Executive Assistant to Inspector General Ms. Marian C. Bennett. The Complainant alleges that both Mr. Roberts, the Rating Officer, and Mr. Leporatti, the Reviewing Officer, discriminated against her by failing to discuss or explain her deficiencies to her before issuing her May 1, 1994 to January 24, 1995 rating. The Complainant also alleges that she did not receive a mid-year review by the Rating Officer. (See ROI Exhibit 7.)

The Complainant argues that Mr. Roberts was named in her prior EEO complaints regarding job non-selection and performance appraisal differences. The Complainant states that she believes that Mr. Roberts retaliated against her by giving her a "Minimally Successful" performance rating, because she filed EEO complaints, charging him in each complaint. The Complainant also argues that Mr. Leporatti, the Reviewing Officer, also discriminated against her by supporting Mr. Roberts' reprisal actions in agreeing with the "Minimally Successful" rating. The Complainant states that Mr. Leporatti was also mentioned in her prior EEO complaints against the Agency. The Complainant also states that she believes Mr. Leporatti took this retaliatory action against her because she filed EEO complaints charging him with discrimination. (See ROI Exhibit 7.)

The Complainant states that based upon prior evaluations she did not expect these "Minimally Successful" ratings. The Complainant states that without prior notification she had no reason to suspect that the quality of her work was anything less than what was outlined in previous evaluations. (See ROI Exhibit 7.)

The Complainant also argues that Mr. Roberts arbitrarily added Performance Requirement Number 5. The Complainant claims that this item was in the Performance Requirements of another employee and should not have been added to her evaluation. Management, through the statement of Mr. Roberts argues that on December 8, 1994, Mr. Roberts established with the Complainant that he would meet with her to discuss her mid-term review on December 21, 1994, at 10:30 a.m. Mr. Roberts states that he was planning to discuss with the Complainant an evaluation of her work performance with respect to each Performance Requirement and to advise her as to which areas he thought she needed to improve upon. Mr. Roberts states that the Complainant refused to meet with him on December 21, 1994 when it was time for the meeting. Mr. Roberts states that the Complainant told him that they had nothing to talk about and that this was not the first time she did not want to talk with him regarding her work performance. (See ROI Exhibit 7.)

PAGE 6 OF 15

7

Mr. Roberts states that when the Complainant refused to meet with him he made a note in the
Performance Appraisal Report on page 2. Please see Exhibit 50 for a copy of this Performance
Appraisal. Mr. Roberts also states that when he had weekly staff meetings to discuss each of the
staff member's action items the Complainant would refuse to respond regarding the status of her
work assignments. Mr. Roberts states that the staff meetings were held to determine status of
work assignments and to provide feedback on his employees' work performance. Mr. Roberts
states that he also met with the Complainant on many occasions in his office when there were
major problems with the Complainant's work performance. (See ROI Exhibit 10.)

Mr. Roberts states that he stands behind the "Minimally Successful" rating and that Performance
Requirement Number 5 was not arbitrarily added to her Performance Appraisal in January, 1995.
He states that Performance Requirement Number 5 has been part of the Complainant's position
description and Performance Requirements before the January, 1995 Performance Appraisal.
Mr. Roberts further states that he was aware that the Complainant had filed a prior EEO
complaint during the rating period. Mr. Roberts states that he was aware that the Complainant
had filed an EEO complaint regarding her "Fully Successful" rating for the period of May 1, 1993
through April 30, 1994. Mr. Roberts states that he was the rating official who rated the
Complainant "Fully Successful." However, he did not recall that the EEO Complaint against him
was regarding job non-selection. Mr. Roberts states that he never retaliated against the
Complainant for filing a prior EEO complaint against him or against the Agency. (See ROI
Exhibit 10.)

Management, through the statement of Mr. Leporatti, formerly Executive Assistant to the
Inspector General, states that there is no requirement for reviewing officers to discuss the
"Minimally Successful" rating with the Complainant or to explain to the Complainant her
deficiencies before issuing the rating. Mr. Leporatti states that according to MOA, Part V-A,
Section 453.2(c)(1), (2) and (3), the Agency regulation only states that the Rating Officer must
discuss the Complainant's performance with the Complainant before issuing the rating.
Mr. Leporatti states that he was aware that Mr. Roberts, the Complainant's supervisor, had
numerous meetings with the Complainant concerning her work performance and her deficiencies.
He states that he knows this because Mr. Roberts would inform him after the meetings had
transpired that he had spoken to the Complainant about her work performance. Mr. Leporatti
states that Mr. Roberts would often tell him that the Complainant would just sit in the meeting
and be non-responsive to his comments. (See ROI Exhibit 12.)

Mr. Leporatti states that he agreed with Mr. Roberts rating of "Minimally Successful" for the
rating period of May 1, 1994 to January 24, 1995. Mr. Leporatti further states that he was aware
that the Complainant had filed a prior EEO complaint when he was the reviewing official of her
January 24, 1995, Performance Report. He also states that the Complainant named him as an
alleged official in a prior EEO complaint in 1994 regarding her rating in a prior Performance
Appraisal. He states that he never retaliated against the Complainant for her charging him with



8

discrimination in her prior EEO complainant or for her filing any other EEO Complainant against the Agency.

(See ROI Exhibit 12.)

The MOA, Part V-A 453.2(a) through (c) (see ROI Exhibit 53) states the following:

453.2    Periodic Progress Review

a.    Rating Officers and Rated Employees  are encouraged to review and discuss the Rated Employee's performance throughout the appraisal period. Rating Officers and Rated Employees are required to hold at least one discussion during the appraisal period, preferably at the mid-point. *The signatures of the Rated Employee and Rating Officer* and the dates of their discussion(s) *must* be indicated on the report form *at the time of the discussion(s)*.  During discussion(s), modifications of critical and noncritical performance requirements and/or standards may be made.... Any modifications of performance requirements and standards must be documented in writing on the appraisal form, discussed *with the Rated Employee* and approved by the Reviewing Officer, and incorporated into the final performance appraisal report form.

b.    The primary intent of discussion(s) is to ensure that the Rated Employee is apprised of how well, in the Rating Officer's opinion, he or she is meeting the performance standards. Discussions between the Rating Officer and Rated Employee should address specific areas of accomplishment and those areas in which the Rated Employee should work to improve. Discussions should be held with the Rated Employee regarding performance of modified requirements and standards after there has been sufficient time to demonstrate performance. Information about an employee's performance which is available to the Rating Officer should be shared with the employee at the time of a progress review meeting.

c.    If at any time, an employee's performance on one or more critical requirements (or two or more noncritical requirements) is identified as Minimally Successful, the Rating Officer must assist the employee in improving performance, after consulting with the Office of Personnel (Schedule C and probationary employees may be excluded). The Rating Officer must:

(1)    counsel the employee that his/her performance is Minimally Successful;

(2)    explain the deficiencies in performance, citing examples;

9

(3)     explain the steps the Rating Officer will take to assist the
employee to resolve the deficiencies such as formal and/or on-the-job
training, counseling, and/or closer supervision; and

(4)     provide the performance standards at the Fully Successful level.

Management has proffered substantial testimony that in accordance with MOA, Part 453.2 that
Management afforded the Complainant ample opportunity to discuss her mid-term review. The
Complainant failed to keep at least one scheduled appointment on December 21, 1994, with
Mr. Roberts to review her performance. Mr. Roberts stated that he met with the Complainant on
"many occasions in his office when there were major problems with the Complainant's work
performance." Mr. Leporatti corroborated Mr. Roberts' statement by indicating that he was
aware that Mr. Roberts had numerous meetings with the Complainant regarding her work
performance and deficiencies. Management has also presented sufficient evidence that indicates
that the Complainant's performance between May 1, 1994 to January 24, 1995 was "Minimally
Successful." There is no evidence to support the Complainant's assertion that Performance
Requirement Number 5 was arbitrarily added to her Performance Appraisal in January of 1995.

The MOA, Part V-A, 453.2 is clear in imposing a requirement on rating officials to counsel and
discuss performance when an employee receives a "Minimally Successful" rating from that
official. The regulation is silent however, as to the reviewing official, and, thus a similar
requirement cannot be presumed to operate against the reviewing party. Therefore, the
Complainant's assertion that Mr. Leporatti failed to review her mid-term performance with her is
without merit.

Title VII, states that an employee may not be discriminated against for opposition to any
unlawful employment practice under that title or because he or she has made a charge, testified,
assisted, or participated concerning a Title VII investigation proceeding or hearing. See,
42 U.S.C. § 2000-3(a). The protection is afforded in "participation" cases regardless of the
merits of the charge or complaint. See, Payne v. McLemor's Wholesale and Retail Store,
654 F.2d. 1130 (5th Cir.) 1981.

The Agency found no merit to the Complainant's assertions that she deserved a rating other than
"Minimally Successful" and that her supervisors failed to comply with MOA, Part V-A, Section
453.2 in providing the opportunity to review her rating with her. Management has presented
sufficient evidence that its rating official, Mr. Roberts, provided sufficient opportunity to the
Complainant to discuss her performance evaluation. Similarly, management has presented
sufficient evidence that Mr. Roberts met with the Complainant during the review period to
counsel and discuss her performance. MOA, Part V-A, Section 453.2 has been complied with by
the acts of Mr. Roberts during the rating period. Section 453.2 does not apply to reviewing
officials and therefore is not applicable against Mr. Leporatti.

10

**The Complainant has presented insufficient evidence to support her allegation regarding a <u>prima facie</u> case of discrimination based upon reprisal (retaliation) as to allegation #1.**

<u>Allegation #2</u>

The Complainant alleges that for the February 1, 1995 to July 31, 1995 Performance Appraisal Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing the rating pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3). (<u>See</u> ROI Exhibit 7.)

The Complainant states that she was detailed to the Office of the Comptroller from February 1, 1995 through July 31, 1995 as part of the January 31, 1995, settlement agreement. The Complainant states that Ms. Carol Keith, her supervisor, was the Rater of her July 31, 1995, Performance Appraisal and Ms. Eva Diekmann, Chief of Budget Operations, was the Reviewer. The Complainant states that she was rated as "Minimally Successful." She states that Ms. Keith and Ms. Diekmann never had any discussion with her during the rating period and they never gave her any indication of how she was performing. The Complainant states that Ms. Keith never discussed the rating when she gave her the Performance Appraisal on the morning of August 17, 1995. (<u>See</u> ROI Exhibit 7.)

The Complainant believes that Ms. Keith and Ms. Diekmann were both aware of the terms of the January 31, 1995 settlement agreement, although they had no involvement in her prior Complaints. The Complainant believes that Ms. Keith and Ms. Diekmann were acting in collusion with other Management Officials to downgrade her performance and take reprisal against her for her former EEO Complaints against the Agency. (<u>See</u> ROI Exhibit 7.)

Management, through the statement of Ms. Keith, Budget Officer, Office of the Comptroller, Bureau of Management, states that it is true that she was the Rater of the Complainant's July 31, 1995, Performance Appraisal. Ms. Keith states that she believes that the rating that she gave the Complainant was accurate and a fair assessment of her performance. Ms. Keith states that she was not aware of the January 31, 1995, settlement agreement. She states that she was told by Ms. Diekmann that the Complainant was detailed to their office for a period of six (6) months. She states that the Complainant was already supposed to have the skills for her position and know how to perform her job. (<u>See</u> ROI Exhibit 8.)

Ms. Keith states that Complainant had difficulty with budget terminology and procedure regardless of the task she was given. Ms. Keith states that on many occasions when the Complainant was given work to do the work would sit for three (3) or four (4) days. Ms. Keith states that when she worked with the Complainant she had to repeatedly explain the daily operation of the office and the procedures that were required to complete the tasks given to her. (<u>See</u> ROI Exhibit 8.)

11

In support of the rating Ms. Keith gave the Complainant, she states that:  (1) the Complainant spent entirely too much time transferring numbers from the summary sheets to the budget backup sheets; (2) the Complainant would commonly miss her deadline dates: (3) she would have to review her work all the time; (4) the Complainant did not have the basics of budget execution and a lot of her time was devoted to the learning of analyzing requests received from the field, procedures required to obtain funding as requested, and/or forwarding the requests of overseas employees to the appropriate offices in the Agency; (5) the Complainant's writing was not clear and concise; and (6) the quality of her work was not sufficient as to what was expected out of their Office.  (See ROI Exhibit 8.)

Ms. Keith asserts that she was advised by her supervisor to provide the Complainant with a performance review every six weeks.  Ms. Keith states that she complied with that directive.  Ms. Keith further states that she offered to discuss the performance evaluation with the Complainant but the Complainant left at the end of the work day without acknowledging her offer.  (See ROI Exhibit 8.)

Management, through the statement of Ms..Diekmann, Chief of the Budget Operations Division, Office of the Comptroller, Bureau of Management, states that she was the Reviewer of the Complainant's July 31, 1995, Performance Appraisal.  Ms. Diekmann said that Mr. Stanley Silverman, her supervisor, advised her that the Complainant would be detailed to her office for six (6) months and that she was to evaluate her performance as a budget analyst.  Ms. Diekmann further states that she did not know any other details about the January 31, 1995, settlement agreement.  (See ROI Exhibit 9.)

Ms. Diekmann states that she had discussions with Ms. Keith during the six months that the Complainant worked in her office regarding the Complainant's performance. That, Ms. Keith updated her every six weeks on the Complainant's performance and gave her examples of her work.  Ms. Diekmann states that she was aware that there was daily communication between Ms. Keith and the Complainant in reference to her work performance.  Ms. Diekmann contends that she agreed with the "Minimally Successful" rating based upon the Complainant's performance during the rating period.  Ms. Diekmann also explained that the Complainant was not rated on Performance Requirement Number 4 because of her limited budget skills and that this requirement could only be met by serving in an acting supervisory role.  (See ROI Exhibit 9.)

Ms. Diekmann states that Ms. Keith gave the Complainant her rating on August 17, 1995, to allow for the Complainant to look over and review the rating.  Ms. Diekmann states that the Complainant took the rating with her and did not return to work until August 17, 1996.  Ms. Diekmann states that on August 28, 1995, she contacted the Complainant and requested that she sign and return her Performance Appraisal by August 31, 1995. Ms. Diekmann further states that the Complainant never returned the Performance Appraisal. (See ROI Exhibit 9)



12

Management, through the statement of Ms. Jenny Mallios, Personnel Management Specialist, Civil Service Division, Office of Human Resources, states that she did not discuss with Ms. Diekmann or any one else how to rate the Complainant. That, she believed that the Complainant's supervisors were reviewing the Complainant's performance every six weeks. (See ROI Exhibit 13.)

Management has presented sufficient evidence that its rating official, Ms. Keith provided sufficient opportunity to the Complainant to discuss her performance evaluation. Similarly, management has presented sufficient evidence that Ms. Keith met with the Complainant during the review period to counsel and discuss her performance. MOA, Part V-A, Section 453.2 has been complied with by the acts of Ms. Keith during the rating period. Section 453.2 does not apply to reviewing officials and therefore is not applicable against Ms. Diekmann.

**The Complainant has presented insufficient evidence to substantiate her allegation regarding a prima facie case of discrimination based upon reprisal.**

### Allegation #4

The Complainant alleges that on November 9, 1995, she was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss her deficiencies in performance with her that resulted in the denial of the WGI, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3). The Complainant states that she was denied a WGI due on October 29, 1995. She states that a letter to her dated November 9, 1995, outlined the reasons for the denial. The Complainant states that the letter was signed by Anne Young as Assistant Inspector General for Administration and Management and Marian Bennett, the Inspector General. The Complainant states that on November 28, 1995, she appealed the denial of the WGI to Ms. Janice H. Brambilla, Director of Personnel. The Complainant states that in April 1996 she finally received a denial of her appeal from Ms. Brambilla. (See ROI Exhibit 7.)

Management, through the statement of Ms. Young, former Assistant Inspector General for Management and Administration, Office of Inspector General, USIA, states that the WGI for the Complainant required her approval and the approval of Ms. Bennett, the Inspector General. She states that the Complainant's WGI was denied because the Complainant received less than "Fully Successful/Satisfactory" rating for the period of May 1, 1994 through July 31, 1995. She states that the Complainant received a "Minimally Successful" annual rating which was comprised of two interim "Minimally Successful" ratings. Ms. Young states that the WGI denial was required under the regulation of MOA, Part V-A, Section 235. (See ROI Exhibit 11.)

Additional key testimony was provided by Ms. Mallios on behalf of Management who stated that the annual appraisal for the Complainant was comprised of the two interim appraisals the Complainant received while under the supervision of Mr. Roberts in the Office of Inspector General and Ms. Keith in the Office of the Comptroller. (See ROI Exhibit 13.) Management is correct in its assertion that since the Complainant received an annual rating of less than Fully



13

Successful/Satisfactory for the rating period May 1, 1994 through July 31, 1995, MOA, Part V-A, Section 235 would prohibit the granting of a WGI to the Complainant. Management has presented sufficient evidence to rebut the Complainant's prima facie case of discrimination based upon reprisal. The Agency has articulated legitimate, non-retaliatory reasons for the action complained of.

**The Complainant has presented insufficient evidence to establish a prima facie case of discrimination based upon reprisal as to allegation #4.**

### ATTORNEY'S FEES

The Complainant seeks attorney's and/or expert's fees and expenses. By federal regulation, an agency shall award attorney's fees and costs for the successful processing of an EEO complaint in the administrative process. See 29 C.F.R. § 1614.501(e). A prevailing party for purposes of entitlement to attorney's fees is one who succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing the suit. Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978). In the instant case, the Complainant did not prevail on her EEO Complaint. The Complainant failed to present sufficient evidence to establish a prima facie case of reprisal discrimination. Moreover, the Complainant's representative is not an attorney and, therefore, is not entitled to attorney's fees. For the foregoing reasons, the Complainant shall not be awarded attorney's fees.

### COMPENSATORY DAMAGES

The Complainant seeks compensatory damages in the amount of $300,000 pursuant to the Civil Rights Act of 1991, Public Law No. 102-166. The EEOC has held that an agency must address the issue of compensatory damages when a complainant shows objective evidence that she has incurred compensatory damages, and that the damages are related to the alleged discrimination. Jackson v. USPS, EEOC Appeal No. 019233999 (November 12, 1992) [93 FEOR 3062], request to reopen denied, EEOC Request No. 05930306 (February 1, 1993) [93 FEOR 3133]. The Complainant has not submitted any documentation supporting a claim for compensatory damages nor has she established a prima facie case of reprisal discrimination. For the foregoing reasons, the Complainant shall not be awarded compensatory damages.

### CONCLUSION

**Allegation #1** - The Complainant has presented insufficient evidence that she was subjected to a continuing violation of discrimination based upon reprisal (prior EEO activity) to establish a prima facie case of discrimination.

**Allegation #2** - The Complainant has presented insufficient evidence that she was subjected to a continuing violation discrimination based upon reprisal (prior EEO activity) to establish a prima facie case of discrimination.

14

<u>Allegation #4</u> - The Complainant has presented insufficient evidence that she was subjected to a continuing violation of discrimination based upon reprisal (prior EEO activity) to establish a <u>prima</u> <u>facie</u> case of discrimination.

**<u>For the foregoing reasons, the Agency finds the Complainant failed to establish she was discriminated against as alleged in her Complaint. In accordance with this finding, no corrective action is required and no attorney's fees or compensatory damages shall be awarded.</u>**

Pursuant to 29 C.F.R. § 1614.110, this Notice is the Final Decision of the United States Information Agency regarding the Complaint filed on **<u>March 28, 1996.</u>** If the Complainant is dissatisfied with the Agency's final decision, she has the following appeal rights.

## APPEAL RIGHTS

The Complainant may file an appeal with the Equal Employment Opportunity Commission within **<u>30 calendar days</u>** of receipt of this decision. The **<u>30-day</u>** period for filing an appeal begins on the day after the date of receipt of this decision. The appeal shall be considered timely if it is delivered in person, by facsimile, or postmarked before the expiration of the applicable filing period.

In the absence of a legible postmark, the appeal will be considered timely if it is received by mail **<u>within five days</u>** of the expiration of the applicable filing period. Appeals to the Commission should be forwarded to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission, Post Office Box 19848, Washington, D.C. 20036**, with a copy to this office **<u>within 30 days of filing</u>** the Notice of Appeal.

## CIVIL ACTIONS

In lieu of an appeal to the Commission, the Complainant may file a civil action in an appropriate United States District Court within **<u>90 calendar days</u>** of receipt of the final decision. If the Complainant files an appeal with the Commission, and she is not satisfied with the Commission's decision, she may file civil action in a United States District Court within **<u>90 calendar days</u>** of receipt of the Commission's final decision.

The Complainant may also file a civil action any time after **<u>180 calendar days</u>** from the date of filing appeal with the Commission, if there has been no final decision by the Commission.

Upon request of the Complainant, the Civil Rights Act and the Rehabilitation Act give the Court discretionary authority to appoint an attorney without payment of fees or costs by the Complainant. The grant or denial of the Complainant's request and the civil action **must be filed**

15

**within 90 days** of the date of the final decision is received.  Please note that the Age Discrimination in Employment Act contains no specific provision for a court appointed attorney.

If the Complainant files a civil action involving this Complaint, **she must specifically name the Director, United States Information Agency, Dr. Joseph Duffey, as defendant**.  Failure to do so may result in the loss of any judicial redress to which she may be entitled.

It is important to note that 29 C.F.R. § 1614.410 states that "[f]iling a civil action under §§ 1614.408 or 1614.409 shall terminate Commission processing of the appeal. If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Sincerely,

*Hattie P. Baldwin*

Hattie P. Baldwin, Esq.
Director

Enclosure:  EEOC Appeal Form No. 573

cc:  Complainant
      Management's Representative