# EXHIBIT   18

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L Street, N.W., Suite 200
Washington, D.C. 20005

| | |
|---|---|
| Rose Mary Dews-Miller,<br>Complainant,<br><br>v.<br><br>Colin L. Powell, Secretary,<br>Department of State,<br><br>Agency. | EEOC Nos. 100-A2-7521X<br>100-A2-7576X<br><br><br>Agency Nos. 00-19<br>96-15<br><br>Date: April 29, 2004 |

## ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated April 29, 2004, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached.

This office is also enclosing a copy of the closing briefs for the Agency.

This office will hold the report of investigation and the transcripts for sixty days, during which time the agency may arrange for their retrieval. If we do not hear from the agency within sixty days, we will destroy our copy of these materials.

It is so ORDERED.

Date: April 29, 2004

Michael J. Pacinda
Administrative Judge

Enclosures

Attn: Steven J. Dunn
410.321.1599

Evelyn M. Aswad
202-647-6794

APR-29-2004 17:39        NLRB, REGION ONE                                      P.02

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L Street, N.W., Suite 200
Washington, D.C. 20005

| | |
|---|---|
| Rose Mary Dews-Miller,<br>Complainant,<br><br>v.<br><br>Colin L. Powell, Secretary,<br>Department of State,<br><br>Agency. | EEOC Nos. 100-A2-7521X<br>         100-A2-7576X<br><br><br>Agency Nos. 00-19<br>             96-15<br><br>Date: April 29, 2004 |

DECISION

Pursuant to the EEOC's regulations at 29 C.F.R. § 1614.109 (2002), on December 9, 2003, I conducted a hearing on the above-captioned discrimination complaint. The remaining procedural history is contained in the case file and the Report of Investigation (ROI) and will not be reiterated. The record before me consists of: (1) ROI 00-19; (2) ROI 96-15; (3) the Hearing Transcript (Tr.); (4) *Post-Hearing Brief of the Department of State (Agency's Brief)*; and (5) *Complainant's Closing Argument (Complainant's Brief)*.

I.   ISSUES

Whether Complainant was discriminated against based on reprisal for prior EEO activity when she was subjected to:

1. Continued and continuous harassment by an employee in the Office of Human Resources and others, who participated in creating a hostile work environment in personnel actions, benefits and entitlements for her after she filed prior EEO complaints;

2. Invasion of Complainant's personal medical records obtained from OWCP and then communicated to others in USIA who had no right to their contents;

1

3. Withholding essential records from OWCP from November 1995 to January 1997, which caused an unwarranted delay processing her claims;

4. An employee's illegal and unethical discussion of her medical records with other unqualified persons in USIA;

5. Non-accommodation under the Rehabilitation Act, which requires federal agencies to develop and implement plans for hiring, placement, promotion and retention of persons with disabilities;

6. From September 5, 1994 through November 24, 1995, Complainant was placed on AWOL for a work injury. She reported the work injury to her immediate supervisors, the rating and reviewing officials, pursuant to the Manual of Operations and Administration (MOA), P 5-A, section 506.3(c)(1). However, the management official who placed her on AWOL, was not her supervisor at the time of the work injury;

7. When she alleged that for the May 1, 1994 to January 24, 1995 performance appraisal report she received a minimally successful rating. The rating and reviewing officials failed to discuss the minimally successful rating or to explain her deficiencies to her before issuing the rating pursuant to the MOA, Part 5-A, Section 453.2(C)(1), (2) and (3);

8. For the February 1, 1995 to July 31, 1995 performance appraisal report she received a minimally successful performance rating. The rating and reviewing officials failed to discuss the minimally successful rating or to explain her deficiencies to her before issuing the rating pursuant to MOA, Part 5-A, Section 453.2(c)(1), (2) and (3).

9. On November 9, 1995, Complainant was denied a within-grade increase. The rating and reviewing officials failed to discuss the deficiencies in performance that resulted in denial of the within-grade increase pursuant to MOA, Part 5-A, Section 453.2(c)(1), (2) and (3).

II. FACTUAL BACKGROUND

Complainant alleges officials from three different divisions of the former United States Information Agency (USIA)[1] – the Human Resource Office (HRO), Office of the Comptroller (OC) and the Office of the Inspector General (OIG) – retaliated against her for participating in prior EEO activity.

2

Complainant's prior protected activity consisted of several alleged protected statements and three EEO complaints. All this activity took place within OIG while Complainant was employed with USIA. The alleged protected statements were made at a January 1993 meeting. Regarding the EEO complaints, Complainant filed the first one on June 4, 1993 alleging retaliation by the audit staff led by George Murphy stemming from a non-selection (Complainant also named Darwin Roberts in this complaint). ROI 96-15, Exh. 7, p.5). The second and third complaints were filed on September 7, 1993 and October 21, 1994 respectively and involved ratings of "Fully Successful" by rater Roberts and reviewer Louis Leporatti. ROI 00-19, Exh. 5-2, p. 3; Exh. 9-1, p. 1.

The three complaints were the subject of a global settlement agreement, which Complainant entered into with the assistance of an attorney and an administrative judge. The agreement established a "last chance" arrangement whereby Complainant agreed to resign from the Agency in the event she failed to meet certain appraisal requirements. *See Settlement Agreement* at ROI 00-19, Tab 9-1.

III.   **LEGAL STANDARD**

This case is properly analyzed under the familiar *McDonnell Douglas* burden-shifting paradigm. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973) (applying a burden shifting scheme to cases relying on circumstantial evidence to prove discrimination). Under this framework, Complainant has the initial burden of establishing a *prima facie* case of reprisal. Complainant may do so by showing that: 1) she engaged in protected activity; 2) her employer was aware of the protected activity; 3) she suffered an adverse employment action; and 4) the adverse employment action is causally connected

---

[1] The USIA merged into the State Department in 1999. As the successor agency, the State Department is

3

to the protected activity. *Downing v. United States Postal Serv.*, EEOC Appeal No. 01822326 (September 19, 1983). Complainant's *prima facie* evidence creates an inference of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Once this inference has been raised, the burden shifts to the Agency to advance a legitimate, non-discriminatory reason for its employment decision. If the Agency propounds such a reason, the inference of discrimination "simply drops from the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). At that point, the burden reverts back to Complainant to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – *i.e.* unworthy of belief. *Burdine*, 450 U.S. 248 at 256. Although the *McDonnell Douglas* framework shifts the burden of production to the Agency after a *prima facie* case is shown, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr.*, 509 U.S. 502 at 507.

To prove a case of disability discrimination, Complainant must initially establish that he/she is a qualified individual with a disability. 29 C.F.R. § 1614.203(a)(6).[2] If

---

the defending this complaint.

[2] A "qualified individual with a disability" is an individual with a disability who, <u>with or without reasonable accommodation</u>, can perform the essential functions of the position in question. 29 C.F.R. § 1614.203(6). An "individual with a disability" is defined as one who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 C.F.R. § 1614.203(a)(1). The term "major life activities" refers to such functions as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1614.203(a)(3).

Complainant proves that he/she is a qualified individual with a disability, the analysis may continue along traditional Title VII lines (see *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)), or, if reasonable accommodation is at issue, then the Agency must demonstrate that it was not possible to accommodate the handicap without undue hardship on the operation of its program. 29 C.F.R. § 1630.9; *Carter v. Bennett*, 840 F. 2d 63, 65-66 (D.C. Cir. 1988).

IV. ANALYSIS

Issue 1 – Continued Harassment By Employees In Human Resources

Here, I find Complainant's claims are not properly raised as a harassment claim because each incident complained of constitutes a discrete adverse action, properly raised under a disparate treatment theory rather than one of hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

Under a disparate treatment theory, I find that Complainant fails to establish a *prima facie* case of retaliation. As mentioned, Complainant's protected activity consists of allegedly protected statements and three EEO complaints filed, the most recent being October 1994. The adverse actions at issue consist of the following: (1) termination from service in December 1996; (2) denial of with-in grade increase (WGI) in the fall of 1995; (3) placement on AWOL from September 5, 1995 through November 24, 1995; and (4) denial of end-of-service payments in December 1996. (Tr. at 69 – 111). Complainant alleges all these actions were taken by Jenny Mallios, Personnel Management Specialist, and other in the Human Resources (HR) office, and it is undisputed that Mallios was aware of Complainant's prior EEO activity. Nevertheless, I find that Complainant failed to demonstrate causality because the adverse actions were not sufficiently proximately-

5

related in time to her prior EEO activity for me to infer causation, and Complainant produced no other evidence to create an inference of retaliation.

Moreover, I find the Agency has articulated legitimate, non-discriminatory reasons for taking the actions it did concerning Complainant. As to the termination allegation, Mallios testified that Complainant was terminated from the Agency "as the result of a 1995 settlement agreement," of which Complainant failed to comply with the last chance provision. Indeed, the record shows that the explicit provisions of a January 1995 EEO settlement agreement provides for a separation from service if Complainant did not meet particular evaluation goals.[3] See ROI 00-19 at Tab 9-1. As Mallios testified, the terms of the settlement agreement provided that:

> "Ms. Dews-Miller was to receive an opportunity outside of the Office of the Inspector General for a period of six months and . . . during that period of six months she was to be given informal reviews and if at the end of the six months was to be rated fully successful or better, then she could stay in the Office of the Comptroller. If she did not receive a rating of fully successful or better than she would return to OIG or I would attempt to find a placement for her elsewhere [for a three-month period].
> If during that three month period she was found to be performing fully successful, then she would be permanently retained in the Inspector General's Office. If not, then she would be placed on an appointment not to exceed one year, during which time she could receive out-placement assistance, and at the end of that year would be terminated."

Tr. at 250-51.

The record indicates Complaint did not receive a fully successful rating as required by the settlement agreement in any of the offices she was assigned. She began in the Office of the Comptroller and was then assigned for three months to OIG after not achieving a fully successful. She again failed to achieve a fully successful rating in OIG

---

[3] The agreement was entered into with the advice and counsel of her own attorney under the supervision of an EEO administrative judge.

and was placed on a temporary appointment and ultimately separated from service according to the provisions of the agreement. Tr. at 252-61.[4]

Concerning the second aspect of the harassment claim (denial of the WIG in the fall of 1995), Mallios testified that it was "[b]ecause the rating of record of her performance was minimally successful and regulations preclude a within-grade increase if a rating falls below fully successful." Tr. at 264.

Regarding being placed on AWOL in the fall of 1995, Mallios explained in his testimony that Complainant "failed to submit documentation supporting her absence." Tr. at 254. Mallios explained that based on the documentation Complainant provided to support her request, she had "no way of assessing . . . whether or not [Complainant] was injured at work. There needs to be a connection to the accident and a diagnosis and some sort of indication that the doctor believes that this was related to work, and why it's related to work." Tr. at 256-57.

Finally, Mallios testified that the reason Complainant was not paid her end-of-service payments was because "she did not submit the appropriate separation documents before departing federal service." Tr. at 261. "The clearance for final salary payment, which was Form 1A0134, as well as a security form" were the two Complainant failed to sign. Tr. at 261. Based on this testimony, I find the Agency has articulated legitimate non-discriminatory reasons for taking the various actions it did concerning Complainant.

Next, I find that Complainant has not demonstrated by a preponderance of the evidence that the Agency's articulated reasons are not worthy of belief. Complainant

---

[4] I note that Complainant was not successful in her attempt to claim a breach of the settlement agreement. Tr. Exh. 1 & 2.

7

simply produced no evidence whatsoever showing pretext or that the Agency's actions were motivated by retaliation.

### Issue 2 – Invasion of Complainant's Personal Medical Records

The allegation is dismissed pursuant to 29 C.F.R. § 1614.107(a) because Complainant did not suffer an adverse employment action and therefore fails to state a claim. Complainant has provided no evidence that her OWCP medical records were ever "invaded" or communicated improperly to anyone at the Agency. At the hearing, she did not identify anyone at the Agency who was improperly told of the contents of her medical records. Tr. at 94. Similarly, in her affidavit from August 2001, when asked "[w]hat did [Mallios] communicate to others and to whom did they communicate?" – Complainant replied, "no telling." ROI 00-19, Tab 5, p. 4.

Moreover, three witnesses from HRO (Mallios, Janice Brambilla and Blanche Twardowski) testified that Complainant's records were not improperly communicated to anyone and were stored in a locked file room. Tr. at p. 266-68, 242-44, 26 & 37-43. Because I find that there is no evidence that Complainant suffered an actionable injury, this claim is dismissed pursuant to 29 C.F.R. § 1614.107(a).

### Issue 3 – Withholding Essential Records From OWCP Causing An Unwarranted Delay In Processing Her Claim

The allegation is dismissed pursuant to 29 C.F.R. § 1614.107(a) because Complainant did not suffer an adverse employment action and therefore fails to state a claim. In fact, I find that the record does not support Complainant's allegation that any records were even withheld from OWCP. To the contrary, Mallios, the personnel specialist tasked with handling Complainant's OWCP claim, testified that she responded to

8

OWCP requests within a week or less. Tr. at 268-72. Indeed her testimony is corroborated by documentary evidence in the ROI showing Mallios typically responded to OWCP requests within a week or less. *See* ROI 00-19 at Tab 26-3 (Mallios responding on March 12, 1998 to a letter dated March 6, 2004); ROI 00-19 at Tab 9-5, p. 6 (Mallios responding on June 11, 1997 to a letter dated June 5, 1997); ROI 00-19 at Tab 26-33 p. 1-2 (Mallios responding on July 27, 1995 to a hand-delivered request to HRO on July 20, 1995). Because I find that there is no evidence that Complainant suffered an actionable injury, this claim is dismissed pursuant to 29 C.F.R. § 1614.107(a).

Issue 4 -- Unethical Discussion Of Medical Records With Unqualified Persons

I find this allegation, like Issues 2 and 3 above, is not supported by any evidence showing that Complainant suffered an actionable injury. As such, I dismiss it pursuant to 29 C.F.R. § 1614.107(a).

Issue 5 -- Failure To Accommodate Under The Rehabilitation Act

Complainant alleges that the Agency failed to provide her with an accommodation in retaliation for her prior EEO activity. I find, however, that Complainant fails to establish a *prima facie* case because she does not demonstrate that she has a disability and hence, is not entitled reasonable accommodation. Because she is not entitled to reasonable accommodation, Complainant could not have suffered an adverse employment action when the Agency did not provide her one. Nothing in the record establishes that Complainant identified a disabling condition, had a history of one or that the Agency perceived her to be disabled.[5]

---

[5] *See* 29 C.F.R. § 1630.2(g) defining the term "disability" with respect to an individual as: "(1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) A record of such an impairment; or (3) Being regarded as having such an impairment."

9

### Issue 6 – Placed On AWOL For A Work Injury

This issue was previously discussed as an example of harassment comprising Complainant's Issue 1 above. As I found earlier, Complainant fails to establish by a preponderance of the evidence, that the Agency's reason for placing her on AWOL from September 5, 1995 through November 24, 1995 is pretext for retaliation. As such, I find in favor of the Agency.

Complainant's allegation can be read to allege that she was improperly placed on AWOL because the management official who placed her on AWOL was not her supervisor at the time she originally injured herself. I find, however, that this alone does not constitute an adverse action and I find in favor of the Agency.

### Issue 7 – Received a Minimally Successful Appraisal And Failure To Discuss The Appraisal Before Issuing The Rating For May 1, 1994 to January 24, 1995.

I find the Agency has articulated legitimate, non-discriminatory reasons for taking the actions it did with Complainant concerning this allegation. *See Lozada*, EEOC Appeal No. 01A24769 (dispensing with a *prima facie* analysis where the Agency articulates legitimate non-discriminatory reasons). Darwin Roberts, rating officer, and Louis Leporatti, the reviewing officer, for this performance appraisal both testified on this matter. Roberts explained that Complainant received a minimally successful rating because, during the relevant time period, "this was pretty much the bottom of the scale as far as her performance since I had arrived in the office in November of '91." Tr. at 179. Roberts cited specific examples that illustrated the marked deterioration in the quality of Complainant's work, including one incident in which her failure to reconcile accounts placed the office in "severe crisis mode . . . to ensure there were no violations of the Anti-

Deficiency Act." Tr. at 180-81. He also recounted an incident where, as a result of Complainant's inadequate work product, Roberts "was starting to get calls from the Finance Office at the main U.S. Information Agency because . . . [t]hey kept returning paperwork to us, saying it's not done correctly. They even brought Rose Mary over to their office and went through it, sitting side by side with her and going through the paperwork, where it was deficient." Tr. at 175.

    For his part, Leporatti testified that Complainant's "response time was slow. I would ask her for things and her reaction time was just slow. It wasn't accurate, satisfactory." Tr. at 198. I further note that there are several sworn affidavits from others who worked with Complainant during this time period that confirm Roberts' and Leporatti's testimony that Complainant's work was often late and inaccurate. ROI 96-15 Tabs, 17, 18 & 19.

    Concerning the aspect of her claim that Roberts did not discuss Complainant's appraisal rating with her, Roberts testified that "when I tried to have a formal meeting on her performance in December of '94 she did not show up at the arranged time and place and when I went to her desk she said there's no reason to [meet]." Tr. at 181. Moreover, Roberts testified that he attempted to have informal meetings with Complainant during the appraisal year "at our weekly staff meetings when I wasn't getting responses from Rose Mary I would still talk to Rose Mary after the others had left, but still get no response verbally." Tr. at 181. Based on this testimony, I find the Agency articulated legitimate non-discriminatory reasons for taking the actions it did.

    Next, I find Complainant has not established by a preponderance of the evidence that the Agency's articulated reasons are pretext for retaliation. Other than the fact that

11

Roberts and Leporatti were named in two of Complainant's prior EEO complaints also involving performance appraisals, Complainant has offered no evidence to show pretext or a retaliatory motive. For example, Complainant asserts that Roberts arbitrarily added performance requirement #5, regarding training, to the disputed performance appraisal. ROI 96-15, Tab 7, p. 6. The record indicates, however, that this requirement was in Complainant's performance appraisal a full two years earlier. ROI 96-15, Tab 48, p. 6 (appearing as requirement #4 in the My 1992 to April 1993 appraisals). Based on the record, I find Complainant failed by a preponderance of the evidence to establish pretext and I find in favor of the Agency on this issue.

> Issue 8 – Received a Minimally Successful Appraisal And Failure To Discuss The Appraisal Before Issuing The Rating For February 1, 1995 to July 31, 1995.

On this claim, I find the Agency has articulated legitimate, non-discriminatory reasons for its actions. *See Lozada*, EEOC Appeal No. 01A24769 (dispensing with a *prima facie* analysis where the Agency articulates legitimate non-discriminatory reasons). The rating officer for this period was Carol Keith and the reviewing officer was Eva Diekman, both of whom were in the Office of the Comptroller. At the hearing, Keith testified that she rated Complainant minimally successful because Complainant did not meet "the fully successful standard in terms of such factors as quality, quantity, timeliness and extent of supervision required." Tr. at 220-21. Keith testified about Exhibits 22 and 23 in ROI 96-15 as being a "summary of the things that Rose Mary was asked to do and the outcome of attempting to do them or completing them." Tr. at 214. Both exhibits document numerous deficiencies in Complainant's performance. Despite supervision "on

12

a daily basis" and regular feedback, Keith testified that Complaint did not "improve to the level that you would expect for a GS-11."

As for not discussing Complainant's rating with her, Keith testified that she:

> "gave the rating to Rose Mary and told her that here was her rating, that she could look over it, if she needed to discuss it – if there were some things that she didn't agree with, that she could bring them to me and we could discuss them."

Tr. at 221. Keith further indicated that Complainant never took her up on the offer to discuss the rating and, to Keith's knowledge, Complainant never even signed the appraisal. Tr. at 222.

Next, I find Complainant presented no evidence to establish by a preponderance of the evidence that the Agency's articulated reasons were a pretext for retaliation. There is simply no evidence that Keith's rating was motivated by a retaliatory animus. Moreover, Complainant herself admits that Keith offered to discuss the rating with her but that she declined. Tr. at 129. Based on the record, I find Complainant failed, by a preponderance of the evidence, to establish pretext and I find in favor of the Agency on this issue.

**Issue 9 – Denied A WIG On November 9, 1995 And Reviewing Officer Failed to Discuss Deficiencies That Resulted In Denial Of WIG**

The aspect of this issue concerning the denial of a WIG was previously addressed above as an example of harassment comprising Complainant's Issue 1. The second part this Issue concerning the Agency's failure to discuss deficiencies, was addressed in both Issues 7 and 8 above. As I found earlier, Complainant fails to establish by a preponderance of the evidence, that the Agency's reasons for taking the various actions it did are unworthy if belief.

13

## V. CONCLUSION

Having heard all the testimony and carefully reviewing the ROI, I find Complainant failed to establish by a preponderance of the evidence that the Agency discriminated against her. As such, I find in favor of the Agency on all counts.

It is so ORDERED

Michael K Pacinda
Administrative Judge

## NOTICE TO THE PARTIES

### TO THE AGENCY:

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

### TO THE COMPLAINANT:

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

## *WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

### BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

### BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

### BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing DECISION either within five (5) calendar days after the date it was sent *via* first class mail, or immediately upon confirmation of e-mail or facsimile delivery. I certify that on April 29, 2004 the foregoing DECISION was sent to the following:

VIA FACSIMILE:

Stephen J. Dunn, Esq.
FAX: 410-321-1599

Evelyn Mary Aswad, Esq.
FAX: 202-6476794

VIA FIRST-CLASS MAIL:

Hattie P. Baldwin, Esq.*
Acting Deputy Assistant Secretary
Office of EEO & Civil Rights
U.S. Department of State
2201 C Street, NW, Room 4216
Washington, DC 20520

Michael J. Pacinda
Administrative Judge

*copy of the closing briefs enclosed