# EXHIBIT 19




**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Rose Mary Dews-Miller,
Complainant,

v.

Condoleezza Rice,
Secretary,
Department of State,
(United States Information Agency),
Agency.



Appeal No. 01A44926

Agency Nos. 00-19; 96-15

Hearing Nos. 100-A2-7521X; 100-A2-7576X

## DECISION

Complainant timely initiated an appeal from the agency's final order concerning her equal employment opportunity (EEO) complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. The appeal is accepted pursuant to 29 C.F.R. § 1614.405. For the following reasons, the Commission AFFIRMS the agency's final order.

Complainant alleged discrimination on the basis of retaliation for prior EEO activity when: (1) she was subjected to continuous harassment by an employee in the Office of Human Resources; (2) her personal medical records obtained from the Office of Workers Compensation Programs (OWCP) were communicated to others in the agency; (3) her essential records were withheld from OWCP from November of 1995 to January 1997, which caused an unwarranted delay processing her claims; (4) an agency employee discussed complainant's medical records with other unqualified persons in the agency; (5) from September 5, 1994 through November 24, 1995, she was placed on Absent without Leave (AWOL) for a work injury; (6) she received a Minimally Successful rating in her performance appraisal report for the May 1, 1994 to January 24, 1995 appraisal period; (7) she received a Minimally Successful rating in her performance appraisal report for the February 1, 1995 to July 31, 1995 appraisal period; (8) on November 9, 1995, complainant was denied a within-grade increase, and the rating/reviewing officials failed to discuss the deficiencies in her performance that resulted in the denial of the within-grade increase, pursuant to the agency's Memorandum of Agreement (MOA). Complainant also alleged that the agency failed to accommodate her disability (shoulder injury) in violation of the Rehabilitation Act.

The record reveals that complainant, a GS-11 Administrative Officer at the agency's Office of the Comptroller (OC) in Washington, D.C. ("facility"), filed formal EEO complaints on March 28, 1996 and August 23, 2000. A review of the record establishes that complainant alleged officials from three (3) different divisions of the agency - the Office of Human Resources (HRO), OC and the Office of the Inspector General (OIG) - retaliated against her for participating in prior EEO activity. The record indicates that complainant's prior EEO activity consisted of filing three EEO complaints in 1993 and 1994, which were the subject of a Settlement Agreement (SA), which established a "last chance" arrangement whereby complainant agreed to resign from the agency in the event she failed to meet certain appraisal requirements. The express terms of the SA stated that complainant would be posted to the agency's OC in January of 1995 for a period of six months, and she would be allowed to stay in the OC if her performance rating for the six months was "Fully Successful" or better. If she did not receive that rating, she would move to a second position for three (3) months and could stay if she received a "Fully Successful" rating. If she did not receive that rating, she would be placed on a temporary appointment not to exceed one (1) year. However, in July of 1995, complainant's rating in the OC position was "Minimally Successful." Subsequently, after being assigned to several offices within the agency, complainant was terminated from employment with the agency in December of 1996.

Believing she was the victim of discrimination, complainant sought EEO counseling and filed the aforementioned formal complaints. At the conclusion of the investigation, complainant received a copy of the investigative report and requested a hearing before an EEOC Administrative Judge (AJ). Following a hearing, the AJ issued a decision finding no discrimination. We note that the AJ considered complainant's allegation that she was subjected to continuous harassment by an employee in the Office of Human Resources under a disparate treatment theory rather than as a harassment claim. As such, the AJ found that complainant failed to establish a *prima facie* case of retaliation. The AJ noted that complainant had protected activity due to the prior EEO activity, and the alleged adverse activities included her termination from the agency, the denial of within-grade increase (WIG) in 1995, placement on AWOL in 1995 and denial of end-of-service payments in December of 1996. Complainant alleged that these actions were taken by the agency's Personnel Management Specialist (PMS) and others in the Human Resources office, and the AJ noted that it was undisputed that the PMS was aware of complainant's prior EEO activity. However, the AJ found that complainant failed to demonstrate a causal connection between the adverse actions and her prior EEO activity as there was insufficient relationship in time to infer causation. In addition, the AJ found that the agency articulated legitimate, nondiscriminatory reasons for its adverse actions against complainant. The AJ also noted that the evidence established complainant was terminated from the agency as she failed to comply with the provisions of the SA. The AJ found that the record establishes that the provisions of the SA provides for a separation from service did not meet certain evaluation goals. Further, the AJ noted that the record indicated that complainant did not receive a "Fully Successful" rating as required by the SA.

The AJ found that regarding the second aspect of complainant's harassment claim (denial of the WIG in 1995), the PMS stated that the increase was denied as complainant's rating was "Minimally Successful." Regarding her being placed on AWOL in 1995, the AJ noted the PMS stated that

complainant failed to submit documentation supporting her absence. In addition, the AJ credited the testimony of PMS, who stated that complainant was not paid her end of service payments as she did not submit the appropriate separation documents. As such, the AJ found that the agency articulated legitimate, nondiscriminatory reasons for taking the various actions against complainant. The AJ also found that complainant failed to proffer evidence that the agency's articulated reasons for its actions were more likely than not a pretext for discrimination.

Regarding complainant's other allegations of discrimination, the AJ initially dismissed her allegation that the agency invaded her personal medical records as she did not suffer an adverse employment action under 29 C.F.R. 1614.107(a). In so finding, the AJ noted that complainant failed to demonstrate that her OWCP medical records were "invaded" or improperly communicated to anyone at the agency. In addition, the AJ noted that three witnesses from HRO testified that complainant's records were not improperly communicated and were locked in a file room. The AJ also dismissed complainant's allegation that the agency withheld essential records from OWCP, as complainant did not suffer an adverse employment action. In so finding, the AJ noted that the record did not support complainant's allegation that any records were withheld from OWCP. Finally, the AJ dismissed complainant's allegation that her medical records were discussed with unqualified persons, for failure to state a claim. In so finding, the AJ noted that the allegation was not supported by any evidence that complainant suffered an actionable injury.

Addressing complainant's allegation that the agency failed to provide her with an accommodation under the Rehabilitation Act, the AJ found that she did not demonstrate that she has a disability and thus was not entitled to a reasonable accommodation. In addition, the AJ found that complainant failed to establish by a preponderance of the evidence that the agency's reasons for placing her on AWOL is a pretext for retaliation. The AJ then found that the agency articulated legitimate, nondiscriminatory reasons for issuing complainant a minimally successful appraisal for the period between May 1, 1994 to January 24, 1995. In so finding, the AJ noted the testimony of a rating officer and a reviewing officer stating that the quality of complainant's work merited the appraisal. Other agency witnesses stated that complainant's work was often late and inaccurate. In addition, the AJ noted that agency officials attempted to have meetings with complainant regarding her performances, but there was no response from complainant. Addressing complainant's allegation regarding the "Minimally Successful" appraisal from February 1, 1995 to July 31, 1995, the AJ again credited the testimony from the reviewing officer and rating officer regarding the reasons complainant was rated as minimally successful and noted that she did not meet the fully successful standard in terms of quality, quantity, timeliness and extent of supervision required. The AJ found that several exhibits documented deficiencies in complainant's performance, and the reviewing officer noted that she offered to discuss the appraisal with complainant but the offer was rejected. Finally, the AJ found that complainant failed to establish by a preponderance of the evidence that the agency's articulated reasons for denying complainant the WIG in 1995 and failing to discuss the deficiencies which resulted in the denial of the WIG were a pretext for discrimination. AJ's Decision at 13. The agency's final order implemented the AJ's decision.

4                                                                                   01A44926

On appeal, complainant restates arguments previously made at the hearing. Complainant initially alleges that the AJ erred in considering her claim of harassment under a disparate treatment theory rather than whether the agency's actions constituted a hostile work environment. Complainant alleged that the AJ incorrectly found that the agency's actions were discrete acts with no connection; rather, the agency's actions were part of a continuous pattern of conduct against her. Further, complainant contends that the AJ erred in finding that the agency's actions against her were not sufficiently proximate in time to constitute retaliation. Complainant also alleges that the AJ erred in finding that the agency articulated legitimate, nondiscriminatory reasons for several of its actions, such as placing her on AWOL status, delaying the processing of her OWCP claim, denial of the WIG increase and giving her "Minimally Successful" appraisal ratings in 1994 and 1995.[1] In response, the agency restates the position it took in its final order, and requests that we affirm the final order.

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. *See Pullman-Standard Co. v. Swint*, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a *de novo* standard of review, whether or not a hearing was held.

After a careful review of the record, the Commission finds that the AJ's findings of fact are supported by substantial evidence in the record. Regarding complainant's allegation of harassment, the Commission finds that the AJ erred in failing to consider whether the agency's actions as alleged by complainant constituted harassment due to a hostile work environment. However, under the standards set forth in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), complainant's claim of harassment must fail. *See* Enforcement Guidance on *Harris v. Forklift Systems, Inc.* at 3, 6 (March 8, 1994). We note that complainant must prove that: (1) she was subjected to harassment that was sufficiently severe or pervasive to alter the terms or conditions of employment and create an abusive or hostile work environment, and (2) the harassment was based on membership in a protected class. *See id.* After a review of the record, we find the evidence in the record is insufficient to support a finding that the challenged actions satisfied criterion (1). Viewed in context, we do not find that the actions of the employee in the Office of Human Resources or other agency management were so objectively severe or pervasive as to create a hostile work environment. As we concur with the AJ's finding that the agency articulated legitimate, nondiscriminatory reasons for the actions as alleged by complainant, we find that these allegations are insufficient to raise a actionable claim of harassment. Nevertheless, even if the acts were sufficient to raise an actionable claim, we still find that complainant cannot succeed because she does not meet criterion (2). We concur with the AJ's finding that complainant offered no proof that any of the actions initiated by the Office of Human

---

[1] We note that complainant has not directly challenged the AJ's dismissal of several of her allegations for failure to state a claim under 29 C.F.R. § 1614.107(a). However, we find that the AJ made an error of law with respect to complainant's allegations (2) and (4), as these allegations, if proven to have occurred, could be a violation of the Rehabilitation Act.

5                                                                          01A44926

Resources or agency management were motivated by retaliatory animus. *See Oakley v. United States Postal Service*, EEOC Appeal No. 01982923 (Sept. 21, 2000).

Regarding complainant's allegations (2) and (4), we also concur with the AJ's finding that complainant proffered no evidence that her OWCP records were "invaded" or improperly communicated to anyone at the agency by the PMS. We note that 29 C.F.R. § 1630.14(c) applies to medical examinations and/or inquiries of an employee, such as a fitness for duty exam. *See* 29 C.F.R. 1630.14(c). 29 C.F.R. § 1630.14(c)(1) provides, in pertinent part, that "information obtained under paragraph 1630.14(c)...regarding the medical condition or history of any employee...shall be treated as a confidential medical record." *See also DeReyna v. Department of the Navy*, EEOC Appeal No. 01980077 (January 19, 2001); EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Reasonable Accommodation Guidance) at question 42, fn. 111 (rev. October 17, 2002) (listing limited exceptions to the ADA confidentially requirements). By its terms, this requirement applies to confidential medical information obtained from "any employee," and is not limited to individuals with disabilities. *See* Hampton v. United States Postal Service, EEOC Appeal No. 01A00132 (April 13, 2000). Although not all medically-related information falls within this provision, documentation or information of an individual's diagnosis is without question medical information that must be treated as confidential except in those circumstances described in 29 C.F.R. Part 1630. *See Hampton, supra; see also* ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations (October 10, 1995), at 22.

With regard to allegations (2) and (4), the Commission notes the hearing testimony of the PMS that while she may have discussed the general nature of complainant's injury with her Supervisor(s) in the HRO, the only person to whom she provided complainant's medical records was complainant's counsel after receiving a signed release from complainant.[2] Hearing Transcript (HT) at 266-268. As we find the record indicates that the complainant's OWCP records were not improperly "invaded" or disclosed, and the testimony of the PMS indicates only that she discussed complainant's injury generally with HRO Supervisors, we find that these actions did not violate the Rehabilitation Act's prohibition against the release of confidential medical information. *See Fisher v. Dept. of the Army*, EEOC Appeal No. 01A32251 (September 28, 2004)(the agency violated the Rehabilitation Act when complainant's supervisor left out complainant's sick leave request and attached medical documentation in the break room for four days); *Forde v. United States Postal Service*, EEOC Appeal No. 01A12670 (October 9, 2003)(finding that an agency doctor violated the Rehabilitation Act's prohibition against the release of confidential medical information by informing a complainant's Supervisor about complainant's heart disease and depression). As such, we cannot find that these actions constitute retaliatory harassment against complainant. Further, addressing

---

[2] As noted by the AJ, three (3) witnesses from the agency's Human Resources Office testified that complainant's OWCP records were not improperly disclosed and were in fact kept in a locked cabinet. HT at 242-244, 266-268. Further, the AJ found that complainant failed to identify anyone at the agency "who was improperly told of the contents of her medical records." AJ's Decision at 8.

6                                                                01A44926

allegation (3), the Commission concurs with the AJ's finding that there is no evidence in the record which establishes that any of her records were withheld from OWCP. Rather, the hearing testimony demonstrates that requests from OWCP for documents were handled promptly by the agency, and any documentation which OWCP did not receive was due to complainant's failure to provide it. HT at 136, 272.

Addressing complainant's allegation that the agency failed to accommodate her disability under the Rehabilitation Act, the Commission finds that assuming, *arguendo,* complainant was an individual with a disability, she failed to demonstrate a *prima facie* case of disability discrimination. In so finding, we note that while the record shows that complainant injured her shoulder, she was returned to work and did not tell anyone in her chain of supervision or in the Human Resources office about her injury. Further, the record indicates that complainant did not request an accommodation for the injury, and she conceded at the hearing that she did not request a modification of her duties at that time. HT at 103, 139-140, 141, 272. In addition, complainant merely stated at the hearing that she told a supervisor she could not file due to her injury, but she conceded that she was not required to file upon her return to work. HT at 142. We also note that complainant failed to describe how any accommodation she discussed at the hearing would have allowed her to perform the essential functions of her position.

Further, we concur with the AJ's finding that the agency articulated legitimate, nondiscriminatory reasons for placing complainant on AWOL, namely that she failed to submit adequate documentation for her injury suffered in 1994.[3] The record reflects that complainant failed to provide documentation which supported her request for a three month absence from her desk job. HT at 254-260. Similarly, the Commission finds that the agency articulated legitimate, nondiscriminatory reasons for giving complainant a "Minimally Successful" rating for the 1994-1995 rating period. As found by the AJ, agency witnesses stated that complainant did not perform her position in an adequate manner and placed the office in a "crisis mode." The record also supports the AJ's finding that agency officials attempted to discuss her rating with her, but were unable to do so. HT at 119-120. In addition, regarding her July 1995 performance appraisal, we note that complainant did not contest the hearing testimony of the rating official or the evidence which described complainant's performance problems. Further, while complainant alleged that she did not receive proper training for the budget analyst position, she testified at the hearing that she was qualified for the position and had the proper training. HT at 130-131. Further, complainant's other allegations regarding this position were later contradicted by her hearing testimony, as found by the AJ in his decision. HT at 77. As such, we concur with the AJ's finding that complainant failed to establish by a preponderance of the evidence that she was the victim of retaliation, harassment or disability discrimination due to the actions of agency management as complainant alleged in her formal complaints.

---

[3] The record reflects that when the agency received the appropriate information, the AWOL was converted into continuation of pay.

8                                                                01A44926

also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden* (signature)

Carlton M. Hadden, Director
Office of Federal Operations

APR 1 1 2006
Date

### CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

APR 1 1 2006
Date

(signature)
Equal Opportunity Assistant