# EXHIBIT 23

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSE M. DEWS-MILLER | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 1:06CV01764 (GK) |
| CONDOLEEZZA RICE, | ) |
| Secretary of State, | ) |
| Defendant | ) |

DECLARATION OF JACQUELINE CANTON

I, Jacqueline Canton, do hereby declare as follows:

1. My name is Jacqueline Canton. I am an employee of the United States Department of State in the Department's Office of Civil Rights ("S/OCR"). My job title is Chief, Intake and Resolution Section. I am responsible for the daily operation and management of the Department's Equal Employment Opportunity ("EEO") Counseling Program, including developing curriculum, scheduling training worldwide, and maintaining quality assurance of EEO counselors and their work products; the Department's Alternative Dispute Resolution ("ADR") program; and the management, development and evaluation of the Department's employment discrimination complaints process.

2. Information in S/OCR on EEO complaints is contained in an electronic database and in paper files. In addition, older paper files are stored off-site. Because of my current position and duties, I have unrestricted access to these files.

3. I have searched S/OCR records for records related to Ms. Rose Mary Dews-Miller. My search included files currently in S/OCR and files that had been stored off-site. S/OCR records indicate that Ms. Dews-Miller was an employee of the former United States Information Agency ("USIA"). When USIA was merged into the Department of State (the "Department") in 1999, S/OCR assumed responsibility for equal employment claims of employees of the former USIA.

**Alleged Breach of Settlement Agreement Dated January 31, 1995**

4. S/OCR's files contain a settlement agreement, dated January 31, 1995, between Rose Mary Dews-Miller and the United States Information Agency (the "Settlement Agreement"). The settlement agreement states that it is "in settlement of Complaints of Discrimination filed by the employee on June 4, 1993, and September 7, 1993, as well as all other EEO complaints against the Agency pending at an informal stage." See Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, Exhibit ("Ex.") 1.

5. Our files contain an October 10, 1995 letter from Ms. Dews-Miller to USIA in which Ms. Dews-Miller alleges that USIA breached the Settlement Agreement and asks that her EEO case be reopened. See Ex. 2. Our files contain a response from USIA, dated December 11, 1995, that addresses Ms. Dews-Miller's allegations of breach and advises her that USIA has concluded that it has carried out all of the terms of the Settlement Agreement. See Ex. 3. The letter also tells Ms. Dews-Miller that she may appeal to the Equal Employment Opportunity Commission ("EEOC") within 30 days of her receipt of this determination. Id.

6. Our files contain a February 26, 1996 letter from the EEOC to USIA acknowledging that the EEOC had received an appeal by Ms. Dews-Miller in Agency Nos. OCR086349 and OCR0863491, EEOC Docket No. 01962642. See Ex. 4. Our files also contain a decision by the EEOC, dated September 25, 1997, with respect to OCR086349 and OCR0863491, EEOC Docket No. 0962642. See Ex. 5. The EEOC decision notes that the issue on appeal is whether the agency breached the January 31, 1995 settlement agreement and dismisses the appeal as untimely. Id.

**USIA Complaint No. OCR-96-15 (later redesignated Department of State Complaint No. 00-19)**

7. On March 28, 1996, Ms. Dews-Miller filed a complaint with USIA's Office of Civil Rights, alleging discrimination based on reprisal for the filing of prior discrimination claims. See Ex. 6. On July 31, 1996, USIA advised Ms. Dews-Miller that it had assigned Agency Complaint Number OCR-96-15 to Ms. Dews-Miller's complaint and had accepted the following allegations for processing. See Ex. 7. The letter explained that:

> "Based on thorough review of your complaint, the following allegations have been accepted for processing:
>
> Whether you have been continuously discriminated against on the basis of reprisal (previous EEO activities), when as you allege:
>
> (1) For the May 1, 1994 to January 24, 1995 Performance Appraisal Report, you received a "Minimally Successful" rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain your deficiencies to you before issuing this rating, pursuant to the Manual of Operations & Administration ("MOA"), Part V-A, Section 453.2(c)(1), (2), and (3);
>
> (2) For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, you received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain your deficiencies to you before issuing

3

this rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2), and (3);

(3) From September 5, 1995 through November 24, 1995, you were placed on Absence Without Leave ("AWOL") for a work injury. You reported the work injury to your immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed you on AWOL was not your supervisor at the time of your work injury; and

(4) On November 9, 1995, you were denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss your deficiencies in performance with you that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2), and (3)."

8. Our files show that on March 6, 1998, USIA informed Ms. Dews-Miller that it had dismissed Allegation No. 3 of her March 28, 1996 complaint as moot. See Ex. 8. USIA's March 6, 1998 letter also advised Ms. Dews-Miller that USIA was denying her request to be counseled on the same work injury claim that was the subject of Allegation No. 3 and that was pending before the Agency. Id. The letter informed Ms. Dews-Miller of her right to appeal. Id.

9. On January 19, 1999, USIA issued a final agency decision ("FAD") in Agency Complaint No. OCR-96-15. See Ex. 9. As to each of the allegations that it had not dismissed in its letter of March 6, 1998, USIA concluded that the Complainant had failed to establish a *prima facie* case of discrimination. Id. The FAD advised the Complainant of her right to appeal to the EEOC. Id.

10. Our files contain a decision dated June 23, 1999 by the EEOC's Office of Federal Operations ("OFO") in EEOC Appeal No. 01983674; Agency No. OCR-9615. See Ex. 10. In that decision, OFO disagreed with USIA's decision that Allegation No. 3 was moot. Id. The decision also held that USIA had improperly denied counseling to Ms.

4

Dews-Miller. Id. Thus, OFO reversed the FAD of March 6, 1998 and remanded the complaint to USIA. Id.

11. Our files indicated that Ms. Dews-Miller then entered into counseling, pursuant to the EEOC's decision of June 23, 1999. See Ex. 11. On August 11, 2000, the EEOC sent Ms. Dews-Miller a notice of her right to file a formal complaint with respect to Case No. OCR 00-19, USIA No. OCR-96-15R(former). Id. Our files show that on August 23, 2000, Ms. Dews-Miller, though a representative, filed a formal complaint with the Department of State's Office of Equal Employment Opportunity and Civil Rights (as S/OCR was known at that time). See Ex. 12. Our files also contain an October 30, 2000 document submitted by Ms. Dews-Miller, through a representative, that states that it is an amendment to her August 23, 2000 formal complaint. Id.

12. On January 26, 2001, the Department notified Ms. Dews-Miller that the following allegations would be investigated:

> "That due to reprisal for previous EEO activity, you were discriminated against, when you were subjected to:
>
> 1. Continued and continuous harassment by an employee in the Office of Human Resources, and others, who participated in creating a "hostile environment" in any personnel action, benefit, and entitlement for you after filing prior EEO Complaints (Allegation A);
>
> 2. Invasion of your personal medical records obtained from OWCP and then communicated to others in USIA who had no right to their contents (Allegation B);
>
> 3. Withholding of essential records from OWCP from November 1995 to January 1997, which caused an unwarranted delay in processing your claim (Allegation C);
>
> 4. An employee's illegal and unethical discussion of your medical files with other unqualified persons in USIA (Allegation E);

5

> 5. Your non-accommodation under the Rehabilitation Act of 1973 (P.L. 93-112, as amended), which requires federal agencies to develop and implement plans for the hiring, placement, promotion and retention of persons with disabilities (Allegation F)."

See Ex. 13. The EEOC in its June 23, 1999, Decision had ordered the Department to process Allegation No. 3 of USIA Complaint No. OCR-96-15 in accordance with 29 C.F.R. §1614.108. Thus, the Department explained that following sixth allegation would also be investigated:

> "That due to reprisal (previous EEO activity), you were discriminated against when:
>
> From September 5, 1995 through November 24, 1995, you were placed on AWOL for a work injury. You reported the injury to your immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506. 3 (c) (1). However, the Management Official who placed you on AWOL was not your supervisor at the time of the work injury."

Id. The letter advises Ms. Dew-Miller that, if she believes that the issues in her complaint have not been correctly identified, she should notify the Department within five days. Id. S/OCR files do not contain any such notification by Ms. Dews-Miller.

13. Our files indicate that, on November 26, 2001, the Department notified Ms. Dews-Miller that it had completed its investigation in EEO Case No. 00-19, USIA No. OCR-96-15R (EEOC Appeal No. 01992980). See Ex. 14. The Department's letter informed Ms. Dews-Miller that she had a right to request a hearing before an administrative judge of the EEOC or to request a FAD from the Department. Id.

14. Our files indicate that Ms. Dews-Miller appealed to the EEOC in EEOC Appeal No. 1992980 (Agency No. OCR-96-15R). See Ex. 15. The EEOC decision, dated July 19, 2001, held that the Department had erred in fragmenting Ms. Dews-Miller's claims. Id. It concluded that "the complainant is essentially alleging that she was the

victim of ongoing harassment and discriminatory treatment by agency officials" and that "[t]he Commission finds that the complainant's two claims of reprisal harassment should be adjudicated as one claim of harassment." Id. The EEOC thus vacated and remanded the claims to the Department. Id.

15. Our files contain a letter of August 2, 2001, in which the Department wrote to Ms. Dews-Miller that in accordance with the EEOC's July 19, 2001 decision, "all of [her] outstanding claims [had] been consolidated for joint processing" and that "[i]n addition, all pending claims [would in the future] be identified as Complaint No. 00-19." See Ex. 16.

16. Our files contain a letter from the Department, dated November 26, 2001, that advised Ms. Dews-Miller that the Department had completed its investigation of her complaint (EEOC Appeal No. 01992980; EEO Case No. 00-19; USIA No. OCR-96-15R). See Ex. 17. The letter advised Ms. Dews-Miller of her procedural rights, including her right to request a hearing before an EEOC administrative judge. Id Our files also contain the decision of the EEOC Administrative Judge with respect to EEOC Nos. 100-A2-7521X and 100-A2-7576X (Agency Nos. 00-19; 96-15), dated April 29, 2004. See Ex. 18. The decision states that that these are the issues in the case:

> "Whether Complainant was discriminated against based on reprisal for prior EEO activity when she was subjected to:
>
> 1. Continued and continuous harassment by an employee in the Office of Human Resources and others, who participated in creating a hostile work environment in personnel actions, benefits and entitlements for her after she filed prior EEO complaints;
>
> 2. Invasion of Complainant's personal medical records obtained from OWCP and then communicated to others in USIA who had no right to their contents;

7

   3. Withholding essential records from OWCP from November 1995 to January 1997, which caused an unwarranted delay processing her claims;

   4. An employee's illegal and unethical discussion of her medical records with other unqualified persons in USIA;

   5. Non-accommodation under the Rehabilitation Act, which requires federal agencies to develop and implement plans for hiring, placement, promotion and retention of persons with disabilities;

   6. From September 5, 1994 through November 24, 1995, Complainant was placed on AWOL for a work injury. She reported the work injury to her immediate supervisors, the rating and reviewing officials, pursuant to the Manual of Operations and Administration (MOA), P 5-A, section 506.3 (c)(1). However, the management official who placed her on AWOL, was not her supervisor at the time of the work injury;

   7. When she alleged that for the May 1, 1994 to January 24, 1995 performance appraisal report she received a minimally successful rating. The rating and reviewing officials failed to discuss the minimally successful rating or to explain her deficiencies to her before issuing the rating pursuant to the MOA, Part 5-A, Section 453.2(c)(1), (2) and (3);

   8. For the February 1, 1995 to July 31, 1995 performance appraisal report she received a minimally successful performance rating. The rating and reviewing officials failed to discuss the minimally successful rating or to explain her deficiencies to her before issuing the rating pursuant to MOA, Part 5-A, Section 453.2(c)(1), (2) and (3);

   9. On November 9, 1995, Complainant was denied a within-grade increase. The rating and reviewing officials failed to discuss the deficiencies in performance that resulted in denial of the within-grade increase pursuant to MOA, Part 5-A, Section 453.2(c)(1), (2) and (3)."

Id. at 1-2.

After explaining his reasoning, the Administrative Judge concluded that, "[h]aving heard all the testimony and carefully reviewing the ROI, I find Complainant failed to establish by a preponderance of evidence that the Agency discriminated against her. As such, I find in favor of the Agency on all counts." Id. at 14.

   17. Our files also indicate that, when the EEOC Administrative Judge considered Issue 1, he concluded that these claims are "not properly raised as a harassment claim."

Id. at 5. He concluded that each incident complained of "constituted a discrete adverse action and stated that:

> "The adverse actions at issue consist of the following: (1) termination from service in December 1996; (2) denial of the within-grade increase (WGI) in the fall of 1995; (3) placement on AWOL from September 5, 1995 through November 24, 1995; and (4) denial of end-of-service payments in December 1996."
> Id. at 5.

18. Our files also contain the decision of the EEOC's Office of Federal Operations, dated April 11, 2006, in Appeal Nos. 01A44926 (Hearing Nos. 100-A2-7521X; 100-A2-7576X), Agency Nos. 00-19; 96-15). See Ex. 19. That decision affirms the decision of the Administrative Judge. Id. Our files also contain the July 13, 2006 decision by OFO denying Ms. Dews-Miller's request for reconsideration of that decision. See Ex. 20.

19. S/OCR's files do not contain any informal or formal EEO complaints filed by Ms. Dews-Miller after the date of the Settlement Agreement (January 31, 1995), other than the complaints that were consolidated in cases 96-15 and 00-19.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Date: July 27, 2007

*Jacqueline A. Canton*
Jacqueline Canton

9