# EXHIBIT   27

Part 1 of 2

RECEIVED  MSPB  WRO
March 5, 1997
1997 MAR 19  PM 12: 41

U.S. Merit Systems Protection Board
Washington Regional Office
5203 Leesburg Pike, Suite 1109
Falls Church, VA  22041-3473

Rec'd WRO
MAR - 7 1997
11:46 Am sw

Subject:  Individual Right of Action

Reference:  OSC File No. MA-96-0449

This I.R.A. is being filed on behalf of Rosemary Dews-Miller, former employee at United States Information Agency, under the provisions of 5 U.S.C. Part II, Section 1221. Mr. Dews-Miller charges U.S.I.A. with violating 5 USC, Part II, Section 2302(6)(8) with the Office of Special Counsel through the office of Representative Steny Hoyer, 5th District of Maryland, as outlined in her November 28, 1995, letter (**Attachment 1**).

On January 22, 1996, (**Attachment 2**) Congressman Hoyer provided Ms. Dews-Miller a copy of an OSC letter dated January 18, 1996 (**Attachment 3**), regarding the opening of File MA-96-0449 to address her complaints.

On March 20, 1996, Ms. Dews-Miller was sent a letter by J. Sandra Thomas, Complaints Examiner at OSC (**Attachment 4**). Ms. Thomas identified herself as the "assigned" Complaints Examiner. Ms. Thomas implied this was a "status" report issued "within 90 days after our initial notice to you that we had received your complaint." While this letter was sent within 60, not 90, days of the January 18, 1996, letter to Congressman Hoyer, this was the first time Ms. Dews-Miller had been "notified" of the existence of MA-96-0449 and the part Ms. Thomas would be playing.

On May 17, 1996, Ms. Dews-Miller faxed (**Attachment 5**) Ms. Thomas a copy of a May 13, 1996, letter (**Attachment 6**) effectively terminating Ms. Dews-Miller's employment at U.S.I.A. and all of it's necessary items like income and medical program coverage. Please note that this action was taken without any prior notice to Ms. Dews-Miller and was yet another abrogation of the otherwise defective settlement agreement forced on Ms. Dews-Miller in January 1995, when her then attorney acted in collusion with Carol Epstein, Attorney for U.S.I.A. and the Administrative Law Judge, EEOC, who was "supposed" to conduct an arbitration hearing on January 18-19, 1995.

There was no reaction from Ms. Thomas.

On May 31, 1996, Ms. Dews-Miller faxed another few words to Ms. Thomas (**Attachment 7, page 1**). In this fax Ms. Dews-Miller reported her inability to have prescriptions filled because she had been dropped by her carrier, MDIPA, as of April 27, 1996, by order of

- 2 -

U.S.I.A. (**Attachment 7, page 2**). The cancellation by U.S.I.A. was effective on April 27, 1996, (**Attachment 7, page 3**) and was supposed to have been corrected by the "CANCELLATION" scrawled across a copy of the April 29, 1996, action and the "Note" by a Ms. Freeman, dated May 24, 1996 (**Attachment 7, page 4**). My fax to Delia Johnson, U.S.I.A. Office of Civil Rights, also sent May 31, 1996 (**Attachment 8**), was to advise O.C.R. of the continuing incidents of Prohibited Personnel Practices being committed by various management officials in U.S.I.A. This fax also pointed out where O.C.R. was also failing to carry out their responsibilities toward employees.

Again no response from Ms. Thomas at OSC and no response from Delia Johnson at O.C.R.

On June 4, 1996, I again faxed Ms. Johnson at O.C.R. to let her know that Ms. Dews-Miller was still without medical coverage (**Attachment 9**).

On June 10, 1996, Ms. Thomas, OSC provided Ms. Dews-Miller with yet another "60 day status" report (**Attachment 10**). Ms. Thomas apologized for missing the May 20, 1996, date, but she did say "This matter is under active consideration," a statement obviously part of "standard" response form letters.

At this point in time we must return to the original cause behind Ms. Dews-Miller's current situation, The American Express Charge Card abuses by O.I.G. employees. Almost from the day in September, 1994, when Ms. Dews-Miller first reported abuses by O.I.G. employees to the then Inspector General, Marian C. Bennett, her work was suddenly found to be wanting, everyone in U.S.I.A. upper management tried to ignore the problem while they killed the messenger who brought it to Bennett's attention. Almost twenty two months later the problem remained as shown by U.S.I.A. email, announcement 96-200, dated July 3, 1996 (**Attachment 11**).

It is somewhat ironic that after all this time U.S.I.A. had not succeeded in cleaning up the "problem" or killing the messenger.

On July 25, 1996, I sent Ms. Thomas a quantity of material we had discussed earlier that week as a result of a phone conversation. My notes indicate Ms. Thomas called at 11:24 AM. My wife took the message and I returned the call that afternoon. At this time I will only include the cover letter (**Attachment 12**). The package was sent Express Mail, Next Day by Noon and weighed one pound and eleven ounces (**Attachment 13**). *How many pages weigh one pound, eleven ounces?*

On August 2, 1996, Ms. Thomas and I had another telephone conversation. As a result, I faxed more pages, as described in the two-page transmittal letter (**Attachment 14**).

On August 9, 1996 (**Attachment 15**) was sent Ms. Dews-Miller, using the same form letter from the June 10, 1996, letter (see **Attachment 10**). Ms. Thomas again made no mention of our telephone conversations or the other material I had furnished. By now the original and

- 3 -

supplemental information approached eight hundred pages, yet Ms. Thomas had still made no comment.

On September 11, 1996, U.S.I.A. Announcement No. 96-264 was broadcast by email (**Attachment 16**). In this latest, and probably not last announcement on AMEX Card Abuse, U.S.I.A admitted they _still_ had serious problems with the program. These were the same problems Ms. Dews-Miller had brought to the attention of then I.G. Marian C. Bennett two years earlier.

It should be obvious to one and all that Ms. Dews-Miller had lifted the lid on a big box of snakes and spiders in September 1994, and all the senior managers at U.S.I.A. could not gather them up as fast as they crawled out.

On September 12, 1996, just two years after blowing the whistle on the AMEX Card problem, she was summoned to OSC where she was questioned, interviewed, interrogated, grilled, etc. by Examiners Hamilton Peterson and Edward Henderson. Both assured her she _was not_ the target of their investigation. And at the same time both assured her she had no choice but to answer their questions. Ms. Dews-Miller was also told she _could not_ have anyone there for their "session." While I had some reservations about these restrictions, neither Ms. Dews-Miller nor I made a scene about them. As long as she _was not_ the target of their investigation we agreed she would go quietly.

Two interesting points surfaced early in the "grill room." First, neither Peterson nor Henderson were aware of the Ms. Dews-Miller file MA-96-0449, and second, neither had had any contact or communication with Ms. Thomas, or so they said. A most peculiar situation appeared to exist wherein Ms. Thomas, in her "status" letters, was apologizing for being late because of "staff overloading" while at least three examiners, Thomas, Peterson and Henderson, were all looking at the AMEX Card situation in U.S.I.A.

On September 25, 1996, Ms. Dews-Miller, wrote Examiner's Peterson and Henderson a seven page memorandum relating to the September 12, 1996, meeting (**Attachment 17**). In this, she provided additional information and included comments on interviews by Investigators from U.S.I.A.'s O.I.G. as well as her recollections of yet another interview, this time by someone from the F.B.I., and all related to the AMEX Card problem.

On October 10, 1996, Ms. Thomas sent Ms. Dews-Miller yet another "60 day status update" wherein she again stated, "this matter is under active consideration" (**Attachment 18**).

Imagine our surprise when on October 31, 1996, Ms. Thomas again wrote Ms. Dews-Miller (**Attachment 19**). In only twenty one calendar days, MA-96-0449 had gone from "active consideration" to dead-in-the-water "closure."

_What should we have expected for Halloween anyway?_

After recovering somewhat from the shock of Halloween, I wrote Ms. Thomas a letter which I dated November 15, 1996, and then faxed to her office at 11:25 PM on

- 4 -

November 14, 1996 (**Attachment 20**). Quite logically I asked what had happened to all the data we had submitted and expressed concern over all the loose ends that we saw in this whole mess.

On November 20, 1996, Ms. Thomas wrote Ms. Dews-Miller two letters. The first, (**Attachment 21**) said they had reviewed my letter of November 15, 1996, and found it wanting, Case closed!

Ms. Dews-Miller and I were both amazed at the speed shown in ignoring the issues raised in my November 15, 1996, letter and issuing the November 20, 1996, "closed" reply.

Please note, my November 15, 1996, letter was in Ms. Thomas' office on Friday morning. The November 20, 1996, letter was processed through the Brentwood mail facility at 23:17 on Wednesday, November 20, 1996. I don't believe Ms. Thomas or anyone else in OSC reviewed, in any meaningful manner, the questions raised in my November 16, 1996, letter. No one certainly not Ms. Thomas, made any attempt to provide me copies of or sources for the MSPR's she referenced.

The second letter notified us we may have appeal rights to MSPB (**Attachment 22**). On Monday, November 25, 1996, I called Ms. Thomas to discuss the "closure letter." In the course of our conversation she said I could write a Mr. William Reukauf at OSC to ask for a reconsideration of the closure action. On November 27, 1996, I wrote Mr. Reukauf (**Attachment 23**), asking for reconsideration and asked him to address the important unanswered questions we had raised in the last few months in particular, as well as throughout this whole proceeding.

My letter was mailed at the Chevy Chase Post Office about noon, Wednesday, November 27, 1996. It was signed for by Osborne Mack, at OSC, on Friday, November 29, 1996 (**Attachment 24**).

While I was writing Mr. Reukauf, Ms. Dews-Miller wrote Congressman Steny Hoyer. Her letter, dated November 28, 1996 (**Attachment 25**), was just one year after she had first written seeking assistance in obtaining justice in this matter. Ms. Dews-Miller included the major documents developed in the interviewing year and asked for his assistance with what now appears to be a cover-up involving OSC as well as the original gang from U.S.I.A.

On Tuesday, December 10, 1996 (**Attachment 26**), Congressman Hoyer sent Ms. Dews-Miller a copy of a Monday, December 9, 1996, letter (**Attachment 27**), he had received from Mr. Michael Lawrence at OSC Mr. Lawrence stated, "the file in this matter is under review...."

On Thursday, December 12, 1996, William Reukauf wrote to tell me the case had been "reconsidered" and was "closed" (**Attachment 28**). Although Mr. Reukauf's letter was dated Thursday, December 12, 1996, the envelope he mailed it in was postmarked Wednesday, December 11, 1996 (**Attachment 29**).

*Who can one believe?*

- 5 -

My letter, dated November 27, 1996, was received at OSC on Friday, November 29, 1996. It was available for "reconsideration" by Reukauf, or was it being reconsidered by Thomas or the "committee" or maybe Lawrence was involved? I cannot tell from any of these letters what happened, if indeed anything other than digesting turkey or maybe taking Friday after Thanksgiving off.

What we expected was an evaluation of the case file, over eight hundred pages, by a disinterested third party. Obviously such an evaluation did not occur, however someone told Lawrence the file was being reconsidered because that was what he told Congressman Hoyer on December 9, 1996. Assuming Lawrence was truthful on December 9, 1996, means Reukauf, et. al. "reconsidered" between December 9th and 11th, when Reukauf mailed his December 12, 1996, "Reconsideration for Reconsideration" letter slamming the OSC door shut without answering my question, where do we appeal your obviously defective decision?

Mr. Lawrence reenters the game on Monday, December 16, 1996 (**Attachment 30**) by writing Congressman Hoyer, who then wrote Ms. Dews-Miller on December 17, 1996 (**Attachment 31**).

I then called Mr. Lawrence to ask about appeals outside OSC We discussed the staff make up of OSC and the availability of back issues of annual reports submitted to Congress. Mr. Lawrence admitted to being a political/presidential? appointee, as were most of the senior staff. When I compared his position to that of an inspector general he agreed they were similar types of appointments.

Mr. Lawrence agreed to "personally" look at file MA-96-0449 and call or write to provide me his comments. He has yet to do either. However, he did send me a copy of the 1994 and 1995 annual reports by OSC and some information for filing an appeal with M.S.P.B.

The package was accompanied by a transmittal letter dated December 23, 1996 (**Attachment 32**). The "Official Business" envelope from OSC was postmarked December 23, 1996, but did not reach me until Saturday, January 4, 1997, as shown on Attachment 32.

Because there is no postal service processing stamp, as was the case with Ms. Thomas' letter of November 20, 1996, the missing days are hard to explain. Was it overlooked by someone in the OSC mailroom and did not really "get out" until after the new year? Maybe it got misrouted after the post service got it on December 23rd or 24th and then went astray in the Christmas/New Year rush? When it arrived it was, and still is clean and in good condition, showing no signs of a long and tiresome journey somewhere.

I mention these dates because they are potential start dates for the sixty five day "appeal' count-down to M.S.P.B.

Ms. Dews-Miller and I have also had problems preparing this appeal because of repetitive treatment she has been undergoing for a work related injury suffered on July 10, 1995. This treatment included out-patient surgery on her right shoulder and Monday, March 3, 1997, and will continue with physical therapy for an indeterminate future period of time.

- 6 -

Because of her schedule of therapy treatments and the pain suppressing medications she has had to take progress in preparing this appeal has been even more involved than earlier administrative steps and necessary data collection.

It is for these reasons I ask you to take a kinder and gentler approach to starting the sixty-five day appeal clock.

This has been a long and depressing experience for Ms. Dews-Miller. Her treatment by U.S.I.A. management was disturbing, but the acts of omission by Office of Special Counsel personnel and the haughty "get lost" and "drop dead" acts of William Reukauf have been enough to convince any federal employee to completely ignore any and all acts of waste, fraud and mismanagement committed by any management official in general and presidential appointees' in particular, if they intend to retain, let along progress, wherever they work.

Ms. Dews-Miller seeks reinstatement as an employee, as well as complete exoneration of all illegal personnel actions taken against her. She also seeks reimbursement for all attorney and representative expenses, paid and obligated, along with interest on these amounts. Ms. Dews-Miller is due the maximum compensatory payment available under the law. Other matters concerning back-pay, reinstated annual and sick leave, lost interest on employee savings accounts will have to be discussed at an appropriate time.

Please address any correspondence on this matter to me as Ms. Dews-Miller's representative.

Sincerely,

John D. Pratt
Representative

Attachments:  As stated.

FAX   703·569·8780
FON   703·569·1944

═ ❖ ═ ◆ ═ ❖ ═ ◆ ═ ❖ ═

John D Pratt
6713 Harwood Pl
Springfield, VA 22152-2419

═ ◆ ═ ❖ ═ ◆ ═ ❖ ═ ◆ ═

November 28, 1995

The Honorable Steny H. Hoyer
United States House of Representatives
Washington, D.C.  20515-2005

Dear Congressman Hoyer:

I am a victim of continuous and continuing reprisal from management level employees of the United States Information Agency and request **IMMEDIATE RELEASE** from the assignment as the administrative officer, GS-341-11 in the Office of Inspector General.  Also, please assist me in filing a formal complaint with the Office of Special Counsel, or could this request be used as such?

I blew the whistle on September 16, 1994 to Marian C. Bennett, Inspector General about staff employees in the USIA's Office of Inspector General using the American Express Government issued cards for personal use, travel advances and non payment of accounts.  I discovered on June 27, 1995, that Ms. Bennett used allegations from OIG abusers of the American Express card that I said it was alright for employees to use the card for personal use and Ms. Bennett's decision of my formal EEO complaints reveal reprisal on her part.  I did not tell anyone this and informed John Sinclair and Jim Roberts on that date.

Also, in June 1993 through November 1994, I filed numerous EEO complaints with the Office of Civil Rights on the Office of Inspector General hiring practices for their auditor positions (J. Richard Berman, Anne T. Young, Louis J. Leporatti, and Bonnie M. Bomsey were officials named in this), reprisal for 1992-93, 1993-94 and 1994-95 performance evaluation reports by my supervisor-Darwin D. Roberts and reviewing officer-Louis J. Leporrati. I provided written comments on mismanagement of government funds, especially at the end of FY-92, 93 & 94; incompetent and poor management officials.  Other official that I wish to name in reprisal are Jeni Mallios-Personnel Management Specialist; Janet R. Davis-Chief, Personnel Management Specialist to J.Mallios and Bonnie Bomsey; Carol Epstein-Attorney in Office of General Counsel; and Renee' DeVigne-Attorney for Inspector General.

I stand for righteous, telling the truth and it shall set you free, but not in USIA's Office of Inspector General.  You become a target, once you open your mouth about the corruption the "watch dogs" are carrying on in OIG.  Once you complaint, then management tries to make it seems that you are the problem.  I am not.

I will try to list most of the events and a copy of the correspondence for your use on page two of this document.  For nearly three years now, it has been holy hell working as an administrative officer in the Office of Inspector General and as stated above I want out immediately.

Att.1 pg1 of 2

Congressman Hoyer's Letter
Page 2
November 28, 1995

A)  November 9 Letter (Denial of Within Grade effective 10/29/95
    and Performance Standards for period 9/1/95 to 4/30/96)

B)  Denial of WGI form signed by Anne Young and Marian Bennett of
    the Office of Inspector General 9/25 and 9/26/95.

C)  November 9 Letters from U.S. Department of Labor/Julio
    Melendez-Claims Examiner

D)  Earnings & Leave Statements from 9/3 to 11/11/95 placing me on
    a total of 392 hours of AWOL (Absence without Leave from OIG-
    Anne T. Young)

E)  Notification of Personnel Action/Denial of Within Grade
    Increase effective 10/29/95

F)  Minimally Successful Performance Appraisal from Carol Keith
    for Detail to Budget Analyst Position from 2/1/95 to 7/31/95

G)  Minimally Successful Performance Appraisal from Darwin Roberts
    for Administrative Officer/OIG from 5/1/94 to 1/24/95

H)  My July 15, 1995 letters to Senators Mikulski and Sarbanes,
    and Congressman Hoyer

I)  Copy of EEOC Settlement Agreement after allegations were made
    by OIG American Express Card Abusers that I said it was o.k.
    to use A.E. Card for personal use.  I said no such thing!

J)  Copy of Proposed EEOC Settlement Agreement prior to allegation
    of OIG American Express Card Abusers alleging that I said it
    was o.k. to use A.E. Card for personal use.


    Thank you very much for your help in previous matters and I
will be looking forward to immediate relief from perpetual reprisal
while working in the United States Information Agency's Office of
Inspector General.  My home address is 8507 Woodyard Road-Clinton,
MD 20735 and the telephone number there is (301) 868-9436.  My work
number is (202) 401-7249 and (I hope that this is temporary).
Again, many thanks.

Sincerely,

Rose M. Dews Miller

Rose M. Dews Miller

att 1  Pg 2 of 2

STENY H. HOYER
5TH DISTRICT, MARYLAND

CO-CHAIR
DEMOCRATIC STEERING COMMITTEE

COMMISSION ON SECURITY AND
COOPERATION IN EUROPE

APPROPRIATIONS COMMITTEE

TREASURY, POSTAL SERVICE,
GENERAL GOVERNMENT

LABOR,
HEALTH AND HUMAN SERVICES,
EDUCATION

# Congress of the United States
## House of Representatives
### Washington, DC 20515–2005

January 22, 1996

Mrs. Rose Dews Miller
8507 Woodyard Road
Clinton, MD 20735

Dear Mrs. Miller:

Enclosed is a copy of the interim reply I have received from the Office of Special Counsel.

Mr. Lawrence indicates that my office will be notified when OSC completes its analysis of this matter.

As soon as I have a final report, I will be back in touch with you.

With kindest regards, I am

Sincerely yours,

STENY H. HOYER

Enclosure

Att 2 pg 1 of 1



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

January 18, 1996

The Honorable Steny H. Hoyer
U.S. District Courthouse
6500 Cherrywood Lane
Suite 310
Greenbelt, Maryland 20770

Re:    OSC File No. MA-96-0449

Dear Congressman Hoyer:

        This is in response to your correspondence on behalf of Ms. Rose Dews-Miller to the U.S. Office of Special Counsel (OSC). Based upon your referral, a file has been created and the above referenced control number assigned to the case.

        The record is now under review by OSC. Please be assured that OSC will make every effort to complete its evaluation in an efficient and thorough manner. Because the file is currently under review by this agency, I am unable to provide any specific details of possible OSC action at this time. I will, however, notify your office when OSC has completed its analysis of the matter.

        Thank you for contacting the U.S. Office of Special Counsel. If we may be of further assistance, please contact us at (202) 653-9001.

                                        Sincerely,

                                        Michael G. Lawrence
                                        Director, Congressional and
                                            Public Affairs

Att 3 pg 1 of 1

11/28/1996  07:04    301--666--9267         ROSE DEWS MILLER



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

March 20, 1996

Ms. Rose Dews-Miller
8507 Woodyard Road
Clinton, MD 20735

Re:  OSC File No. MA-96-0449

Dear Ms. Miller:

In accordance with 5 U.S.C. §1214(a)(1)(C)(i) the Office of Special Counsel is required to advise you of the status of your complaint within 90 days after our initial notice to you that we had received your complaint. This status update was due on March 12, 1996. We apologize that due to our heavy workload we were unable to send it to you on that date.

This letter is to advise you that this matter has been assigned to me for review. The Office of Special Counsel receives a large number of complaints and it is our general practice to review such matters in the order in which they are received. If I have not already done so, I may be contacting you in the near future to discuss your complaint with you in detail.

If you have any questions concerning this matter please call me at (202) 653-7188 or on our toll-free number at 1-800-872-9855.

Sincerely,

J. Sandra Thomas
Complaints Examiner

*Attachment 4*
*Pg 1 of 1*

05/17/1996   17:44   3016609201

# USIA Career Transition Center
## Fax Cover Sheet
202-205-1929 (Phone)
202-205-1930 (Fax)

TO: J. Sandra Thomas

FROM: Rose M. Dews - Miller

DATE: May 17, 1996

FAX NUMBER: (202) 653-5151

NUMBER OF PAGES INCLUDING FAX COVER SHEET  1

REF:

OSC File No.
MA-96-0449

Attached letter from U.S.I.A. was awaiting me upon my return home this evening.
Transfer out of retirement deductions effective 4/27/96.

Att 5 pg 1 of 1

05/17/1996  17:44    3018689267

**United States**
**Information**
**Agency**

*WASHINGTON DC 20547-0001*



USIA

May 13, 1996

Rose M. Dews Miller
8507 Woodyard Road
Clinton, MD  20735

*REF: OSC File No.*
*MA-96-0449*

The official records of your retirement deductions withheld by
this Agency have been certified correct and have been sent to the
Office of Personnel Management (OPM) via a Register of
Separations.   Identifying data from that Register is provided
below for your information.   You should refer to this data if
you need to contact OPM:

|  |  |
|---|---|
| YOUR FULL NAME: | Rose M. Dews Miller |
| YOUR DATE OF BIRTH: | 03/18/54 |
| YOUR SOCIAL SECURITY NUMBER: | 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 |
| YOUR SEPARATION DATE: | 04/27/96 |
| RETIREMENT SYSTEM (CSRS or FERS): | CSRS 96-17 |
| REGISTER DATE: | 05/08/96 |
| DATE REGISTER MAILED TO OPM: | 05/08/96 |
| PAYROLL OFFICE NUMBER: | 67-00-0001 |

If you have filed an application for retirement or refund of your
retirement deductions, you should allow five to six weeks from
the date of this letter for processing your claim.

You can contact OPM's Retirement Information Office from 7:30
a.m. to 5:00 p.m. (Eastern Time).   The commercial telephone
number is (202) 606-0500.   You may address __written__ inquires to:

U.S. Office of Personnel Management
Employee Service and Records Center
Boyers, PA   16017

This notification letter is from the Reports, Control and
Analysis Section, M/CFRR.   A copy has been provided to your
Agency's Personnel Office.

att 6  pg 1 of 1

5/31/1996  12:51  3018689267    ROSEMDEWSMILLER

# *ROSE M. DEWS-MILLER*
## *Fax Cover Sheet*
### (301) 868-9436 [Phone]
### (301) 868-9267 [Fax]

DELIVER TO: *J. Sandra Thomas*      DATE: 5/31/96

FROM: *Rose M. Dews-Miller*

SUBJECT: *Cancellation of Health Insurance*   → REF:

OSC File No.

FAX NUMBER: (202) 653-5151

MA-96-0449

NUMBER OF PAGES INCLUDING FAX COVER SHEET ___4___

→ Reprisal for Whistleblowing to IG - Marian Bennett on OIG Staff Misuse of AmEx Govt Cards on 9/16/94.

This morning I visited the Safeway Pharmacy to pick up seven (7) prescriptions left after my doctor's visit on 5/30/96.

To my surprise, I learned that MDIPA, my health insurance has expired per USIA's instructions of the transfer out effective 4/27/96. I am highly upset, headache, etc. and in need of prescribed mediations.

Please Help as you can see the note from the pharmacist, I do need the ~~the~~ prescriptions

Many thanks

M. Dews-Miller

Att 9 pg 1 of 4

5/31/1996   12:51     3016689267              ROSEMDEWSMILLER

**CARNRICK LABORATORIES, INC.**

to

S.FEWAY PHARMACY #1443
8785 Branch Ave.
Clinton, MD 20735
301-856-7852



5/31/96

This is to notify
you that Rosa Miller. Dew
Rx cards expired
per MD IPA
Please try to remind
her as soon as possible
b/cos she need to
pick up about 7 Rx
Thanks

Recommend

## Sinulin

Analgesic · Antihistamine · Decongestant

(Acetaminophen 650mg,
Chlorpheniramine Maleate 4mg,
Phenylpropanolamine HCl 25mg)

## Nolahist

**Allergy Tablets**

(phenindamine tartrate 25 mg)
Antihistamine



M.D. IPA
The Quality Care
Health Plan

Member Name
DEWS-MILLER, ROSE M

PCP Telephone          Primary Care Physician
202/574-4666   HERRY V.
$5 PCP      $10 SPEC
RX: $5 GENERIC $10 BRAND
ONT=0182

For Member Services, call: (301) 294-5100 or 1-800-444-8990
For Pre-Authorization, call: (301) 429-1972 or 1-800-962-3176

att 7 pg 2 of 4

5/31/1996  12:51    3018689267                    ROSEMDEWSMILLER



# Notice of Change in Health Benefits Enrollment

## Part A - Identifying Information

| 1 Name (Last, first, middle initial) | 2 Date of birth | 3. Social Security Number |
|---|---|---|
| Dews-Miller, Rose Mary | 03-18-34 | 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 |

| 4 Address (including ZIP Code) | 5 Payroll Office Number | 6. Enrollment Code Number |
|---|---|---|
| 8507 Woodyard Road | 67000001 | JP1 |
| Clinton, MD  20735 | 7 SF 2811 Report No. | 8. Date this action becomes effective |
| | | 04-27-96 |

Only the item that is checked below affects your enrollment.  Read that item carefully and follow any pertinent instructions.  Keep this form for your records.

## Part B - Termination

☐ Your enrollment terminates on the date in Part A, item 8, above.  However, your coverage is temporarily extended for 31 days after that date

Important Notice: You have the right to convert to an individual (nongroup) contract with the carrier of your plan.  You also may have the right to temporarily continue your group coverage.  See Part B - Termination on the back of this form for information about 31-day extension of coverage, conversion, and temporary continuation of coverage

| Part C - Transfer Out | Part D - Transfer In |
|---|---|
| ☑ This enrollment continues but is transferred to the new Payroll Office (or Retirement System) shown below  See Part C on the back of this form for more information | ☐ The new Payroll Office (or Retirement System) shown in Part I below has accepted transfer of this enrollment and will continue it |
| | **Part E - Reinstatement** |
| Dept. of State | ☐ Your enrollment has been reinstated effective on the date in Part A, item 8, above. |

| Part F - Change in Name of Enrollee | Part G - Change in Enrollment - Survivor Annuitant |
|---|---|
| ☐ The name under which this enrollment is carried has been changed to | ☐ Your enrollment has been changed from family coverage to self only.  Your plan will send you a new identification card.  Your new enrollment code number is shown below. |
| Name                    Date of birth | (Note: This item is completed by Retirement Systems only.) |
| Address (including ZIP Code) if different from Part A, num 4, above. | |
| | **New Enrollment Code Number** ⟶ |

## Part H - Remarks

Function move from one Agency to another.

## Part I - Date of Notice

(Note: Instructions for Employing Offices are on the back of Copy 4 of this form.)

| Name and address of agency (including ZIP Code) | |
|---|---|
| United States Information Agency | |
| 301-4th Street Sw., Room 518 Washington, DC  20547 | |
| Signature of authorized agency official | Date |
| | 04-29-96 |

Att 7 pg 3 of 4

Standard Form 2810
Revised January 1990

/31/1996   12:51    3018689267    ROSEMDEWSMILLER

## Notice of Change in Health Benefits Enrollment

**FEHB**
Federal Employees
Health Benefits Program

### Part A - Identifying Information

| 1. Name (Last, first, middle initial) | 2. Date of birth | 3. Social Security Number |
|---|---|---|
| Dews-Miller, Rose Mary | 03-18-54 | 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 |
| 4. Address (including ZIP Code) | 5. Payroll Office Number | 6. Enrollment Code Number |
| 9507 Woodyard Road Clinton, MD 20735 | 67000001 | JP1 |
| | 7. SF 2811 Report No. | 8. Date this action becomes effective |
| | | 06-27-96 |

Only the item that is checked below affects your enrollment.  Read that item carefully and follow any pertinent instructions.  Keep this form for your records.

### Part B - Termination

☐ Your enrollment terminates on the date in Part A, item 8, above.  However, your coverage is temporarily extended for 31 days after that date.

*Important Notice:* You have the right to convert to an individual (nongroup) contract with the carrier of your plan.  You also may have the right to temporarily continue your group coverage.  See Part B - Termination on the back of this form for information about 31-day extension of coverage, conversion, and temporary continuation of coverage.

### Part C - Transfer Out

☐ This enrollment continues but is transferred to the new Payroll Office (or Retirement System) shown below.  See Part C on the back of this form for more information.

Dept. of State

### Part D - Transfer In

☐ The new Payroll Office (or Retirement System) shown in Part I below has accepted transfer of this enrollment and will continue

### Part E - Reinstatement

☐ Your enrollment has been reinstated effective on the date in Part A, item 8, above.

### Part F - Change in Name of Enrollee

☐ The name under which this enrollment is carried has been changed to:
Name _____   Date of birth _____
Address (including ZIP Code) if different from Part A, item 4, above.

### Part G - Change in Enrollment - Survivor Annuitant

☐ Your enrollment has been changed from family coverage to self only.  Your plan will send you a new identification card.  Your new enrollment code number is shown below.
(Note: This item is completed by Retirement Systems only.)

New Enrollment Code Number ———→

### Part H - Remarks

Function move from one Agency to another.

✱ NOTE: EMPLOYEE IS NOT GOING TO STATE DEPARTMENT. SHE WILL REMAIN AT USIA. PLEASE TAKE ACTION. THANKS   [signature] 6/24/96

### Part I - Date of Notice
(Note: Instructions for Employing Offices are on the back of Copy 4 of this form.)

Name and address of agency (including ZIP Code)
United States Information Agency
301-4th Street SW., Room 518 Washington, DC 20547

| Signature of authorized agency official | Date |
|---|---|
| [signature] | 06-29-96 |

Standard Form 2810
Revised January 1992

Att 7 pg 4 of 4

## === COVER PAGE ===

TO: _OCR- Delia Johnson_     5/31/96

FAX: (202) 260-0406     ≈ 13:50

FROM: JOHN D PRATT

FAX: 703-569-8780

TEL: 703-569-1944

_0_ PAGE[S] TO FOLLOW

COMMENT:

Yesterday, RoseMARY's doctor gave her several prescriptions to help allevate some of her pains etc. when she took it to her pharmacy, things appeared to be ok.

This morning, when she went to pick them up, she was told that her MDIPA hospitalization/medical program had been cancelled by USIA effective 4/27/96.

USIA' actions against Rose MARY do not foster any upgrading of our attitude and feelings toward anyone.

These continued acts of harassment, apparently by an unfeeling few, are not going to raise my "forgiveness" level one bit.

I am trying to get a win-win situation, but "some" in USIA are begining to get me angry. Brambilla was notified about our fears on 3/27/96, and she did nothing to get things straightened out. Have a happy weekend!

JP

Att pg 1 of 1

6/4/96
≈ 8:15 AM

Delia:

I have not been able to finish comments on Rose Mary's settlement agreement for several reasons. Main one is continuing harassment of Rose Mary by M/P generally and Jeni in particular.

As of last night medical coverage is still missing. In light of my FAX to Jan Bransilla on March 27, 1996, all the "personnel" problems are good basis for harassment charges.

How can we settle anything with such blatantly foolish actions by M/P.?

Barring further M/P caused problems, I will get our comments to you by next Wednesday, June 12, 1996. If this poses a problem call or FAX

Atty pg 1 of 1



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

June 10, 1996

Ms. Rose Dews-Miller
8507 Woodyard Road
Clinton, MD 20735

   Re: OSC File No. MA-96-0449

Dear Ms. Miller:

  This is a 60 day status update, i.e., 60 days since the last status notice was sent to you concerning your complaint to this office. In accordance with 5 U.S.C § 1214(a)(1)(C)(I) the Office of Special Counsel is required to advise you of the status of your complaint within 90 days after our initial notice to you that we had received your complaint. We are also required to update that notice every 60 days thereafter. 5 U.S.C. § 1214(a)(1)(C)(ii). This status update was due on May 20, 1996. We apologize that due to our heavy workload, we were unable to send it to you on that date.

  This letter is to advise you that this matter is under active consideration in the Complaints Examining Unit and has been assigned to me for review. The Office of Special Counsel receives a large number of complaints and it is our general practice to review such matters in the order in which they are received. If I have not already done so, I may be contacting you in the near future to discuss your complaint with you if I need additional information.

  If you have any questions concerning this matter please call me at (202)653-7188 or toll free on 1-800-872-9855.

       Sincerely,

       J. Sandra Thomas
       Complaints Examiner
       Complaints Examining Unit

JST:jst

*Att 10 pg 1 of 1*

To: *Domestic @ PC_LAN_Users.USIA
From: Message, Broadcast
Subject: American Express Card Program Delinquency Notice
Date: 7/3/96    Time:  5:44PM

ANNOUNCEMENT No. 96-200
July 3, 1996
Origin Office: M/AO:JB


AMERICAN EXPRESS CARD PROGRAM DELINQUENCY NOTICE

Effective April 8, 1996, American Express, in an effort to reduce
delinquency rates, established for all Government agencies a
systematic process for the reporting of seriously delinquent
cancelled accounts to the national credit reporting bureaus.

AMEX will notify Cardholders who are 90 days past due that if
their account remains seriously delinquent and is subsequently
cancelled, AMEX will report the account to the national credit
bureaus.

In addition, all Cardholders who are currently 120 days or more
past due, and whose accounts have been cancelled, will receive a
letter from the credit bureau Trans Union Corporation, notifying
them that their accounts will be reported to national credit
bureaus unless they remit payment for the past due balances
within a 45-day grade period.  For more information on this
policy, please contact your unit AMEX Coordinator, or M/CS -
Charles McAndrew (619-4324) or Shirl Hendley (619-4319).

Att 11  pg 1 of 1

— 1 —

7/25/96

Express Mailed
7/25/96
14:31

Ms. Sandra Thomas— OSC

OSC File No.
MA-96-0449

Enclosed herewith are copies of evaluations and other forms we discussed earlier this week. Rose Mary has added a cover sheet for each and on several I have added a word or two.

Begining with 87'-88' evaluation USIA adopted a five tier narrative format in place of the three tier form previously in use. No one, to my knowledge, has made an attempt to compare a three step "Satisfactory" to something on the newer five tier forms.

I have also included copies of my correspondence to various U.S.I.A. management officials about very real problems they were creating for Rose Mary.

If I have overlooked anything, please call.

Att 12 pg 1 of 6

- 2 -

7/25/96

Ms. Sandra Thomas - OSC                    OSC File No.
                                           MA-96-0.449

I am not sure why, but U.S.I.A. management has a lousy record of dealing fairly with its employees or applicants. The first record I have of the Agency violating employee rights was a 1977 Civil Service Commission Report outling many violations. Many of these earlier "violations" keep surfacing in grievances, internal and external reports about Agency offices and the managers and supervisors there in.

In 1993, an outside consultant found the Office of Inspector General to be a "hostile work environment". The report was particularly critical of I.G. George Muaphy for aiding and encouraging illegal actions by his senior managers and supervisors. All of whom kept their grades, pay and titles when Marian Bennett

Att 12 pg 2 of 6

7/25/96

MS. SANDRA THOMPS - OSC                    OSC File No:
                                           MA-96-0441

became I.G. in late 1993.

The following is A list of included documents.

1. 1984-1985 Evaluation form with employee notes.

2. 1986-87        "            "      "       "        "

3. 1987-1988      "            "      "       "        "

4. 1988-1989      "            "      "       "        "

5. 1989-1990      "            "      "       "        "

6. 1990-1991      "            "      "       "        "

7. 1991-1992      "            "      "       "        "

8. 1992-1993      "            "      "       "        "

9. 1993-1994      "            "      "       "        "

10. USIA Personnel Action dated 10/29/95  "      "        "

11. U.S.I.A Personnel Action dated 12/10/95  "      "        "

12. U.S.IA. Personnel Action dated 1/7/96  "      "        "

Att 12 Pg 3 of 6

– 4 –

7/25/96

MS. SANDRA THOMAS - OSC                    OSC File No!
                                           MA-96-0449

13. Material transmitted to USIA Deputy General Counsel,

    R. Wallace Stuart by me on March 18, 1996,

    related to an EEOC filing brought about by the

    failure of USIA's office of Civil Rights to do

    its assigned responsibilities in a competent manner.

14. My 3/27/96 FAX to Jan Brambilla, Director of Personnel,

    regarding acts of ommission on the part of Personnel

   staff caused by their incompetence or as acts of

   continued harrassment.

15. My 4/25/96 FAX to Jan Brambilla - M/P, which

    preceeded the 4/27/96 SF-50 which transported

    Ms. Dews-Miller to oblivion, just like STAR TREK!

16. A copy of the SF-50 that "sort-of" reassembled

    Ms. Dews-Miller in G.C. while the effective date was

                                        Att 12 Pg 4of6

— 5 —

7/25/96

MS. SANDRA THOMAS - OSC                    OSC File No:
                                           MA-96-0449

16. (cont) 4/28/96, the form was not prepared until 5/23/96, long after her medical coverage was terminated when the 4/27/96 SF-50 was issued. Ms. Dews-Miller included a cover sheet with her comments.

17. A copy of my 5/17/96 FAX to Delia Johnson, USIA/OCR, outlining continued harrassment of Ms Dews-Miller by Agency officials. If this is not harrassment, it is sheer incompetence and malfeasance of the highest form.

18. A copy of my second FAX of 5/17/96 to Delia Johnson-OCR, transmitting a copy of my 3/27/96 FAX to Brambilla.

19. A copy of my 6/4/96 note to Delia Johnson-OCR, regarding continual lack of medical coverage and my general disgust with actions by Brambilla's people.

Att 12 pg 5 of 6

— 6 —

7/25/96

MS. SANDRA Thomas- OSC          OSC. File No:
                                MA-96.0449

20. Ms. Dews-Miller's FAX to me about actions

by BRAMbilla which were contrary to Agreement

And understanding I had with Delia Johnson-OCR.

Also has my notes re the conversation I had

when Brambilla called me. BRAMbilla's Attitude

was caustically expressed As "when she said JUMP,

everyone should Answer "How High?! We did Agree

that we disagreed, but she has been somewhat

easier to deal with since our "Conversation".

21. A copy of A Recent newspaper Article wherein

USIA is still paying for committing prohibited personnel

PRActices many years Ago,

As I said, Please call if you need more information.

Thank You

ATT(2 Pg 6 of 6

7/25/96
14:31

Att. 13 Pg 1 of 1

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE ™

## POST OFFICE TO ADDRESSEE

EH395670647US

**Customer Copy**

**ORIGIN (POSTAL USE ONLY)**

| PO ZIP Code | Date of Delivery | Flat Rate Envelope |
|---|---|---|
| | ☑ Next  ☐ Second | |
| Date In | | Postage |
| Mo. Day Year | ☑ 12 Noon  ☐ 3 PM | $ 15.00 |
| Time In 14:31 | | Return Receipt |
| ☐ AM  ☑ PM | | |
| Weight  11 lbs  ozs | Int'l Alpha Country Code | |
| No Delivery ☐ Weekend  ☐ Holiday | Acceptance Clerk Initials  CC | Total Postage & Fees $ 15.00 |

SEE REVERSE SIDE FOR SERVICE GUARANTEE AND INSURANCE COVERAGE LIMITS

SPRINGFIELD VA
22150-9998
UBPB 1996

**CUSTOMER USE ONLY**

METHOD OF PAYMENT

Express Mail Corporate Acct. No.

Federal Agency Acct. No. or Postal Service Acct. No.

FROM: (PLEASE PRINT)  PHONE (703) 569-1944
John D Pratt
6713 HARWOOD PL
SPRINGFIELD, VA
22152-2419

TO: (PLEASE PRINT)  PHONE (202) 653-7188
Office of Special Counsel
1730 M St. N.W.
WASHINGTON, DC 30036
ATTN: B. Thomas

**FOR PICKUP OR TRACKING CALL 1-800-222-1811**  EMS

Label 11-B August 1995

```
=== COVER PAGE ===
```

TO:        *Sandra Thomas- OSC*          8/2/96
       FAX: (202) 653-5151            ≈ 12:30P

FROM:        JOHN D PRATT
       FAX: 703-569-8780
       TEL: 703-569-1944

_10_ PAGE[S] TO FOLLOW

COMMENT:

As discussed in our conversation this morning I am sending you the following:

-1. A copy of Washington Post article, dated 1/20/88 about USCA losing in District Court on Sex Discrimination Suite. Judy Mann, also in Post, wrote on this same case on 1/22/88. I will send you a copy of that article when I find it.

-2. Copy of September 29, 1995, DOL letter re claim Acceptance, 2pg letter and 2pg attachment, 4 pgs total.

3. Copy of Anne Young ltr to Drs. Miller, dated 11/30/95, rejecting application for leave and demanding medical data she was not QUALIFIED or authorized to evaluate or have.

4. Copy of recent pay slip showing "caution" note re AMEX card use. This is sporadic entry that I am trying to determine when it started and how often is it printed.

Att 14 pg 1 of 2

— 2 —

—5. Copy of A two page outline of Dews-Miller's Assignments from 11/27/95 to this week. None of these "Assignments" were documented or accompanied by job descriptions.

—6. Agent Linda McKetney interviewed Dews-Miller as a part of an FBI investigation of the AMEX Card situation in U.S.IA. Ms. McKetney told me she had been transferred to another office and the case is now with Agent Mary Trotman. Ms Trotman told me she would see what, if anything, about the case could be provided Dews-Miller and me because it was still active. If I read my notes correctly Ms. Trotman's phone number is 202-324-6379.

Rose Mary had filed several complaints against proving I G's Murphy and Shea as well as charges against Bennett, when she arrived on the scene.

I have been told that Marian Bennett is still at USIA, presumably still being paid while many of her victims continue to be jerked around by State and USIA Management officials.

Thank you for your efforts on behalf of good government and fair treatment for wronged employees. Can't remember who said "Justice Delayed is Justice Denied" but it sure applies to persons wronged by USIA.

Thanks

Att. 4 pg 2 of 2

08/14/1996  01:11    301--858--9267           ROSE DEWS MILLER



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

August 9, 1996

Ms. Rose Dews-Miller
8507 Woodyard Road
Clinton, MD 20735

    Re:  <u>OSC File No. MA-96-0449</u>

Dear Ms. Miller:

    This is a 60 day status update, i.e., 60 days since the last status notice was sent to you concerning your complaint to this office  In accordance with 5 U.S.C. § 1214(a)(1)(C)(I) the Office of Special Counsel is required to advise you of the status of your complaint within 90 days after our initial notice to you that we had received your complaint.  We are also required to update that notice every 60 days thereafter. 5 U.S.C. § 1214(a)(1)(C)(ii).

    This letter is to advise you that this matter is under active consideration in the Complaints Examining Unit and has been assigned to me for review.  The Office of Special Counsel receives a large number of complaints and it is our general practice to review such matters in the order in which they are received.  If I have not already done so, I may be contacting you in the near future to discuss your complaint with you if I need additional information.

    If you have any questions concerning this matter please call me at (202)653-7188 or toll free on 1-800-872-9855.

                         Sincerely,

                         J. Sandra Thomas
                         Complaints Examiner
                         Complaints Examining Unit

JST:jst

Att 15 pg 1 of 1

To: ^Domestic @ PC_LAN_Users.USIA
From: Message, Broadcast
Subject: American Express Gov. Charge Card Program
Date: 9/11/96   Time:  5:33PM

Attached is the American Express Government Charge Card Program

Attachments: 96-264.WPD (Text)

Att 16 Pg 1 of 4

*ATT0.WPD*

---

ANNOUNCEMENT No. 96-264
September 11, 1996
Origin Office: M/CS,CMAMERICAN EXPRESS GOVERNMENT
CHARGE CARD PROGRAM
        Purpose

USIA continues to experience problems with delinquent accounts, internal employee transfers, and misuse of the American Express(AMEX) card. The purpose of this announcement is to reiterate the policy and procedures for AMEX cardholders and to provide program highlights

Background

On September 30, 1993, GSA awarded AMEX a contract to provide credit cards, traveler checks and other related financing to government travelers. This contract replaced the former Diners Club contract. On November 30, 1993, USIA ceased business with Diners Club and converted to AMEX

Employee and Agency Benefits

USIA is a mandatory participant in the AMEX card program. By participating in the AMEX Government Charge Card Program, USIA can better assist travelers in getting their travel advances and reimbursements faster and can limit outstanding advances. The AMEX card can be used to charge local transportation, meals, lodging and other allowable travel and transportation expenses incurred during official Government travel.

Eligibility for American Express Card

Federal employees who travel two or more times a year must use an AMEX GCC for all official travel and transportation expenses

Charge Cards for Official Travel Costs Only

Cardholders are reminded that the Government issued AMEX card may only be used for official travel related transactions. Absolutely no personal use of the card is permitted. Employees are not to use the AMEX card to charge anything that is not associated with their approved travel authorization.

Retail Warn Block

To ensure that cards are used properly, USIA requested a year ago that AMEX block all retail charges that do not appear to be travel-related. Employees using the card will be denied charging privileges for such retail purchases as clothing, jewelry, liquor, toys, etc

AMEX Billings and Payment

While there is an overall GSA contract for this program, the AMEX agreement is with the employee, not with the Federal Government. The employee is responsible, therefore, for payment of all charges made against the card. Any charges billed to the AMEX account should be paid in full and can be referred to collection agencies if such payment is not made in a timely fashion

Travel vouchers must be submitted to Accounts Payable and Claims Branch (M/CFV) within five work days from completion of a trip.
Payment of charges to individual AMEX accounts is due 30 days from the billing cycle date on the AMEX billing statement. Again, payment is the responsibility of the cardholder. As part of the government contract and cardholder membership rules, full payment is due monthly and deferred payments are not allowed. Interest and late fees will not be assessed by AMEX

However, all charges that are 60 days past due will result in suspension of the AMEX government charge card. Charges that are 120 days past due will result in the cardholder's account being canceled. Reports are reviewed each month by Unit Program Coordinators (UPCs) to monitor cardholder activity. The Agency Program Coordinator (APC), Ms. Shirl Hendley, receives summary reports of all bureau and non bureau elements for an overall agency-wide program review. Employees on extended travel are expected to inform AMEX of their departure and return dates. This in no way releases

*Att 16 pg 2 of 4*

ATT0.WPD

you of your obligation to pay AMEX in full every 30 days.

Credit Bureau Reporting by American Express

Effective April 8, 1996, AMEX began exercising its contractual option to report Government Cardholders who were canceled for delinquency to the national credit reporting bureaus. The cardholder accounts that will be reported are those accounts which are canceled and have balances greater than $100.00.

AMEX would like to assist cardholders in avoiding credit bureau reporting of their delinquent account. They have notified the government cardholders of the credit reporting policy through an informational article in the cardholder newsletter Dispatch. This article clearly defines the criteria for credit bureau reporting and how to avoid it. In addition, AMEX will send letters to delinquent cardholders at 75 and/or 90 days advising them that their accounts are seriously past due and that delay in payment of the account will result in reporting to the national credit bureaus.

All cardholders that meet the criteria listed above will receive a letter advising them that their account will be reported to the national credit bureaus.

If your AMEX GCC is canceled because of delinquency or abuse, you may have to travel on your own funds.

Electronic Payment of Travel Advances and Reimbursements Available

In order to expedite travel advances and reimbursements, M/C offers a "Vendor Express" program for electronic payment. Using Vendor Express, the Department of the Treasury will deposit funds electronically into the employees' bank account the next work day after they receive the Agency's request.

This is a faster and more efficient system. It eliminates paper checks and U.S. mail system delivery which often result in delays, and lost, stolen, or misplaced checks.

To use Vendor Express for travel advances and reimbursements, all you need to do is to complete a Form SF-3881, Vendor Miscellaneous Payment Enrollment. You can get this form from the Travel Office, your LAN administrator (in PERFORM), your AMEX coordinator, and your administrative officer. After completing this form, return it to James Kohler, 619-4419, M/C Room 668, for processing. For more information, refer to Agency Announcement number 95-306, dated October 23.

AMEX Card Delinquency is an Ethics Violation

Failure to pay your just financial obligations is a violation of the Standards of Ethical Conduct for U.S. executive branch employees (5 Code of Federal Regulations (CFR) 2635.809) and could result in disciplinary action. This standard applies to properly and timely payment of the AMEX monthly bill. If you have any questions on the standards of conduct or ethics, please contact Richard Werksman, GC, on 202-619-6983.

AMEX Card Misuse by Employees is Subject to Disciplinary Action

The AMEX card can be revoked for misuse or for serious delinquency. The AMEX card will be subject to revocation for misuse--such as failure to pay your AMEX bill within 30 days, nonofficial (i.e., not authorized as part of official travel) charges, and other violations of terms and conditions of the program. In addition, serious abuse in the use of this card could result in disciplinary action. For questions regarding disciplinary action, please contact the Office of Human Resources (M/HR).

Travel Advances

A travel advance, when allowed, is limited to 80% of the authorized estimated meals and incidental expenses (M&IE) and the other expenses specifically cited in the travel authorization.
Travel authorizations must show the breakdown between lodging and M&IE/miscellaneous amounts. The Travel Manager Plus program automatically calculates and lists the lodging and M&IE as two separate numbers.

A travel advance in excess of M&IE and other expenses is only issued when it has been determined and specifically on the travel authorization that neither the employee's government card nor travelers' checks are a viable means of

ATT 16 pg 3 of 4