# EXHIBIT   27

Part 2 of 2

A770.WPD

payment for lodging and meals in the cities to be visited. For example, the card is not widely accepted in some countries the new independent states of the former Soviet Union. All requests for travel that include lodging must have a certify statement. ATM access is available for travelers' with special requirements from the AMEX Agency Program Coordinate Ms. Shirl E. Hendley, M/CS. Please contact Ms. Hendley on 202-619-4319 to request ATM access.

Travelers must use the AMEX card to pay for lodging, meals, rental vehicles, excess baggage, etc. Exceptions may granted on a case-by-case basis.

Separation

Upon separation from the Agency, employees must turn their AMEX cards over to their representative unit program coordinator (UPC) as described in MOA IV Section 665.6.

If you are in possession of an AMEX government travel charge card and you are not a frequent (i.e., travel two or more times per year) agency traveler, please turn your AMEX government charge card over to your respective UPC for cancellation. If your card is not canceled by your UPC within 30 days, and your card has not been used for authorized travel expenses within the past year, AMEX will deactivate your account.

Internal Agency Transfers

AMEX cardholders who transfer from one unit to another must notify the gaining unit coordinator so that they can be transferred to the new unit's AMEX list and deleted from the old unit's list. Failure to notify the new unit coordinator of your transfer could result in suspension or cancellation of the card until the records are updated.

Program Coordinator Training and Cardholder Training

M/CS has videos and materials for cardholders and program coordinators to check out and use for training purposes. In addition, M/CS annually schedules training sessions and provides training as needed to coordinators. The time and the annual training will be announced.

Points-of-Contact

We have attached a list of AMEX unit program coordinators by bureau and responsible element.

If you have any questions or concerns regarding the use of the AMEX travel card, contact your listed UPC. If you cannot locate your UPC, then contact Shirl E. Hendley, M/CS,(APC), 202-619-4319 or Charles McAndrew, M/CS, 202-619-4 you have a travel related question, contact Pat Estep, M/ADT, 202-619-5085.

Current Bureau and Non-Bureau UPCs of record:

| Name | Bureau | Phone |
|---|---|---|
| Gloria Bailey | B | 619-2492 |
| Aseneth Blackwell | B/TV | 501-6787 |
| Candi Thompson | B/CA | 401-7317 |
| Delores Brabham | EA | 619-5853 |
| Rhobyn Costen | AR | 619-5082 |
| Donna Everett | E | 619-7983 |
| Constance Harley | GC | 401-1710 |
| Betty Hayes | AC | 619-4457 |
| Agnes Taylor | PL | 619-4355 |
| Tanisha Parker | CL | 619-6828 |
| Wondra Miller | I | 205-8893 |
| Jean P. Monroe | R | 619-4972 |
| Veronica Reeder | OCR | 619-5154 |
| Grace Barnes-Hendricks | M | 619-6797 |
| Loris Thurston | AF | 619-6927 |
| Anita Turnipseed | NEA | 619-6527 |
| Rita Wolfe | EEN | 619-6611 |
| Diane Ziegler-Weber | EU | 619-6569 |

Att 16 Pg 4 of 4

September 25, 1996


MEMORANDUM FOR:  OSC · Hamilton Peterson
                 Edward Henderson

FROM: ⎯⎯          USIA · Rose Mary Dews·Miller

SUBJECT:          Additional Information After 9/12/96 Meeting


### 1. Dorothy Butler's Role in the Events of Summer '94

When I requested a meeting with IG·Bennett on/about 9/12/94, Dorothy Butler was to go with me. Reason: Ms. Butler had been telling me about some OIG employees abuse of the Government issued American Express Card. We, (Dorothy and myself), were to inform IG·Bennett of this after I showed Dorothy evidences from American Express itemized billings. Before the meeting took place on 9/16/94, Dorothy backed out because she did not want to be involved (my perception). Also, Ms. Butler was warning me that this meeting was getting out of hand, because now Louis J. Leporatti and Darwin D. Roberts were attending at the request of IG·Bennett. (At the time, I did not know if IG·Bennett knew the agenda for this meeting.) Dorothy told me, the secretaries on staff were going though ALL of my incoming mail during the period from Labor Day to September 12, 1994, to locate the American Express bills. Per Dorothy, this tip was given to OIG secretaries by Tyrone Lumpkins, USIA Central Program Coordinator for American Express. He said I would be receiving AMEX bills, addressed to me, since USIA Comptroller had decentralized the program coordinator duties to the Administrative Officers in late August '94 through an Agency Announcement. The package came from American Express in several gray envelopes which did not show the name of American Express for the return address with an approximate postmark of 09/07/94 from Phoenix, AZ. I don't know what the OIG staff secretaries had planned to do with the envelopes, if American Express had used "American Express" as part of there return address. (Possibility these packages could have been destroyed prior to my receipt on/about September 12, 1994 by some OIG staff employees. {This is my observation}).

Also, Dorothy Butler, said to me, within several weeks after the 9/16/94 meeting, that IG-Bennett had questioned her on whether or not that I said it was okay for OIG employees to use AMEX card for personal use. This is something Avis Strothers had told IG·Bennett and Renee DeVigne. Dorothy said she told IG·Bennett that she had not heard of this and Bennett said she did not want her (Dorothy) to lie to her (IG·Bennett).

### 2. My Perception of the Office Working Conditions

During the Summer of '94, I filed several formal EEO complaints against, OIG

*Att 17 pg 1 of 7*

**PAGE 2 OF 7 PAGES**

employees Darwin D. Roberts, Louis J. Leporatti, Ann T. Young, and J. Richard Berman for Retaliation. IG-Bennett, Renee DeVigne, Carol Epstein-GC Attorney, Hattie Baldwin-OCR Director, Delia Johnson-OCR Deputy Director, Jenni Mallios-Personnel Specialist and Janet Davis-Chief, Domestic Personnel were well aware of the various cases filed and investigations that were being conducted.

To me, the actions of these managers and supervisors which caused me to file complaints were clear attempts by OIG management to "kill the messenger" and of course the messenger was me (Rose M. Dews-Miller) for the AMEX Card reports. I had never been so harassed in my life until I blew the whistle on OIG's involvement in the American Express Card usage and the reporting of OIG's mismanagement of funds, fraud, waste and abuse by OIG management officials in correspondence to EEO investigators and OCR Director, Hattie Baldwin from 1993 until presently, referring to my participation of investigations by FBI in June '95; OIG investigation by John Sinclair's staff--criminal investigators David Bruce and Dawn Parker in June '93; requested investigation by Ann T. Young--on June 8, 1995, but I refused her offer on June 12, 1995 and told her that I did not feel it was necessary to talk with her referencing AMEX card situation, since there was an open and ongoing FBI investigation; and then 6/27/95 OIG investigations by John R. Sinclair and James Roberts.

I have reviewed the OIG Audit Report on the American Express card usage by USIA employees. This report came out in the Fall '95. I noticed that some of the criteria were possibly change by the Office of Inspector General. One item that really stands out in my mind, is the period the report used for its coverage, I had originally reported to IG-Bennett on 9/16/94 the months of August and September '94, but the Audit Report uses December '94 to January '95. To me this would have been enough time for abusers to pay up their delinquent accounts and alleged personal usage accounts prior to OIG disciplining the employees, especially professionals that could go out and get a loan to cover up their wrongdoings. Secondly, the yearly travel for issuance of an AMEX card was changed from one (1) trip in a calendar year to two (2) trips in a calendar year. I was in Montgomery Wards/Waldorf store, last spring and I saw Patricia Estep, Chief for Travel at USIA, and she would not speak to me, even though she knew who I was. I feel that she had something to do with changing the number of times an employee travels prior to issuance of an AMEX card, in conjunction with OIG officials, prior to this Audit report coming out.

3. Incidents Prior to Meeting with John Sinclair and James Roberts of OIG

John Sinclair had contacted my supervisor, Ms. Eva Diekmann, on 6/23/95, which was 15 days later from Ann Young's contact on 6/8/95 (both from the IGs' office to find out just what I was saying to the FBI Investigators,) stating that he wanted to meet with me to discuss some OIG "management issues". After I received this message from Deikmann, I let her know that I was reluctant to speak with John Sinclair alone and Eva suggested that

PAGE 3 OF 7 PAGES

I talk with Jenni Mallios in Personnel before going to John Sinclair. I told Eva Diekmann that I opposed talking with Jenni Mallios and she (Eva Diekmann) then told me to go to the union, because in the position that I was detailed to since February 1, 1995 as a GS-11, Budget Analyst, I was in the bargaining unit for union representation. The only other statement I recalled from Eva Diekmann at this point "was for me to make sure the I let Carol Keith or her know when I went to the union." I did as I was instructed by Eva Diekmann and contacted Marta Pereyma on (202) 619-5241 for an appointment to meet with her. I met with AFGE union representative, Marta Pereyma, on 6/27/95 approximately 8:15 a.m. and told her of the situation I was in and how I was being treated by OIG since notifying IG-Bennett of AMEX card situation on 9/16/94. At this point, Marta Pereyma realized that because of my position as administrative officer, I had no choice but to report what I had as evidence and allegations of fraud, waste and abuse of Government issued AMEX Credit cards for travel related purpose to IG-Bennett. Also, Marta Pereyma, went next door to get John Anderegg, Vice President of AFGE to listen to my interview with both union representatives. All of this happened on June 27, 1995, and John Anderegg, calls in Labor Relations personnelist, Steve Ledford and Terry Hagen to discuss, "if I should meet with OIG investigator John Sinclair". This turned out to be a meeting with Marta Pereyma, John Anderegg, Steve Ledford, Terry Hagen and myself about whether I should attend meeting with John Sinclair? After introductions and situation was outlined in this meeting, John Anderegg called John Sinclair to find out why he wished to meet with me? and was told by Sinclair that he had allegations that I had said to OIG employees it was okay to use AMEX cards for personal use. Steve Ledford at first, felt that I should not go over to OIG, unless they were conducting an internal investigation for themselves of the whole USIA AMEX usage, because the criminal investigators in OIG had not been pleasant to USIA employees, especially females. Most of the interviews conducted by OIG criminal investigators were confrontational interrogations and harassment of USIA employees and/or witnesses. This was something both union officials and labor relations were aware of. Further discussions in this meeting lead to all agreeing that I should meet with John Sinclair as requested to clear my name, but it was agreed that John Anderegg should go along as a witness on my behalf. In the meantime, I requested that Marta Pereyma call Carol Keith, my current supervisor to let her know that I was still meeting with the union representatives and that I would be there until early that afternoon. Marta did as I requested.

4. Actual Meeting with John Sinclair

This meeting took place on 6/27/95 at approximately 11:00 a.m. to 12:00 noon in the Conference Room located in John Sinclair's office space. Participants were John Sinclair OIG, AIG for Investigations; James Roberts-OIG, Criminal Investigator; John Anderegg-AFGE Union, Local 1812, Vice President (Also Witness for myself); and Rose Mary Dews-Miller OIG

*Att 17 pg 3 of 7*

PAGE 4 OF 7 PAGES

Administrative Officer, detailed to M/CBA as Budget Analyst.

John Sinclair started meeting by thanking us for coming over at his request. Sinclair stated that he had some allegations that I had told OIG employees that it was okay for them to use the American Express, Government issued card for personal use. He also asked if I wanted to know who said this, and my response was yes, I do. Sinclair said that Avis Strothers had made this statement and he wanted me to tell him about this allegation. I told Sinclair, that I had never told anyone in OIG or the Agency that it was okay for them to use the AMEX, Government issued card for personal use. I also told Sinclair about a conversation that I had had with Avis Strothers on June 8, 1994. In this conversation, Avis had asked, Could she use the AMEX card for her family's trip to Disney World? My response to Avis was, "I don't think that it would be correct for you to use the Government issued card for personal use." This question was asked in the front office of OIG, where I had spoken to Avis the morning of June 8, 1994. Shortly after my response to Avis, I returned to my desk, pulled a copy of the application packet for the AMEX Government card and highlighted in yellow the items that related to cards usage and took the highlighted copy to Avis for the American Express official answer to her question at the front desk where she was sitting. Before going to her desk, I made a Xerox copy of what I was giving Avis and wrote on my copy to Avis Strothers on 6/8/94.

Sinclair questioned me on how the Government issued American Express cards were obtained by the OIG employees? My response was that employees that had an existing Government issued Diner's Club Card prior to the conversion date of November 30, 1993, were then issued the American Express card if they were in good standing with Diner's Club card. For those that I gave applications to for a Government issued AMEX, the Agency rule was, if a traveler, traveled at least once in a calendar year, then they were to apply to AMEX card for travel purposes. IG-Bennett announced in April '94 that "All OIG secretaries were attending a conference out of the area for cultural diversity." At this point, I gave each of the OIG secretaries applications for the Government issued AMEX card, all returned the applications to me and I forwarded them to Tyrone Lumpkins for issuance. After this process, then I had no more knowledge as to whether or not the OIG secretaries had received the AMEX cards, because most employees used their home address for billing purposes and correspondence.

Sinclair questioned me on the usage of the PIN numbers and receipt of cash advances. My response was that I was not aware of their receipt of the PIN numbers, except for one Summer morning in 1994, Avis Strothers caught me as I was signing in for work that morning. "Miss Dews, I've got to see you as soon as you have a chance to see me." I said, "give me a chance to put down my purse and come to my desk in about five minutes". Avis told me that she had received a PIN number from AMEX and wanted to know could she use it to get a cash advance. My response to her, was that the Agency had a way of tracing your transactions if you were to do this and I told her that as I had

Att 17 pg 4 of 7

PAGE 5 OF 7 PAGES

showed her on 6/8/94, that she was not suppose to use the AMEX card for personal use. Then Avis asked "how can one get a cash advance with a major credit card in general? I answered her by saying to take the card to a bank and they should be able to give one a cash advance. I expressed to Sinclair, that I felt that this was a general question by Ms. Strothers, and I was not aware that she was referring to the AMEX card.

Sinclair also asked how did David Bruce receive his Government issued AMEX card? My response, was late January '94, Dave came to me to inform me that he never received his AMEX card, but he had a Diner's Club card previously. I was not aware that Dave had not received the AMEX card due to problems he had with Diner's Club. So by me being the administrative officer, I gave Dave an application, he completed it, returned to me, I forwarded to Tyrone Lumpkins and it was processed. Dave continued to question me about the card, because he needed it urgently, since he was scheduled to travel in early February '94. I got on the telephone with Tyrone Lumpkins, to see how we could speed up the process and Tyrone and I both found out that Dave could pick up his card at an American Express Travel Center, but he needed a code from Tyrone Lumpkins. Dave was issued the card in early February '94 and as I stated earlier, I was not aware of Dave's problems with his former Diner's Club Card.

I also pointed out to Sinclair, that after reporting this information to IG-Bennett, Dave Bruce came to my desk shortly after Bennett's memorandum to ALL OIG Staff stated I did everything wrong, I should have come to each employee in OIG that had used the AMEX card for personal use, told them to straighten up this mess by a certain time, then if they did not, then I would go to the higher ups. I did not respond to Bruce's comment and since that day, David Bruce had not spoken to me.

I told Sinclair, that I did what was required by law as well as what I thought was right, which was to report this information to IG-Bennett on September 16, 1994, with or without Dorothy Butler's assistance. I also told Sinclair Government Ethics rules states that one reports allegations of fraud, waste, mismanagement to the proper Agency officials, and in this case, since I was in the Office of Inspector General, the appropriate person would have been IG-Bennett. I made the statement that I would have been in trouble if I did not report this alleged misuse of Government issued AMEX cards and the possibility of losing my job. I would have been damned if I did and damned if I did not. My choice was to stand up for the law and to tell the truth.

Sinclair told John Anderegg that he would have this interview typed up and he would call us back to review it, make necessary changes, etc. but this NEVER happened. I requested a copy of the interview through FOIA in November 1995, but still don't have a copy.

### 5. IG-Marian Bennett's Reaction to Meeting with Tyrone Lumpkins

As I stated on September 12, 1996, there was a meeting after Bennett's

*Att 17 pg 5 of 7*

**PAGE 6 OF 7 PAGES**

memorandum to ALL OIG Staff, that was initiated by Tyrone Lumpkins of M's Comptroller's Office and remember that Mr. Lumpkins was the Program Coordinator for USIA's American Express card until the decentralization in August '94. Mr. Lumpkins appeared at my desk in OIG on/about September 25, 1994, requesting to meet with all of my supervisors. I got up from my desk, told Darwin Roberts and he went in to inform Marian Bennett. This meeting was held in IG-Bennett's office and later Marian Bennett invited Renee' DeVigne to attend. Mr. Lumpkins was concerned that OIG employees could be losing their jobs because of alleged AMEX card personal usage. Lumpkins said that he was working with OIG employees to resolve the delinquent accounts and I had just messed up things when I reported information to IG-Bennett on 9/16/94. Marian Bennett was concerned that this information would appear on the front page of the Washington Post and told Mr. Lumpkins that I was correct in reporting this information to her. As a matter of fact, Bennett, DeVigne and Roberts agreed that I was indeed correct in reporting the problem. Tyrone Lumpkins was replaced as USIA's Program Coordinator for American Express by Lisa Carter in February '95 and later by Shirl Hendley in April '96. Please be advised that Shirley Hendley is the OIG employee that headed the November '95 Audit report on the American Express Card usage at USIA.

6. **Acts of Retaliation Against Rose Mary Dews-Miller for Blowing the Whistle on 9/16/94**

- Unjust Settlement Agreement for EEOC Case dated 1/30/95
- '94-95 Performance Evaluation by Darwin Roberts & Lou Leporatti
- 2/1 to 7/31/95 Performance Evaluation written by Carol Keith and Eva Diekmann
- Placed on AWOL by Ann T. Young from 9/5 to 11/24/95 (3 months non pay), while recuperating for 7/10/95 On-the-Job-Injury properly filed at U.S. Department of Labor's Office of Worker's Compensation
- Denial of WGI to GS 11/Step 5 by Ann T. Young & IG-Bennett on 11/9/95
- ~~OCR~~ Hattie Baldwin's refusal to reopen EEOC case due to Breach of Settlement Agreement Memorandum sent on 10/10/95 by Me.
- 12/10/95 Personnel Action converting me from Career Appointment to a Temporary Appointment NTE: 12/9/96 (This comes about after 23.5 years of government service at the United States Information Agency)
- Personnel Director, Janice Brambrilla's refusal to Reconsider Denial of WGI dated 4/2/96
- Agency demands that I resign in order for EEO settlement formally filed on 3/28/96
- Non job assignments since 11/95. Assignment at Career Center from 12/1/95 to 2/28/96; Office of Research from 3/4 - 4/30/96; Career Center from 5/1 to 6/14/96; and Office of General Counsel from 6/17/96 to Present.

SEP-25-96 WED 15:23

PAGE 7 OF 7 PAGES

- GC's Attorney, Carol Epstein's Removal of Rose M. Dews-Miller from GS-510-12, Systems Accountant Merit Promotion Certificate in the Comptroller's Office on/about December 16, 1994 after my interview for position by Charles McAndrews. This position is in the bargaining unit for union representation.
- Personnel Specialist, Jenni Mallios' request and obtainment of my personal and private medical files from OWCP, Claims Examiner-Julio Melendez on/about 11/9/95 without my consent

7. Possible Areas to Investigate by OSC

- Check with Office of Civil Rights on number of cases filed by OIG employees for say a five (5) year period (1991 to 1996) and what were the results?
- Have Personnel to pull OIG files and see which employees were given awards, promoted and their categories for say a five (5) year period (1991 to 1996), and see who was denied awards, etc. and the possible reasons why?
- Examine the Audit Report for Fall '95 on the American Express card usage
- See who in OIG received Outstanding Awards during the period of 1994, 1995 and 1996? Where these employees mainly managers?

I think that I have said enough to get the ball rolling, but if you need any additional information from me, please contact me on (202) 619-5988 and/or my representative, John D. Pratt on (703) 569-1944 or his FAX, (703) 569-8780. We will gladly fill you in on what you are missing. Ms. J. Sandra Thomas has a lot of information, as well as copies of material listed in item #6.

Copies to:    John D. Pratt, Complainant's Representative
              OSC - J. Sandra Thomas

10/17/1996  06:56   301--868--9267         PCSE DEWS MILLER



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

October 10, 1996

Ms. Rose Dews-Miller
8507 Woodyard Road
Clinton, MD 20735

Re:  OSC File No. MA-96-0449

Dear Ms. Miller:

This is a 60 day status update, i.e., 60 days since the last status notice was sent to you concerning your complaint to this office. In accordance with 5 U.S.C. § 1214(a)(1)(C)(I) the Office of Special Counsel is required to advise you of the status of your complaint within 90 days after our initial notice to you that we had received your complaint. We are also required to update that notice every 60 days thereafter. 5 U.S.C. § 1214(a)(1)(C)(ii).

This letter is to advise you that this matter is under active consideration in the Complaints Examining Unit and has been assigned to me for review. The Office of Special Counsel receives a large number of complaints and it is our general practice to review such matters in the order in which they are received. If I have not already done so, I may be contacting you in the near future to discuss your complaint with you if I need additional information.

If you have any questions concerning this matter please call me at (202)653-7188 or toll free on 1-800-872-9855.

Sincerely,

J. Sandra Thomas
Complaints Examiner
Complaints Examining Unit

JST:jst

Att 18 pg 1 of 1

11/04/96   MON 13:40 FAX 202 205 1930        USIA/TRANSITION CENTER



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

**October 31, 1996**

Ms. Rose Dews-Miller
8507 Woodyard Road
Clinton, MD 20735

          Re:  OSC File No. MA-96-0449

Dear Ms. Dews-Miller:

    This is in response to your request for assistance against officials of the U.S. Information Agency. You alleged that (1) your within-grade increase (WGI) was denied, (2) you were placed in an absence without leave (AWOL) status, and (3) your duties and responsibilities were significantly changed because of whistleblowing. Based on our evaluation of the facts and law applicable to your circumstances, as detailed in this status report, we have made a preliminary determination to close the investigation into this matter. Our factual and legal determinations are described below.

    The Office of Special Counsel is authorized to investigate allegations of prohibited personnel practices and activities prohibited by civil service law, rule, or regulation. 5 U.S.C. §§ 1214(a)(1)(A), 1216(a) and 2302(b). The Special Counsel presents allegations of prohibited personnel practices to the Merit Systems Protection Board (the Board) which has the authority to hear and adjudicate such claims.

    You identified your whistleblowing activity as a September 1994 report to the agency's Inspector General that employees in the Office misused their American Express cards. It is a prohibited personnel practice to take or fail to take, or to threaten to take or fail to take, a personnel action with respect to any employee because of any disclosure of information by an employee which the employee reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8). The Board has determined that the elements of proof necessary to establish a violation of (b)(8) are: (1) a protected disclosure of information was made; (2) the accused official(s) (e.g., the proposing or deciding official) had knowledge of the disclosure and of the identity of the employee making the disclosure; and (3) the protected disclosure was a contributing factor in the personnel action or threat of a personnel action. <u>Gerlick v. General Services Administration</u>, Merit Systems Protection Board, 43 M.S.P.R. 651 (1990).

Att 19 Pg 1 of 2

**U.S. Office of Special Counsel**

Ms. Rose M. Dews-Miller
Page 2

    Because direct evidence of a causal connection between the disclosure and the challenged action is usually unavailable, the contributing factor test may be satisfied by circumstantial evidence. Special Counsel v. Hathaway, 981 F.2d 1237, 1242 (Fed. Cir. 1992). The Board has specified a number of factors from which a causal connection may be inferred: (1) the employer's reaction to the protected activity; (2) the closeness in time between the protected activity and the personnel action; (3) the extent of the charges and disclosure forming the basis of the protected activity; (4) the seriousness of the charges made in the disclosure; (5) the time during which the matters raised by the disclosures were left unresolved if any resolution was possible; (6) whether there is intervening misconduct of a serious nature; (7) whether the penalty imposed is disparate relative to other like offenders; and (8) whether the penalty is the maximum or minimum allowable under the agency table of penalties. Dunning v. NASA, 10 M.S.P.R. 183, 186 (1982); Valerino v. Department of Health and Human Services, 7 M.S.P.R. 487, 489-90 (1981) (citations omitted).

    We believe that the Board would find that you had a reasonable belief that your report constituted a protected disclosure within the meaning of section 2302(b)(8). However, the officials responsible for the actions you complain about were not the subject of your disclosure and suffered no adverse impact. Moreover, we found no statements or other evidence reflecting animus against you by the officials responsible for the manners you complain about because of your protected activity. Therefore, based on the above, we are unable to establish a connection between your protected activity and management's actions which would warrant further inquiry as possible violations of 5 U.S.C. § 2302(b)(8) or any other prohibited activity.

    You have 16 days from the date of this letter to comment in writing on this report. We will consider your comments and respond to them as soon as possible after receipt. If we do not receive any comments by the end of the sixteen day period, we anticipate closing the file and will send you a letter terminating the investigation and advising you of any additional rights you may have.

            Sincerely,

            J. Sandra Thomas
            Complaints Examiner
            Complaints Examining Unit

ATT 19  pg 2 of 2

=== COVER PAGE ===

11/14/96
~ 11:20 pm

TO:    OSC - Ms. J. Sandra Thomas

   FAX: (202) 653-5151

FROM:    JOHN D PRATT

   FAX: 703-569-8780

   TEL: 703-569-1944

PAGE[S] TO FOLLOW

COMMENT:

Included with this cover page are the following:

- Our November 15, 1996, Response to Your October 31, 1996, letter
- Another copy of "Designation of Representative" form dated MAY 17, 1996.
- Another copy of SF-50B converting Dous-Millee to temporary Appointment.

Att 20 pg 1 of 4

John D. Pratt
6713 Harwood Place
Springfield, VA 22152-2419
Telephone: (703) 569-1944
Fax: (703) 569-8780

November 15, 1996

U.S. Office of Special Counsel
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

Re: OSC File No. MA-96-0449

Dear Ms. Thomas:

Your October 31, 1996, letter came as a shock to Ms. Dews-Miller, the Complainant, and to me, her representative.

My first reaction, after receiving a copy from Complainant instead of directly from you as her representative, was to try and obtain copies of the three MSPR's you cited. Needless to say, they are not available in any on-line data source I have been able to research therefore, I ask your assistance in obtaining copies for our evaluation. This evaluation is essential because of revisions that have been made to applicable laws and regulations since 1990.

We consider the sequence of events outlined in the complaint to fully meet the test established in and by Special Counsel v. Hathaway, 981 F.2d 1237, 1242 (Fed Cir 1992).

We also consider that the evidence we have submitted fully supports Complainant's charges against then Inspector General Bennett, her senior staff, employees from the Offices of Personnel, the Comptroller, General Counsel and the Office of Civil Rights.

While it is true that the charged officials did not, as far as we know, violate the provisions of the rules applicable to the AMEX Card Program, the charged officials, especially Inspector General Bennett were responsible for insuring the program was not abused by employee's under their supervision.

A review of ALL AMEX Card accounts at USIA would show who was abusing the program and what, if any, part they play in abusing complainant.

att 20 pg 2 of 6

This review becomes more necessary in view of your position regarding the lack of a "connection" between complainant's actions and managements' retaliatory actions.

Further evidence of management complicity, especially Inspector General. Bennett, was provided complainant when she was "invited" to be interviewed by Complaint Investigators' Hamilton Peterson and Ed Henderson of the Office of Special Counsel.

Dews-Miller was given no choice or option to decline the Peterson-Henderson "invitation". During that interview on September 12, 1996, Dews-Miller was informed she was not the target of their investigation. From the questions she was asked and Peterson-Henderson's responses to her questions, it was obvious Inspector General. Bennett and others were the targets.

It became obvious to Dews-Miller "others" had already been question by Peterson-Henderson and "more others" would be questioned.

By contrast, we have received no positive reply to questions put to our witness' that you have interviewed anyone to confirm or refute any charges filed by Dews-Miller. I know you have not questioned me about this matter.

For background, over twenty charges have been filed against former Inspector General. Bennett and her senior staff. Of the six to ten that have been adjudicated or arbitrated so far Bennett has lost every one. Bennett had been in office less than one month, when the first charge was filed against her. It was also one of the first, if not the first "loss" she and the Agency suffered.

In view of the many "open" items and our inability to obtain the 1981, 1982 or 1990 MSPB decisions, we must ask that this case remain open until the administrative process has been fully implemented by your office with no shortcuts or detours asked or taken by either Complainant or OSC.

We further ask that your office issue the necessary orders to the Agency to return complainant to her former "career-permanent" position and vacate the current temporary limited appointment she was placed under by a vengeful Agency. This appointment ends on December 9, 1996, and is yet another example the harassment complainant has been subjected to since September, 1994.

We will be more than happy to answer any questions you may pose even though you have not asked any so far.

We can not determine from your October 31, 1996, letter what you need from us to help clarify whatever points are unclear.

Att 20  pg 3 of 6

To preclude delays in future correspondence, please use my address or send copies to Dews-Miller as well as to me.

Dews-Miller had almost twenty-four years of honorable Federal Service at USIA, before she reported the AMEX Card Program abuses. Her last two years have been stressful and frightening and have clearly documented, so far, that federal employee's can expect no real help from any part of the government theoretically established to protect them from management harassment and attack.

In closing, we need the cited MSPB orders to determine how they fit this case and we need an order to USIA to restore Dews-Miller to her former "career-permanent" status position.

Sincerely,

John D. Pratt
Representative

## DESIGNATION OF REPRESENTATIVE

I, (Name of Complainant)     Rose M. Dews-Miller,

HEREBY DESIGNATE

(Name of Representative)    John D. Pratt,
(Street Address)    6713 Harwood Place,
(City, State, Zip Code)    Springfield, VA  22152-2419,
(Telephone Number)    (703) 569-1944,
(Fax Number)    (703) 569-8780,

TO ACT IN MY BEHALF AS MY REPRESENTATIVE IN ALL

MATTERS PERTAINING TO MY COMPLAINT FILED ON

(Date Complaint Filed)    November 28, 1995
(Date Received at OSC)    December 08, 1995
(File Number)    OSC-File Number-MA-96-0449.

I understand that the authority and responsibilities granted to the above named person by virtue of this designation may be terminated by me at any time. Should this occur, I will immediately notify the U.S. Office of Special Counsel, of my action in writing

*May 17, 1996*
(Date)

*Rose M. Dews-Miller*
(Signed)

Att 20 Pg 5 of 6

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| DAWS MILLER, ROSE | 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 | 03-18-54 | 12-10-95 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 5T2 | CONV TO APPT NTE          12-09-96 | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| RGM | REG 316.402(B)(7) | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | | | | 15. TO: Position Title and Number | | | | |
|---|---|---|---|---|---|---|---|---|
| ADMINISTRATIVE OFFICER | | | | ADMINISTRATIVE OFFICER | | | | |
| USG8980062         USG77PGC4C | | | | USG8980062         USG77PGC4C | | | | |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0341 | 11 | 04 | $39,791.00 | PA | GS | 0341 | 11 | 04 | $39,791.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj | 12C. Adj. Basic Pay | 12D. Other Pay | | 20A. Basic Pay | 20B. Locality Adj | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|---|
| $37,724 | $2,067 | $39,791 | 0 | | $37,724 | $2,067 | $39,791 | 0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| OFFICE OF INSPECTOR GENERAL | OFFICE OF INSPECTOR GENERAL |
| USOIG    OIG | USOIG    OIG |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 - None          3 - 10-Point/Disability          5 - 13-Point/Other | 1 | 0 - None          2 - Conditional | | YES ☐ NO ☒ |
| | 2 - 5-Point     4 - 10-Point/Compensable     6 - 10-Point/Compensable/30% | | 1 - Permanent     3 - Indefinite | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C2   BASIC LIFE PLUS OPTION OPT B/5 TIMES PAY & STD OPT C FAMILY OPT | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 1   CSRS | 04-18-77 | F   FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 - Competitive Service     3 - SES General | E - Exempt | | 8888 |
| | 2 - Excepted Service     4 - SES Career Reserved | N - Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location)   WASHINGTON |
|---|---|
| 11-0010-001 | DC |

| 40. AGENCY DATA | 41. COMP LEVEL | 42. PCS COGE | 43. CITIZENSHIP | 44. |
|---|---|---|---|---|
| FID | COGL | | 1 | PCA-SUPERVISORY |

## 45. Remarks

TEMPORARY APPOINTMENT-NTE

REASON FOR TEMPORARY APPOINTMENT: SET FORTH IN AGREEMENT DATED 1/30/95.
PREVIOUS RETIREMENT COVERAGE: PREVIOUSLY COVERED.
HEALTH BENEFITS COVERAGE CONTINUES.
CREDITABLE MILITARY SERVICE: NONE
TEMPORARY EMPLOYEES SERVE UNDER APPOINTMENTS LIMITED TO 1 YEAR OR
LESS AND ARE SUBJECT TO TERMINATION AT ANY TIME WITHOUT USE OF
ADVERSE ACTION OR REDUCTION IN FORCE PROCEDURES. A TEMPORARY
APPOINTMENT DOES NOT CONFER ELIGIBILITY TO BE PROMOTED OR REASSIGNED
TO OTHER POSITIONS, OR THE ABILITY TO BE NONCOMPETITIVELY
CONVERTED TO A CAREER CONDITIONAL APPOINTMENT.

*Rec'd 2/1/96
Rose M. Dawe Miller*

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| UNITED STATES INFORMATION AGCY | *Att 2° Pg 6 of 6* |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | JANICE M. GRANDILLA |
| IA00 | 2751 | 01-19-96   AGF | DIRECTOR OF HUMAN RESOURCES |

1 - Employee Copy - Keep for Future Reference

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

**November 20, 1996**

Ms. Rose M. Dews-Miller
c/o John D. Pratt
6713 Harwood Place
Springfield, Va 22152-2419

        Re:  OSC File No. MA-96-0449

Dear Ms. Dews-Miller:

        This is in response to your request for assistance to the Office of Special Counsel against the U.S. Information Agency. We have reviewed the comments which you sent in response to our status report dated October 31, 1996. However, while we understand your dismay with your employment situation, you provided no additional information which would enable us to change our determination. .

        Accordingly, based on the facts and legal analysis as detailed in our status report, we are closing the file. Because you have alleged reprisal for whistleblowing, you may have a right to seek corrective action from the Merit System Protection Board (MSPB) under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221. The Merit Systems Protection Board regulations concerning rights to file an individual right of action with the Board can be found at 5 C.F.R., parts 1201-1206 and 1209.

        Should you wish to discuss this matter, you may contact me on (202) 653-7188. This letter should not be construed as an adjudication of any matter you have pending or plan to file under any administrative appeals procedure.

                        Sincerely,

                        J. Sandra Thomas
                        Complaints Examiner
                        Complaints Examining Unit

LMD:AW:JST/jst

Att 21 79 1 of 1



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

**November 20, 1996**

Ms. Rose Dews-Miller
c/o John D. Pratt
6713 Harwood Place
Springfield. VA 22152-2419

Re: <u>OSC File No. MA-96-0449</u>

Dear Ms. Dews-Miller:

The purpose of this letter is to notify you that you may have a right to seek corrective action from the Merit Systems Protection Board (MSPB). As we informed you in our closure letter of this date, we have terminated our inquiry into your allegations. Because you alleged that you were the victim of the prohibited personnel practice described in 5 U.S.C. § 2302(b)(8), commonly called reprisal for whistleblowing, you may have the following rights.

You may seek corrective action from the MSPB under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221 (individual right of action) for any personnel action taken or proposed to be taken against you because of a protected disclosure that was the subject of your complaint to this office. You may file a request for corrective action with the MSPB within 65 days after the date of this letter.

The Merit Systems Protection Board regulations concerning rights to file an individual right of action with the Board can be found at 5 C.F.R., parts 1201-1206 and 1209. If you choose to file such an appeal you should submit this letter to the Board as part of your appeal.

Sincerely,

J. Sandra Thomas
Complaints Examiner
Complaints Examining Unit

Att2a pg 1 of 3

*DOC: 48a - SURV. REV* (handwritten)

OSC Form 48a (Rev 5/96)

OMB Control No. 3255-0003
Expiration: 09/30/97

## OFFICE OF SPECIAL COUNSEL (OSC)
## CUSTOMER SURVEY

The OSC has completed action on your request for OSC assistance. Our final disposition of this matter is explained in the enclosed closure letter. Although we cannot guarantee the specific outcome sought by everyone who comes to OSC, all who seek our assistance deserve quality service. To better serve you and others who contact our agency, we hope that you will take a few minutes to answer this questionnaire. Your response to this survey is voluntary. There is no requirement to provide your name or otherwise identify your OSC matter, so your response can be made anonymously.

1. *Has the federal agency by which you are employed (or were most recently employed, if you no longer work for a federal agency) informed you about your rights and remedies in connection with prohibited personnel practices?*
   a. Yes    b. No    c. Don't recall
   d. Never employed by a federal agency

2. *Were you successful in obtaining the relief you requested from OSC?*
   a. Yes b. Partially successful c. No    d. Not applicable

3. *Regardless of the outcome of the matter, were you satisfied overall with the service you received from OSC staff?*
   a. Very satisfied    b. Satisfied    c. No opinion
   d. Dissatisfied    e. Very dissatisfied

4. *If you filed an appeal with the Merit Systems Protection Board (MSPB) on the same matter(s) covered in your OSC matter, were you successful in obtaining the relief you requested from the MSPB?*

   a. Yes b. Partially successful c. No    d. Not applicable

5. *We invite your comments or suggestions on specific ways in which we could improve our service.*
   _____
   _____
   _____
   _____

6. **OPTIONAL**: *You may provide your name and case number so that OSC can follow up, as appropriate, on any comments or suggestions.*

   Your name:    _____
   OSC case number:    _____

*Thank you for contacting OSC and for taking the time to complete this survey. If you have any questions or need additional information about our services, please call us at (800) 872-9855. Any of our representatives will be pleased to help you.*

To return this survey, please mail it in the enclosed postage-paid envelope to the Office of Special Counsel.
(Privacy Act Notice on reverse side)

*Att 22* (handwritten)
*pg 2 of 3* (handwritten)

*DOC. OVER ⟹
PRIVACY. 48a* (handwritten)

**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

Official Business
Penalty for Private Use, $300

23:17 11/20/96 DCR#4015S#631 WGMF DC 200

*On 11/24/96 talked to Story Hopkes office, Mr. Richardson. FAX (301) 474-4649*

*Rowley right of 1996 Dtr to 9/10 Rowley Assoc SC See Rose*

Ms. Rose M. Dews-Miller
c/o John D. Pratt
6713 Harwood Place
Springfield, Va 22152-2419

*Att 22. 2 of 3*

John D. Pratt
6713 Harwood Place
Springfield, VA 22152-241
Telephone: (703) 569-194
Fax: (703) 569-8780

Z 399 241 581



**Receipt for Certified Mail**
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

PS Form 3800, March 1993

Sent to
OSC- William Reukauf
Street and No.
1730 M St. N.W.
P.O., State and ZIP Code
WASH, D.C. 20036-4505

| | |
|---|---|
| Postage | $ 78 |
| Certified Fee | 1.10 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | 1.10 |
| Return Receipt Showing to Whom, Date, and Addressee's Address | |
| TOTAL Postage & Fees | $ 2.98 |

Postmark

**November 27, 1996**

**U.S. Office of Special Counsel**
**Mr. William Reukauf**
**Associate Special Counsel**
   **for Prosecution**
**1730 M Street, N.W., Suite 300**
**Washington, D.C. 20036-4505**

        Re: **OSC File No. MA-96-0449**

**Dear Mr. Reukauf:**

Late on Friday, November 22, 1996, I received two one page letters from Complaints Examiner, J. Sandra Thomas relating to the above cited case. These letters were accompanied by an OSC Customer Survey form and a postage paid return envelope for the survey.

On Monday, November 25, 1996, I called Ms. Thomas in an attempt to gain some insight into why she did not answer questions I raised in my November 15, 1996, letter in response to her October 31, 1996, letter. Copies of these three letters are attached.

In our Monday, November 25, 1996, conversation, I asked why Ms. Thomas ignored my request for sources for the MSPR's referenced in her Halloween letter. She responded that she had no responsibility to provide the referenced material nor tell me where they could be found.

Att 23
PG 1 of 4

I then asked Ms. Thomas who she had interviewed in the course of her "examination" of the case. She said "No one other than Dews-Miller and me." With some surprise, I asked whether she had contacted OSC Examiners' Peterson and Henderson, who are obviously working a parallel case involving some, if not all, of management officials charged by Ms. Dews-Miller.

Ms. Thomas replied, she had not contacted Peterson-Henderson and probably would not contact them.

Ms. Thomas also said, she had reviewed the material submitted and prepared a report, with her recommendations, which was submitted to a "Committee" for a decision.

I asked if the "Committee" had been made aware of the contents of my November 15, 1996, letter? Ms. Thomas said "she did not consider it necessary to submit it to anyone."

I suggested this case should remain open because the ongoing FBI investigation of AMEX Card abuses in USIA and the work being done by Peterson-Henderson should be collated and examined from an overall point of view.

Ms. Thomas did not agree.

I then asked, if there was a time limit on filing an appeal of her apparently unilateral decision to close this case. I also asked, if there were an internal OSC appeal route available. Ms. Thomas said there was no time limit and that we could appeal to you for "reconsideration."

I, therefore ask your reconsideration of Ms. Thomas' closure decision. I sincerely hope this reconsideration will include an exchange of information between whoever reviews this case and Examiners Peterson and Henderson.

I will be happy to provide the name of the FBI agent investigating other aspects of the AMEX Card problem.

Att 23
pg 2 of 4

In my November 15, 1996, letter, I suggested a review of ALL AMEX Card accounts in USIA to determine the scope of the problem. I believe such a review would reveal what happened to a Mr. Lumpkins, from the Office of the Comptroller. Mr. Lumpkins was the AMEX Card Program Monitor for all of USIA. The requested review would show the extent of the card abuse, when any abuse was first reported to the Comptroller, if it was ever reported.

The review of card accounts would reveal if and when Mr. Lumpkins should have or did report abuse, particularly as it applied, to the Office of Inspector General.

We know that the problem was present in September, 1994, when Dews-Miller first became responsible for monitoring cards issued to O.I.G. staff. What we do not know is DID the problem first surface in O.I.G. as Dews-Miller became monitor or did they exist when Mr. Lumpkins was Program Monitor?

With so many valid questions unanswered, it would only seem wise and prudent to keep the case open and answer these questions.

Along with getting answers, there exists the problem of Ms. Dews-Miller approaching the end of a time limited employment action. This action is a direct result of management's efforts to kill the messenger about the AMEX Card program.

On April 28, 1996, USIA's Office of Inspector General ceased to exist. With the exception of Ms. Dews-Miller, all OIG staff were transferred to the Department of State. Dews-Miller was transferred to "No-Where." Her pay was stopped and her Federal Employees Health Benefits Program, (FEHBP) coverage was canceled by USIA management, all without Dews-Miller's before or after the fact knowledge. In fact, Dews-Miller did not become aware of her loss of FEHBP coverage until she tried to have seven prescriptions filled on May 31, 1996. The pharmacy told her coverage had ended at COB April 27, 1996. After protesting to Jan Brambrilla, Director of Personnel, coverage was reinstated on or about June 10, 1996. Fortunately, Ms. Dews-Miller did not have to use her FEHBP coverage except for those seven prescriptions.

Att 23

I hope the information provided here will convince you of the necessity to keep this case open until these many questions, as well as other questions these questions are sure to generate, are answered.

It will be a far worse criminal act to fail to look into these charges, thereby failing to bring to justice those USIA management officials responsible for these prohibited personnel practices.

In conclusion, I ask you to keep OSC File Number: MA-96-0449 open while a full, active and just investigation is conducted. I further ask you to issue the necessary "stay order" to prevent USIA from terminating Ms. Dews-Miller's employment on December 9, 1996.

Put yourself in her place. Think how you would feel if your federal career were terminated because you reported waste, fraud or mismanagement.

Please call if I have left anything unexplained. Justice Delayed is Justice Denied.

Sincerely,

John D. Pratt
Representative

Att 23 pg 4 of 4

SENDER: Complete items 1, 2, 3, and 4.
Add your address in the "RETURN TO" space on reverse.

(CONSULT POSTMASTER FOR FEES)

1. The following service is requested (check one).
☒ Show to whom and date delivered _____ ¢
☐ Show to whom, date, and address of delivery _____ ¢
2. ☐ RESTRICTED DELIVERY _____ ¢
(The restricted delivery fee is charged in addition to the return receipt fee.)
TOTAL $ _____

3. ARTICLE ADDRESSED TO:
OSC William Reukauf Suite 300
1730 M St. N.W.
Washington DC 20036-4505

4. TYPE OF SERVICE:
☐ REGISTERED   ☒ INSURED
☒ CERTIFIED    ☐ COD
☐ EXPRESS MAIL
Always obtain signature of addressee or agent

ARTICLE NUMBER
Z 321 142 881

I have received the article described above.
SIGNATURE  ☐ Addressee  ☐ Authorized Agent

*Osburne Max*

5. DATE OF DELIVERY        POSTMARK
11/29/96

*received Friday 11/29/96*

# ROSE M. DEWS-MILLER
## Fax Cover Sheet
(301) 868-9436 [Phone]
(301) 868-9267 [Fax]

**DELIVER TO:** Betty Richardson          **DATE:** November 28, 1996

**FROM:** Rose M. Dews-Miller

**SUBJECT:** Thanksgiving Cry to Congressman Hoyer

**FAX NUMBER:** (301) 474-4697

**NUMBER OF PAGES INCLUDING FAX COVER SHEET** 28

Happy Thanksgiving Ms. Richardson,

    This comes as a desperate cry out for help! _HELP!_

from Congressman Hoyer's office to save my job at the United States Information Agency from prohibited personnel practices that your office reported to the U.S. Office of Special Counsel (OSC) on my behalf exactly one year ago today. I hope that I can enjoy my Thanksgiving dinner with this heavy burden on my mind, but hopeful you holidays are blessed. Thanks

                        Rose M. Dews Miller

Rose Mary Dews-Miller
Post Office Box 863
Clinton, MD  20735-0863
Telephone:  (301) 868-9436
Fax:  (301) 868-9267

November 28, 1996

The Honorable Steny H. Hoyer
United States House of Representatives
Washington, DC  20515-2005

Dear Congressman Hoyer:

I would like to take this opportunity to congratulate you on being reelected to the House of Representatives and up-to-date you on my complaint against USIA.  Your re-election is certainly "good news" to me and other federal employees.  The current status of my complaint against USIA can only be described as distressing and disheartening.

As a result of my November 28, 1995, letter to you, (Attachment 1) and your communication to the Office of Special Counsel, a file (OSC-MA-96-0449) was opened.  The assigned Complaints Examiner was supposed to investigate my charges that USIA management officials, including then USIA Inspector General, Marian C. Bennett, were violating the letter and intent of the Whistleblower Protection Act by attacking me because I reported waste, fraud and mismanagement in the Office of Inspector General.

On September 16, 1994, I informed Inspector General, Marian C. Bennett about OIG staff who had violated the rules and regulations applicable to the AMEX Credit Card program for USIA.  I had just been assigned the responsibility to monitor the program for OIG.  One requirement was to insure card use was not abused and another was to insure bills were paid on-time.  Needless to say, what I found was far from "compliance".  OIG staff members had

ATT 25 pg 2 of 4



used their government issued cards for meals, personal purchases and cash advances. There were several others who were delinquent in making payments.

As a result of my report to Marian C. Bennett, my previously "Fully Successful" and equivalent performance evaluations became "Minimally Successful" and I was sent to other offices for "rehabilitation".

In the meantime, the AMEX Card problem appeared to spread to the entire Agency and Mr. Tyrone Lumpkins, former Agency wide monitor of the Program, was given "other duties".

My problems became worse when on January 18 1996, Jan Brambilla, Director of Personnel, signed a Notice of Personnel Action converting me from my fully tenured "career" position to a non-career position to end on December 9, 1996, (Attachment 2). What a way to be treated after more than twenty three years service with USIA.

Brambilla has since been a party to other prohibited personnel practices aimed at me, but this is the most serious because unless something is done, and soon, I won't have a job after December 9, 1996.

As a result of your show of interest in my case, OSC apparently went through the motions of opening case MA-96-0449 as previously mentioned.

On March 20, 1996, I received a letter from J. Sandra Thomas of OSC of the status of "my" case. (Attachment 3)

On May 17, 1996, I provided OSC with the name of my representative, John D. Pratt. (Attachment 4)

On July 25, 1996, my representative furnished Ms. Thomas a six page response to questions she had discussed with him earlier that week. (See Attachment 5)

On August 9, 1996, Ms. Thomas furnished us a status report. (Attachment 6). Please note this was a "status" report not a progress report, a very non-committal status report at that.

The next correspondence we received from Ms. Thomas was on October 31, 1996, (Attachment 7), Halloween no less and it certainly was no treat.

Att 25 Pg 30 of 4

$$\boxed{3}$$

My Representative then wrote Ms. Thomas on November 15, 1996, (Attachment 8) to express our surprise over her decision to close my complaint.

Ms. Thomas responded on November 20, 1996, (Attachment 9) again saying we had not offered reasonable proof to support my charges.

In desperation, Mr. Pratt called Ms. Thomas to discuss our next steps in seeking justice and to restore my career status employment with the federal government.

As a result of his conversation, Pratt found that he could appeal Ms. Thomas' decision to a Mr. William Reukauf. On November 27, 1996, (Attachment 10), Pratt wrote Mr. Reukauf to express our concerns over the non-progress by OSC.

What most concerns me is the Personnel Action, (Attachment 2), which will terminate my employment on December 9, 1996, unless OSC tells USIA to keep me on the payroll.

I most desperately need your assistance to convince OSC to keep my case open until All the questions about the AMEX Card problem at USIA are settled and allow me to continue to work.

My thanks for getting OSC to accept my complaint. I do hope they have not just been giving lip service to my complaint because of your interest in my problem. But with the interest of the FBI in the AMEX Card problem at USIA, coupled with the Henderson-Peterson OSC investigation, something seems strange about Ms. Thomas decision.

I do hope you will be able to assist me in my quest for justice and returning to a career position in USIA or somewhere else in the federal government.

Sincerely,

*Rose M. Dews Miller*

Rose M. Dews-Miller

Attachments: As stated.

STENY H. HOYER
5TH DISTRICT, MARYLAND

CO CHAIR
DEMOCRATIC STEERING COMMITTEE

COMMISSION ON SECURITY AND
COOPERATION IN EUROPE

APPROPRIATIONS COMMITTEE

TREASURY, POSTAL SERVICE,
GENERAL GOVERNMENT

LABOR,
HEALTH AND HUMAN SERVICES,
EDUCATION

HOUSE OVERSIGHT COMMITTEE

# Congress of the United States
## House of Representatives
### Washington, DC 20515-2005

December 10, 1996
Tuesday

Mrs. Rose Dews Miller
8507 Woodyard Road
Clinton, MD 20735

Dear Mrs. Miller:

Enclosed is a copy of the interim reply I have received from the U. S. Office of Special Counsel.

Mr. Lawrence indicates that he will contact me again when the review is completed.

As soon as I receive a final report, I will be back in touch with you.

With kindest regards, I am

Sincerely yours,

STENY H. HOYER

Enclosure

Att 26 pg 1 of 1



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

DEC 10 1996

*MONDAY*
December 9, 1996

The Honorable Steny H. Hoyer
U.S. District Courthouse
Suite 310
Greenbelt, Maryland 20770

Re:    OSC File Number MA-96-0449

Dear Congressman Hoyer:

This is in response to correspondence on behalf of Ms. Rose M. Dews-Miller.

Based upon Ms. Dews-Miller's request for reconsideration, the file in this matter is under review to determine what, if any, further action should be taken by this agency with regard to her complaint.

When that review has been completed, I will contact you again.

Sincerely,

Michael G. Lawrence
Director, Congressional and
Public Affairs

*Att'y pg 1 of 1*



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

December 12, 1996

Mr. John D. Pratt
6713 Harwood Place
Springfield, VA 22152-2419

    Re:    **OSC File No. MA-96-0449, Dews-Miller**
             **Reconsideration for Reconsideration**

Dear Mr. Pratt:

    This is in response to your request for reconsideration of the decision of the Office of Special Counsel to close the above-captioned file. We have reviewed the information you submitted, and have determined that you have not presented any additional evidence that would lead us to change our decision to close the file in this matter.

    Accordingly, your request for reconsideration is denied and there is no further appeal available to you within the Office of Special Counsel.

                Sincerely,

                *William E. Reukauf*

                William E. Reukauf
                Associate Special Counsel
                   for Prosecution

cc:    Rose Dews-Miller

WER:coa

*[handwritten notes:]*
OSC #A-96-0449
~~Fed loaso kes~~
10:53am
Carrie Andrews from
OSC You left message
for Bill Reukauf. Plse
call her by 5pm...

Att 28 pg 1 of 1



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

**Official Business**
**Penalty for Private Use, $300**

rcvd 12/18/96
wednesday

Mr. John D. Pratt
6713 Harwood Place
Springfield, VA 22152-2419

2215212419

12/20/1996  22:40   301--868--9267           ROSE DEWS MILLER

DEC 1 7 1996



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

December 16, 1996

The Honorable Steny H. Hoyer
U.S. District Courthouse
Suite 310
Greenbelt, MD 20770

<u>File No.: MA-96-0449</u>

Dear Congressman Hoyer:

   This is in response to your inquiry on behalf of Ms. Rose M. Dews-Miller who requested a reconsideration in her closed Office of Special Counsel (OSC) matter.

   The OSC has reviewed the information that she submitted, and it has been determined that she did not present any additional evidence that would lead OSC to change our decision to close the file in the matter.

   Accordingly, the request for reconsideration is denied and there is no further appeal available to her within the Office of Special Counsel. Ms. Dews-Miller was notified of this action by letter on December 12, 1996. If you have any questions on this matter, please feel free to contact me on (202) 653-9001.

                              Sincerely

                              Michael G. Lawrence
                              Director, Legislative and
                                 Public Affairs

Att 30 pg 3 of 1

12/20/1996  22:40    301--868--9267    ROSE DEWS MILLER

STENY H. HOYER
5TH DISTRICT, MARYLAND

CO-CHAIR
DEMOCRATIC STEERING COMMITTEE

COMMISSION ON SECURITY AND
COOPERATION IN EUROPE

# Congress of the United States
## House of Representatives
### Washington, DC 20515-2005

APPROPRIATIONS COMMITTEE

TREASURY, POSTAL SERVICE,
GENERAL GOVERNMENT

LABOR,
HEALTH AND HUMAN SERVICES,
EDUCATION

HOUSE OVERSIGHT COMMITTEE

December 17, 1996

Mrs. Rose Dews Miller
8507 Woodyard Road
Clinton, MD 20735

Dear Mrs. Dews Miller:

Enclosed is a copy of the letter I received from the U. S. Office of Special Counsel in response to my inquiry on your behalf.

Mr. Lawrence indicates that your request for reconsideration is denied and there is no further appeal available to you within the Office of Special Counsel.

I am sorry the response is not favorable. If I can be of help on any other matter in the future, please do not hesitate to call on me. My staff and I are always ready to be of service.

With kindest regards, I am

Sincerely yours,

STENY H. HOYER

Enclosure

Att 3, pg 1 of 1



Mr. John Pratt
6713 Harwood Place
Springfield, VA 22152-2419