**EXHIBIT   35**

**United States Information Agency**

WASHINGTON DC 20547-0001



December 22, 1997

Raphael Ben-Ami
Administrative Judge
Washington Regional Office
Merit Systems Protection Board
5203 Leesburg Pike, Suite 1109
Falls Church, VA 22041-3473

        Dews Miller v. USIA
        Docket No. DC-1221-98-0147-W-1

Dear Judge Ben-Ami:

    The Agency respectfully submits its response in the above-captioned case.

        Sincerely,

        Carol B. Epstein
        Assistant General Counsel

MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

| | |
|---|---|
| ROSE MARY DEWS-MILLER, <br><br> Appellant, <br><br> v. <br><br> U.S. INFORMATION AGENCY, <br><br> Agency. | DOCKET NUMBER <br> DC-1221-98-0147-W-1 <br> Raphael Ben-Ami <br> Administrative Judge |

AGENCY RESPONSE

Effective December 9, 1996, appellant, Rose Mary Dews Miller, left the U.S. Information Agency at the expiration of her temporary appointment.

On November 21, 1997, Dews Miller filed this appeal, claiming that her termination was retaliation for her whistleblowing complaint filed with the Office of the Special Counsel (MA-97-0571).

The Agency's position is that Dews Miller's temporary appointment and the subsequent termination of it were driven by a settlement agreement she signed. Dews Miller's departure from USIA was nothing more than the legitimate follow-through of the terms of a settlement agreement, to which she was a party.

-2-

## I. ARGUMENT

### A. There Is No Nexus Between the Whistleblowing and the Alleged Retaliators

In two cases before the Office of the Special Counsel (OSC) (OSC #MA-96-0449 and MA-97-0571), Dews Miller identified her whistleblowing activity as a September 1994 report to USIA Inspector General Marian Bennett that employees in the office were misusing Government American Express Cards. Dews Miller complained that various retaliatory actions--AWOL charges, denying her within-grade increase, and ultimately, termination--were taken against her because she reported the misuse of the credit cards.

In both cases, the Office of the Special Counsel concluded that the officials responsible for the actions about which Dews Miller complained were not the subject of her disclosure and suffered no impact. OSC closed the files. In this most recent appeal, Dews Miller asserts that she was the victim of a conspiracy and lost her job as a result. Yet she provides no evidence or plausible argument to prove any connection between her whistleblowing activity and her departure from USIA. That is because there is no connection and there was no conspiracy.

-3-

B. Appellant's Termination Was Based on a Settlement Agreement She Signed

Dews Miller's termination from USIA had nothing to do with any complaint she made or appeal she filed. In 1993 and 1994, Dews Miller had several discrimination complaints pending against the Agency. In 1995, prior to commencing a formal EEOC hearing on one of those complaints, Dews Miller and her attorney entered into settlement negotiations with the Agency, which resulted in an agreement. Tab 4f. The agreement provided for a 6-month detail in the Office of the Comptroller (M/C) and an evaluation of Dews Miller's performance at the end of the detail. Should that evaluation be at least "fully successful," she would be awarded that position, or a similar one, on a permanent basis. An evaluation below the "fully successful" level would terminate her detail to M/C and generate an attempt to place her in another appropriate USIA position. If there were no placement opportunities, Dews Miller would return to the Office of the Inspector General where she would be on probation for three months. If, at the end of three months in OIG, she earned an evaluation of at least "fully successful," she would be retained. Otherwise, she would be transferred out of OIG and into a temporary position not to exceed one year. Tab 4f, numbered paragraphs 1 through 8. After serving six months in the Office of the Comptroller, a performance evaluation was written. Tab 4d. This "minimally successful" evaluation report terminated

-4-

Dews Miller's detail to M/C. At that time, no placement possibilities were available and none was anticipated. As a result, on August 31, 1995, Dews Miller was informed of the detail termination and was instructed to return to OIG effective September 1, 1995. Tab 4c.

Dews Miller was absent from work from August 21, 1995, until November 27, 1995, because of a work-related injury incurred July 10, 1995. Despite repeated requests for substantive medical documentation to justify her lengthy absence, none was provided. She returned to work the final week of the three-month probationary period specified in the settlement agreement.

Despite her failure to substantiate a three month absence, OIG officials offered Dews Miller an opportunity to serve the full three-month probationary period in OIG after she returned to duty. On December 5, 1995, Dews Miller elected instead to be placed on the temporary appointment, which was the alternate choice in the settlement agreement. Her temporary appointment, not to exceed one year, was effective December 10, 1995. Tab 4b.

In accordance with the settlement agreement, she left the Agency at the expiration of that appointment on December 9, 1996. Tab 4a.

C. The Conspiracy Theory
Is Baseless

Dews Miller's appeal intimates there was collusion among numerous officials in various Agency offices--the Office of the

-5-

Inspector General, the Office of the General Counsel, the Office of Human Resources, the Office of the Comptroller. The result of this intricate conspiracy was her termination from the Agency, ostensibly because she reported misuse of credit cards. Not only is this suggestion absurd, but there is no evidence or rational argument to support it. The officials named in Dews Miller's complaint have no real stake in the American Express Card program at USIA. The employees who misused their credit cards and were the focus of Dews Miller's report certainly would have a stake in quieting her, but she does not name these individuals as retaliators. In fact, the Agency action taken in response to Dews Miller's report was to investigate and correct the wrongdoing.

More importantly, Dews Miller's supervisor recognized her contribution in an interim evaluation report covering the period from May 1, 1994 to January 24, 1995. OIG's Darwin Roberts wrote laudatory comments concerning Dews Miller's discovery of American Express Card misuse. She was rated highly for this action, even though the evaluation report indicates other aspects of her performance fell somewhat short of expectations. Tab 4e. Dews Miller's whistleblowing complaint was not related in any way to her termination from USIA and she has failed to meet her burden of proving that it did.

-6-

## II. Conclusion

For the foregoing reasons, this appeal should be dismissed as lacking in merit.

Respectfully submitted,

CAROL B. EPSTEIN
Assistant General Counsel
U.S. Information Agency
301 4th Street, S.W., Room 700
Washington, D.C.  20547
(202) 619-6981