# EXHIBIT  37

*John D. Pratt*
*6713 Harwood Place*
*Springfield, VA 22152-2419*
*Phone: (703) 569-1944*
*Fax: (703) 569-8780*

April 6, 1998


The Clerk of the Board
Merit Systems Protection Board
1120 Vermont Avenue, NW
Room 806
Washington, D.C.  20419


REFERENCE:      Docket No. DC-1221-98-0147-W-1


     Enclosed herewith is appellant's petition for review

of an Initial Decision issued on March 3, 1998 and a

Certificate of Service.



Sincerely,


John D. Pratt
Appellant's Representative




Enclosures:  As Stated

## APPELLANT'S PETITION FOR REVIEW

Case Name:       Rose Mary Dews-Miller

v.

United States Information Agency

Docket No:       DC-1221-98-0147-W-1

Initial Decision Finality Date:    April 7, 1998

### QUESTIONS WITH ANSWERS

This petition is being filed in a timely manner on or before April 7, 1998.

Appellant has been denied answers to the following question submitted to the Office of Special Council, (O.S.C.) and the Administrative Law Judge, (A.L.J.) which must be answered.  Then the answers can be evaluated by a reasonable person who would be able to render a decision or raise additional questions for either party to a case.  For instance:

A.       O.S.C. closed its "alleged" investigation of appellant's complaint, MA-97-0571, by referring to a previously "closed" O.S.C. investigation without providing the O.S.C. file number of the previous case. O.S.C. was asked twice to provide the missing file number, however, those requests were ignored.

## APPELLANT'S PETITION FOR REVIEW

Case Name:     Rose Mary Dews-Miller

v.

United States Information Agency

Docket No:     DC-1221-98-0147-W-1

Initial Decision Finality Date:     April 7, 1998

### QUESTIONS WITH ANSWERS

This petition is being filed in a timely manner on or before April 7, 1998.

Appellant has been denied answers to the following question submitted to the Office of Special Council, (O.S.C.) and the Administrative Law Judge, (A.L.J.) which must be answered. Then the answers can be evaluated by a reasonable person who would be able to render a decision or raise additional questions for either party to a case. For instance:

A.     O.S.C. closed its "alleged" investigation of appellant's complaint, MA-97-0571, by referring to a previously "closed" O.S.C. investigation without providing the O.S.C. file number of the previous case. O.S.C. was asked twice to provide the missing file number, however, those requests were ignored.

When the A.L.J. was also asked to obtain this information for appellant, the question was again ignored.

Without the missing O.S.C. file number appellant should not be expected to "assume" anything about the previously "closed" file or comment on its applicability to Docket DC-1221-98--0147-1 at M.S.P.B.

However, Agency, in its response dated December 22, 1997, provided an O.S.C. file number, which has yet to be verified by O.S.C. or validated by the A.L.J.

This raises the probability of some "extra" communication between O.S.C. and the Agency, which <u>was</u> <u>not</u> shared with M.S.P.B. or Appellant. Furthermore, A.L.J. has obviously accepted the reference supplied by Agency without checking its' source or accuracy.

<u>Action Requested</u>:

M.S.P.B. must order O.S.C. to provide appellant with the referenced file number. Then M.S.P.B. must provide appellant an appropriate period of time for comments.

B.    Agency's response of February 18, 1998, stated that a judicial decision has been rendered in this matter, without providing any requisite case or court

dates or numbers.  I addressed this omission in my
February 26, 1998, letter, which the A.L.J. ignored.

C.       Why did the Agency's response dated December 22,
1997, so completely address All points raised by the
ALJ's order dated one week later, December 29, 1997.

      There is the appearance of "extra" communications
between Agency and A.L.J.  A point addressed in my
January 9, 1998, letter, which has been ignored by the
A.L.J.

D.       The A.L.J. has not yet addressed any of the
questions raised in my January 9, 1998, February 3,
1998 and February 9, 1998 letters.

      Of particular interest was the absence of A.L.J.
comments on or questions about the chronological
history beginning with the "whistleblowing" event of
September 13, 1994.

E.       In many instances Agency claimed Office of
Workers Compensation, (O.W.C.) had denied appellant's
claims.  O.W.C. has been paying appellant, as a result
of the July 10, 1995, work related accident.  I
enclose, as Attachment 1, a copy of the most recent
O.W.C. check, dated March 27, 1998.

      The Agency, through its representative, has
failed to explain the reasons for the delay in

beginning payments to appellant which were the documented <u>failures</u> of personnel specialist, Jenni Mallios to properly and promptly process the paperwork needed by O.W.C.  In fact, there are still missing papers O.W.C. has repeatedly requested from Agency employee Mallios.

While there are several possible explanations for these delays and omissions, incompetence or lack of the knowledge, skills and abilities required by the position are not probable, because Mallios has been in this job for many years and has risen to the GS-12 or even GS-13 grade.  If incompetence is ruled out is there anything else but malice and harassment?

This same dis-information has been repeatedly cited by Agency Representative Epstein in various filings and correspondence-involving appellant.  For instance, Ms. Epstein drafted three letters, signed by U.S.I.A. General Counsel, Les Jin, informing Senators Mikulski and Sarbanes and Representative Hoyer that O.W.C. had rejected appellant's claim.

This disinformation has not yet been corrected nor have these officials been provided the current status along with the reasons for the initial claim rejection.

Now do all of these "events" look like the work of incompetents or conspirators?

F.      The Agency had repeatedly claimed the "AMEX" card "problem" has been solved.  While, in fact, it continues to be a major problem in U.S.I.A. and other federal agencies.  Recent GAO reports address the widespread "AMEX" card problem.

G.      Returning to the Agency's submission of December 22, 1997, and the reference to an EEOC Dismissal of Appeal dated September 25, 1997.  It is clearly shown that the EEOC dismissed the appeal because it was filed four days late, not because it lacked merit.  It must also be pointed out that the dismissal came over five hundred days AFTER the appeal was filed on February 16, 1996.  We were FOUR DAYS LATE BECAUSE of a SNOWSTORM and it took EEOC till September 25, 1997 to dismiss the appeal.

We have tried to keep these three "types", (MSPB, EEOC, and OWCP) of cases separate, but the Agency continues to make "incomplete and/or inaccurate references to them as in this appeal.  The problem would go away, if the A.L.J. had acted on appellant's questions, which, if answered completely and truthfully, would have shown how inaccurate and

misleading they are to anyone who accepts them blindly, and how irrelevant they are to this appeal.

Our February 3, 1998, letter addressed the ALJ's Show Cause Order and described why this appeal has been pursued under the Whistleblower's Protection Act, (W.P.A.), through O.S.C. and now to M.S.P.B.

So far no one appears to have read any of these submissions which have raised many questions about the accuracy of Agency claims and denials. As has been stated several times and in several ways, the Agency has been able to deflect the search for facts and the truth.

G.    In the Agency's December 22, 1997, submission mention was made of a "Highly Successful" rating for one of five performance requirements for the period May 1, 1994 to January 24, 1995. However, the overall rating was "Minimally Successful". Mention must also be made of the signatures and dates on pages eight and nine of this evaluation June 30, 1995, the date on the transmittal letter, July 18, 1995, and the end of the evaluation period, January 24, 1995. Why the five-month delay in preparing the evaluation?

Enclosed herewith is a history of appellant's performance evaluation reports, assigned offices,

rating and reviewing officers from July 8, 1984, to December 9, 1996. *Attachment 2* A review of this list will show how appellants' ratings dropped after the September 13, 1994, "whistleblowers" report to I.G. Marian C. Bennett. How much clearer an example is needed than this? It is a classic example of what happens to whistleblowers as described in the many W.P.A., O.S.C., G.A.P., and M.S.P.B. publications describing "prohibited personnel practices" committed against whistleblowers.

Returning, for a moment, to the June 30, 1995, date on the evaluation, was this a coincidental date or was it directly related to the results of the "interview" of appellant by John Sinclair, Assistant Inspector General for Investigations in the Office of Inspector General on June 27, 1995? This event is described on page ten of TAB A of appellant's February 9, 1998, submission.

It was at this June 27, 1995, meeting appellant provided Sinclair with the same information she had provided Special Agent, Linda McKetney, (F.B.I.) on May 26, 1995, and June 12, 1995.

H.    Throughout this process, Agency has claimed that I.G. Bennett and others charged with harassing a

whistleblower, were not directly affected by her revelations.  However, the magnitude of the problem, just in the Office of Inspector General, (O.I.G.), was a serious "blot" on Marian C. Bennett's resume, or so she perceived.  The records of the office of Civil Rights, at U.S.I.A. will show that more than twenty complaints were filed against Marian C. Bennett while she was I.G.  The first complaint was filed within a few weeks of her arrival.  Complaints continued till she "left" when her position was abolished, along with the entire Office of Inspector General at U.S.I.A.

The records will also show "no wins" for Bennett or the Agency.  A few complaints are still pending, most notably those of Brian Dowling and Rose Mary Dews-Miller, both of whom were involved in complaints about AMEX cards to I.G. Bennett.

Why have these two employees been harassed?  If not because both reported and complained about Bennett's, and Agency Management's acts of commission and omission re AMEX cards, then why?

There is a rather clear principal running through this case that can be possibly described as "Command Influence".  This is a situation, or series of situations, wherein persons' with "lesser" powers

flock to the defense of one or more persons with "greater" powers as a means to protect themselves. Self-preservation is another name for the actions of Agency personnel that have participated in the harassment of appellant.

The most disturbing aspect of the ALJ's dismissal is his obvious disregard for appellant's presentations, arguments, assumptions and questions that deserve answers.

Clearly, and most frightening, is my conclusion that the A.L.J. is more influenced by ESQUIRE than FACTS.

This conclusion is supported by ALJ's statement, "the appellant impugned the ethics of the attorney who represented her at the time of the settlement, contended that he "was not protecting [her]". Our February 3, 1998, letter, stated that appellant's attorney for the settlement is alleged to have inserted item eleven, relating to payment for attorney fees. If he did, he was clearly, "not" representing his client's best interest. If he did not insert the statement, he was derelict in his duty to fairly and honestly represent his client, by leaving the statement in the agreement. A further reading of

TAB A, of the February 9, 1998, submission provides the details.

If the A.L.J. was really interested in discovering what happened, he should have ordered a hearing to discover who said "what" about the settlement along with other Agency claims.

If appellant's February 3, 1998, letter ruffled some feathers, so be it.  It raised questions and the A.L.J. should have sought answers, but he did nothing.

Many charges of adverse acts of commission and omission made against the Agency can now be joined to apparent acts of omission by entities charged with protecting government employees.

Neither the laws nor regulations require an "attorney" to represent an appellant, but it appears facts count less unless you have "ESQUIRE" after your name.

This line of thought brings up another question or two which the A.L.J. or system must answer.

The A.L.J. added Ms. Marjorie Marks, Employee Relations Division of O.P.M. to the Certificate of Service for his March 3, 1998, Initial Decision.  This "addition", at this late date, roused my curiosity and I called her office for background material.

As a result of my call, I now ask why was the O.P.M. office ~~was~~ added so late in the game?  How can anyone be expected to "judge", "weigh", or "evaluate" any appeal based on a five and a bit page "decision" related to "jurisdiction", not merits of the case? Why has the Agency also ignored the O.P.M. office throughout this case?

In light of these questions, I am going to provide Ms. Marks with a copy of all "appellant" documentation, beginning with the November 21, 1997, I.R.A. filed with the Washington Regional Office of M.S.P.B.

We may yet find someone, in some office who will look at the facts, as we have presented them and let us get on with a hearing to resolve any disputed points in the case.

Sincerely,

John D. Pratt
Appellant's Representative

Enclosures:  As stated

3/30/98

Mr. Pratt,

This is a time ~~that~~

Jeff told me he had checked

P.O. Box today and we

~~who~~ went there this afternoon to

find this.



**United States Treasury** 15-51/000    P 071,140,178

Month Day Year    Check No.
03 27 98   00   PHILADELPHIA, PA      2038-33021135
OCC250470961  M1   OWCP ACPS   1125032798   16150002

Pay to the order of
ROSE M DEWS MILLER
PO BOX 863
CLINTON MD  20735

$***12358*50

VOID AFTER ONE YEAR

COMPENSATION FROM 09/30/97 TO 02/23/98    

⑈2038⑈  ⑆000005⑆8⑆  3302⑆354⑈ 0⑆0398



*Attachment 1*

*Attachment 2*

### PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| July 8, 1984 to April 30, 1985<br><br><br><br><br>Note: Personal Selection of me made by Chief, Office of Academic Exchanges and reported to duty on November 22, 1985. | 12 Years 10 Months 11 Days | Secretary (Typing) GS-318-07 | Office of the Comptroller, Budget Operations Division (M/CB) | **Rating:  Satisfactory  (Three Tier Rating)**<br><br>**Rater:  Steven B. Steiner, GM-15**<br>Ms. Dews has within a very short period of time become a "key person" in this organization.  Her ability to deal even-handedly with a variety of personality-types is impressive.  With an additional concentrated effort on organization of paper flow, I believe she will be an excellent secretary.  Ms. Dews has the potential to serve as an executive secretary either domestically or in the foreign service.<br><br>**Reviewer:  Gerald J. Parry, GM-15**<br>I have considerable contact with Ms. Dews on a daily basis and I am very familiar with the duties and responsibilities of her position.  The performance requirements are accurately stated.<br><br>Ms. Dews assumed her present position in July, 1984.  Being experienced and highly motivated, she quickly learned the duties of her position and now performs them in a highly successful manner.  Special projects are always completed promptly and accurately.<br><br>Ms. Dews is one of the most pleasant, even-tempered individuals I have ever known.  Acknowledgment of her helpfulness and pleasantness is often made both by Agency employees and others having business with this office.  It is truly a pleasure to work in the same office with her<br><br>I concur in this very favorable rating as well as in Mr. Steiner's assessment of Rose Mary's future potential.  A proper level of guidance has been provided during the rating period. |

_PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER_

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| November 22, 1985 to June 21, 1986 | 14 Years 0 Months 2 Days | Secretary (Typing) GS-0318-7 | Office of Academic Exchanges | **Rating: At Least Satisfactory (Three Tier Rating)**<br><br>**Rater and Reviewer: (Should have been)**<br>　　　　　　**Ronald Ungaro, Chief Office of Academic Exchanges**<br><br>**TO DATE NO RATING PROVIDED TO EMPLOYEE** |

Attachment 2

2

*Attachment* (vertical, right margin)

<u>*PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER*</u>

| *PERIOD* | *YEARS OF SERVICE* | *TITLE/ GRADE* | *OFFICE ASSIGNED* | *COMMENTS* |
|---|---|---|---|---|
| June 22, 1986 to April 30, 1987 | 14 Years 10 Months 11 Days | Unit Manager GS-303-08 | Television and Film Services (TV/WN) | **Rating: Satisfactory (Three Tier Rating)**<br><br>**Rater: Lisa Keathley, GM-15**<br>She responded to assignments with a smile and a pleasant attitude, which is one of her most positive characteristics! I think that Rose Mary is fully capable of handling her increased work load. She is always bright and cheerful. She is also very helpful when asked. She seems to have a good grasp of administrative rules and procedures -- which is not easy to accomplish!<br><br>**Reviewer: Gerald Andersen, GM-15**<br>The Rating Officer, has a professional relationship with Ms. Dews, and has been fair in her observations and evaluation. |
| May 1, 1987 to April 30, 1988 | 15 Years 10 Months 11 Days | Unit Manager GS-303-08 | Television and Film Service (TV/WN) | **Rating: Highly Successful (Five Tier Rating)**<br><br>**Rater: Lisa A. Keathley, GM-15**<br>Rose Mary has made tremendous strides during this rating period. She had had to become more interactive rather than just reactive to events, and she has done so extremely well. Whenever Division Management or staffers have administrative, travel, budgetary, or other procedural questions, they go to Rose Mary -- and she usually has the answers. If she doesn't know, she knows who to call to find out!<br><br>Rose Mary is bright, dedicated, and dependable. She has really pitched in and turned the processing of paperwork in this Division right around. She has come in on overtime when asked, and has been cheerful and positive through some trying times. She is a real asset to the Division, who is growing day by day in her leadership role. We have come to depend on her, and because of her diligence and hard work, she has earned a great deal of respect and trust.<br><br>**Reviewer: Gerald Andersen, GM-15**<br>I totally agree with Ms. Keathley's assessment of Rose Mary. There has been dramatic improvement in this rating year, compared to the last. Rose Mary has taken an active and leadership role in the smooth running of the News Division administrative office. The demands on our office are never ending, but she is tireless when it comes to getting the job done. She is often willing to put in the extra time necessary to meet a deadline or to do the job correctly. Her wide-ranging experience in other parts of the Agency are put to the test every day, whether relating to time and attendance or financial payment |

_**PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER**_

Attachment 2

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| Note: Agency Merit Promotion Selection to Office of African Affairs on August 15, 1988 | 16 Years 1 Month 26 Days (continued) | Unit Manager GS-303-08 (continued) | Television and Film Service (TV/WN) (continued) | **Reviewer: Gerald Andersen, GM-15 (continued)**<br>matters. Rose Mary now has a very clear grasp of all the elements of the position, the complexities, and the urgency with which the work has to be handled. She is a good resource and someone upon whom I can rely fully every day. Rose has a knack for getting things done and doing her tasks economically. She had very short notice to make travel arrangements for my trip to RTNDA this year. She completed it quickly (getting notice the day before departure) and convinced a hotel representative to follow the government rate on the accommodations, when initially informed the government rate didn't apply. |
| August 15, 1988 to April 30, 1989 | 16 Years 10 Months 11 Days | Administrative Assistant GS-341-07 Administrative Officer GS-341-09 | Office of African Affairs (AF) | **Rating: Highly Successful (Five Tier Rating)**<br><br>**Rater: Linda Western, Deputy Executive Officer**<br>Rose Mary is the epitome of graciousness when helping JOTs, secretaries, or senior FSOs. People feel at ease when asking her help. This is exactly the atmosphere I had hoped for in AF. She is extremely courteous, helpful, and does all the little extras that make everyone feel comfortable about broaching an administrative problem with our staff. She has the perfect attitude toward administrative issues and answers. While this is her strong point, I think this may have had a detrimental influence on her introduction to the position. In her eagerness to help, people have wasted her time on minor problems and taken advantage of her courteous nature by asking her to do things they should have done for themselves. Subsequently, we have set exact schedules for documentation on a variety of subjects and deadlines are now being met. Rose Mary and I have had discussions about assertiveness on her part, and she is striving for the right mix. Minor, time-wasting duties have been divorced from the position, and her present responsibilities are clearly the GS-9 position envisioned by AF.<br><br>Rose Mary has made tremendous strides toward getting information in our files, which is necessary for the smooth operation of an area office. The Travel Handbook, AF Personnel Roster, Wang Inventory, OER Log are prime examples. This is not an easy office in which to excel, but Rose Mary has done just that after an arduous start.<br><br>**Reviewer: Stedman D. Howard, Executive Officer**<br>While the AF Deputy Executive Officer serves as Ms. Dews' Rating Officer, in point of fact, Rose Mary works directly for me as much as she works for Ms. Western. Thus I have direct daily contact with Rose Mary and direct knowledge of much of her work and am well acquainted with all of it. The working relationships are good and productive and have had a positive impact on performance. Rose Mary has received |

_PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER_

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| August 15, 1988 to April 30, 1989 (continued) | 16 Years 10 Months 11 Days (continued) | Administrative Assistant GS-341-07 Administrative Officer GS-341-09 (continued) | Office of African Affairs (AF) (continued) | **Reviewer:  Stedman D. Howard, Executive Officer (continued)** adequate guidance and her work requirements are as fair and reasonable as administrative requirements can be.<br><br>In some 9 months on the job, Rose Mary Dews has shown herself to be an able, versatile, and dependable employee whose hallmark is painstaking thoroughness and an inclination to take the time to do the job completely, correctly, once.  To be honest about it, our first impression was that things were happening too slowly or getting lost.  Little by little, however, we discovered that, when Rose Mary finished working through a problem - be it travel, computer control, financial cuff records, OER tracking, or a hundred other administrative details - things which had lurched from urgent crisis to urgent crisis had become a matter of routine.  We had become so accustomed to crisis action that we then worried about the fact that we didn't have to worry.  Now I don't worry about whether or not the cuff records are accurate and useable - they are.  I don't audit every travel order or voucher - I know they are done right by staff members Rose Mary has trained and for whom she has provided a complete set of guidelines.  With Rose Mary's guidance everyone participates in preventive maintenance of our computers - no more crisis "crashes" or emergency calls to WANG.  And we quickly know the status of over 100 OERs for which AF is responsible.<br><br>She is doing what good administrative officers are supposed to do - making desired support a matter of almost (but not quite) unnoticed routine.  And she does all of this - copes with the daily hassles and the multiple demands on her time and effort - with an unfailing good humor and tact.  Some of this absolutely has to annoy her from time to time but you sure couldn't prove it by me. |
| May 1, 1989 to March 24, 1990 | 17 Years 9 Months 15 Days | Administrative Officer GS-0341-09 | Office of African Affairs (AF) | **Rating:  Highly Successful  (Five Tier Rating)**<br><br>**Rater:  Linda Western, Deputy Executive Officer** Rose Mary is one of the most dependable, agreeable, and thorough USG employees I have ever worked with.  She is always willing to give the extra that is needed to get the job done.  If she needed to research a question, you could count on accuracy and thoroughness.  She worked overtime when it was inconvenient and changed the atmosphere in an office where we encountered problems of drug abuse, thefts, and inefficiency.  In AF this year the working conditions had a high stress level and, at times, were generally unpleasant; but she was always gracious and pleasant.<br><br>Rose Mary leaves AF in much better condition than she found it.  Every aspect of our |

Attachment 2

PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| May 1, 1989 to March 24, 1990 (continued)<br><br><br><br><br>Note: Agency Merit Promotion Selection to Office of Inspector General on March 25, 1990 | 17 Years 9 Months 15 Days (continued) | Administrative Officer GS-0341-09 (continued) | Office of African Affairs (AF) (continued) | **Rater: Linda Western, Deputy Executive Officer (continued)**<br>administrative responsibilities are documented through logs and reports--which was not the case when she arrived. We had a busy year - ordering furniture and partitions, monitoring spending, filling vacancies, establishing new procedures, installing two new PCs with printers, and keeping up with our real responsibility, the posts.<br><br>This position represented a new field of pursuit for Rose Mary, and she has done well. She is moving on to even higher levels of responsibility, and I expect even bigger and better things from her in the future. Rose Mary will be missed in AF, and I wish her well in her new endeavor.<br><br>**Reviewer: Renate Z. Coleshill, Executive Officer**<br>As Executive Officer for the African Area, I am fully aware of the responsibilities and performance of the rated officer. Her work requirements are fair and consistent with comparable positions in the Agency. I was in daily contact with both rated and rating officers. I whole-heartedly concur with this rating.<br><br>Ms. Dews is an exceptional employee--dedicated and painstakingly thorough. She is without a doubt one of the easiest persons with whom to work. Her congenial, low-key and helpful manner made her an asset to the office. |
| May 1, 1990 to April 30, 1991 | 18 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General, (OIG) | **Rating: Highly Successful (Five tier rating)**<br><br>**Rater: Paul S. Johnston, Director, Office of Administrative and Management**<br>Ms. Dews is a valuable asset to OIG. She is dependable, conscientious and a pleasure to work with. During this rating period she was promoted to the GS-11 position.<br><br>She has designed modifications to the manual and automated accounting systems in OIG to enable timely and accurate reconciliations with the USIA accounting system. She is considered an expert in travel regulations and very effective in handling accounting discrepancies, personnel actions, T&A questions, and procurement procedures. On two occasions that I am aware of, she has canceled her leave voluntarily; to get time sensitive assignments completed.<br><br>**Reviewer: Louis J. Leporatti, Executive Assistant**<br>I am fully aware of the specific responsibilities and assignments Ms. Dews is expected to perform. Her performance requirements and standards are considered to be fair and reasonable, and she has carried them out at the highly successful level. |

Attachment 2

PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| May 1, 1990 to April 30, 1991 (continued) | 18 Years 10 Months 11 Days (continued) | Administrative Officer GS-0341-11 (continued) | Office of Inspector General (OIG) (continued) | **Reviewer:  Louis J. Leporatti, Executive Assistant (continued)** Ms. Dews has excellent interpersonal skills and her working relationships with others in the office and her supervisor are outstanding.  She is a dedicated and competent employee who is able to work with little guidance and is instrumental in providing the support OIG needs for maintaining and managing its financial and personnel resources. |
| May 1, 1991 to April 30, 1992 | 19 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) (continued) | **Rating:  Highly Successful  (Five tier rating)** **Rater:  Darwin D. Roberts, Director, Office of Administration and Management** Ms. Dews is a valuable asset to the OIG.  She maintains a professional attitude and demeanor no matter what task she is assigned.  As the administrative officer for the OIG, she must constantly interface with all staff members and Agency elements to ensure daily problems are quickly addressed and do not become major issues.  In performing these tasks, she has demonstrated herself to be a loyal, productive and experienced employee. **Reviewer:  Louis J. Leporatti, Executive Assistant** As her supervisor for a good portion of the rating period, I have full knowledge of the responsibilities and assignments Ms. Dews-Miller was expected to perform.  This she clearly accomplished at the highly successfully level against performance requirements and standards, which, in my opinion, are fair and reasonable.  Also impacting favorably on her performance was the working relationship she developed with both myself and her current supervisor and the guidance she received. |
| May 1, 1992 to April 30, 1993 | 20 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating:  Fully Successful  (Five tier rating)** **(Currently on Appeal with EEOC)** **Rater:  Darwin D. Roberts, Director, Office of Administration and Management** Ms. Dews-Miller is a key asset in the OIG.  She is responsible for numerous and varied tasks which impact every member of the OIG and therefore contribute directly to the morale and productivity of the OIG.  Generally, she has performed her assigned task in an efficient and effective manner.  She has also completed professional development courses, which have added to her knowledge, skills and abilities. **Reviewer:  Louis J. Leporatti, Executive Assistant** I have been fairly well informed as to the specific assignments and responsibilities of Ms. Dews-Miller throughout the rating period.  To the best of my knowledge the requirements and standards under which she was expected to perform against are considered to be fair and reasonable. |

*Attachment 2*

### PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| May 1, 1992 to April 30, 1993 (continued) | 20 Years 10 Months 11 Days (continued) | Administrative Officer GS-0341-11 (continued) | Office of Inspector General (OIG) (continued) | **Reviewer: Louis J. Leporatti, Executive Assistant (continued)** I agree the Ms. Dews-Miller's performance overall is at the fully successful level. But, I also believe that with little effort she can easily achieve a rating at the next higher level. She is a capable employee who wants to succeed but is locked into a position with no growth potential. The guidance she has received from her supervisor has been adequate. |
| May 1, 1993 to April 30, 1994 | 21 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating: Fully Successful (Five tier rating) (Formal Complaint on file with OCR)** **Rater: Darwin D. Roberts, Director, Office of Administration and Management** (Optional comments: NONE) **Reviewer: Louis J. Leporatti, Executive Assistant** I have been aware of the rated employees' responsibilities and assignments throughout the rating period. Her performance requirements and standards are considered to be reasonable and consistent with other positions in the office. Her responsibilities have been carried out to the level assigned by her rating officer. The relationship with her supervisor has not been a positive one. While she has received adequate guidance the nature of her relationship with her supervisor may have adversely affected her performance. |
| May 1, 1994 to January 24, 1995 | 22 Years 7 Months 5 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating: Minimally Successful (Five tier rating) (Formal EEO Complaint Unresolved in OCR)** **Rater: Darwin D. Roberts, Director, Office of Administration and Management** **Reviewer: Louis J. Leporatti, Executive Assistant** |
| February 1, 1995 to July 31, 1995 | 23 Years 1 Month 12 Days | Budget Analyst GS-0560-11 | Office of the Comptroller (M/CBNEA) | **Rating: Minimally Successful (Five tier rating) (Formal EEO Complaint Unresolved in OCR)** **Rater: Carol L. Keith, Budget Officer** **Reviewer: Eva Diekmann, Budget Officer** **NOTE: No Personnel Action, SF-50 provided by USIA for detail in excess of 30 calendar days for position of Administrative Officer, GS-341-11 to Budget Analyst, GS-560-11.** |

*Attachment 2*

### PERFORMANCE EVALUATION RATINGS AT USIA FROM JULY 1984 TO DECEMBER 9, 1996 FOR ROSE MARY DEWS-MILLER

| PERIOD | YEARS OF SERVICE | TITLE/ GRADE | OFFICE ASSIGNED | COMMENTS |
|---|---|---|---|---|
| August 1, 1995 to April 30, 1996 | 23 Years 10 Months 11 Days | Administrative Officer GS-0341-11 | Office of Inspector General (OIG) | **Rating:  At least Fully Successful since PERSONNEL TO DATE HAS NOT PROVIDED RATING TO EMPPLOYEE.**<br><br>**Rater:  Ann Young, AIG for Administration and Management**<br><br>**Reviewer:  Marian C. Bennett Inspector General** |
| May 1, 1996 to December 9, 1996 | 24 Years 5 Months 20 Days | Administrative Officer GS-0341-11 | Office of General Counsel | **Rating:  At least Fully Successful since PERSONNEL TO DATE HAS NOT PROVIDED RATING TO EMPPLOYEE.**<br><br>**Rater:  Jenni Mallios, Personnel Management Specialist  (NOT SURE)**<br><br>**Reviewer:  Carol Epstein, Assistant General Counsel  (NOT SURE)** |



**U.S. Merit Systems Protection Board**
Washington, D.C. 20419

**Clerk of the Board**
**(202) 653 - 7200**

Notice to:

John D. Pratt
6713 Harwood Place
Springfield, VA 22152-2419

       Re:    <u>ROSE MARY DEWS-MILLER v.</u>
             <u>UNITED STATES INFORMATION AGENCY</u>
             MSPB Docket No. DC-1221-98-0147-W-1

**We have received your petition for review.** The other parties
are informed by this Notice that they may respond or file a
cross petition for review within 25 days after the date of
service of the petition for review. The date of service of
the petition for review in this case was April 6, 1998.
Therefore, the response or cross petition must be filed on or
before May 1, 1998. If a cross petition for review is filed,
any response must be filed within 25 days after the date of
service of the cross petition. The filing date is the date the
document is postmarked if it is mailed or the date it is received
by the Office of the Clerk of the Board if it is personally
delivered or sent by facsimile.

Any response or cross petition must be served on the other
parties and proof of service provided to the Board. The
record will close when the period for filing the response to
the petition for review or any cross petition for review has
passed. Once the record is closed, additional submissions
will be considered only if a showing is made that the submissions
were not readily available before the record closed. 5 C.F.R.
§ 1201.114(i).

It is the duty of each party to notify the Board and each other
in writing of any changes in representation and/or address.

Robert E. Taylor

APR 1 0 1998
_____
(Date)

_Florence P. Sykes_
Florence P. Sykes
Legal Assistant

## CERTIFICATE OF SERVICE

ROSE MARY DEWS-MILLER                  )
                                       )
                v.                     )    Docket No.  DC-1221-98-0147-W-1
                                       )
UNITED STATES INFORMATION AGENCY       )
                                       )

I hereby certify that a copy of the foregoing document was
sent by regular mail this date to each of the following:

APPELLANT(S)

Rose Mary Dews-Miller
P. O. Box 863
Clinton, MD  20735-0863

APPELLANT'S REPRESENTATIVE(S)

John D. Pratt
6713 Harwood Place
Springfield, VA  22152-2419

AGENCY'S REPRESENTATIVE(S)

Carol B. Epstein
Assistant General Counsel
U.S. Information Agency
301 4th Street, SW , Rm. 700
Washington, DC  20547


                        APR 1 0 1998
Dated: _____          _____
                                      Florence P. Sykes
Washington, DC                        Legal Assistant



# U.S. MERIT SYSTEMS PROTECTION BOARD
## Washington, D.C. 20419

### Clerk of the Board

TO: *Mallory*

FAX NUMBER: 205 - 0496

FROM: *MSPB*

FAX NUMBER: 202 653-7130

COMMENTS:

TODAY'S DATE: 4/21/98

NUMBER OF PAGES (INCLUDING THIS COVER) TOTAL 4

*Sheila —
please make
a copy &
deliver to
Carol Epstein
in rm.
700.
Return
this to
me
thanks
fm.

P.S.
(asap, please!)*