# EXHIBIT 43

Affidavit of Darwin Roberts

CITY OF:    Arlington
STATE OF:   Virginia

## AFFIDAVIT

I, Darwin Roberts, Administrative Officer, GS-343-14, Office of the Inspector General, Department of State and formerly the Director of Administration and Management, GS-343-14, Office of the Inspector General, United States Information Agency (hereinafter "Agency"), do solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator, Lee M. Kramer, to answer the complaint of discrimination of Rose Mary Dews-Miller, dated March 28, 1996, against the Agency.

For the record I have been employed by the government for eighteen (18) years.

I have been advised that I am one of the officials alleged to be responsible for the action giving rise to this complaint, and I understand the allegations made by the Complainant.

I understand the Complainant is alleging that she was discriminated against on the basis of reprisal, for previous EEO activities, when the following events occurred:

(1) For the May 1, 1994 to January 24, 1995 Performance Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3);

(2) For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing the rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3);

Page 1 of 6 Pages                                Initials: DR

EXHIBIT  10
PAGE  1  OF  9  PAGES

(3) From September 5, 1995 through November 24, 1995, she was placed on Absence Without Leave (AWOL) because of a work injury. She reported the work injury to her then immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed her on AWOL was not her supervisor at the time of her work injury; and

(4) On November 9, 1995, she was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss her deficiencies in performance with her that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2) and (3).

I am only responding to allegation number (1) because I was only the Complainant's supervisor until January 24, 1995 and I have no first hand knowledge regarding the other allegations.

(1) For the May 1, 1994 to January 24, 1995 Performance Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3).

From November, 1991 through April 3, 1995 I was the Director of Administration and Management for the Inspector General. At the time when I rated the Complainant my immediate supervisor was Marian Bennett and I did not have a second-line supervisor because the IG is an independent office. Louis Leporatti was the Inspector General's Executive Assistant. I was the rater of the Complainant's January 24, 1995 interim Performance Appraisal and Mr. Leporatti was the reviewing official. I rated the Complainant as "Minimally Successful."

I was aware that the Complainant had filed a prior EEO complaint during the rating period. I was aware that the Complainant had filed an EEO complaint regarding her "Fully Successful" rating for the period of May 1, 1993 through April 30, 1994. I was the rating official who rated her "Fully Successful." I do not recall that the EEO Complaint against me was regarding job non-selection. To the best of my knowledge, I thought that this EEO complaint was resolved in January, 1995. I never retaliated against the Complainant for filing a prior EEO complaint against me or against the Agency.

Page 2 of 6 Pages                                    Initials: _DD__

EXHIBIT: 10
PAGE 2 OF 9 PAGES

On December 8, 1994 I established with the Complainant that I would meet with her to discuss her mid-term review on December 21, 1994 at 10:30 a.m. I know this because I looked at my meeting notebook. The Complainant refused to meet with me on December 21, 1994 when it was time for the meeting. She told me that we have nothing to talk about. I was planning to discuss with her an evaluation of her work performance with respect to each Performance Requirement and to advise her as to which areas I thought she needed to improve upon. When she refused to meet with me I made a note in the Performance Appraisal on page 2 that she did not want to meet with me. This is not the first time that the Complainant did not want to talk with me regarding her work performance.

When I had weekly staff meetings to discuss each of the staff members action items the Complainant would refuse to respond regarding the status of her work assignments. The staff meetings were held to determine status of work assignments and to provide feedback on my employees' work performance. I also met with the Complainant on many occasions in my office when there were major problems with the Complainant's work performance.

I did have Delores Bulles, another OIG staff member of mine, deliver to the Complainant her January, 1995 Performance Appraisal because I wanted to make sure that she actually received it. I even put a memo attached to the Performance Appraisal requesting that the Complainant contact me to review her rating. At this time the Complainant no longer worked in the IG's office and I wrote the note to her to make sure that she received it and was able to respond to my request. I placed the evaluation in a sealed "eyes only" envelope because I did not want anyone else to look at it. The Complainant refused to sign the Performance Appraisal or meet with me to discuss it. At the advice of Jenny Mallios in the Office of Personnel I sent the January, 1995 Performance Appraisal to Ms. Mallios directly. I recall that I even hand carried it over. Ms. Mallios asked me to deliver her the rating so that the Complainant's then current supervisor would not see the "Minimally Successful" rating. This was done to ensure that the Complainant's then current supervisor would not be influenced by my review.

The Complainant states in her affidavit that I gave her more than one "Minimally Successful" rating. To the best of my knowledge this is the first time that I rated the Complainant as "Minimally Successful."

Page 3 of 6 Pages                                    Initials: DM

EXHIBIT 10
PAGE 3 OF 9 PAGE

Performance Requirement Number 5 does not state that the Complainant was to negotiate contracts with outside trainers. Requirement Number 5 does state that the Complainant as the training coordinator for the OIG office was to solicit and compile individual training plans from and for each OIG staff member; maintain a tracking system to ensure that all training requirements were identified; to process individual training requests; coordinate with the Agency training office on Agency provided training and coordinate with the OIG purchasing agent for outside Agency training in order to ensure that logistical and financial requirements were addressed; compiles and maintains training literature for the staff and provide management status reports on staff training. This Requirement does not state anywhere that she needs to negotiate contracts.

The Complainant also claims that Performance Requirement Number 5 was arbitrarily added to her Performance Appraisal in January, 1995. Performance Requirement Number 5 has been part of the Complainant's position description and Performance Requirements before the January, 1995 Performance Appraisal. It was not arbitrarily added.

Also, it was the OIG Purchasing Agent, Delores Bulles, who had any contractual requirements related to training. The Complainant did not have any responsibility as far as negotiating the contracts were concerned.

The Complainant complains in her affidavit that I did not take into account her prior successes in receiving "Fully Successful" or better when I rated her for the January, 1995 rating. Each rating period is judged on the work of that rating period and has nothing to do with prior ratings or work.

I stand behind my comments and rating with respect to Performance Requirement Numbers 1 and 2. The justification provided in Performance Appraisal for Requirement Number 1 presents an accurate picture of the Complainant's work performance for that requirement. For instance, I received numerous phone calls from Alice Adams in the Office of the Comptroller regarding the discrepancies she found in OIG budget submissions prepared by the Complainant. The Complainant was fully aware of these, because the Complainant had to revise the budget submissions in order for the Comptroller's Office to pass them on to OMB.

Page 4 of 6 Pages                          Initials: DM

EXHIBIT    10
PAGE  4  OF  9  PAGES

With respect to Performance Requirement Number 2 I would like to state that I stand behind my comments. The justification provided in Performance Requirement Number 2 presents an accurate picture of the Complainant's work performance for that requirement. I never heard that the financial management system used by Agency was obsolete. Ms. Elaine John became the Budget Officer for the IG from January 24, 1995 through April 27, 1996 and to my knowledge had no problem working with the Agency's financial management system in reconciling on a monthly basis the IG's obligations and expenditures. I stated under Performance Requirement Number 2 that the Complainant was not keeping financial files in a timely and accurate manner. I said that she needed to have a more organized and conscientious approach to her work.

The Complainant alleges in her complaint that all requisitions and travel orders were not processed through her office for allocation of funds. To the best of my knowledge all requisitions and travel orders came through the Administrative Office to be processed. To my knowledge, it was not possible to process a requisition or travel order without the Administrative Office placing the funding information on the document. The Complainant was solely responsible for placing the funding information on the document. I am not aware that there were no management controls over the requisition process as the Complainant states in her affidavit. I commented under Performance Requirement Number 3 that the Complainant needed to establish and maintain timely and accurate files for travel vouchers and orders which would have assisted the Complainant in tracking obligations.

Prior to leaving the OIG the Complainant was requested by myself numerous times during the rating period for her to organize her work space in order to establish up-to-date administrative files. The Complainant said that she needed overtime to do this. The IG, Marian Bennett, agreed to provide the overtime. The Complainant's work space was cleared of the numerous stacks of papers and files. Upon the Complainant leaving the OIG an attempt to retrieve administrative files by Ms. John led to the discovery of the "previous stacks of papers and files" being stuffed in shelves in a supply cabinet. The IG requested that photographs be taken of the stuffed shelves in the supply cabinet. To the best of my knowledge, Ms. John took these pictures. It took four (4) OIG employees three (3) weeks to sort and file accurately the mess left by the Complainant so that the IG could have an accurate administrative filing system.

Page 5 of 6 Pages                             Initials: [signature]

EXHIBIT 10
PAGE 5 OF 9 PAGES

The Complainant also took with her from the IG office numerous computer disks containing OIG administrative files which were requested to be returned to the OIG by written memorandum from me to the Complainant. When we received the disks back a review by our ADP Systems Administrator, Ms. John, revealed that the information on the disks regarding current OIG administrative actions was not accurate and not up-to-date. Ms. John needed to recreate all OIG financial files from 10/1/95 (beginning of the fiscal year) through the current period. It was the Complainant's responsibility to maintain these files.

I have read this statement consisting of six pages, and it is true and correct. I have signed or initialed each page. I have been given an opportunity to make any corrections or additions which I have initialed. I understand that the information I have given is not to be considered confidential; that it may be shown to the interested parties; and that it may be used in evidence.

Darwin Roberts

Subscribed and sworn before me at the Department of State, 1700 N. Moore Street, Arlington, Virginia, this first day of November, 1996.

Lee M. Kramer, Investigator
Page 6 of 6 Pages

EXHIBIT 10
PAGE 6 OF 9 PAGES

CITY OF:     Rosslyn
STATE OF:    Virginia

# AFFIDAVIT

I, Darwin Roberts, Administrative Officer for the Inspector General, GS-343-14, Office of the Inspector General, Department of State and formerly the Director of Administration and Management, GS-343-14, Office of the Inspector General, United States Information Agency (hereinafter "Agency"), do solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator, Lee M. Kramer, to answer the complaint of discrimination of Rose Mary Dews-Miller, dated March 28, 1996, against the Agency.

For the record I have been employed by the government for eighteen (18) years.

I have been advised that I am one of the officials alleged to be responsible for the action giving rise to this complaint, and I understand the allegations made by the Complainant.

I understand the Complainant is alleging that she was discriminated against on the basis of reprisal, for previous EEO activities, when the following events occurred:

(1) For the May 1, 1994 to January 24, 1995 Performance Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3);

(2) For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing the rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3);

Page 1 of 3 Pages                                 Initials: DDR

EXHIBIT  10
PAGE  7  OF  9  PAGES

(3) From September 5, 1995 through November 24, 1995, she was placed on Absence Without Leave (AWOL) because of a work injury. She reported the work injury to her then immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed her on AWOL was not her supervisor at the time of her work injury; and

(4) On November 9, 1995, she was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss her deficiencies in performance with her that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2) and (3).

I would like to supplement my affidavit dated November 1, 1996.

According to my day timer for 1995 on January 26, 1995 our office had our last weekly staff meeting before the Complainant left the IG's Office. At that time she was directed to have all of her records ready for us to look at before she left our office. The day after she left our office Elaine John was requested to review the automated records and at that time we discovered there were no automated files to review. We called the Complainant and asked her to provide the automated files. At that time she said she would. At that time she never said there was a problem with a password on a disk containing the information. And if there was a password it should have been deleted before she left our office or she should have provided it to the Systems Administrator. If the Complainant was having trouble taking off any password she could have spoken to our System's Administrator Ms. John. At no time did the Complainant tell myself or Ms. John that she was having trouble taking off a password from a disk or that she was having trouble with any incompatibility of computer programs with the Comptroller's Office and our office. The bottom line is that those files should never have been removed from the IG's facilities in the first place. I never gave the Complainant permission to take any disks containing IG files out of our office. And upon finally receiving the files from the Complainant Ms. John conducted a thorough review of the files and all files were out of date and were of little value to the IG in determining the status of our financial accounts.

Page 2 of 3 Pages                          Initials: DDM

EXHIBIT 10
PAGE 8 OF 9 PAGES

I have read this statement consisting of three pages, and it is true and correct. I have signed or initialed each page. I have been given an opportunity to make any corrections or additions which I have initialed. I understand that the information I have given is not to be considered confidential; that it may be shown to the interested parties; and that it may be used in evidence.

_____
Darwin Roberts

Subscribed and sworn before me at the United States Information Agency, 301 4th Street, SW, this thirteenth day of December, 1996.

_____
Lee M. Kramer, Investigator
Page 3 of 3 Pages

EXHIBIT: 10
PAGE 9 OF 9 PAGES