# EXHIBIT   45

Affidavit of Dews-Miller

CITY OF:       Washington
STATE OF:    District of Columbia

## AFFIDAVIT

I, Rose Mary Dews-Miller, Administrative Officer, GS-341-11/4, currently assigned to Office of the General Counsel, ~~Office of the Director,~~ United States Information Agency (hereinafter "Agency"), do solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator, Lee M. Kramer, to pursue my complaint of discrimination, dated March 28, 1996, against the Agency.

For the record I am an African American female with twenty-four years of government service, with the Agency.

I believe that I was discriminated against based on reprisal (previous EEO activities).

I am alleging I was discriminated against on the basis of reprisal, for previous EEO activities, when the following events occurred:

(1) For the May 1, 1994 to January 24, 1995 Performance Report, I received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain my deficiencies to me before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3);

(2) For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, I received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain my deficiencies to me before issuing the rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3);

(3) From September 5, 1995 through November 24, 1995, I was placed on Absence Without Leave (AWOL) because of a work injury. I reported the work injury to my then immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed me on AWOL was not my supervisor at the time of my work injury; and

Page 1 of 11 Pages                                Initials: RMDM

EXHIBIT: 7
PAGE 1 OF 11 PAGES

(4) On November 9, 1995, I was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss my deficiencies in performance with me that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2) and (3).

As corrective action I seek the following:

1. The Agency will amend my Performance Appraisal Report for the period February 1, 1995 to July 31, 1995, to reflect an overall rating of "Highly Successful." Any negative statements or references to a "Minimally Successful" rating will be deleted from my Performance Appraisal Report and official personnel file.

2. The Agency will provide me with a performance award of $500 and the supporting SF-50, Personnel Action effective August 1, 1995, for Performance Appraisal Report for the period of February 1, 1995 to July 31, 1995.

3. The Agency will provide me with a retroactive promotion to GS-560-12, Budget Analyst position, effective February 1, 1995, and the supporting SF-50, Personnel Action. My Personnel and Pay Records will be amended to reflect this personnel action. Lost wages in the amount of $(to be computed plus interest) will be paid to me.

4. The Agency will provide me with a retroactive reassignment to a career GS-510-12, Systems Accountant position or GS-334-12, Computer Specialist position effective August 4, 1995, and a supporting SF-50, Personnel Action. The Agency will provide any necessary training at USDA Graduate School during working hours.

5. The assigned position will provide "Career Ladder Advancement" potential to GS-13. Effective August 4, 1996, I will be promoted to GS-13 level. My Personnel and Pay Records will be amended to reflect this personnel action. Lost wages in the amount of $(to be computed plus interest) will be paid to me.

6. The Agency will provide me with an overall rating of "Outstanding" on the Performance Appraisal Report for the period August 1, 1995, to April 30, 1996. My Personnel Records will be amended accordingly.

7. The Agency will amend my Performance Appraisal Report for the Period May 1, 1994 to January 24, 1995, to reflect an overall rating of "Highly Successful." Any negative statements or references to a "Minimally Successful" rating will be deleted from my official personnel file.

Page 2 of 11 Pages                                    Initials: _RMOM_

8. The Agency will provide me with a performance award of $500 and the supporting SF-50, Personnel Action effective January 31, 1995, for the period May 1, 1994 to January 24, 1995.

9. The Agency will prepare amended time sheets for the period September 5, 1995 to November 24, 1995, when I was incorrectly charged with being Absent Without Leave (AWOL). My Personnel and Pay Records will be corrected to reflect this action. Lost wages in the amount of $(to be computed plus interest) will be paid for the period between September 5, 1995 and November 24, 1995, (exactly 59 working days, including holidays). Additionally, 48 hours of annual leave and 24 hours of sick leave will be added to my leave account. These amounts are what would have been earned during the time I was listed as AWOL.

10. The Agency agrees to rescind the letter, dated November 9, 1995, denying me a Within Grade Increase (WGI), and the accompanying SF-50, Personnel Action. All copies of personnel action will be expunged from my official personnel file. I will be provided a retroactive Within Grade Increase (WGI) to GS-12/02 effective February 4, 1996. My Personnel and Pay Records will be corrected to reflect this personnel action. Lost wages in the amount of $(to be computed plus interest) will be paid to me.

11. The Agency agrees to pay me compensatory damages in the amount of $300,000 pursuant to the Civil Rights Act of 1991, Public Law No. 102-166.

12. The Agency agrees to reimburse me for all Attorney's and/or Expert's fees and expenses covered in applicable Memorandum Agreement between me and my Representative.

13. The Agency will guarantee that I and my Representative will have access to my Personnel, Payroll and Security Records to ensure that all corrective actions have taken place.

14. The Agency further agrees to assign me to a valid and meaningful career position in the GS-510 or GS-334 fields at the GS-13 level, with promotion potential. Furthermore, this position must be in a bargaining unit position covered by the current AFGE Local 1812 contract.

Page 3 of 11 Pages                                    Initials: _RMPM_

EXHIBIT 7
PAGE 3 OF 11 PAGES

15. The Agency also agrees to return me to a Career Status Full Time Employee slot. The Agency will then cancel the Not to Exceed appointment that expires on December 9, 1996. Additionally, 30 hours of annual leave will be added to my leave account. This amount represents forfeited annual leave which could not be scheduled do to circumstances beyond my control at the end of the 1995 leave year.

16. The Agency agrees to provide me with any necessary career transitional support for up to 36 months. This support shall include but not be limited to career counseling and educational courses available through the USDA Graduate School and similar teaching institutes.

I allege that the following individuals discriminated against me: Eva M. Diekmann, Chief of Budget Operations, Office of the Comptroller; Carol Keith, Senior Budget Analyst in the Office of the Comptroller; Louis J. Leporatti, formerly the Executive Assistant to Inspector General Marian C. Bennett; Darwin D Roberts, formerly Director of Administration Services in the Office of Inspector General; Jenni Mallios, Staff Personnel Specialist in Agency Personnel; Anne T. Young, Assistant to the Inspector General in charge of Audit; Marian C. Bennett, formerly Inspector General; and Jan Brambilla, Director of Personnel of the Agency.

My previous EEO activities have included:

(1) On June 4, 1993, I filed an EEO complaint based on reprisal for my not receiving an Auditor position within the Office of the Inspector General.

(2) I also filed an EEO complaint on September 7, 1993, based on reprisal for my receiving a "Fully Successful" performance appraisal instead of "Highly Successful" as in previous years.

(3) I also filed an EEO complaint in 1994 based on reprisal for my receiving a "Fully Successful" performance appraisal instead of "Highly Successful" as in previous years.

(4) On January 31, 1995, I signed a settlement agreement with the Agency wherein I withdrew my complaints with prejudice.

(5) In October, 1995 I filed a request with the Agency to reopen these cases because the Agency violated the January 31, 1995, settlement agreement. I received notification from the Agency Office of Civil Rights around December, 1995 that my request to reopen my prior EEO complaints was denied.

(6) On February, 1996 I filed an appeal with the EEOC charging the Agency with violating the January, 1995 settlement agreement and asked that it be vacated and the cases reopened. That action is currently before the EEOC.

Page 4 of 11 Pages                                    Initials: _RMBM_

I would like to discuss each of my allegations.

(1)   For the May 1, 1994 to January 24, 1995 Performance Report, I received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain my deficiencies to me before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3);

Prior to my filing any EEO complaints my Performance Appraisals had always been "Highly Successful" under the current five (5) tier evaluation system and "Satisfactory" under the previously used three (3) tier evaluation system. Darwin Roberts, formerly the Director of Administration Services in the Office of Inspector General, was my first line supervisor. The reviewing officer and my second line supervisor was Louis J. Leporatti, formerly the Executive Assistant to Inspector General Marian C. Bennett. I had no prior notice of my lowered evaluation from either supervisor. Mr. Roberts had another OIG employee, Delores Bulles, deliver my evaluation for the period ending January 24, 1995 (a partial year evaluation). The evaluation was in an "eyes only" envelope. Mr. Roberts indicated on a note in the envelope that I should sign the evaluation and return it to him. Although I was supposed to receive a mid-year review by the rating officer, it did not happen. Mr. Roberts never discussed the "Minimally Successful" rating he gave me for this period. I refused to sign the rating and did not return it to Mr. Roberts. I did not approach Mr. Roberts about this performance appraisal because of his negative reactions to my complaints about earlier evaluations.

Mr. Roberts was definitely aware of my prior dissatisfaction with his failure to comply with the rules and regulations regarding evaluations as outlined in the Manual of Operations and Administration ( hereinafter "MOA"), Part V-A, Section 453.2(c)(1), (2) and (3). Mr. Roberts was also named in EEO complaints filed by me regarding job nonselection and performance appraisal differences. I believe that Mr. Roberts retaliated against me by giving me a "Minimally Successful" performance rating, because I filed EEO complaints, charging him in each complaint.

Mr. Louis Leporatti, the reviewing officer, also discriminated against me by supporting Mr. Roberts' reprisal actions in agreeing with the "Minimally Successful" rating. Mr. Leporatti was also mentioned in my EEO complaints against the Agency. I believe that Mr. Leporatti took this retaliatory action against me for my filing EEO complaints charging him.

Based upon prior evaluations I did not expect these "Minimally Successful" ratings. Also I was not informed of this situation prior to my receiving them. Without prior notification I had no reason to suspect that the quality of my work was anything less than what was outlined in previous evaluations.

Page 5 of 11 Pages                                    Initials: _RmDm_



EXHIBIT: 7
PAGE 5 OF 11 PAGES

In the January, 1995 performance appraisal Mr. Roberts arbitrarily added Performance Requirement Number 5 despite my many objections that this item was in the Performance Requirements of another employee and should not have been added to my evaluation. Part of Performance Requirement Number 5 was that I was to negotiate contracts with outside trainers. This required authority to contract for the government which I did not and do not have. Furthermore, to prevent contract irregularities the functions of negotiating contracts, awarding contracts and approving contractor submissions for payment are, by law, divided functions. I would have been required to do more than one of these functions under Performance Requirement Number 5. As part of my duties I was responsible for maintaining the budget and obligating funds for expenditures.

After over twelve (12) years of dealing with the Agency's budget processes and having received "Fully Successful" or higher evaluations for my work, I fail to understand the "Minimally Successful" rating on Performance Requirements Number 1 and Number 2. The critical comments made by the rating officer failed to take into consideration my prior successes by receiving "Fully Successful" or higher evaluations. The rating officer's comments blame me for failing to reconcile the OIG account against the Agency's financial reports. To this day, the Agency's financial management system is so prone to errors and runs extremely slow in relation to real time obligations and expenditures. A major portion of my difficulty in tracking the obligations was due to the obsolete financial management system used by the Agency as opposed to my inability to track office obligations. In addition, there were internal problems with financial management in OIG that were not addressed by my rating officer or reviewing officer even though they were aware of them because of my complaints. For instance, a senior auditor insisted on amending existing contracts without informing me of his intent to do so which precluded me from allocating funds in a timely manner.

The process, in theory, required all requisitions and travel orders to come through my office for an allocation of funds prior to being obligated. In other instances requisitions large and small were processed through the petty cash system instead of through my office. Senior investigators were also serious violators of this same process in handling any contracts that had been approved for their section. There were no management controls over the requisitioning process to preclude obligations without my knowledge.

Also, I would like to point out that in Performance Requirement Number 3 in the comments section of "B" my rating officer inserted a statement outlining my involvement in and responsibility for reporting abuses in the American Express

Page 6 of 11 Pages                                             Initials: *RMDM*

Travel Card Program by OIG staff. The rating officer went on to say "This in turn led to OIG initiating a review throughout the Agency on possible travel card abuse and will most likely lead to more effective and efficient management of future card use." This is an indication of my dedication to following the rules and regulations and reporting financial irregularities as a responsible administrative officer. However, I feel that this action by my rating officer has contributed to my further harassment because I reported the financial irregularities. It is obvious to me that Mr. Roberts was not aware of the magnitude of the AMEX card problem when he complemented me for reporting the irregularities. However, as future events have proven the magnitude of the problem was Agency wide and far greater than anyone realized. When the full magnitude of the problem was realized, everyone from the Comptroller's Office down through the OIG's office were embarrassed and attacked the messenger [me].

(2)     For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, I received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain my deficiencies to me before issuing the rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3);

I was detailed to the Office of the Comptroller from February 1, 1995 through July 31, 1995. I was detailed to the Office of the Comptroller as part of the January 31, 1995 settlement agreement. Ms. Carol Keith, Senior Budget Analyst in the Office of the Comptroller was my immediate supervisor and Eva Diekmann, Chief of Budget Operations in the Office of the Comptroller was my second line supervisor. Ms. Keith was the rater of the July 31, 1995 Performance Appraisal and Ms. Diekmann was the reviewer. I was rated as "Minimally Successful." Ms. Keith and Ms. Diekmann never had any discussions with me during the rating period as required by MOA, Part V-A, Section 453.2(c)(1), (2) and (3). They never gave me any indication of how I was performing. Ms. Keith never discussed the rating when she gave me the Performance Appraisal on the morning of August 17, 1995 and told me to "look it over and sign it." Later that morning, after I had signed the evaluation, Ms. Keith said "Rose Mary, I can tell you are not happy with your performance evaluation." To which I made no reply. Ms. Keith then said "She would not change anything." Again, I made no reply. Ms. Keith continued with "You can take this evaluation and file a grievance, whatever you want, I DO NOT CARE because, again, I am not changing a thing."

The more I thought about Ms. Keith's overly defensive attitude and her refusal to even discuss the evaluation with me, the more convinced I became that Ms. Keith, and probably Ms. Diekmann too, had been "instructed" to give me a minimal rating. Because of these concerns I made particular note of Ms. Keith's comments.

Page 7 of 11 Pages                    Initials: *RmDm*

Section I-B of the Performance Evaluation required input from the rating officer to the effect that discussions were held with the rated employee on specific dates. Ms. Keith wrote in "several occasions" in lieu of specific dates. In Section I-C I commented that dates are needed in lieu of "several occasions" because I had no recollection or notes of any discussions held with Ms. Keith or Ms. Diekmann during the rating period. In view of the tone of the rating and the absence of specifics in Section I-B I refused to sign the rating.

I assume that Ms. Keith and Ms. Diekmann were both aware of the terms of the January 31, 1995 settlement agreement. Even though they were not signatories to the settlement agreement. Ms. Keith and Ms. Diekmann had no involvement in my prior complaints. I now believe that Ms. Keith and Ms. Diekmann were acting in collusion with other management officials to down-grade my performance and take reprisal against me for my former EEO complaints against the Agency.

For instance, under Performance Requirement Number 1, the rating officer inserted a statement "Practically every aspect of budgeting principles was new to Ms. Dews-Miller." This statement flies in the face of my many evaluations "Fully Successful" or better dealing with budget principles in the Agency. There is no way that I could have received these evaluations from so many supervisors in so many offices and be as unknowledgeable as Ms. Keith states. The same general comment applies to Performance Requirements Number 2 and Number 3.

Also, under Performance Requirement Number 4, Ms. Keith states "Because of Ms. Dews-Miller's limited grasp of budget policy and procedures, Rose Mary was unable to perform this requirement." This is another inflammatory statement totally ignoring my previous record of successful completion of budget work for Agency offices.

I would also like to add that on page 11 of my performance appraisal two statements are entered. The statements are misleading as to establishing a time line of communication between myself and my rating and reviewing officers. They are not substantiated by any dates or any signatures of who entered these statements in my performance appraisal. This is further supported by Eva Diekmann's transmittal memorandum dated September 18, 1995. A note in the lower right corner of the transmittal memorandum indicates its receipt in Personnel on September 26, 1995. This is yet another example of the failure of the rating and reviewing officers to communicate any information with the rated employee.

I have provided the EEO Investigator with a copy of a summary list detailing my evaluations and the offices and job titles to which I was assigned between July, 1984 to April, 1996. The EEO Investigator will include this list as one of the exhibits in the report.

Page 8 of 11 Pages                                              Initials: *RMDM*

EXHIBIT: 7
PAGE 8 OF 11 PAGES

(3)     From September 5, 1995 through November 24, 1995, I was placed on Absence Without Leave (AWOL) because of a work injury. I reported the work injury to my then immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed me on AWOL was not my supervisor at the time of my work injury;

According to the January 31, 1995 settlement agreement I was required to maintain at least a "Fully Successful" performance appraisal in order to stay in the Office of the Comptroller. If my rating fell below "Fully Successful" I would return to the Office of the Inspector General on September 1, 1995. Since Ms. Keith in the Office of the Comptroller rated me as "Minimally Successful" I was reassigned to the Office of the Inspector General.

On July 10, 1995, I was injured at work while under the supervision of Carol Keith and Eva Diekmann. Due to my injury I was absent from work and used my annual and sick leave from July 10, 1995 through September 2, 1995. Beginning with the pay period September 3, 1995, through November 25, 1995, after I had returned to the Office of Inspector General and was placed under the supervision of Anne Young, Assistant Inspector General for Management. Ms. Young disapproved my request for sick leave from September 3, 1995 through November 24, 1995, in spite of certificates of professional care from my doctors. In her memorandum of rejection, Ms. Young stated that I had not provided sufficient detail to enable her to make a determination as to the validity of the doctors' statements. This action by Ms. Young was a clear violation of the Privacy Act with respect to personal medical records. As a result of Ms. Young's inability to comprehend my medical information she denied my request for leave from September 3, 1995 through November 24, 1995 and placed me on AWOL.

I also believe that Ms. Young placed me on AWOL to retaliate against me for filing prior EEO complaints, in which Ms. Young was charged. She was the reviewing and selecting official for positions for which I had applied and been rejected.

Although Ms. Young was not my supervisor at the time of my injury she became my supervisor effective September 1, 1995 when my detail to the Comptroller's Office was terminated. However, due to other circumstances beyond my control I remained assigned to the Comptroller's Office much of the month of August, 1995. Then on August 31, 1995, while I was on sick leave at home, I received a phone call from Jenni Mallios, Personal Staffing Specialist, Agency Office of Personnel, informing me that since I had not received a "Fully Successful" rating on the detail I was to report back to Anne Young in OIG effective September 1, 1995. Out of the blue she also asked me "What is wrong with you?" I remained silent, because it was none of her business. In addition, she requested an updated SF-171 so that she could find a position in the Agency that was not in the OIG. As this was

Page 9 of 11 Pages                                                                 Initials: _RmOm_

one of the terms of the January 31, 1995, *agreement* She was obviously aware of the terms of the settlement agreement. Ms. Mallios' August 31, 1995 conversation with me has raised several questions relating to Eva Diekmann's transmittal memorandum of my evaluation to Personnel. If Ms. Diekmann did not sign the transmittal memorandum of my Performance Appraisal until September 18, 1995 and it was not received and logged in Personnel until September 26, 1995, how did Ms. Mallios know what to ask me in her phone call of August 31, 1995? I believe there was collusion between Jenni Mallios, Carol Keith and Eva Diekmann resulting in more harassment against me. I believe that Jenni Mallios was involved in retaliating against me for filing my prior EEO complaints. Ms. Mallios was a Personnel Staffing Specialist for the Office of Inspector General and had been involved in discriminatory acts by OIG and against Personnel staff in rejecting my application for earlier Auditor positions in the OIG.

 (4) On November 9, 1995, I was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss my deficiencies in performance with me that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2) and (3).

 I was denied a Within Grade Increase (hereinafter "WGI"). It was due October 29, 1995. A letter to me dated November 9, 1995, outlined the reasons for the denial. This letter was signed by Anne Young as Assistant Inspector General for Administration and Management. Marian Bennett initialed the letter. The letter is stamped November 9, 1995. In it states "You have not reported for duty to OIG since your detail to Office of Comptroller ended on August 31, 1995." There are a number of anomalies in this denial in that the Office of Personnel prepared a certification of performance for my WGI on August 5, 1995. This certificate was sent to the OIG and required my supervisor and reviewing officers statement regarding eligibility for a WGI. On September 25, 1995 Anne Young signed, as supervisor, and put a check mark in block "E" denying my WGI. Marian C. Bennett, IG, signed on September 26, 1995 as reviewing officer. This WGI was to take effect on October 29, 1995. It is obvious from these signatures that Ms. Young and Ms. Bennett decided in late September to deny my WGI, however, they failed to notify me until November 9, 1995. It is interesting to note the day Ms. Bennett denied my WGI was the same day Personnel acknowledged receipt of my evaluation from Eva Diekmann's office. It is also interesting to note that a copy of the November 9, 1995 letter was sent to Jenni Mallios, Office of Personnel. The sequence of dates and actions and inactions of Eva Diekmann, Carol Keith, Anne Young, Marian Bennett, and Jenni Mallios are evidence of retaliatory acts taken against me for prior EEO activities.

 In further support of my allegations of retaliation I have provided a copy of the Personnel Action, effective date October 29, 1995. This Personnel Action was approved on October 27, 1995 by Janice H. Brambilla, Director of Personnel. Again

Page 10 of 11 Pages       Initials: *RMPM*

the dates and sequence of dates involving the denial and personnel action and the November 9, 1995 letter clearly indicate collusion and harassment in denying my WGI because of my earlier complaints.

The November 9, 1995 letter, which I received on November 13, 1995, outlined an appeal to be addressed to Jan Brambilla. On November 28, 1995, I hand carried my appeal process to Ms. Brambilla's office. In April, 1996 I finally received the denial of my appeal from Ms. Brambilla. I filed my present EEO complaint on March 28, 1996 and in early April, 1996 I received the denial letter. I believe that the denial was further retaliation for my engaging in EEO activities.

I have read this statement consisting of eleven pages, and it is true and correct. I have signed or initialed each page. I have been given an opportunity to make any corrections or additions which I have initialed. I understand that the information I have given is not to be considered confidential; that it may be shown to the interested parties; and that it may be used in evidence.

I have serious reservations about who can and will be shown this affidavit because of the wording of the last sentence of the last paragraph. While it is true that I signed an earlier affidavit containing this same statement, I am now convinced that my earlier affidavit was misused.

The possibility of misuse is great and is solely dependent on the professional integrity of the Investigator.

This affidavit contains previously closely held details of my complaints against numerous Agency officials.

My Representative compared it to showing all your cards in a Poker or Bridge game. While there is no specific term for doing this in Poker, it is called "Playing the Dummy Hand" in Bridge.

My representative has been assured we will be given the opportunity to read and rebut any and all other statements obtained by the Investigator during the course of this complaint. For the moment I can only hope that this affidavit is not abused or misused.

*Rose Mary Dews-Miller*
Rose Mary Dews-Miller

Subscribed and sworn before me at the United States Information Agency, 301 4th Street, SW, this twenty-fourth day of October, 1996.

*Lee M Kramer*
Lee M. Kramer, Investigator
Page 11 of 11 Pages

EXHIBIT: 7
PAGE 11 OF 11 PAGES