# EXHIBIT   46

Affidavit of Carole Keith

CITY OF:    Washington
STATE OF:   District of Columbia

# AFFIDAVIT

I, Carol Keith, Budget Officer, GS-560-14, Budget Operations Office, Office of the Comptroller, Bureau of Management, United States Information Agency (hereinafter "Agency"), do solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator, Lee M. Kramer, to answer the complaint of discrimination of Rose Mary Dews-Miller, dated March 28, 1996, against the Agency.

For the record I am a thirty-nine (39) years old and I have been employed with the Agency for twenty-one (21) years.

I have been advised that I am the official alleged to be responsible for the action giving rise to this complaint, and I understand the allegations made by the Complainant.

I understand the Complainant is alleging that she was discriminated against on the basis of reprisal, for previous EEO activities, when the following events occurred:

(1) For the May 1, 1994 to January 24, 1995 Performance Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3);

(2) For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing the rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3);

(3) From September 5, 1995 through November 24, 1995, she was placed on Absence Without Leave (AWOL) because of a work injury. She reported the work injury to her then immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed her on AWOL was not her supervisor at the time of her work injury; and

Page 1 of 5 Pages                                      Initials: CK

EXHIBIT: 8
PAGE 1 OF 5 PAGES

(4) On November 9, 1995, she was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss her deficiencies in performance with her that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2) and (3).

I am only responding to allegation Number 2, because I have been advised that this is the only allegation that applies to me. The Complainant was detailed to the Office of the Comptroller from February 1, 1995 to July 31, 1995. I was the Complainant's team leader during that time period. I am not a supervisor. Eva Diekmann was my supervisor.

I was not aware of the January 31, 1995 settlement agreement. I was told by Eva Diekmann that the Complainant was detailed to our office for a period of six (6) months. I was also told that the Complainant was to operate at a GS-11 level and I was not responsible for training the Complainant. The Complainant was already supposed to have the skills for her position and know how to perform her job.

It is true that I was the rater of the Complainant's July 31, 1995 Performance Appraisal, and Eva Diekmann was the reviewing officer. I rated the Complainant as "Minimally Successful." The Complainant's Performance Appraisal was based on guidelines as the standards for the Performance Appraisal. They are the same standards that are listed in the Performance Appraisal. I believe that the rating that I gave the Complainant was accurate and a fair assessment of her performance.

The Complainant had difficulties with the terminology and the procedures required to perform whatever task she was given. On many occasions when she was given work to do, the work would sit for three (3) or four (4) days. I would follow up with the Complainant and I found out that she would have questions about the assignment but she had not taken the initiative to get the questions answered or to get the job done. With respect to Performance Requirement Number 1, I stand by my comment that "Practically every aspect of budgeting principles was new to the Complainant." When I worked with the Complainant I had to repeatedly explain the daily operation of the office and the procedures that were required to complete the tasks given to her. This was something that occurred on a daily basis. I was never aware of the Complainant's prior Performance Appraisals and I was unaware that she allegedly received "Fully Successful" ratings or better in prior years. I had no knowledge of her skills or abilities before she came to the Office of the Comptroller.

Page 2 of 5 Pages                                    Initials: CK

EXHIBIT 8
PAGE 2 OF 5 PAGES

With respect to Performance Requirement Number 2, I am standing behind my comments in her evaluation. Our office was very pressed to complete our work by specific deadline dates. The Complainant spent entirely too much time transferring numbers from the summary sheets to the budget backup sheets. The Complainant would commonly miss her deadline dates. This in turn would put me in a bind and I would miss my deadline dates. I would have to review her work all the time. For example, the Complainant had difficulty completing simple lotus spread sheets. I could not present the work that the Complainant said that she had completed to Congress. The quality of the work was not sufficient as to what was expected out of our office.

Part of our job is to complete the worksheets used to compile the OMB budget which is to due to the OMB around September/October. Because the Complainant never returned to our office after she received her evaluation she did not any exposure in the formulation of the OMB budget. Performance Requirement Number 2 dealt with the formulation of the OMB and Congressional budget estimates. Since the Complainant was not in the office for the compiling of the information she did not have any hands on experience. The Complainant could not get rated on something that she did not do.

Based on the performance requirements and the "Fully Successful" performance standard, I again feel that the Complainant performed "Minimally Successful" with respect to Performance Requirement Number 3. First of all, she could not train or help develop the budget clerk, because she did not know what to do. This Requirement dealt with a number of daily tasks that are performed in our office on a daily basis. Because the Complainant did not have the basics of budget execution, a lot of her time was devoted to the learning of analyzing requests received from the field, procedures required to obtain funding as requested, and/or forwarding the requests of overseas employees to the appropriate offices in the Agency. The contingency list and financial plans are prepared once monthly. The Complainant would never have the information required on the date that it was due. Again, she would present me the information after the deadline and I would have to review it. Here I felt that she needed to be better organized. This was a monthly task that we needed to complete on time. The Complainant's writing skills when she would respond to the field were not direct and to the point. Her writing was not clear or concise.

Performance Requirement Number 4 requires in part an evaluation of how the Complainant serves as advisor to the area director and other senior management officials on area financial matters. In her evaluation I wrote that because of the Complainant's limited grasp of budget policy and procedures, she was unable to perform this requirement. For instance, I was informed by others in the

Page 3 of 5 Pages                                                    Initials: CK

EXHIBIT 8
PAGE 3 OF 5 PAGES

NEA area office that when they would request information from the Complainant when I was on leave, that the information received from her was useless. They told me that they preferred not to depend on her to give them sufficient information for their purposes at the time. I had no knowledge of the Complainant's alleged prior successful record in completing budget work for the Agency.

To the best of my knowledge I gave the Complainant her rating around August 17, 1995. The Complainant never signed the Performance Appraisal and took the copy with her. She never even offered to discuss her evaluation with me. I most definitely remember that when I gave her the evaluation I offered to discuss the rating with her. She never said anything to me. I do remember that when she got the rating she did not do any other work during the day. She left work at the end of the day and never returned to work. I believe that on the day after she received her evaluation she called in sick and asked to be placed on sick leave. She was then placed on sick leave and she never completed her six (6) month detail with the Office of the Comptroller. I believe that Eva Diekmann contacted the Complainant and requested her to sign her Performance Appraisal and return it to the office by August 31, 1995. To the best of my knowledge, the Complainant never returned a signed copy.

I did not type the statements on page 11 of the Complainant's Performance Appraisal. However, I believe these statements to be true. I disagree that I failed to communicate with the Complainant.

We communicated on a daily basis regarding work and other related issues. I repeatedly said to the Complainant that if there was anything that she did not understand or felt that she need to know she should feel free to ask me. All explanations and directions that I gave to the Complainant were provided to her in minute detail and examples were given to her too.

Eva Diekmann had told me to provide Ms. Diekmann with a review of the Complainant every six (6) weeks. I complied with Ms. Diekmann's request. I would also like to add that I spoke with the Complainant on a daily basis about her performance with respect to what she was doing right and wrong and what I expected of her. The Complainant was fully aware what was expected of her and the standards that were required in the office.

Page 4 of 5 Pages                                        Initials: CK

EXHIBIT: 8
PAGE 4 OF 5 PAGES

I never retaliated against the Complainant for her engaging in prior EEO activities. The Complainant had informed me while she was working in my office that she had filed a prior EEO complaint against some individuals in OIG. The Complainant did not tell me details about her complaint and I did not want to know any details. I want to emphasize that I rated the Complainant based on her performance and I did not rate her as "Minimally Successful" because of her prior complaint. I had no involvement in her prior complaint and did not care what went on in her life in her prior position. I only cared that she perform her job satisfactorily.

I have read this statement consisting of five pages, and it is true and correct. I have signed or initialed each page. I have been given an opportunity to make any corrections or additions which I have initialed. I understand that the information I have given is not to be considered confidential; that it may be shown to the interested parties; and that it may be used in evidence.

*Carol Keith* (signature)
Carol Keith

Subscribed and sworn before me at the United States Information Agency, 301 4th Street, SW, this twenty-fourth day of October, 1996.

*Lee M. Kramer* (signature)
Lee M. Kramer, Investigator
Page 5 of 5 Pages

EXHIBIT: 8
PAGE 5 OF 5 PAGES