# EXHIBIT 53

Affidavit of Louis Leporatti

CITY OF:     Washington
STATE OF:    District of Columbia

## AFFIDAVIT

I, Louis Leporatti, Legislative Affairs Officer, GS-301-15, Office of Inspector General, Department of State, and formerly Executive Assistant to the Inspector General, GS-301-15, Office of the Inspector General, United States Information Agency (hereinafter "Agency"), do solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator, Lee M. Kramer, to answer the complaint of discrimination of Rose Mary Dews-Miller, dated March 28, 1996, against the Agency.

For the record I have been employed by the government for thirty-seven (37) years.

I have been advised that I am one of the officials alleged to be responsible for the action giving rise to this complaint, and I understand the allegations made by the Complainant.

I understand the Complainant is alleging that she was discriminated against on the basis of reprisal, for previous EEO activities, when the following events occurred:

(1) For the May 1, 1994 to January 24, 1995 Performance Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3);

Page 1 of 5 Pages                          Initials: _/L_

EXHIBIT: 18
PAGE 1 OF 5 PAGES

(2) For the February 1, 1995 to July 31, 1995 Performance Appraisal Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing the rating, pursuant to the MOA, Part V-A, Section 453.2(c)(1), (2) and (3);

(3) From September 5, 1995 through November 24, 1995, she was placed on Absence Without Leave (AWOL) because of a work injury. She reported the work injury to her then immediate supervisors (Rating and Reviewing Officers), pursuant to MOA, Part V-A, Section 506.3(c)(1). However, the Management Official who placed her on AWOL was not her supervisor at the time of her work injury; and

(4) On November 9, 1995, she was denied a Within Grade Increase (WGI). The Rating and Reviewing Officers failed to discuss her deficiencies in performance with her that resulted in the denial of the WGI, pursuant to MOA, Part V-A, Section 453.2(c)(1), (2) and (3).

I am only responding to allegation Number 1, because this is the only allegation that applies to me.

**(1) For the May 1, 1994 to January 24, 1995 Performance Report, she received a "Minimally Successful" performance rating. The Rating and Reviewing Officers failed to discuss the "Minimally Successful" rating or to explain her deficiencies to her before issuing this rating, pursuant to the Manual of Operations and Administration (MOA), Part V-A, Section 453.2(c)(1), (2) and (3).**

I was the Executive Assistant in the Office of Inspector General since 1985. My immediate supervisor was Marian Bennett, the Inspector General. I did not have a second-line supervisor. In April, 1996 I was transferred over to the Office of Inspector General at the State Department.

Page 2 of 5 Pages                                             Initials: _____

EXHIBIT: 72
PAGE 2 OF 5 PAGES

I was aware that the Complainant had filed a prior EEO complaint when I was the reviewing official of her January 24, 1995 Performance Report. Also, the Complainant named me as an alleged official in a prior EEO complaint in 1994. This EEO Complaint dealt with her rating in a prior Performance Appraisal. I was also the reviewing official for that Performance Appraisal. However, I never retaliated against the Complainant for her charging me in her prior EEO complaint or for her filing any other prior EEO Complaint against the Agency.

I was the reviewing officer for the Complainant's January 24, 1995 Performance Appraisal. I agreed with Mr. Darwin Robert's rating of "Minimally Successful" for the rating period of May 1, 1994 to January 24, 1995. I agreed with this rating based on my own personal experiences with the Complainant's performance.

As far as I know there is no requirement for reviewing officers to discuss the "Minimally Successful" rating to the Complainant or to explain to the Complainant her deficiencies before issuing her the rating. According to MOA, Part V-A, Section 453.2(c)(1), (2) and (3), the Agency regulation only states that the Rating Officer must discuss the Complainant's performance with the Complainant before issuing the rating.

However, on several occasions when Mr. Darwin Roberts, the Complainant's immediate supervisor and Rating Officer was absent from work, I would be more actively involved in working with the employees under Mr. Robert's supervision. I can recall that on several occasions when I would ask the Complainant to provide me with certain information that I would need in order to respond to a high level request, the Complainant was not responsive. Sometimes I would need to repeat my requests several times before the Complainant would bring me the information that I needed. On other occasions I would need to go to Darwin Roberts to report her non-compliance with my request. I would then get the information that I needed, but only after Mr. Roberts spoke to the Complainant.

Page 3 of 5 Pages                                    Initials: *lll*



EXHIBIT 12
PAGE 3 OF 5 PAGES

I think that one of the problems of why the Complainant could not respond in a timely manner to my requests for information was that the Complainant did not have a filing system that would make it possible for her to retrieve information upon request. Her office was in a complete state of disarray.

I disagree with the Complainant's allegation that she did not receive any evaluation of her work performance before receiving the "Minimally Successful" rating. I was aware that Mr. Roberts, the Complainant's supervisor, had numerous meetings with the Complainant concerning her work performance and her deficiencies. I know this because Mr. Roberts would inform me after the meetings had transpired that he had spoken to the Complainant about her work performance. He would often tell me that the Complainant would just sit in the meeting and be non-responsive to his comments. Mr. Roberts expressed his frustrations to me in dealing with her.

The Complainant had told me that Performance Requirement Number 5 was not her responsibility and it was in some other employee's position description. I advised her to check the matter out with her supervisor. I told her that the requirement should not be in two performance appraisals. I was subsequently advised by Darwin Roberts that her allegation was untrue. I was told that the requirement only existed in her performance appraisal. The Complainant states in her affidavit that Performance Requirement Number 5 requires her to negotiate contracts with outside trainers. This is absolutely not true. Negotiating with outside contractors is the responsibility of the OIG Purchasing Agent. Furthermore, Performance Requirement Number 5 does not state that she is to negotiate contracts with outside trainers. It states that she is only responsible for coordinating training requirements for the office.

Page 4 of 5 Pages                                    Initials: ____

EXHIBIT 12
PAGE 4 OF 5 PAGES

I would also like to comment on the Complainant's work with relation to Performance Requirements Number 1 and Number 2. Performance Requirement Number 1 deals with maintaining and managing the office's financial resources. Performance Requirement Number 2 requires that the employee prepare financial plans, monitor the execution of the budget and maintain budget and accounting records for the office. In both of these areas I knew that there were problems with the Complainant's ability to perform these functions. On one occasion I asked for an up-to-date status report on where we stood on OIG's allotment. I never received it from the Complainant. I had to report the matter to Mr. Roberts and he got the information for me. I also received comments from Ms. Alice Adams, in the Office of the Comptroller, which indicated to me that she was having trouble with how the Complainant was handling budgetary matters.

The Complainant states that the OIG's office had internal problems with financial management which resulted in her inability to perform her job. I am unaware that such problems existed. The employees who preceded the Complainant in her position did not have the problems that she cited.

I have read this statement consisting of five pages, and it is true and correct. I have signed or initialed each page. I have been given an opportunity to make any corrections or additions which I have initialed. I understand that the information I have given is not to be considered confidential; that it may be shown to the interested parties; and that it may be used in evidence.

*[signature]*
Louis Leporatti

Subscribed and sworn before me at the State Department, 2201 C Street, NW, this fifth day of November, 1996.

*[signature]*
Lee M. Kramer, Investigator
Page 5 of 5 Pages

EXHIBIT 12
PAGE 5 OF 5 PAGES