**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROSE M. DEWS-MILLER, | * | |
| Plaintiff, | * | |
| v. | * | CASE NO. 06-1764 (GK) |
| CONDOLEEZZA RICE, Secretary of State, | * | |
| | * | |
| Defendant. | | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Rose M. Dews-Miller, by her undersigned attorney, submits this Memorandum in Opposition to the Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.

**INTRODUCTION**

The Plaintiff, Rose M. Dews-Miller, entered into a settlement agreement with the Defendant, the Department of State, in settlement of her Title VII claims against the Agency. Since entering into the settlement agreement, the Agency has retaliated against Ms. Dews-Miller for engaging in EEO and whistleblowing activity, has breached the settlement agreement in several respects, has violated Ms. Dews-Miller's rights under the Civil Service Reform Act in several respects, and ultimately unlawfully terminated Ms. Dews-Miller without according her due process rights. The Agency, knowing that it has wronged Ms. Dews-Miller and trampled on her statutory and constitutional rights, seeks to avoid responsibility for its shameful conduct by seeking to dismiss Ms. Dews-Miller's claims without addressing the issues on the merits and without the benefit of discovery. As the following will show, the claims asserted by Ms. Dews-Miller are viable and actionable, there are several disputes of material facts, and this case must be resolved by a jury. Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, must be denied.

**STATEMENT OF FACTS IN DISPUTE**

Ms. Dews-Miller, disputes nearly all of the alleged facts asserted in the Defendant's Statement of Material Facts Not in Dispute, which is attached hereto and will be referred to, as appropriate, in this Memorandum. As the following will show, summary judgment is not warranted, and at a minimum, should not be considered until the conclusion of discovery.

**ARGUMENT**

**I. THE PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE DOCTRINES OF RES JUDICATA OR COLLATERAL ESTOPPEL**

In its decision, the Merit System Protection Board ("MSPB") dismissed Ms. Dews-Miller's appeal for lack of subject matter jurisdiction. *See Rosemary Dews-Miller v. USIA*, 194 F. 3d 1330 (Fed. Cir. 1999). *See* Exhibit 1. When Ms. Dews-Miller filed her claim with the MSPB asserting that she had been terminated in reprisal for her whistleblowing activities, the MSPB ruled that it lacked subject matter jurisdiction, which was affirmed by the Federal Circuit. *Id.* The Defendant posits that *res judicata* and collateral estoppel preclude this Court from entertaining Counts I-III, V-IX, XI-XXII of Ms. Dews-Miller's complaint. However, the Defendant concedes that in order for either of these defenses to apply, there must have been "a valid final adjudication of a claim" or "an issue of fact or law, actually litigated and resolved by a valid judgment that binds the parties in a subsequent action…." The Defendant has not represented to this Court nor can it legally contend that decisions of the MSPB or Federal Circuit was a "final judgment on the merits" or that the issues regarding Ms. Dews-Miller's termination being linked to her whistleblowing activities were "actually litigated." The District of Columbia Circuit has held that a dismissal for lack of jurisdiction is not an adjudication on the merits. *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (1999). *See also* Charles A. Wright and Arthur R. Miller, 5A, *Federal Practice and Procedure* §1350 at 225 (2d ed. 1990); *Lupo v. Voinovich*, 858 F. Supp. 699 (1994); Rule 41(b) of the Federal Rules of Civil Procedure. Accordingly, because the Agency cannot satisfy the most important element for the

2

application of *res judicata* or collateral estoppel, i.e., that the judgment asserted must have been a final judgment on the merits, the decisions of the MSPB and Federal Circuit cannot be relied upon for the application of *res judicata* or collateral estoppel here. *See Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (1999).

Even if one were to argue that the MSPB and Federal Circuit addressed the issue of the termination of Ms. Dews-Miller in reprisal for engaging in whistleblowing activity, neither the MSPB nor the Federal Circuit decisions addressed the other issues presented in this case, i.e., whether the Agency engaged in reprisal against Ms. Dews-Miller by terminating her for engaging in EEO activity, and reprisal for engaging in EEO and whistleblowing activity by the conduct as alleged in Counts II through XXII (Count I),[1] failure to comply with the procedural prerequisites for performance appraisal period May 1, 1994 through January 24, 1995 in violation of the Civil Service Reform Act ("CSRA") (Count II), failure to comply with procedural prerequisites for performance appraisal period February 1, 1995 through July 31, 1995 in violation of the CSRA (Count III), violation of Ms. Dews-Miller's constitutional rights (Count IV), failure to provide notice of proposed adverse action - termination– in violation of the CSRA (Count V), failure to provide notice of denial of within grade increase in violation of the CSRA (Count VI), failure to provide notice of proposed adverse action - appointment with OIG– in violation of the CSRA (Count VII), failure to provide notice of proposed adverse action - career appointment to a temporary appointment– in violation of the CSRA (Count VIII), failure to provide notice of proposed adverse action - placing Ms. Dews-Miller on AWOL - in violation of the CSRA (Count IX), failure to comply with EEOC decision (Count X), and breaches of the settlement agreement Counts XI through XXII). Accordingly, neither *res judicata* nor collateral estoppel applies to these claims.

---

[1] While proceeding before the MSPB and Federal Circuit, Ms. Dews-Miller was proceeding *pro se*. She should not be penalized for her inability to adequately articulate her case. Also, no oral argument was had before the MSPB or Federal Circuit.

In its Motion, the Agency argues that *res judicata* or collateral estoppel bars Ms. Dews-Miller's claims because she could have raised the issues that are the subject of this case before the MSPB and the Federal Circuit, but failed to do so. The Agency is wrong. All of the above claims make up, *inter alia*, Ms. Dews-Miller's claim of reprisal for engaging in EEO activity, and were in the EEO process at the same time of the March 3, 1998 MSPB and March 10, 1999 Federal Circuit decisions. The Agency issued a Final Agency Decision ("FAD") with respect to the EEO reprisal claims on March 6, 1998. Ms. Dews-Miller appealed that decision on April 8, 1998, and the EEOC Office of Operations issued an order reversing the Agency's FAD on June 23, 1999. *See* Exhibit 2. In that decision, the EEOC not only reversed the Agency's FAD, but also ordered the Agency to process Ms. Dews-Miller's EEO reprisal claims in this case. That process was not completed until October 30, 2000 when the Agency finally issued a Report of Investigation regarding Ms. Dews-Miller's EEO reprisal claims. *See* Exhibit 3. This case is the next sequential step, after the EEOC hearings that were held, in the EEO process. Accordingly, this case could not have been asserted or addressed by the MSPB and Federal Circuit.

The Eastern District Missouri was faced with a similar situation in *Walton v. USDA*, 2007 WL 1246845 (E.D. Mo. April 30, 2007), and held that a prior MSPB and Federal Circuit dismissal of the Plaintiff's whistleblowing claim did not bar the Plaintiff's Title VII and CSRA claims. In *Walton*, the Plaintiff claimed that he was the victim of reprisal for engaging in whistleblowing activities. The MSPB denied the Plaintiff's petition for relief and the Federal Circuit affirmed the decision. *See Walton v. USDA*, 230 F. 3d 1383 (Fed. Cir., Feb. 16, 2000). *See also Walton v. USDA*, 2007 WL 1246845 at p. 2 (E.D. Mo. April 30, 2007). The Plaintiff in *Walton,* like Ms. Dews-Miller here, thereafter filed a lawsuit in which he alleged that some of the same conduct he relied upon for his claim of reprisal for engaging in whistleblowing activities, also constituted reprisal for engaging in EEO activity and violated CSRA. The USDA, like the Agency here, argued that the doctrine of *res judicata* barred the Plaintiff's claims of reprisal for engaging in EEO activity and violation of CSRA due to the MSPB's and

4

Federal Circuit's dismissal of the Plaintiff's claim of reprisal for engaging in whistleblowing activity even if the claims were not asserted by the Plaintiff. *Id.* at 13.

The Court in *Walton,* however, held that the doctrine of *res judicata* did not bar the Plaintiff's claim of reprisal for engaging in EEO activity and violation of CSRA because the facts giving rise to those claims were not addressed by the MSPB and Federal Circuit. In so holding, the Court in *Walton* held that because the Federal Circuit did not specifically address the claims asserted by the Plaintiff, the doctrine of *res judicata* "does not bar this claim here. Nor is the Court persuaded that *res judicata* bars other claims asserted by the Plaintiff, as the Federal Circuit addressed only Plaintiff's whistleblowing claims set out above-and not any other discrimination claims." *Id*. at 14. The same analysis applies here.

As the foregoing shows, the doctrines of *res judicata* and collateral estoppel do not bar Ms. Dews-Miller's claims asserted in this action as they were not asserted before the MSPB because the claims were appropriately being processed within the statutory scheme for federal employees asserting claims of retaliation for engaging in EEO activity. Additionally, the claims asserted in this case were not addressed by the MSPB or the Federal Circuit. Moreover, the ruling of the MSPB that was affirmed by the Federal Circuit was on jurisdictional grounds and not on the merits. Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

## II. THIS COURT HAS JURISDICTION OVER THE PLAINTIFF'S CLAIM OF REPRISAL FOR ENGAGING IN WHISTLEBLOWING ACTIVITY

The Agency argues that this Court does not have subject matter jurisdiction over Ms. Dews-Miller's claim of reprisal for engaging in whistleblowing activity because only the Federal Circuit has jurisdiction over the claim and because it has already disposed of that claim. Again, the Agency is wrong. As explained earlier, the Federal Circuit reviewed the MSPB's finding that it did not have jurisdiction. It did not address the merits of the case or any of the issues that Ms. Dews-Miller asserts here except for *dicta* with respect the issue of whether Ms. Dews-Miller was terminated in reprisal for engaging in whistleblowing activity. The Agency's argument in

this regard is nothing but another attempt to argue that Ms. Dews-Miller's claims are barred by the doctrines of *res judicata* and collateral estoppel. As demonstrated *supra*, Ms. Dews-Miller's claims of reprisal for engaging in whistleblowing activity are not barred by the doctrines of *res judicata* and collateral estoppel.

Moreover, Ms. Dews-Miller also asserts that the same conduct was also in reprisal for engaging in EEO activity.[2] Ms. Dews-Miller therefore has the option of filing the WPA claim directly in the district court as she has done here or pursue the administrative process before the MSPB. *Quinn v. West*, 140 F. Supp. 725, 734 (W.D. Tex. 2001). *See also McAdams v. Reno*, 64 F. 3d 1137, 1141 (8th Cir. 1995). In fact, the statutory provisions of the WPA and its legislative history indicate a "clear Congressional preference for combining various aspects of a single agency determination under one review proceeding, both in the administrative and judicial channels." *Christo v. Merit System Protection Board*, 667 F. 2d 882, 883 (10th Cir. 1981). To force Ms. Dews-Miller to bifurcate her case and return to the MSPB for further consideration of her retaliation claims "would frustrate the principles of judicial economy and serve no useful purpose." *Quinn, supra*, 140 F. Supp. at 725; *Woodman v. Runyon*, 132 F. 3d 1330, 1342 (10th Cir. 1997). Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

### III. THIS COURT HAS JURISDICTION OVER COUNTS II, III AND V-IX FOR VIOLATIONS OF CSRA BECAUSE THE PLAINTIFF HAS EXHAUSTED THE REQUIREMENTS FOR SUIT UNDER THE ACT.

The Agency claims that Ms. Dews-Miller's claim is not properly in this Court because she did not litigate these claims before the MSPB, and therefore, she cannot litigate her claims here because she allegedly did not exhaust the requirements for suit under the CSRA. Although a federal employee is typically required to file CSRA claims with the MSPB, Ms. Dews-Miller was not required to do so in this case because she met the exhaustion requirement when she

---

[2] It is undisputed that Ms. Dews-Miller engaged in prior EEO activity which resulted in, *inter alia*, the settlement agreement that was breached by the Agency.

exhausted the requirements for suit for her claim of reprisal for engaging in EEO activity.

As stated previously, the Agency's violations of CSRA also make up Ms. Dews-Miller's claim of reprisal for engaging in EEO activity. As explained in Section VI *infra*, Ms. Dews-Miller has exhausted the administrative process to litigate her reprisal for engaging in EEO activity and other Title VII claims in this Court. Accordingly, because Ms. Dews-Miller's CSRA claims rely upon the same facts as her claim of reprisal for engaging in EEO activity, she has likewise met the exhaustion requirement for her CSRA claims. As demonstrated in Section II, a plaintiff whose claims under the WPA or CSRA and reprisal for engaging in EEO activity are the same, has the option of which forum to litigate her claims. In such an instance, like in this case, the plaintiff need only exhaust her claims in the forum she has chosen before filing a civil action. *See McAdams, supra*, 64 F. 3d at 1142 (quoting *Tolbert v. United States*, 916 F. 2d 245, 248 (5th Cir. 1990)). Hence, because Ms. Dews-Miller has met the exhaustion requirement when she exhausted the requirements for suit for her claim of reprisal for engaging in EEO activity and other Title VII claims, she has likewise met the exhaustion requirement for her CSRA claims. Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

## IV. COUNT IV ASSERTS A VALID CONSTITUTIONAL CLAIM.

The Agency asserts that it did not violate Ms. Dews-Miller property rights in her continued employment because she was allegedly dismissed pursuant to the terms of settlement agreement. The Agency misunderstands Ms. Dews-Miller's claim.[3] The issue presented by Ms. Dews-Miller is not that simple. Ms. Dews-Miller claims that the Agency did not provide

---

[3] The Agency incorrectly argues that Ms. Dews-Miller's Title VII and CSRA claims provide the exclusive remedy for the Agency's violation of her constitutional rights. Although Ms. Dews-Miller relies upon the same facts, she is permitted to assert claims in the alternative. Moreover, the Agency admits that such a claim exists. The Agency argues that a plaintiff must prove that the termination seriously damaged her reputation in the community and made it impossible and/or extremely difficult to obtain new employment and admits that Ms. Dews-Miller alleges same in her complaint. The Agency then argues that Ms. Dews-Miller has not alleged a claim for violation of her due process rights. The Agency's argument is illogical.

advance notice with respect to her termination, and that as a result, she was not provided an opportunity to challenge her proposed termination.  The Agency fails to understand that even though the settlement agreement permitted the Agency to terminate Ms. Dews-Miller, the ability to terminate Ms. Dews-Miller was limited.  For example, Ms. Dews-Miller could not be terminated under the settlement agreement unless the Agency properly rated her as less than "fully successful" in the detail and the three (3) month probationary position.  Ms. Dews-Miller maintains that the Agency's rating of her performance was retaliatory in nature and was not an accurate and objective rating of her performance.  She was also not given an opportunity to challenge same.  If the Agency failed to fairly and objectively rate Ms. Dews-Miller's work performance, it did not have the right under the settlement agreement to terminate her.  The Agency therefore would have been required to accord due process to Ms. Dews-Miller prior to terminating her, which it admits it did not do.   Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

**V.  THE COURT HAS ANCILLARY JURISDICTION OVER COUNTS XI-XXII FOR BREACH OF THE SETTLEMENT AGREEMENT EVEN THOUGH THEY SEEK DAMAGES IN EXCESS OF $10,000.**

The Agency correctly points out that in most cases, the Court of Federal Claims has exclusive jurisdiction over breach of contract claims against the United States for damages in excess of $10,000.  The Agency, however, fails to also point out that the District of Columbia Circuit has recognized that in a case in which the Plaintiff relies upon the same facts for breach of a settlement agreement and reprisal for engaging in EEO activity, the district court may exercise ancillary jurisdiction over the breach of contract claim even though the breach of contract claim seeks damages in excess of $10,000.  *See Rochman v. Gonzales*, 438 F. 3d 1211, 1215 (D.C. Cir. 2006)(the district may determine that it has ancillary jurisdiction over a breach of contract claim  even though the Court of Federal Claims generally has exclusive jurisdiction over breach of contract claims against the United States for damages in excess of $10,000).  *See also Shaffer v. Veneman*, 325 F. 3d 370, 373 (D.C. Cir. 2003)(recognizing that the district court

may exercise ancillary jurisdiction over a breach of contract claim against the United States for damages in excess of $10,000 if the Title VII and breach of contract claims are "factually interdependent").

A district court may exercise ancillary jurisdiction over a breach of contract claim against the United States for damages in excess of $10,000 (1) "to permit disposition by a single court of claims that are, in varying respects and degrees, interdependent," and (2) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id*.(quoting *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 379-80, 114 S. Ct. 1673, 1676 (1994). This case fits squarely within the mold for the exercise of ancillary jurisdiction over Ms. Dews-Miller's breach of contract claim against the Agency. As stated previously, Ms. Dews-Miller relies upon the same facts for her reprisal for engaging in prior EEO activity (over which this Court clearly has jurisdiction) and her breach of contract claims. Accordingly, the reprisal for engaging in prior EEO activity and breach of contract claims are "interdependent." Given that the claims are "interdependent," the exercise of ancillary jurisdiction over the breach of contract claims is appropriate to enable this Court to function successfully, to manage its proceedings, vindicate its authority, and effectuate its decrees. This Court therefore has ancillary jurisdiction over Ms. Dews-Miller's breach of contract claims against the Agency. Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

## VI. THE PLAINTIFF'S TITLE VII CLAIMS WERE EXHAUSTED AND ARE VIABLE THEREBY PRECLUDING THE ENTRY OF SUMMARY JUDGMENT

### A. The Plaintiff properly exhausted her Title VII Claims.

The Defendant's contention that the Plaintiff improperly exhausted her claims is without merit. As the Defendant has properly stated, the Plaintiff's claims under Title VII arise from the retaliation and reprisal to which the Plaintiff was subjected by the Defendant after she engaged in protected EEO activity. As for properly exhausting her claims, it is clear that the Plaintiff began meeting with an EEO Counselor in November 1995 and that she filed an EEO

Complaint against the Defendant on March 28, 1996. Def. Ex. 6. The substance of the Plaintiff's March 1996 EEO complaint was the "minimally successful" performance evaluation she received for her May 1994 to January 1995 evaluation from Darwin Roberts and the "minimally successful" performance evaluation she received for her February 1995 to August 1995 evaluation from Carol Keith. The March 1996 EEO Complaint also complained of the Defendant's denial of the Plaintiff's Within Grade Increase, and the Defendant's improper placement of the Plaintiff on Absent Without Leave (AWOL) status from September 1995 through November 1995. *Id.* The Defendant responded to the Plaintiff's March 1996 complaint and stated that the complaint had been forwarded to the Equal Employment Opportunity Commission (EEOC) for resolution. Def. Ex. 9. Therefore, the Plaintiff complied with the requirements of 29 C.F.R. § 1614. The Defendant's contention that the Plaintiff did not satisfy Title VII exhaustion requirements is completely and wholly without merit.

**B. Counts V, VII, and VIII should not be dismissed.**

Despite the Defendant's contention to the contrary, the Plaintiff's claim regarding her termination (Count V), her termination from the Office of Inspector General (OIG) (Count VII) and her conversion from a career appointment to a temporary appointment (Count VIII) are all "like or reasonably related to the allegations of the charge and growing out of such allegations" as she filed with the EEOC. *See Park V. Howard University*, 315 U.S. App. D.C. 196, 71 F.3d 904, (1995) citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Therefore, there is a reasonable relationship between the allegations in the Plaintiff's EEO charge; namely, the "minimally successful" evaluations as these evaluations were the Defendant's purported justifications for terminating the Plaintiff pursuant to the January 1995 settlement agreement and the claims in the Plaintiff's complaint regarding her termination, termination of her appointment with OIG, and the conversion of her career appointment to a temporary appointment.

**C. Plaintiff did properly exhaust her claims as to Count X.**

On January 27, 1997, the Defendant Agency was advised by the U.S. Department of Labor, Office of Workers Compensation Programs (OWCP) that the Plaintiff's on the job injury claim was supported by medical documentation and that the Plaintiff was entitled to be paid for her time in connection with her on the job injury. *See* Exhibit 5, Letter from OWCP to Jeni Mallios of U.S. Department of State. To date, the Defendant has failed to produce documentation that it complied with the instruction of OWCP. The Plaintiff contends that the Defendant has failed to pay her for her time in connection with her on the job injury.

**D. Plaintiff did not fail to satisfy Title VII's exhaustion requirements with respect to her breach of settlement agreement claims (Counts XI – XXII).**

Once the Plaintiff realized that the Agency had absolutely no intention on complying with the January 1995 Settlement Agreement, she properly sent a letter to the Agency advising the Agency that it was in breach of the Settlement Agreement. *See* Def. Ex. 2. The Defendant Agency responded that it had complied with the terms of the Settlement Agreement. *See* Def. Ex. 3. Due to the longest furlough in the history of the Federal Government beginning in December 1995 and ending in January 1996 and a subsequent blizzard in January 1996, the Plaintiff's appeal of the Agency's decision that it had not breached the Settlement Agreement was deemed untimely. The Plaintiff petitioned for reconsideration of the ruling of the EEOC but her petition was denied. Notwithstanding same, it is the Plaintiff's contention that although the breach of settlement agreement was not entertained by the EEOC as a separate charge, the breach of settlement agreement was nevertheless addressed by the EEOC as it arose out of the same nucleus of facts that gave rise to the Plaintiff's EEO complaint regarding her "minimally successful" evaluations which the evaluator's knew would likely result in termination from the Agency. Furthermore, the issue of the breach of the settlement agreement was brought before the Merit Systems Protection Board (MSPB) although they found that they did not have subject matter

11

jurisdiction and that finding was affirmed by the United States Court of Appeals for the Federal Circuit. *See* Exhibit 1. Accordingly, the Plaintiff properly exhausted her claims with respect to her claims of breach of settlement agreement.

**E. Counts II and III do not fail on the merits.**

The Defendant's failure to follow the procedures outlined in 5 U.S.C. §§ 4302(b) and MOA, Part V-A, §453.2(c)(1)-(3) was in reprisal for the Plaintiff's prior EEO activity in violation of the anti-retaliation provisions of Title VII. Again, the Plaintiff vehemently disputes the Defendant's assertion that she did not exhaust her administrative remedies with respect to Counts II and III of her complaint. As discussed previously, the Plaintiff met with an EEO counselor and subsequently filed an EEO complaint against the Agency in 1996 regarding the evaluations that were forwarded to the EEOC. *See* Def. Ex. 6. The failure of the Defendant's supervisor, Darwin Roberts, to counsel the Plaintiff regarding the "minimally successful" ratings she received was a "materially adverse" action as Mr. Roberts was aware of the Settlement Agreement and that pursuant to the Agreement, if the Plaintiff did not obtain at least a "fully successful" rating, dire consequences would result. *See* Def. Ex. 43, Affidavit of Darwin Roberts. The conduct of Darwin Roberts would have well dissuaded a reasonable worker from making or supporting a charge of discrimination as a result of EEO complaints and whistleblowing activity. The retaliatory animus of this "minimally successful" rating is quite evident with respect to each rating.

In the case of the evaluation from May 1994 to January 1995, Darwin Roberts, who was aware of the Plaintiff's protected disclosure regarding the credit cards, rated the Plaintiff "minimally successful" although he had been her supervisor for the previous two years and had never rated the Plaintiff less than "fully successful." *See* Complaint ¶12. After the Plaintiff made the disclosure to the Inspector General in September 1994, all of a sudden, she is denied sick leave by Mr. Roberts and the quality of her work is "minimally successful." *See* Complaint ¶17; Statement of Material Facts in Dispute, ¶2. Furthermore, Darwin

Roberts attempted to do a mid-year review, one month before the end of the rating period and Mr. Roberts only attempted to meet with the Plaintiff on a day before the Christmas holiday before the Office was being dismissed early. *See* Statement of Material Facts in Dispute, ¶12. These facts demonstrate that Mr. Roberts really did not want to meet with the Plaintiff and therefore did not properly counsel the Plaintiff prior to rating her performance "minimally successful."

Furthermore, it is the Plaintiff's contention that the evaluation by Darwin Roberts may not be used to justify the Agency's termination of her federal employment pursuant to the Settlement Agreement as the Roberts evaluation was completed prior to the effective date of the Settlement Agreement. *See* Statement of Material Facts in Dispute, ¶10. The evaluation of Roberts was for the period of May 1994 to January 1995. *Id.* at 10. The Settlement Agreement did not become effective until February 1, 1995. *Id.* at 10. Therefore, any reliance on the evaluation of Darwin Roberts as justification for terminating the Plaintiff's employment is clearly erroneous and misplaced.

The retaliatory animus connected to the rating by Carol Keith is also clearly demonstrated. Carol Keith affirms in her affidavit that she is not a supervisor, nevertheless, she completed the Plaintiff's performance evaluation. *See* Def. Ex. 46, Affidavit of Carol Keith. Furthermore, Ms. Keith did not discuss the Plaintiff's performance prior to the "minimally successful" rating. *See* Statement of Material Facts in Dispute, ¶13.

Finally, as is the case with the evaluation completed by Darwin Roberts, it is the Plaintiff's contention that Ms. Keith's evaluation of the Plaintiff may not be used to justify the Agency's termination of the Plaintiff's federal employment pursuant to the Settlement Agreement as Ms. Keith did not have the authority to evaluate the Plaintiff. *See* Statement of Material Facts in Dispute, ¶12. The Civil Service Commission requires the preparation of notifications of personnel actions primarily to provide basic documentation of an individual's federal employment, to notify the employee of the personnel action, and to provide basic

records which will permit agencies and the Commission:

> (1) To determine the status and rights of employees as well as their eligibilities for promotion, transfer, re-employment, and other personnel actions.
>
> (2) To show whether personnel actions authorized or ordered have been effected, and whether actions effected have been authorized.
>
> (3) To expedite the payment of retirement refunds and annuities to persons separated from the service.

*National Treasury Employees Union et al v. Reagan*, 214 U.S. App. D.C. 62, 663 F.2d 239 (1981).

    The Defendant never prepared a Notification of Personnel Action, SF-50, "detailing" the Plaintiff into the position in the Office of the Comptroller. Without the proper notification of personnel action, the Plaintiff was still appointed to the position of Administrative Officer in the Office of Inspector General and therefore, Carol Keith of the Office of the Comptroller had absolutely no authority to complete a performance evaluation on the Plaintiff. *See* Statement of Material Facts in Dispute, ¶12. The Plaintiff's appointment in the Office of the Inspector General, did not end until April 1996. Nevertheless, Ms. Keith completed a Performance evaluation that erroneously indicated that the Plaintiff's position title was that of a Budget Analyst GS-11. *See* Exhibit 4. Pursuant to the Settlement Agreement, the Defendant was to "detail" the Plaintiff into the position of Budget Analyst, GS-560 11/4. According to the Office of Personnel Management, in order to authorize a "detail," such action has to be documented with an SF-50. *See* Pl. Ex. 6. Thus, Ms. Keith did not have the authority to evaluate the Plaintiff, and therefore, the evaluation by Ms. Keith does not justify the termination of Plaintiff's employment pursuant to the Settlement Agreement.

    The Plaintiff asserts that the Defendant's contention that it is entitled to summary judgment with respect to Counts II and III is erroneous and that the Defendant has failed to establish that Darwin Roberts actually counseled Plaintiff and provided her with feedback.

*See* Statement of Material Facts in Dispute, ¶12. Defendant represents that Roberts attempted to meet with Plaintiff but there is not evidence that Roberts ever met with the Plaintiff regarding her performance. As for the Keith evaluation, that evaluation is of no relevance as it was performed by someone who did not have the authority to evaluate the Plaintiff. *See* Statement of Material Facts in Dispute, ¶14. Furthermore, it is the Plaintiff's contention that Keith never met with her to discuss the evaluation prior to Keith performing the evaluation. Neither supervisor addressed, before the rating, the quality of the Plaintiff's work prior to completing "minimally successful" ratings for Plaintiff.

**F.  No Notice Prior to Denial of Within-Grade Increase**

The Plaintiff contends that the Defendant's denial of her Within-Grade Increase was retaliatory under Title VII and was clearly erroneous. For the reasons stated above, the evaluation of Carol Keith should not have been considered by the Defendant in its decision to deny the Plaintiff her Within-Grade Increase. Further, the MOA 235.6 clearly states that if an employee is out on worker's compensation injury, there is a presumption that the employee would have performed satisfactorily and the employee is therefore eligible for her Within Grade Increase. Def. Ex. 57. It has been established that Plaintiff was on leave beginning on August 21, 1995 for an injury she sustained on the job. Complaint ¶27. Therefore, her performance was to be deemed satisfactory and she should have been granted her Within Grade Increase. The Agency's decision to deny the Within Grade Increase was a retaliatory act.

**G.  Agency's Placement of Plaintiff on AWOL status**

The Plaintiff contends that the Defendant's placement of her on Absent Without Leave (AWOL) was a "materially adverse" act that was retaliatory under Title VII and clearly erroneous. The Defendant asserts that the Plaintiff failed to submit medical documentation that she had sustained an on the job injury. *See* Statement of Material Facts in Dispute, ¶9. However, in the same testimony, the Defendant asserts that based on the Plaintiff's

15

submissions, a [Personnel Management Specialist] had no way of assessing whether the Plaintiff was injured at work. The statement is inherently contradictory; at one juncture, the Defendant contends that the Plaintiff failed to submit medical documentation and in the same statement, the Defendant contends that what the Plaintiff submitted was insufficient. Either the Plaintiff submitted the medical documentation or she did not and it is the Plaintiff's contention that she did submit the proper medical documentation. The Plaintiff further contends that it was inappropriate for the Defendant's Personnel Management Specials to determine whether the Plaintiff's submissions were sufficient. That determination should have been made by a medical doctor. This fact is also demonstrated by the OWCP's letter to the Defendant again advising the Agency that the Plaintiff's injury was supported by medical documentation. *See* Exhibit 5. As the foregoing shows, there are numerous disputes of material fact in this case. Accordingly, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

## CONCLUSION

For the foregoing reasons, the Agency's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

/S/
_____
CHARLES G. BYRD, JR.
Bar No. MD04388
Alston & Byrd
2518 Maryland Avenue
Baltimore, Maryland 21218
410-235-7811

Attorney for Plaintiff
Rose M. Dews-Miller