UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROSE M. DEWS-MILLER, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 06-1764 (GK) |
| CONDOLEEZZA RICE, SECRETARY OF STATE, | ) ) ) ) |  |
| Defendant. | ) ) |  |

## REPLY BRIEF

Defendant, Condoleezza Rice, Secretary of State, respectfully replies to Plaintiff's Opposition to Defendant's Motion to Dismiss Or, in the Alternative, for Summary Judgment (Document 38).[1] In her moving papers (Document 24), Defendant raised the threshold issue that the claims brought in plaintiff's first amended complaint were barred by the doctrines of res judicata and collateral estoppel. Specifically, Defendant argued that the first amended complaint restated claims that plaintiff raised (or could have raised) before the Merit Systems Protection Board ("MSPB") in her previous challenge to her 1996 termination by the United States Information Agency ("USIA"), and that were considered and rejected (or found to be undisputed) by the Federal Circuit, which affirmed the MSPB's determination that plaintiff was terminated in accordance with a valid settlement agreement in Dews-Miller v. USIA, 194 F.3d 1330 (table), 1999 WL 129642 (Fed. Cir. 1999) (Plaintiff's Opposition, Exh. 1).[2]

---

[1] The Secretary of State is legally responsible for actions against plaintiff's former employer, the United States Information Agency.

[2] Plaintiff had a representative before the MSPB (see Exh. A hereto).

In her opposition brief (at 2-6, 11-12), plaintiff contends that the Federal Circuit decision does not bar her from bringing her claims under Title VII of the Civil Rights Act of 1964, as amended, the Civil Service Reform Act ("CSRA"), or for breach of the settlement agreement, before this Court because the Federal Circuit merely affirmed the MSPB's determination that it lacked jurisdiction over plaintiff's Individual Right of Action ("IRA") claim.[3] To the contrary, the Federal Circuit squarely addressed the issue before this Court, i.e., whether the agency's termination of plaintiff's employment, and any other alleged adverse personnel actions during the settlement period, were taken pursuant to the settlement agreement or were in retaliation for plaintiff's alleged whistleblowing activities. Specifically, the Federal Circuit held that, "[g]iven the undisputed facts, we conclude that Ms. Dews-Miller was terminated in accordance with the terms of the settlement agreement, and not in reprisal for her asserted whistleblowing activities." Id. at 4 (emphasis added). Furthermore, to make this determination, the Federal Circuit had to also make specific findings that the settlement agreement was valid, that plaintiff failed to establish a breach thereof, and that plaintiff was properly terminated in accordance with the agreement.[4] See id. at 2-3.

---

[3] See 5 U.S.C. § 1221, which provides an "individual right of action in certain reprisal cases." Specifically, "an employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited practice described in section 2302(b)(8), seek corrective action from the Merit Systems Protection Board." 5 U.S.C. § 1221(a) (emphasis added).

[4] In addition to finding that plaintiff was properly terminated under the settlement agreement, the court of appeals also addressed plaintiff's allegations in the instant complaint that her denial of a within-grade increase ("WGI") and placement on absence without leave ("AWOL") status were adverse personnel actions (see Counts V-IX). The Federal Circuit noted that, "[i]n her IRA appeal, Ms. Dews-Miller did not argue that the [Office of Special Counsel]'s conclusions concerning the WGI- and AWOL-based allegations were incorrect." Dews-Miller, 1999 WL 129642, at *2, n.1. Hence, the court of appeals found that these facts were undisputed. The Federal Circuit also noted that, "Ms. Dews-Miller has also not alleged any facts that would, if true, indicate that the

**Background**

On or about January 27, 1995, plaintiff entered into an agreement with USIA ("settlement agreement" or "S.A.") whereby she agreed to settle all pending employment discrimination claims against USIA in exchange for being transferred from the Office of Inspector General ("OIG") to the Office of Comptroller on February 1, 1995, for a six-month detail (Compl., Exh. A, filed as part of Document 14-2, S.A., Recital ¶ 1, and ¶ 1).[5] Pursuant to the agreement, if plaintiff received a "fully successful" rating, she would have been retained by the Office of Comptroller in the same or in a comparable position (id. at ¶ 3). If plaintiff did not achieve this level of performance, and she did not, she agreed that the Office of Personnel would attempt to place her in another non-OIG position for a three-month probationary period, or if no such position were available, she would return to OIG for a probationary period of three months (id. at ¶¶ 3, 5). If plaintiff did not achieve a "fully successful" rating during the second probationary period, and she did not, she was to be transferred to a one-year detail position, and agreed to resign at the end of the detail (id. at ¶ 6). The January 1995 settlement agreement contained a "breach" provision that expressly stated that, if any of the provisions of the agreement were not carried out, then (and only then) would the provisions of 29 C.F.R. §1614 apply (id. at ¶ 13). Plaintiff was terminated after her temporary one-year detail

---

agreement is illegal on its face, that she did not voluntarily enter the agreement, or that the parties entered the agreement by a mutual mistake." Id. at *3, n.2. Accordingly, the court of appeals made a finding "that the settlement agreement is valid." Id. at *3. Plaintiff takes a contrary position in Counts XI-XIX and XXI-XXX of the first amended complaint in the instant case, alleging breach of contract claims.

[5] The settlement agreement was executed on January 27, 1995, by plaintiff, her counsel at the time, the Comptroller and Assistant General Counsel of USIA. The Inspector General, USIA, signed the agreement on January 30, 1995, and the Director, Office of Civil Rights, USIA, signed it on January 31, 1995.

expired. See Dews-Miller v. USIA, 1999 WL 129642, at *1.

Plaintiff's first amended complaint (Document 14) alleges retaliation for whistleblowing activity (Count I), failure to comply with procedural and notice requirements of the CSRA (Counts II-III; V-IX), and breach of the settlement agreement (Counts XI-XIX; XXI-XXII).[6] Count IV alleged a violation of her constitutional rights based on her termination by USIA, and Count X alleged a failure to comply with the June 23, 1989 EEOC directive for USIA to pay continuation of pay benefits for a period of the time plaintiff was AWOL.[7]

---

[6] The counts of the first amended complaint are numbered I through XXII (or 1 through 22); however, there is no count XX (or 20). Hence, there are only 21 counts in the first amended complaint. In any event, Counts I-III, V-IX, XI-XIX, and XXI-XXII (all claims but Counts IV and X, addressed separately below), clearly restate claims that were addressed by the Federal Circuit in Dews-Miller v. USIA, 194 F.3d 1330 (table), 1999 WL 129642 (Fed. Cir. 1999). Count I alleges retaliation based on the alleged misuse of American Express travel cards by OIG staff (the same whistleblowing activity as in the Federal Circuit case). Count II alleges a failure to comply with procedural requirements for performance appraisals for May 1, 1994 to January 24, 1995 (activity that occurred prior to the settlement agreement and was therefore compromised as part of the agreement). Count III alleges a failure to comply with procedural requirements for performance appraisals for February 1, 1995 to July 31, 1995 (the initial 6-month detail period under the settlement). Counts V through IX allege no prior notice for adverse actions, including, termination of federal employment (pursuant to terms of settlement), within-grade pay increase (undisputed fact before Federal Circuit), termination of employment with OIG (pursuant to terms of settlement), converting plaintiff's career appointment to temporary appointment (pursuant to settlement), and placement of employee on AWOL status (undisputed fact before Federal Circuit), respectively. Counts XI-XIX, and XXI-XXII (there is no Count XX), allege breaches of the settlement agreement, which are contrary to Federal Circuit decision, are untimely, and should have been brought in the Court of Federal Claims (see Def.'s Mot. To Dismiss (Document 24) at 24-29). These claims should also be dismissed because plaintiff failed to exhaust her administrative remedies under the applicable statutes, and the claims otherwise lacked merit, for the reasons stated in our moving papers.

[7] Count IV alleges a constitutional violation based on her termination, which, as stated, the Federal Circuit found to be in accordance with the settlement agreement, Dews-Miller, 1999 WL 129642, at *1, and should also be dismissed because Title VII and CSRA provide the exclusive remedy for the constitutional violations of which plaintiff complains (see Def.'s Mot. To Dismiss (Document 24) at 21-24). Count X alleges a failure by USIA to comply with an alleged 1989 EEOC decision ordering USIA to pay plaintiff while she was on AWOL status during the second probationary period under the settlement agreement. Defendant argued that

4

**Discussion**

The Federal Circuit squarely addressed the issue of whether plaintiff "was terminated as a reprisal for her asserted whistleblowing activities or as a consequence of her entering the settlement agreement." Dews-Miller, 1999 WL 129642, at *3-4. In making this determination, the court of appeals necessarily rejected the same claims that plaintiff attempts to bring in this case. Specifically, the Federal Circuit held that, "[g]iven the undisputed facts, we conclude that Ms. Dews-Miller was terminated in accordance with the terms of the [valid] settlement agreement, and not in reprisal for her asserted whistleblowing activities." Id. at 4 (emphasis added). Accordingly, the Federal Circuit determined that, "[b]ecause this termination is not a 'personnel action' as defined in the relevant statute [5 U.S.C. § 2302(a)(2)], the MSPB did not have jurisdiction to hear Ms. Dews-Miller's [Individual Right of Action] appeal." Id.

The Federal Circuit also made several preliminary findings in support of its determination that USIA terminated plaintiff in accordance with the settlement. The court of appeals found that the settlement agreement was valid at its formation, that it was not breached, and remained in full force and effect when plaintiff was terminated. The Federal Circuit described these preliminary

---

this claim should be dismissed for failure to exhaust administrative remedies in our motion to dismiss (see id. at 33-34). In her opposition, plaintiff now contends that this claim is based on a January 27, 1997 letter from OWCP directing USIA to pay continuation of pay benefits for "7/19/95 only – and from 8/21/95 to 10/3/95 (44 calendar days)." See Plaintiff's Opposition at 11, and Exh. 5 thereto. However, plaintiff's newly-minted claim is belied by its own exhibit, the June 23, 1999 Equal Employment Opportunity Commission decision in Dews-Miller v. Duffey, Director, USIA, Appeal No. 001983674 at *3, finding that "[t]he agency reimbursed [Ms. Dews-Miller] for wages lost during the period that she was AWOL," which included the period complained of here.

findings in terms of "undisputed facts."[8] Dews-Miller, 1999 WL 129642, at *4. The court of appeals noted that, "[i]n her IRA appeal, Ms. Dews-Miller did not argue that the [Office of Special Counsel]'s conclusions concerning the [Within-Grade Increase]- and [Absence Without Leave]-based allegations were incorrect." Id. at *2, n.1. Hence, those conclusion were unchallenged. The Federal Circuit also noted that, "Ms. Dews-Miller has also not alleged any facts that would, if true, indicate that the agreement is illegal on its face, that she did not voluntarily enter the agreement, or that the parties entered the agreement by a mutual mistake." Id. at *3, n.2. Hence, the court of appeals made a finding "that the settlement agreement is valid." Id. at *3. Finally, not only did the Federal Circuit find that USIA had not breached the settlement agreement, but noted that the only party who appeared to be in breach was Ms. Dews-Miller "when [she] refused to resign after one year in the temporary position." Id.

Plaintiff's first amended complaint recognizes that the settlement agreement is an impediment to any recovery in this case because she alleged eleven "breach" counts predicated on violations of 29 C.F.R. §1614 (Counts XI-XIX and XXI-XXII), and requested, as part of the relief sought, that this Court order that the settlement be vacated. As a preliminary matter, plaintiff can hardly be heard to complain that she did not have an opportunity to litigate her breach claims (or any of the other claims) before the Federal Circuit. To the contrary, as the Federal Circuit recounted, plaintiff initiated her whistleblower complaint with the Office of Special Counsel ("OSC") in December 1995, "alleging that she had been denied a within-grade increase (WGI), had been placed in absence without leave (AWOL) status, and had suffered a significant change in her duties and

---

[8] Plaintiff's statement of disputed facts in the instant case does not dispute any of the facts necessary for this Court to grant Defendant's motion to dismiss or, in the alternative, for summary judgment, and responded to a number of proposed undisputed facts with "No comment."

responsibilities (i.e., being placed in the temporary position), in retaliation for her [alleged September 1994 reporting of alleged abuses of American Express (AmEx) travel cards by OIG staff]." Dews-Miller, 1999 WL 129642, at *1. Plaintiff further alleged that her termination, after her temporary one-year assignment expired, "was another act of retaliation." Id. OSC investigated plaintiff's claims, and concluded that they lacked merit, "stating that there was no connection between Ms. Dews-Miller's asserted whistleblowing report and the complained-of actions." Id. After OSC closed its investigation, plaintiff appealed her termination to the MSPB, and "[t]he administrative law judge noted that Ms. Dews-Miller's termination appeared to be in accordance with the settlement agreement and issued an order to show cause as to why Ms. Dews-Miller's appeal should not be dismissed for lack of juridisdiction." Id. at 2. Plaintiff responded that "USIA had breached the agreement and the agreement was invalid."[9] Id. These are precisely the same positions plaintiff is taking in this case.

"The doctrines of res judicata and collateral estoppel are designed to 'preclude parties from contesting matters that they have had a full and fair opportunity to litigate.'" Carter v. Rubin, 14 F. Supp. 2d 22, 33 (D.D.C. 1998) (quoting Montana v. United States, 440 U.S. 147-153-54 (1979)). These doctrines protect parties from the expense and burdens associated with multiple lawsuits, conserve judicial resources, and reduce the possibility of inconsistent decisions. Id. (citing United States v. Mendoza, 464 U.S. 154, 158-59 (1984); Bailey v. DiMario, 925 F. Supp. 801, 810 (D.D.C. 1995)). Under res judicata, or claim preclusion, "'a final judgment on the merits of an action

---

[9] The administrative law judge rejected Ms. Dews-Miller's contentions and found that "the 'action' taken against Ms. Dews-Miller was solely the result of the agency's compliance with the terms of the settlement agreement, and that the agreement was valid." Dews-Miller, 1999 WL 129642, at *2. Plaintiff appealed to the Federal Circuit, after the full Board denied her petition for review. Id.

precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Collateral estoppel, or issue preclusion, similarly bars "'relitigation of [an] issue in a suit on a different cause of action involving a party to the first case.'" Id. (quoting Allen, 449 U.S. at 94) (citing Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981). See also Bailey, 925 F. Supp. at 810.

Plaintiff's first amended complaint is therefore barred under the doctrines of res judicata and collateral estoppel because all of her claims were litigated (or could have been litigated) before the MSPB ten years ago in Dews-Miller, 1999 WL 129642. In her opposition brief (at 2-5), plaintiff contended that the Federal Circuit decision is not res judicata or collateral estopped because plaintiff's IRA appeal was dismissed for lack of subject matter jurisdiction. Plaintiff's reliance on Walton v. USDA, 2007 WL 1246845, slip op. at 2 (E.D.Mo. April 30, 2007), is misplaced because the magistrate judge in that case did not address the issue squarely raised here, i.e., whether agency action taken in accordance with a valid settlement agreement can be an adverse "personnel action" within the meaning of 5 U.S.C. § 2302(a)(2). Dews-Miller, 1999 WL 129642, at *4. Indeed, Walton involved a settlement agreement under a collective bargaining agreement, but the magistrate judge did not need to reach the question of whether Walton's "breach" claims were barred under the doctrines of res judicata or collateral estoppel because it appeared that litigation of the claims was premature. See Walton, 2007 WL 1246845, slip op. at 7-8.[10]

---

[10] The magistrate judge in Walton explained the procedural history of the "breach" claim of the plaintiff in that case as follows: "The first set of issues relevant to Plaintiff's various claims case relates back to grievances Plaintiff made within the USDA which resulted in the settlement reached by Plaintiff and the USDA in 1993 under the parties' Collective Bargaining Agreement. As set forth above, Plaintiff believed that the USDA was in breach of this settlement agreement and sought to rectify this alleged breach by filing a discrimination complaint with the EEOC. Plaintiff's first amended complaint was dismissed, however, after the EEOC found that a complainant may not

In sum, all of plaintiff's claims are barred based on the Federal Circuit's determination in the Dews-Miller case that the MSPB lacked jurisdiction over plaintiff's IRA claim. As discussed above, this ruling was predicated on a finding that USIA terminated plaintiff in accordance with the settlement agreement, and not in retaliation for her alleged whistleblowing activities, and therefore her termination could not be an adverse "personnel action" for purposes of plaintiff's IRA appeal. To make this finding, the Federal Circuit had to make two predicate findings, that the settlement was valid and enforceable at its formation, and that the settlement had not been breached prior to plaintiff's termination pursuant to its terms. Plaintiff may not challenge those findings in the instant case by asserting the same claims that she raised (or could have raised) before the MSPB.

WHEREFORE, for the foregoing reasons, and those stated in our moving papers, the Court should dismiss plaintiff's first amended complaint, or, in the alternative, grant defendant's motion

---

use the EEO process to obtain compliance with a grievance settlement. After Plaintiff's request for reconsideration of that EEOC decision was denied, Plaintiff filed the initial pro se complaint in this Court under Title VII." 2007 WL 1246845, slip op. at 7. The magistrate judge further noted that breach claims may be premature because it did not appear that plaintiff had exhausted her administrative remedies with respect to such claims. See id. at 8 ("Attached to Plaintiff's second lawsuit (originally docketed under Case # 02CV808) is the 'Remand EEOC Decision' dated November 5, 1999 remanding Plaintiff's claims to the agency. A decision by the EEOC to remand the case to the agency is not a 'final decision' by the EEOC. If Plaintiff did not obtain a 'final decision' by the EEOC with regard to her claims, she has not yet exhausted her administrative remedies with regard to these claims. Id. As such, Plaintiff does not have the right to bring suit on these claims in this court. Id. Accordingly, Plaintiff's suit is premature and must be dismissed.").

for summary judgment.

                                        Respectfully submitted,

                                        /s/
                                        JEFFREY A. TAYLOR, D.C. Bar #498610
                                        United States Attorney

                                        /s/
                                        RUDOLPH CONTRERAS, D.C. Bar #434122
                                        Assistant United States Attorney

                                        /s/
                                        JOHN G. INTERRANTE, PA Bar #61373
                                        Assistant United States Attorney
                                        Civil Division, Room E-4806
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 514-7220
                                        (202) 514-8780 (fax)
                                        John.Interrante@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on Charles G. Byrd, Jr., Esquire, counsel of record by ECF, and on plaintiff, by First-Class Mail, postage prepaid to:

>ROSE M. DEWS-MILLER
>8507 Woodyard Road
>Clinton, MD 20735

on this 25th day of February, 2008.

>/s/
>JOHN G. INTERRANTE
>Assistant United States Attorney

**EXHIBIT A**

02-25-2008 01:58pm From-L/EMP & ETHICS +2026476794 T-602 P.002/003 F-674
Case 1:06-cv-01764-GK   Document 44-2   Filed 02/25/2008   Page 2 of 4

13

*John D. Pratt*
*6713 Harwood Place*
*Springfield, VA 22152-2419*

December 12, 1997

FOR: Raphael Ben-Ami
Administrative Judge
U.S. Merit Systems Protection Board
Washington Regional Office
5203 Leesburg Pike, Suite 1109
Falls Church, VA 22041-3473

SUBJECT: Individual Right of Action

REFERENCE: O.S.C. File No. MA-97-0571

DOCKET NUMBER: DC-1221-98-0147-W-1

A request for a hearing on referenced docket number *DC-1221-98-0147-W-1*, on behalf of Rose Mary Dews-Miller, former employee of the United States Information Agency, (USIA) is hereby requested and a copy of *"Merit Systems Protection Board's Designation of Appellant's Representative"* is attached within the ten day period from the date of your December 3, 1997 letter.

Sincerely,

*John D. Pratt*
John D. Pratt, Representative

Enclosure: MSPB's Designation of Representative Form

## CERTIFICATE OF SERVICE

I certify that the attached Document was sent by mail this day to each of the following:

**Appellant via Regular Mail**

Rose Mary Dews-Miller
Post Office Box 863
Clinton, MD 20735-0863

**Merit Systems Protection Board via Certified Mail #P 287 692 799**

Raphael Ben-Ami
Administrative Judge
Washington Regional Office
5203 Leesburg Pike, Suite 1109
Falls Church, VA 22041-3473
Telephone No. (703) 756-6250
FAX No.        (703) 756-7112

**Agency Personnel Office via Regular Mail**

Personnel Officer
Office of Personnel (M/P)
Room 534
U.S. Information Agency Bldg.
301 4th Street, SW
Washington, DC 20547

December 12, 1997                    [signature]
―――――――――――――          ―――――――――――――――――――
    (Date)                    John D. Pratt, Representative
                              6713 Harwood Place
                              Springfield, VA 22152-2419
                              Telephone No. (703) 569-1944
                              FAX No.       (703) 569-8780