## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
ROSE M. DEWS-MILLER,           )
                               )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No. 06-1764 (GK)
                               )
HILLARY CLINTON,               )
                               )
          Defendant.           )
_____)
```

### MEMORANDUM OPINION

Plaintiff Rose M. Dews-Miller, a former employee of the United States Information Agency, Department of State, brings suit against Defendant Hillary Clinton[1] in her official capacity as Secretary of State.  The Complaint alleges that Defendant engaged in unlawful retaliation against Dews-Miller in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and in related violations of the Civil Service Reform Act, 5 U.S.C. § 1101, et seq., the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302, and the First and Fifth Amendments of the Constitution. This matter is presently before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [Dkt. No. 24] pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56.  Upon consideration of the Motion, Opposition, Reply, the parties' Supplemental Memorandums, and the entire record herein,

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), Secretary of State Hillary Clinton is automatically substituted as Defendant for former Secretary Condoleeza Rice.

and for the reasons set forth below, the Motion to Dismiss or, in the Alternative, for Summary Judgment is **granted.**

## I.   Background

Plaintiff Rose M. Dews-Miller was employed by the United States Information Agency ("USIA") from 1972 until her termination on December 10, 1996.  She held a number of positions during this period, eventually reaching a General Schedule grade of 11 ("GS-11").  Beginning in 1990, and throughout the period in which most of the events leading to this action arose, Dews-Miller was employed as an Administrative Officer in USIA's Office of Inspector General ("OIG").

### A.   The 1993 Equal Employment Office Actions and the 1995 Settlement Agreement

In June 1993, Dews-Miller filed an Equal Employment Opportunity ("EEO") action against USIA alleging racial discrimination after not being selected for a position for which she claims she was qualified.  Soon thereafter, she received a "fully successful" performance evaluation, marking a downgrade from her previous "highly successful" ratings.  Am. Compl. ¶¶ 11-13 [Dkt. No. 14].  On September 7, 1993, Dews-Miller filed a second EEO action which alleged that the "fully successful" rating was made in retaliation for filing the first EEO action.  On October 21, 1994, she also filed a related complaint with the Office of Civil Rights ("OCR").

On January 27, 1995, Plaintiff entered into an agreement ("1995 Settlement Agreement" or "Agreement") with USIA to settle these three complaints.  Under the terms of the Agreement, she was to be detailed to the Office of Comptroller as a Budget Analyst for a six-month period commencing February 1, 1995.  Throughout her detail, OIG would pay her salary, as well as any training recommended by the Office of Comptroller.

The Agreement specified that Dews-Miller had to achieve a rating of at least "fully successful" in order to be retained in the Office of Comptroller or in a comparable position at the end of her detail.  If she failed to earn that rating, she would enter a three-month probationary period[2] in which the Office of Personnel would attempt to place her in an "appropriate" position in a non-OIG unit or, if no such placement was available, OIG would retain her.  In the latter scenario, if Plaintiff earned a "fully successful" or higher rating at the end of her probation, she would be retained at OIG.  If not, she would be transferred out of OIG to a temporary position not to exceed one year, at the end of which she would resign from USIA.  By signing the Agreement, Dews-Miller withdrew all pending complaints of discrimination and waived all rights to pursue any claims contained in the pending complaints, either administratively or judicially.

---

[2]   In this event, the Agreement did not require that she lose her career appointment status during the three-month probationary period.

**B.    Plaintiff's Detail to the Office of Comptroller and Subsequent Termination**

Pursuant to the terms of the Agreement, on February 1, 1995 Dews-Miller was placed on a six-month detail[3] to the Office of Comptroller as a Budget Analyst.  Id. ¶¶ 10, 22.  On July 20, 1995, Plaintiff received a "minimally successful" performance evaluation for the period worked at OIG from May 1, 1994 to January 24, 1995. On August 17, 1995, Plaintiff's supervisor in the Office of Comptroller also gave her a "minimally successful" rating for her six-month detail, which, under the terms of the 1995 Settlement Agreement, meant that Dews-Miller would enter a three-month probation period.  In the case of both evaluations, no notice of the alleged deficiencies was given, and Dews-Miller alleges she was not offered any assistance or opportunities to resolve them.  Id. ¶¶ 28-29.

On August 21, 1995, Dews-Miller took sick leave for an on-the-job injury to her back, neck, and shoulder sustained during her detail to the Office of Comptroller.  On September 2, 1995, while still on sick leave, she received a letter from USIA's Office of Personnel directing her to report to Ann Young, a supervisor in the OIG, for work.  After Ms. Young contacted her in early September, Dews-Miller alleges she provided medical documentation authorizing

_____

[3]    The six-month detail lasted from February 1, 1995 to July 31, 2005.  Am. Compl. ¶ 29.

her time off from work.[4]  Despite this, and despite the fact that the Department of Labor's Office of Workers' Compensation confirmed by letter dated September 29, 1995 that it had accepted Dews-Miller's injury as an on-the-job injury, Ms. Young placed her on absent without leave ("AWOL") status effective September 5, 1995 until November 24, 1995, when Plaintiff was approved to return to work.[5]  Thus, Dews-Miller was not compensated for 472 hours of missed work, despite having accrued "well over 600 hours of sick leave." Id. ¶ 30.

In November of 1995, USIA denied Dews-Miller a With-In Grade ("WIG") increase effective October 29, 1995, citing her two "minimally successful" performance evaluations. Id. ¶ 31.  On November 29, 1995, Ms. Young met with Dews-Miller to discuss the performance standards and advised her that her last day in the OIG would be November 30, 1995, which was the end of the three-month probation period.  In an SF-50 dated December 10, 1995, Dews-Miller's career appointment was converted to a one-year, temporary position.  Over the next year, the Office of Personnel assigned her to the Career Center and to the Office of General Counsel for work. Am. Compl. ¶ 37.  Finally, on December 9, 1996, USIA terminated

---

[4]     Defendant denies that this medical documentation was ever received.  See Def.'s Stmt. of Material Facts Not in Dispute at ¶ 9 [Dkt. No. 24].

[5]     Plaintiff actually returned to work on November 28, 1995. Id. ¶ 32.

Dews-Miller's employment.  See Letter from OSC to Rose Dews-Miller re: OSC File No. MA-97-0571 (Aug. 25, 1997) (Ex. 34 to Def.'s Mot. at 1).

**C.   The October 10, 1995 Office of Civil Rights Complaint**

On October 10, 1995, Dews-Miller filed a complaint with OCR requesting that it reopen her 1993 EEO case, as USIA had "breached the agreement."  Letter from Rose M. Dews-Miller to Hattie Baldwin, Director, OCR (Oct. 10, 1995) (Ex. 2 to Def.'s Mot.).   The complaint claimed that USIA violated the 1995 Settlement Agreement by (1) not activating her detail to the Office of Comptroller through an official personnel action ("SF-50"), (2) actively interviewing other candidates for the position during her detail, (3) failing to offer her training, and (4) failing to give informal performance evaluations prior to her formal "minimally successful" ratings.

OCR responded by letter dated December 11, 1995, in which it found that "the Agency has carried out all of the terms of [the] Settlement Agreement."  Letter from Hattie P. Baldwin, Director, OCR, to Rose M. Dews-Miller (Dec. 11, 1995) (Ex. 3 to Def.'s Mot.).  Plaintiff appealed this decision to the Equal Employment Opportunity Commission ("EEOC"), where her appeal was dismissed as untimely.  Dews-Miller v. Duffey, No. 01962642, 1997 WL 619018 (E.E.O.C. Sep. 25, 1997).  Dews-Miller subsequently filed suit in this Court on October 9, 1998 ("the 1998 case") alleging the same

violations of the 1995 Settlement Agreement.  This Court dismissed her case with prejudice for lack of jurisdiction on February 12, 1999.  <u>Dews-Miller v. Duffey</u>, No. 98-2417 (D.D.C. Feb. 12, 1999).

### D.  **The March 28, 1996 Office of Civil Rights Complaint**

On March 28, 1996, Dews-Miller filed a new discrimination complaint with OCR challenging the agency's failure to provide notice to and otherwise assist her in advance of her "minimally successful" ratings, as required by USIA's Manual of Operations & Administration ("MOA"), Part V-A, Section 453.2(c); her placement by the agency on AWOL status; and the agency's denial of a WIG increase, in violation of the MOA, Part V-A, Section 453.2(c).  She later added separate claims[6] challenging her December 9, 1996 termination and denial of end-of-service payments in December 1996. The OCR complaint alleged that all of these adverse actions were taken in reprisal for Plaintiff's 1993 EEO activities.  Memorandum from Rose M. Dews Miller to Hattie P. Baldwin, Director, OCR (Mar. 28, 1996) (Ex. 6 to Def.'s Mot.); <u>Dews-Miller v. Powell</u>, No. 01992980, 2001 WL 885107 (E.E.O.C. July 19, 2001).

After a lengthy and circuitous administrative process, USIA concluded its investigation of the OCR complaint on November 26,

---

[6]     Plaintiff raised separate allegations in a November 6, 1997 letter to OCR and, after receiving counseling, in a formal complaint dated August 23, 2000.  The EEOC ordered the agency to consolidate these allegations with the March 28, 1996 complaint. <u>See</u> <u>Dews-Miller v. Powell</u>, No. 01992980, 2001 WL 885107 (E.E.O.C. July 19, 2001).  To avoid confusion, the "March 28, 1996 complaint" will be used to refer to the consolidated allegations.

2001, finding no discrimination, and Plaintiff requested a hearing before an EEOC Administrative Judge. Letter from Barbara Spyridon Pope, Ass't Secretary, Office of Equal Employment Opportunity and Civil Rights, U.S. Dep't of State, to Rose Mary Dews-Miller (Nov. 26, 2001) (Ex. 14 to Def.'s Mot.). On April 29, 2004, after a full hearing, the Administrative Judge concluded that Plaintiff had failed to demonstrate a causal connection between the adverse actions challenged and her prior EEO activity, and that the agency had articulated legitimate, nondiscriminatory reasons for its adverse actions. See Dews-Miller v. Rice, No. 01A44926, 2006 WL 1057833, at *2 (E.E.O.C. Apr. 11, 2006). The EEOC upheld the Administrative Judge's ruling on appeal, and later denied Dews-Miller's request for reconsideration. Id.; Dews-Miller v. Rice, No. 01A44926, 2006 WL 2041314 (E.E.O.C. July 13, 2006). Plaintiff then initiated the present action in this Court, challenging the same adverse actions under Title VII in Count I of her Amended Complaint.

**E.    The 1995 and 1996 Office of Special Counsel Complaints**

In 1994, while the events underlying her discrimination complaint were unfolding, Plaintiff discovered evidence that OIG employees were misusing and/or abusing their government-issued American Express cards. She immediately reported this information to the Inspector General, and a large-scale investigation of credit card misuse resulted. After the agency subsequently denied

Plaintiff's WIG increase, placed her on AWOL status, and changed her duties and responsibilities, Dews-Miller filed her first complaint with the Office of Special Counsel ("OSC") in December of 1995 alleging that these actions were taken in retaliation for her whistleblowing activity.

The OSC concluded that there was no causal connection between the personnel actions in question and Plaintiff's protected activity, relying principally on the fact that the supervisors responsible for the personnel actions were not the subject of the investigation and that they suffered no adverse impact as a result of it. Further, the OSC found no statements in the record suggesting animus toward Plaintiff because of her protected activity. Letter from J. Sandra Thomas, Complaints Examiner, OSC, to Rose Dews-Miller (Oct. 31, 1996) (Ex. 24 to Def.'s Mot. at 2). Dews-Miller appealed this decision to the Merit Systems Protection Board ("MSPB"), which dismissed her appeal as untimely filed. Dews-Miller v. United States Info. Agency, No. DC-1221-97-0441-W-1 (M.S.P.B. May 2, 1997) (Ex. 28 to Def.'s Mot.).

At the end of her one-year, temporary appointment, which expired on December 9, 1996, Plaintiff filed a second complaint with the OSC alleging that her termination from USIA was in retaliation for her whistleblowing activity. See Letter from Debyn R. Brown, Docket Clerk, OSC, to Rose M. Dews-Miller re: OSC File No. MA-97-0571 (Jan. 14, 1997) (Ex. 31 to Def.'s Mot.). Again, the

OSC concluded that there was no causal connection between Plaintiff's protected activity and her termination. The OSC found that it "would be unable to establish that the official's actions were other than a legitimate attempt to enforce the requirements of the settlement agreement." Letter from J. Sandra Thomas, Complaints Examiner, OSC, to Rose M. Dews-Miller re: OSC File No. MA-97-0571 (Aug. 25, 1997) (Ex. 32 to Def.'s Mot. at 2).

Plaintiff appealed the OSC's decision to the MSPB. The MSPB dismissed her appeal for lack of jurisdiction, reasoning that, because the agency's decision not to renew her temporary appointment was made pursuant to the terms of the 1995 Settlement Agreement, it was not a "personnel action" as defined in 5 U.S.C. § 2302(a)(2)(A). Because it was not a "personnel action," the MSPB concluded that it did not have jurisdiction over the claim. Dews-Miller v. United States Info. Agency, No. DC-1221-98-0147-W-1 (M.S.P.B. Mar. 3, 1998) (Ex. 36 to Def.'s Mot. at 4).

Plaintiff appealed the MSPB's dismissal to the Court of Appeals for the Federal Circuit, where the conclusion and reasoning of the Administrative Judge were affirmed. In affirming, the Federal Circuit explicitly found (1) that the 1995 Settlement Agreement was valid; and (2) that Dews-Miller was terminated pursuant to the 1995 Settlement Agreement, and not in retaliation for her whistleblowing activity. Dews-Miller v. United States

<u>Info. Agency</u>, 194 F.3d 1330, 1999 WL 129642, at *3-4 (Fed. Cir. 1999) (unpublished decision).

**F.  The Current Civil Action**

To summarize this tangled tale, Plaintiff initiated at least four different administrative proceedings, in addition to those settled in the 1995 Settlement Agreement, before filing the Amended Complaint in this action: (1) the October 10, 1995 OCR complaint alleging various violations by USIA of the 1995 Settlement Agreement in retaliation for Plaintiff's prior EEO activity, in violation of Title VII; (2) the March 28, 1996 OCR complaint alleging retaliation for Plaintiff's prior EEO activity in the form of various adverse actions, in violation of Title VII; (3) the December 1995 OSC complaint alleging retaliation for Plaintiff's whistleblowing activity in the form of the agency's denial of her WIG increase, her placement on AWOL status, and changes in her duties and responsibilities, in violation of 5 U.S.C. § 2302; and (4) the OSC complaint alleging retaliation for her whistleblowing activity in the form of Plaintiff's December 9, 1996 termination, in violation of 5 U.S.C. § 2302.

The first and third complaints were dismissed on appeal as untimely by, respectively, the EEOC and MSPB.  The claims in the third complaint were also brought in a suit before this Court in 1998, which was dismissed for lack of jurisdiction.  The MSPB dismissed the fourth complaint, and the dismissal was affirmed on

appeal by the Federal Circuit, which has exclusive jurisdiction over appeals from the MSPB. 28 U.S.C. § 1295(a)(9); see 5 U.S.C. § 7703(a), (b). Thus, only the second complaint--the March 28, 1996 OCR complaint alleging violations of Title VII--properly exhausted the appropriate administrative remedies and is subject to this Court's jurisdiction.

On March 15, 2007, Plaintiff filed a pro se Amended Complaint in this action, bringing twenty-one[7] counts against Defendant for the period between the execution of the 1995 Settlement Agreement and the December 9, 1996 termination of employment. Only Count I explicitly raises the issue presented in the March 28, 1996 OCR complaint: whether Defendant engaged in unlawful retaliation for Plaintiff's prior EEO activity, in violation of Title VII. Count I challenges Plaintiff's termination, the two "minimally successful" ratings, the placement on AWOL status, and the WIG increase denial under both Title VII and the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302.[8]

---

[7]     The last count in Plaintiff's Amended Complaint is numbered "XXII", but there is no "Count XX". Thus, there are a total of only twenty-one counts. To avoid confusion, the numbers used in the First Amended Complaint to identify counts--including those that are erroneous--are used.

    A table summarizing the twenty-one counts brought in the Amended Complaint, as well as the procedural history of each, is attached as Appendix A to this Opinion.

[8]     Technically, Count I only challenges Plaintiff's termination under Title VII; her "minimally successful" ratings, placement on AWOL status, and WIG increase denial are alleged as

The Amended Complaint includes three other counts that were previously raised in administrative proceedings. Specifically, Dews-Miller reasserts the claims in her October 10, 1995 OCR complaint that USIA violated the 1995 Settlement Agreement by: (1) failing to generate a SF-50 for Plaintiff's detail to the Office of Comptroller (Count XI); (2) failing to provide Plaintiff training for her new position as a Budget Analyst during her detail to the Office of Comptroller (Count XV); and (3) failing to counsel Plaintiff before she received the two "minimally successful" performance ratings (Count XXI).

The remaining seventeen counts were not raised in any prior proceeding, whether administrative or judicial.[9] Counts II and III allege that USIA violated 5 U.S.C. § 4302(b) and the agency's MOA

_____

acts of retaliation for Plaintiff's 1994 whistleblowing activity, which was the subject of the 1995 and 1996 OSC complaints. However, because Plaintiff was proceeding pro se when she filed her Amended Complaint, the Complaint is held to "less stringent pleading standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); Greenhill v. Spellings, 482 F.3d 569, 572 (D.C. Cir. 2007). Thus, Count I will be interpreted as alleging violations of both Title VII and 5 U.S.C. § 2302 with respect to all included events.

It should also be noted that Plaintiff secured counsel in this case on October 2, 2007, before responding to the present Motion.

[9]     This is true if these claims are brought under the statutes and regulations cited in the Amended Complaint, but not necessarily true if, as Plaintiff has since argued in her Opposition to the present Motion, the entire Amended Complaint is brought under Title VII. Because Plaintiff filed the Amended Complaint pro se, both interpretations of the counts listed--that they are brought under the authorities cited and that they are brought under Title VII--are addressed.

by failing to assist Dews-Miller in the two periods for which she received "minimally successful" ratings.  Count IV alleges various violations of the First and Fifth Amendments.  Counts V-IX allege that USIA violated Title 5 U.S.C. § 7513(b)--which requires thirty days' advance written notice for removal, suspension for 14 days or more, reduction in grade or pay, or furlough for 30 days or less-- when the agency terminated Plaintiff's employment and appointment, denied the WIG increase, converted her career appointment to a temporary appointment, and placed her on AWOL status.   Count X alleges that USIA failed to comply with the June 23, 1989 EEOC direction to pay Plaintiff for the time spent on AWOL status.

Counts XII, XIII, XVII, XVIII, and XXI allege that USIA violated the 1995 Settlement Agreement by: (1) failing to pay Plaintiff for overtime accrued at the Office of Comptroller (Count XII); (2) failing to promote Plaintiff in accordance with the MOA during her detail to the Office of Comptroller (Count XIII); (3) failing to provide informal performance evaluations during Plaintiff's three-month probationary period (Count XVII); (4) failing to rate Plaintiff's performance at the end of her three-month probationary period (Count XVIII); and (5) failing to keep the terms of the Agreement confidential (Count XXII).

Finally, Counts XIV, XVI, and XIX challenge the validity of the 1995 Settlement Agreement, arguing that: (1) the Agreement is void for vagueness because Plaintiff's duties were not adequately

described in ¶ 1 (Count XIV); (2) the Agreement purports to obligate the Office of Personnel, which was not a party to the Agreement (Count XVI); and (3) the Agreement does not require Defendant to act in good faith, although it explicitly requires Plaintiff to do so (Count XIX).

Defendant filed the present Motion to Dismiss on the grounds that several of the counts fail to state a claim, that several are subject to the Federal Circuit's exclusive subject matter jurisdiction, and that, as to several others, Plaintiff is barred by the doctrines of res judicata and collateral estoppel, as well as the requirement to exhaust administrative remedies. Defendant also requested, in the alternative, that summary judgment be granted on all counts. On February 26, 2008, the parties were ordered to file supplemental briefing on the substantive impact of this Court's ruling in the 1998 case on the present case [Dkt. Nos. 46, 47, 48]. After the conclusion of discovery, Defendant filed an additional supplemental memorandum [Dkt. No. 56].

## II. Standard of Review

Under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear her case. See Jones v. Exec. Office of the President, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth

in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citations and quotations omitted). The Court may consider matters outside the pleadings. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court may also rest its decision on the Court's own resolution of disputed facts. Id.

Under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted) (citing Twombly, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. Under the standard set forth in Twombly, a "court deciding a motion to

-16-

dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotations marks and citations omitted); see also Tooley v. Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that Iqbal invalidated Aktieselskabet).

Under Rule 56, summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is, it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. The Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)

The twenty-one counts in Plaintiff's Amended Complaint can be grouped into five categories: (1) the constitutional claims under the First and Fifth Amendments; (2) the claims under the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101, et seq.; (3) Count X, which is pled under 29 C.F.R. § 1614.108; (4) the claims alleging violations of the 1995 Settlement Agreement; and (5) the Title VII claims. Because Dews-Miller filed her Amended Complaint pro se, it will be liberally construed. The Court will first consider whether the pro se Amended Complaint as pled survives Defendant's Motion to Dismiss, and will then consider whether the claims survive the Motion if, as Dews-Miller argues in her Opposition, all twenty-one counts are brought under Title VII, rather than as they are pled in the Amended Complaint.

### A.    Pro Se Amended Complaint as Pled

#### 1.    Count IV, Alleging Constitutional Claims

Defendant argues that Count IV, the only Count which presents Constitutional claims, should be dismissed because Title VII and the CSRA provide the exclusive remedies for complaints of job discrimination. In Count IV, Dews-Miller alleges that Defendant USIA has "interfered with and/or deprived Plaintiff of her rights to speech and association, liberty, procedural due process, substantive due process, equal protection, and privacy under the First and Fifth Amendments to the Constitution of the United

-18-

States." Am. Compl. ¶ 57. These constitutional claims are premised on the same "complained of acts and omissions by Defendant USIA in terminating Plaintiff's federal employment" that form the basis of the other claims in the Amended Complaint. Id. ¶ 55. However, Dews-Miller does not specify which acts and omissions form the basis of each constitutional claim in Count IV.

To the extent that the claims included in Count IV are based upon allegations of discrimination, they are dismissed for lack of subject matter jurisdiction because Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment. Brown v. Gen. Servs. Admin., 425 U.S. 820, 96 S.Ct. 1961 (1976). Thus, Plaintiff's equal protection claim is dismissed because it necessarily "relate[s] to the same core allegations of racial discrimination that support [her] Title VII claim," and Plaintiff's exclusive remedy lies under Title VII. Lewis v. Cohen, No. 97-5003, 1997 WL 362754, at *1 (D.C. Cir. May 15, 1997) (unpublished decision).

However, even those damages claims that do not clearly allege discrimination--such as, for example, Plaintiff's procedural due process or First Amendment claims--must be dismissed. The Supreme Court has declined to extend a judicially created right of action for damages in federal employment claims, given the comprehensive scheme of the CSRA and Congress's institutional competence to craft appropriate relief for aggrieved federal employees. Bush v. Lucas,

462 U.S. 367, 103 S.Ct. 2404 (1983). Therefore, any claims brought under the First and Fifth Amendments that seek damages are **dismissed** for failure to state a claim.

Finally, Dews-Miller seeks an order from this Court "compel[ling] Defendant to reinstate Plaintiff with Defendant" and back pay. Am. Compl. at 29. Constitutional claims seeking equitable relief are subject to a presumption of judicial review. Steadman v. Governor, United States Soldiers' and Airmen's Home, 918 F.2d 963, 967 (D.C. Cir. 1990). However, the law in this Circuit is clear that such claims are also subject to the CSRA's exhaustion requirement when they are intertwined with, or predicated on the same facts as, CSRA claims. Id.; Convertino v. Dep't of Justice, 393 F.Supp.2d 42, 48 (D.D.C. 2005). As discussed above, the only adverse action for which Dews-Miller exhausted her administrative remedies under the CSRA was her termination, which was challenged in the second OSC complaint. Dews-Miller's constitutional challenge is therefore limited to her termination.

However, even assuming arguendo that Plaintiff may challenge agency actions apart from her termination, Count IV fails to state a claim under the First Amendment. While Dews-Miller does not specify what speech underlies her First Amendment claim, the Amended Complaint includes no facts establishing that Dews-Miller

ever spoke as a citizen, rather than as an employee.[10] Thus, she "has no First Amendment cause of action based on [] her employer's reaction to the speech." Garcetti v. Caballos, 547 U.S. 410, 419, 126 S.Ct. 1951 (2006). Further, there are no facts in the Amended Complaint that would establish a violation of Plaintiff's right of association.

Dews-Miller also fails to plead sufficient facts under the "reputation plus" standard to allege a liberty interest arising from her termination. Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995) (under the "reputation plus" standard, plaintiffs must show that the government altered their status in a tangible way, and that an imposition of stigma or injury to reputation accompanied this change in status). Similarly, as Defendant points out, there is no factual basis in the Amended Complaint for the claim that Plaintiff's privacy interests were violated when she was terminated.

Dews-Miller's remaining constitutional claims allege that her property interest in continued employment was denied, in violation of her Fifth Amendment substantive and procedural due process

---

[10]     Review of the agency's American Express credit card usage was part of Dews-Miller's official duties, and so reporting the abuse to the Inspector General was required by her job. Am. Compl. ¶¶ 14-15. In her Opposition to the Motion to Dismiss, Plaintiff does not respond to Defendant's argument that the Amended Complaint fails to allege citizen speech. The argument is therefore deemed conceded. D.D.C. Local Rule 7(b); Fox v. Am. Airlines, Inc., Civ. No. 02-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003), aff'd, Fox v. Am. Airlines, Inc., 389 F.3d 1291 (D.C. Cir. 2004).

rights, when she was terminated. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Private employment contracts may create a property interest entitled to due process protection. Int'l Union, United Gov't Sec. Officers of America v. Clark, No. 02-1484, 2010 WL 1524816, at *5 (D.D.C. April 15, 2010). "To determine whether [one] ha[s] a property interest in continued employment, we ask if [s]he ha[s] a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts, expressed or implied), that he would continue in his job." Hall v. Ford, 856 F.2d 255, 265 (D.C. Cir. 1988).

The 1995 Settlement Agreement required Dews-Miller, at a minimum, to achieve a "Fully Successful" rating during her six-month detail to the Office of Comptroller or, failing that, during her subsequent three-month probationary period. Dews-Miller's failure to achieve these ratings required Defendant to place her into a one-year, temporary position, which the agency did in 1995. The question, then, is whether Dews-Miller had a property interest in the one-year, temporary position from which she was terminated.

The Court concludes that she did not. Dews-Miller explicitly agreed "to resign from USIA not later than the end of that temporary position." 1995 Settlement Agreement at ¶¶ 1-6 (Ex. 1 to Def.'s Mot.). Given that she agreed to resign, it is difficult to imagine what basis she might have had for believing she would

continue to be employed by Defendant. <u>See</u> <u>also</u> <u>Dews-Miller v.</u>
<u>United States Info. Agency</u>, No. DC-1221-98-0147-W-1 (M.S.P.B. Mar.
3, 1998) (Ex. 36 to Def.'s Mot. at 4) (describing December 9, 1996
"termination" as USIA's failure to renew Dews-Miller's temporary
appointment, as required under the terms of the Agreement).

Given these facts, the due process claims in Count IV are
dismissed because Dews-Miller had "no objective basis for believing
that [she would] continue to be employed indefinitely" at the time
of her termination, and so had no property interest in her
continued employment. <u>Hall</u>, 856 F.2d at 265. Thus, Count IV is
**dismissed** in its entirety.

### 2. Counts I-III and V-IX, Alleging Claims Under the Civil Service Reform Act, 5 U.S.C. § 1101, <u>et</u> <u>seq</u>.

The <u>pro</u> <u>se</u> Amended Complaint includes a total of eight counts
that allege violations of the CSRA, 5 U.S.C. § 1101, <u>et</u> <u>seq</u>. First,
Count I challenges Plaintiff's "minimally successful" ratings,
placement on AWOL status, denial of the WIG increase, and
termination under the Whistleblower Protection Act, 5 U.S.C. §
2302. Second, Counts II and III allege USIA's failure, in violation
of 5 U.S.C. § 4302, to comply with procedural requirements to
counsel and assist employees with "minimally successful ratings" in
the two periods in which Plaintiff received them. Finally, Counts
V-IX allege Defendant's failure to provide at least 30 days'
written notice, as required under 5 U.S.C. § 7513, prior to Dews-
Miller's termination, denial of the WIG increase, termination of

-23-

appointment to OIG, conversion of career appointment to a temporary appointment, and placement on AWOL status.

The CSRA replaced the preexisting "patchwork system [of review of federal employment decisions] with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration." United States v. Fausto, 484 U.S. 439, 445, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). One of the fundamental "structural elements" of this integrated scheme of review "is the primacy of the [MSPB] for administrative resolution" of personnel disputes, and "the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." Id. at 449. Thus, "under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." Weaver v. United States Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996).

With the exception of the claims in Count I, Dews-Miller has not challenged any of these employment actions in any prior administrative proceedings. Plaintiff has therefore not exhausted any CSRA claims alleged in Counts II, III, and V-IX. In contrast, the claims alleged in Count I were previously raised in the two OSC complaints. However, the first OSC complaint, challenging the performance ratings, placement on AWOL status, and denial of the WIG increase, was dismissed as untimely by the MSPB. Plaintiff

therefore has failed to exhaust administrative remedies for those claims. The second OSC complaint, challenging only Dews-Miller's termination, was dismissed by the MSPB because it was not a "personnel action" under the CSRA. Dews-Miller appealed the decision to the Federal Circuit, which affirmed the dismissal. Dews-Miller v. United States Info. Agency, 1999 WL 129642 at *3. Therefore, Dews-Miller is collaterally estopped from relitigating the issue of whether her termination is challengeable under the CSRA.

However, Dews-Miller argues that her failure to exhaust the CSRA claims does not prevent her from bringing them in the Amended Complaint, since this is a "mixed case". When a plaintiff presents a "mixed case", i.e., an adverse personnel action subject to direct appeal to the MSPB coupled with a discrimination claim, she has several procedural paths available to her. One option is to file a complaint with the agency's EEO office and, after the agency issues a final decision on both the discrimination claim and the appealable personnel action, and then to bring suit directly in federal court without exhausting the CSRA's administrative remedies. See 5 U.S.C. § 7702.

To qualify as a "mixed case" under 5 U.S.C. § 7702, Plaintiff's CSRA claims must allege employment actions, specifically defined by the CSRA as "adverse," which are directly appealable to the MSPB. Greenhouse v. Geren, 574 F.Supp.2d 57, 65-

68 (D.D.C. 2008). Those actions directly appealable to the MSPB include (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less. 5 U.S.C. § 7512.

Counts II and III allege Defendant's failure to comply with procedural requirements to counsel and assist employees, and Counts V-IX allege Defendant's failure to provide written notice prior to adverse actions. None of these qualify as adverse employment actions that are directly appealable to the MSPB under § 7512.[11] See, e.g., Cruz v. Dep't of the Navy, 934 F.2d 1240 (Fed. Cir. 1991) (finding no mixed case where plaintiff alleged Title VII and Whistleblower Protection Act claims but underlying event was not adverse action appealable to MSPB under § 7512). Thus, only the claims asserted in Count I, which do involve adverse actions directly appealable to the MSPB, support Dews-Miller's argument that this is a mixed case, and therefore not subject to the CSRA's exhaustion requirement if she chooses to file a mixed complaint with the agency's EEO office.

However, Dews-Miller has followed a different procedural route in bringing Count I than those established in § 7702 for mixed cases:

_____

[11]    Those actions are, of course, adverse employment actions under Title VII. See Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999) and its progeny.

When an employee challenges an adverse
personnel action that is subject to appeal to
the MSPB and that is coupled with a
discrimination claim-a "mixed case"-he must
navigate a procedural regime of Title VII
regulations and Civil Service Reform Act
regulations. 5 U.S.C. § 7702. . . . First, the
aggrieved party must decide whether to file a
"mixed case complaint" with his agency's EEO
office or file a "mixed case appeal" directly
with the MSPB. 29 C.F.R. § 1614.302(b). If he
or she selects the agency EEO route, the
aggrieved party has 30 days from the EEO's
final decision to file an appeal with the MSPB
or a civil discrimination action in federal
district court. 29 C.F.R. §§
1614.302(d)(1)(ii), 1614.310(a).

If an aggrieved party elects to appeal
directly to the MSPB or appeals to the MSPB
after pursing the claim with the relevant EEO
office, an Administrative Judge makes an
initial decision, which becomes final within
thirty-five days unless either party or the
MSPB itself seeks further review. 5 C.F.R. §
1201.113. Once the MSPB decision is final, the
complainant has three options: he or she (1)
may appeal the discrimination claim to the
EEOC within 30 days, 5 C.F.R. § 1201.157; (2)
appeal the entire claim to the appropriate
district court within 30 days; or (3) appeal
the nondiscrimination claim to the Court of
Appeals for the Federal Circuit within 60
days. 5 U.S.C. § 7703(b). When the MSPB's
decision dismisses the challenge on procedural
grounds and does not reach the merits of the
case, the Federal Circuit-rather than federal
district courts-retain jurisdiction. Powell v.
Dept. of Defense, 158 F.3d 597, 599 (D.C. Cir.
1998).

Taylor v. Mabus, No. 08-0984, 2010 WL 582033, at *3 (D.C. Cir. Feb.

18, 2010).

The statute provides a specific, albeit Byzantine, procedure

requiring that, when a case is first filed, it must be filed at

that time as a mixed complaint complying with the statute's regulations. In this case, Plaintiff filed separate claims before the OSC and EO office and did not follow the procedures set forth in § 7702. She cannot now argue that her discrimination claims and personnel action claims can be treated as a mixed case at this late date.

Any CSRA claims alleged in Counts I-III and V-IX are therefore **dismissed**. Because this Court must interpret Plaintiff's <u>pro se</u> Amended Complaint liberally, however, it will also consider Plaintiff's argument that Counts I-III and V-IX state discrimination claims under Title VII. <u>See</u> <u>infra</u>, Section III.B.

### 3. Count X, Alleging Defendant's Violation of 29 C.F.R. § 1614.108

Count X alleges that the agency failed to comply with a June 23, 1989 EEOC order directing USIA to pay Plaintiff for the time she was placed on AWOL status. Am. Compl. ¶¶ 73-75. 29 C.F.R. § 1614.503(g) establishes that "[w]here the Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision." Plaintiff has not alleged, and there is no evidence in the record to suggest, that she received the required notice from the Commission. Def.'s Mot. at 33-34. Because Plaintiff failed to respond to Defendant's argument that this requirement was not met,

the argument is deemed conceded. D.D.C. Local Rule 7(b); <u>Fox v. Am. Airlines, Inc.</u>, 2003 WL 21854800 at *2. Thus, Count X is **dismissed** for failure to state a claim.

### 4. Counts XI-XXII, Alleging Violations of the 1995 Settlement Agreement

Counts XI-XXII allege various breaches of the parties' 1995 Settlement Agreement in the period between execution of the Agreement and Plaintiff's termination on December 9, 1996. In 1998, Dews-Miller brought suit in this Court alleging three of the same violations of the Settlement Agreement by Defendant that are contained in the <u>pro se</u> Amended Complaint in this case: (1) that USIA failed to generate a SF-50 for Plaintiff's detail to the Office of Comptroller (Count XI); (2) that USIA failed to provide Plaintiff with training at the Office of Comptroller (Count XV); and (3) that USIA failed to provide Plaintiff with counseling before her "minimally successful" ratings (Count XXI). The remaining Counts--Counts XII-XIV, XVI-XX, and XXII--are asserted for the first time in this proceeding.

### a. Res Judicata and Collateral Estoppel

This Court dismissed Dews-Miller's 1998 case with prejudice. First, the Court concluded that the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, vests exclusive jurisdiction in the United States Court of Federal Claims over contract disputes when the United States is a defendant and the amount in controversy exceeds

$10,000. Second, to the extent the claims were based on discriminatory acts covered by Title VII, the Court concluded that Dews-Miller had failed to exhaust her administrative remedies because the EEOC had dismissed her appeal of the October 10, 1995 OCR complaint as untimely. Dews-Miller v. Duffy, No. 98-2417, slip op. at 3-6 (D.D.C. Feb. 12, 1999). Defendant now argues that the related doctrines of claim preclusion and issue preclusion bar Dews-Miller from bringing any of Counts XI-XXII.

Res judicata[12] prevents a party from re-litigating an issue or claim decided in a previous proceeding in order to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415 (1980) (citation omitted). Under claim preclusion, a subsequent lawsuit is barred when the prior litigation "(1) involv[ed] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."

_____

[12] The term "res judicata" is often used to refer specifically to claim preclusion, or the general rule that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. at 94. However, "res judicata" may also refer broadly to both claim preclusion and issue preclusion, or the preclusive effect of a court's final decision on an issue of fact or law necessary to its judgment. Id. at 94 n.5. To prevent confusion, the Court will use "claim preclusion" to refer to the former doctrine, and "issue preclusion" or "collateral estoppel" to refer to the latter.

Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006) (citing Blonder-Tongue Lab., Inc. v. Univ. of Ill. Foundation, 402 U.S. 313, 323-24, 91 S.Ct. 1434 (1971)). Similarly, collateral estoppel, or issue preclusion, requires that "(1), the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2), the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3), preclusion in the second case must not work a basic unfairness to the party bound by the first determination." Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (citation and internal quotation omitted).

Plaintiff argues that the February 12, 1999 Order dismissing her 1998 case has no preclusive effect because this Court's review must have been limited to USIA's December 11, 2005 decision denying Plaintiff's request to reopen her claims, and not to consideration of the claims themselves. Pl.'s Opp'n to Def.'s Supp. Mem. at 2-3 [Dkt. No. 47]. First, Plaintiff's argument relies on the erroneous conclusion that the "history of the Plaintiff's claims" before the 1998 case reveals that the agency's decision not to reopen the investigation of her claims was the only issue presented to the agency and on appeal to the EEOC. Id. In fact, as the record shows, the issue presented on appeal to the EEOC was "whether or not the agency breached the settlement agreement." Dews-Miller v. Duffey, No. 01962642, 1997 WL 619018, at *1 (E.E.O.C. Sep. 25, 1997).

Second, and as Plaintiff seems to recognize, the complaint filed by Dews-Miller in the 1998 case clearly "charge[d] the United States Information Agency . . . with violating the terms of a January 30, 1995, Settlement Agreement." Complaint at 1-2, Dews-Miller v. Duffy, No. 98-2417 (D.D.C. Oct. 9, 1998) (Ex. A to Def.'s Mot.). In addition, the complaint sought Plaintiff's reinstatement to full-time employment status, restoration of all annual and sick leave, within grade promotions which were denied, performance bonus pay which was denied, and other compensation. Id. Such relief would not have been appropriate if Plaintiff was challenging only the agency's decision not to reopen her claims. Plaintiff's attempt to paint the 1998 complaint as one presenting the sole issue of whether USIA was justified in denying her request to reopen the EEO case is therefore rejected.

Finally, Plaintiff argues that the February 12, 1999 dismissal has no preclusive effect because it was a dismissal for lack of subject matter jurisdiction, and not a final adjudication on the merits. It is true that, "[u]nless the judgment ordering dismissal specifies otherwise, . . . the mere dismissal of a claim for lack of subject matter jurisdiction does not operate as an adjudication of that claim on the merits" for the purposes of claim preclusion. Lowe v. United States, 79 Fed. Cl. 218, 227-30 (Fed. Cl. 2007) (internal citations omitted). However, issue preclusion may still prevent parties from relitigating specific jurisdictional issues

when they were actually litigated and were necessary to the outcome of the first action. Id.; Hall v. Clinton, 143 F.Supp.2d 1, 5 (D.C. Cir. 2001) ("A judgment that subject matter jurisdiction is lacking constitutes res judicata as to that jurisdictional issue."); GAF Corp. v. United States, 818 F.2d 901, 912 n.72 (D.C. Cir. 1987); Dozier v. Ford Motor Co., 702 F.2d 1189, 1192 (D.C. Cir. 1983). The jurisdictional issue decided in the February 12, 1999 Order therefore may have preclusive effect under the doctrine of collateral estoppel, provided the three-part test outlined in Martin, 488 F.3d at 454, is satisfied.[13]

### b. Application of the Martin Test to Counts XI, XV, and XXI

First, Martin requires that "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case." Martin, 488 F.3d at 454. The same issue raised here--whether this Court has jurisdiction under the Tucker Act for claims alleging breach of contract--was contested in the 1998 proceeding with respect to Counts XI, XV, and XXI. The

---

[13]    Defendant also argues that the Federal Circuit's decision in Dews-Miller v. United States Info. Agency, 1999 WL 129642, at *3, that the 1995 Settlement Agreement was not breached precludes Counts XI-XXII. However, as explained above, because the Federal Circuit's affirmance of the MSPB's dismissal for lack of jurisdiction did not constitute a final adjudication on the merits, claim preclusion does not apply. Further, because the Federal Circuit does not provide any detail on the breaches alleged by Dews-Miller, other than stating that "Dews-Miller asserted that USIA had breached the agreement," it is impossible to determine whether identical issues were presented and decided in the Federal Circuit proceeding for the purposes of issue preclusion. Id. at *2.

second <u>Martin</u> requirement--that the issue must have been actually and necessarily determined in the prior case--is also met, as the determination of the jurisdictional issue was necessary to this Court's February 12, 1999 Order of dismissal. Third, <u>Martin</u> requires that preclusion in the second case not work a basic unfairness to the party bound by the first determination. <u>Id.</u> There is no basic unfairness suffered by Dews-Miller by giving the Order preclusive effect because she had a full opportunity to litigate the same jurisdictional issue in the 1998 case. <u>See</u> <u>Milton S. Kronheim & Co., Inc. v. District of Columbia</u>, 91 F.3d 193, 197 (D.C. Cir. 1996) ("[T]here is a fair probability of unfairness in estopping the relitigation of an issue where the fullness of its first litigation is uncertain."). Thus, collateral estoppel applies to prevent relitigation of this Court's decision that it lacks jurisdiction over these counts unless Plaintiff can demonstrate a "cure" sufficient to repair the prior jurisdictional defect.

In this Circuit, "the 'curable defect' doctrine is limited to events that occur after the original dismissal for lack of jurisdiction," and "a plaintiff cannot relitigate a jurisdictional dismissal by relying upon those facts that existed at the time of the first dismissal." <u>Citizens Electronics Co., Ltd. v. OSRAM GmBH</u>, 225 Fed. Appx. 890, 893 (Fed. Cir. 2007) (discussing D.C. Circuit law on "curable defect" doctrine). Plaintiff offers no new facts to cure the defects which existed in this Court's direct jurisdiction

over Counts XI-XXII. Instead, as discussed below, she argues that the Court now has ancillary jurisdiction over all claims alleging violations of the 1995 Settlement Agreement. Therefore, the Court finds that the three-part test in <u>Martin</u> has been satisfied.

### c. Counts XII-XIV, XVI-XX, and XXII

The other counts alleging violations of the 1995 Settlement Agreement (Counts XII-XIV, XVI-XX, and XXII) were not raised in either the October 10, 1995 OCR complaint that was dismissed as untimely by the EEOC or the 1998 case. Because this Court's decision in the 1998 case was premised in part on the finding that Plaintiff failed to timely file an appeal of the October 10, 1995 OCR complaint, there is no identity between the jurisdictional issues presented by these counts and those decided in the 1998 case. Thus, collateral estoppel does not apply to prevent Plaintiff from bringing Counts XII-XIV, XVI-XX, and XXII.

However, the reasoning underlying dismissal of the 1998 case applies equally to these claims. If Counts XII-XIV, XVI-XX, and XXII are properly interpreted as alleging breaches of contract, which the Court concludes they are, they "involve[] a contract dispute with the United States as a defendant and an amount in controversy of over $10,000." <u>Dews-Miller v. Duffey</u>, No. 98-2417, slip op. at 3 (D.D.C. Feb. 12, 1999). Thus, there is no direct jurisdiction over these claims because "[t]he Tucker Act vests

exclusive jurisdiction of such claims in the United States Court of Federal Claims." Id. at 3-4; 28 U.S.C. §§ 1346(a)(2), 1491.

### d. Ancillary Jurisdiction

Plaintiff next argues that this Court has ancillary jurisdiction over Counts XI-XXII because they involve the same facts as the remaining claims brought under Title VII. See Rochon v. Gonzales, 438 F.3d 1211, 1215 (D.C. Cir. 2006) (noting possibility of ancillary jurisdiction in District of Columbia federal District Court over claims subject to Tucker Act when they are related to Title VII claims). "Ancillary jurisdiction should be exercised only to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, or to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Franklin-Mason v. Penn, 616 F.Supp.2d 97, 101 (D.D.C. 2009) (citations and internal quotations omitted); see also Shaffer v. Veneman, 325 F.3d 370, 373 (D.C. Cir. 2003).

However, even if the Amended Complaint meets the test for ancillary jurisdiction, see Franklin-Mason, 616 F.Supp.2d at 101, Counts XI-XXII must still be dismissed because the statute of limitations for claims alleging breach of contract expired before Dews-Miller filed suit in this Court. The statute of limitations for any claim over which the Federal Circuit has exclusive jurisdiction, including those subject to the Tucker Act, is six

years from the date on which the claim first accrues. 28 U.S.C. §
2501. The events underlying Counts XI-XXII all took place in the
period between execution of the 1995 Settlement Agreement and Dews-
Miller's termination on December 9, 1996--nearly ten years before
Plaintiff filed her first Complaint in this action.[14]

Thus, Counts XI-XXII, alleging violations of the 1995
Settlement Agreement, are **dismissed**.[15] Even if Counts XII-XIV, XVI-
XX, and XXII are construed as alleging violations under Title VII,
they must be either dismissed for failure to exhaust administrative
remedies--since many were never raised in any administrative
proceeding--or, if sufficiently related to the Title VII claims
that Plaintiff did exhaust, found to fit within the scope of her
Title VII lawsuit. Whether these counts fall within the scope of
Plaintiff's Title VII lawsuit is discussed <u>infra</u> in Section III.B.

B.    **Plaintiff's Title VII Claims**

As noted above, only Count I explicitly asserts claims of
discrimination and retaliation under Title VII. However, in her

---

[14]    Because Plaintiff did not respond to Defendant's statute
of limitations argument in her Opposition, it is deemed conceded.
D.D.C. Local Rule 7(b); <u>Fox v. Am. Airlines, Inc.</u>, 2003 WL
21854800, at *2.

[15]    Defendant also argues that Plaintiff's failure to exhaust
the administrative procedures established in 29 C.F.R. §§
1604.504(a) and (b) for allegations of noncompliance with an
agreement settling Title VII claims requires dismissal of these
Counts. Def.'s Mot. at 34-35.  Because this Court dismisses Counts
XI-XXII as pled on other grounds, this argument need not be
addressed.

Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, Plaintiff argues that all of the counts in the Amended Complaint are brought under Title VII,[16] and that they all allege retaliation for her prior EEO activity. If credited, this argument could preserve many of the counts dismissed above under Rules 12(b)(1) and 12(b)(6). However, to survive the Defendant's Motion to Dismiss, any Title VII claims must be related to the claims raised in the March 28, 1996 OCR complaint (the only complaint, as noted above, that exhausted the administrative process), and this Court must have jurisdiction over them.

### 1. Failure to Exhaust Administrative Remedies

After a Title VII complainant has exhausted the EEOC's administrative remedies, she may bring a Title VII lawsuit in federal court alleging the same, or related, claims. Our Circuit has delineated the proper scope of a Title VII lawsuit following an exhausted EEOC complaint:

> A Title VII lawsuit . . . is limited in scope
> to claims that are like or reasonably related
> to the allegations of the [EEOC] charge and
> growing out of such allegations. At a minimum,

---

[16]     Plaintiff's argument that the entire Amended Complaint is brought under Title VII also extends to the constitutional claims contained in Count IV. However, Count IV simply states that Defendant's "acts and omissions" violated Dews-Miller's First and Fifth Amendment rights, and includes no new facts or allegations that would justify interpreting it as a separate Title VII claim. In short, Count IV cannot be interpreted as anything but an attempt to challenge the agency's adverse actions under the Constitution, and so cannot reasonably be considered a part of Plaintiff's Title VII lawsuit.

> the Title VII claims must arise from the
> administrative investigation that can
> reasonably be expected to follow the charge of
> discrimination. The administrative charge
> requirement serves the important purposes of
> giving the charged party notice of the claim
> and narrowing the issues for prompt
> adjudication and decision. Although it is true
> that the administrative charge requirement
> should not be construed to place a heavy
> technical burden on 'individuals untrained in
> negotiating procedural labyrinths,' <u>Loe v.
> Heckler</u>, 768 F.2d 409, 417 (D.C. Cir. 1985),
> it is also true that 'the requirement of some
> specificity in a charge is not a 'mere
> technicality.'' <u>Rush v. McDonald's Corp.</u>, 966
> F.2d 1104, 1111 (7th Cir. 1992). <u>A court
> cannot allow liberal interpretation of an
> administrative charge to permit a litigant to
> bypass the Title VII administrative process</u>.

<u>Park v. Howard University</u>, 71 F.3d 904, 907, (D.C. Cir. 1995)

(internal citations and quotations omitted) (emphasis added).

The Title VII claims in the March 28, 1996 OCR complaint that were considered, and dismissed, by the EEOC Administrative Judge include the following: (1) the agency's failure to provide notice to and otherwise assist Plaintiff in advance of her "minimally successful" ratings, as required by USIA's MOA, Part V-A, Section 453.2(c); (2) the agency's placement of Plaintiff on AWOL status; (3) the agency's denial of a WIG increase, in violation of USIA's MOA, Part V-A, Section 453.2(c); (4) Dews-Miller's termination from the agency; and (5) USIA's denial of end-of-service payments in December of 1996.

Because Counts I-III allege claims that are nearly identical to those made in the March 28, 1996 OCR complaint, they clearly fall within the scope of Plaintiff's Title VII lawsuit. Most of the remaining counts, including Counts V-XIII, XV, XVII, XVIII, XXI, and XXII, allege USIA's failure to provide notice of adverse actions or otherwise comply with agency policies and procedures with regard to Dews-Miller's employment in the period following the 1995 Settlement Agreement until her termination in 1996. Because these allegations could reasonably be expected to follow from an investigation into the adverse actions alleged in the EEOC charge, they fall within the scope of the Title VII lawsuit. In contrast, Counts XIV, XVI, and XIX simply challenge the validity of the 1995 Settlement Agreement,[17] and so are not sufficiently related to the administrative charges.

Thus, Plaintiff's Title VII lawsuit includes only Counts I-III, V-XIII, XV, XVII, XVIII, XXI, and XXII. Counts XIV, XVI, XIX, and XXII do not meet the administrative charge requirement, and so they are **dismissed** for failure to exhaust administrative remedies.

Although the administrative charge requirement in Park usually answers the question of whether there is jurisdiction over a claim under Title VII, the complicated procedural history of this case

---

[17]    Defendant also persuasively argues that the Federal Circuit's finding that the 1995 Settlement Agreement was valid in Dews-Miller v. United States Info. Agency, 1999 WL 129642 at *3, collaterally estops Plaintiff from raising these claims. See Def.'s Mot. at 6-12.

gives rise to a separate jurisdictional issue. As noted above, Dews-Miller filed an OCR complaint on October 10, 1995 that alleged various breaches by USIA of the 1995 Settlement Agreement in violation of Title VII. After the agency rejected these claims, the EEOC dismissed Plaintiff's appeal as untimely. In addition, in 1998, Plaintiff brought identical claims in a Title VII lawsuit, which this Court dismissed with prejudice for lack of subject matter jurisdiction.

The claims dismissed as untimely by the EEOC, and, thereafter, by this Court, for lack of subject matter jurisdiction by this Court are identical to Counts XI, XV, and XXI in Plaintiff's pro se Amended Complaint. While these counts are sufficiently related to Plaintiff's valid Title VII claims to meet the administrative charge requirement, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." Park, 71 F.3d at 907. The administrative charge requirement is intended to relieve plaintiffs from the strict, technical pleading requirements in federal court, not to grant them a second bite at the apple. Thus, Counts XI, XV, and XXI must be dismissed both because (1) Dews-Miller is collaterally estopped from relitigating this Court's February 12, 1999 decision that it lacked subject matter jurisdiction over the claims under Title VII; and (2) the EEOC's dismissal of her appeal as untimely means that Dews-Miller failed to exhaust her

-41-

administrative remedies with respect to these counts. Counts XI, XV, and XXI are therefore **dismissed** under Rules 12(b)(1) and 12(b)(6).

### 2. Plaintiff's Remaining Title VII Claims

For the reasons given above, Plaintiff's Title VII case is limited to the allegations made in Counts I-III, V-X, XII, XIII, XVII, XVIII, and XXII. Defendant has moved to dismiss the Amended Complaint under Rule 12(b)(6) on the grounds that Plaintiff has failed to state a claim.

The <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), burden-shifting framework applies to Title VII claims of unlawful retaliation. First, the plaintiff has the burden of proving a prima facie case of retaliation by a preponderance of the evidence. If the plaintiff succeeds, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. Finally, if the defendant should carry this burden, the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. <u>Holmes-Martin v. Sebelius</u>, No. 07-2128, 2010 WL 935385, at *4 (D.C. Cir. March 17, 2010) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981)).

In order to make out a prima facie case of retaliation under Title VII, Dews-Miller must show that "(1) she engaged in

statutorily protected activity; (2) she suffered an adverse employment action;[18] and (3) there is a causal connection between the two." Taylor v. Small, 350 F.3d 1286, 1292 (D.C. Cir. 2003). However, where a defendant has offered a legitimate, non-discriminatory purpose for its adverse actions, consideration of the plaintiff's prima facie case is unnecessary:

> [W]here a defendant 'has asserted a legitimate, non-discriminatory reason for [its action], the district court need not--and should not--decide whether the plaintiff actually made out a prima facie case . . . .' Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Rather, at that point, 'the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer ... retaliation from all the evidence.' Jones [v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009)] (quoting Carter v. George Wash. Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)).

Beckford v. Geithner, 661 F.Supp.2d 17, 22-23 (D.D.C. 2009).

---

[18]     An adverse employment action is challengeable under Title VII when it "would have been material to a reasonable employee, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006). Under this standard, Counts II and III, alleging USIA's failure to provide counseling and assistance prior to the "minimally successful" ratings, and Counts V-IX, alleging USIA's failure to provide notice prior to adverse actions, would likely fail. For the reasons given below, however, the Court will forego consideration of whether all of the counts in Dews-Miller's Title VII lawsuit allege materially adverse employment actions, and proceed to summary judgment instead. But see Baloch v. Kempthorne, 550 F.3d 1191, 1198-1200 (D.C. Cir. 2008) (engaging in material adversity inquiry first).

In this case, Defendant asserts that it gave Dews-Miller the two "minimally successful" performance evaluations because her supervisors were dissatisfied with her work. Defendant also argues that, once Dews-Miller received less than a "Fully Successful" performance evaluation for her detail to OGC, the adverse actions that followed were compelled by the terms of the 1995 Settlement Agreement. Finally, with regard to the decision to place Dews-Miller on AWOL status, Defendant asserts that Dews-Miller failed to provide proper medical documentation of her injury, and so was not entitled to paid sick leave. All of the explanations given by Defendant constitute "legitimate, nondiscriminatory reasons." Brady, 520 F.3d at 94. Consequently, there is no need to decide Defendant's Rule 12(b)(6) Motion.

## IV.  Motion for Summary Judgment

The only question remaining for summary judgment is "whether a reasonable jury could infer that the proffered legitimate reason was false and that defendant's actions were intended as retaliation." Meadows v. Mukasey, 555 F.Supp.2d 205, 210 (D.D.C. 2008) (emphasis added); see Weber v. Battista, 494 F.3d 179, 186 (D.C. Cir. 2007) (explaining that both questions must be answered). The court should consider the totality of the circumstances of the case, relying on "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of

[retaliation] that may be available to the plaintiff." <u>Meadows</u>, 555
F.Supp.2d at 210 (citing <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d
1284, 1289 (D.C. Cir. 1998)). "[I]f [plaintiff] is unable to adduce
evidence that could allow a reasonable trier of fact to conclude
that [defendant's] proffered reason was a pretext for
[retaliation], summary judgment must be entered against
[plaintiff]." <u>Paquin v. Fed. Nat'l Mortgage Ass'n</u>, 119 F.3d 23,
27-28 (D.C. Cir. 1997).

"The strength of the plaintiff's prima facie case, especially
the existence of a causal connection, can be a significant factor
in [her] attempt to rebut the defendant's legitimate non-
retaliatory reason for the adverse action." <u>Holmes-Martin</u>, 2010 WL
93585, at *5. However, Dews-Miller's prima facie case of a causal
connection between her prior EEO activity and the agency's adverse
actions is extremely weak.[19] Plaintiff recites no facts that would
suggest that, even if Defendant's proffered reasons are false, the

---

[19]     Defendant also argues that the Federal Circuit's decision
in <u>Dews-Miller v. United States Info. Agency</u>, 1999 WL 129642,
precludes relitigation of the causal connection between Dews-
Miller's protected activity and the adverse actions. Def.'s Supp.
Mem. at 3-5 [Dkt. No. 56]. As explained above, the Federal
Circuit's dismissal of Plaintiff's appeal from the MSPB was
jurisdictional, and so the decision is not an adjudication on the
merits. As such, there is no claim preclusion. In addition, because
the Federal Circuit considered only the causal relationship between
Dews-Miller's whistleblowing activity and the adverse actions, and
not the relationship between her prior EEO activity and the adverse
actions, collateral estoppel does not apply. Thus, litigation of
this issue is not precluded.

actual motivation for the adverse actions was retaliation for her prior EEO activity.

In fact, there is no "very close" temporal proximity between the protected activity and the adverse actions that might establish a causal connection. Dews-Miller's EEO activity, allegedly the basis for Defendant's retaliation, ended in October 1993. The "minimally successful" rating for the period worked at OIG from May 1, 1994 to January 24, 1995--the earliest adverse action challenged by Dews-Miller--was given on July 20, 1995, and Plaintiff was placed on AWOL status in September of 1995. The distance in time between the protected activity and the adverse actions is therefore close to two years, "suggest[ing], by itself, no causality at all." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all").

Thus, Plaintiff's prima facie case has failed to nudge her claims across the line to plausibility, especially considering Defendant's legitimate, nondiscriminatory explanations. See Rouse v. Berry, No. 06-2088, 2010 WL 325569, at *4 (D.D.C. Jan. 29, 2010) (concluding that plaintiff plausibly alleged causal connection between adverse action and prohibited, discriminatory consideration by submitting a letter from defendants which stated that

plaintiff's coverage was denied because he used a wheelchair). In sum, no reasonable fact-finder could conclude that Defendant's actions were intended as retaliation for Dews-Miller's 1993 EEO activity.

In addition, the Amended Complaint includes only two factual allegations that would suggest that Defendant's proffered reasons are false. Dews-Miller alleges that, despite Defendant's assertions to the contrary, she did submit medical documentation of her on-the-job injury and so was entitled to pay during her sick leave. The Government denies ever receiving such documentation.

Plaintiff also alleges that her "Minimally Successful" ratings were not preceded by any criticism of her work. Defendant responds, however, that "[t]here was no USIA requirement that the reviewing official counsel Plaintiff regarding her rating." Def.'s Stmt. of Material Facts Not in Dispute ¶ 16.

In response, Dews-Miller has failed to submit a single affidavit, exhibit, or piece of evidence to support her factual allegations.[20] For example, she has submitted no certified or

---

[20] Plaintiff did submit several exhibits with her first Complaint, which was filed on October 16, 2006 [Dkt. No. 1]. These pro se exhibits include a partial administrative record regarding her prior complaints, related correspondence from the EEOC, newspaper articles, and a table summarizing the events alleged in the Complaint. These exhibits do not include evidence showing that Defendant's proffered explanation is false, or that Defendant was actually motivated by retaliation.

registered mail receipts demonstrating her submission of documentation.

In contrast, Defendant has submitted a detailed record that includes both documentation of the agency's investigation and of the administrative processes, as well as affidavits from Dews-Miller's supervisors attesting to the proffered legitimate, non-discriminatory reasons. Because it is Plaintiff's burden in opposing a summary judgment motion to produce evidence demonstrating that Defendant's proffered explanation is a pretext for retaliation, her failure to do so compels this Court to **grant** Defendant's Motion for Summary Judgment. Plaintiff's Title VII lawsuit, comprising all of the claims not dismissed under Rules 12(b)(1) and 12(b)(6), is therefore **dismissed with prejudice.**

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the Alternative, for Summary Judgment under Rule 56 is **granted.** An Order will accompany this Memorandum Opinion.


April 27, 2010
/s/
Gladys Kessler
United States District Judge


Copies to: attorneys on record via ECF.